# Exhibit 1

## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| JEREMY KEEL, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, RHONDA BURNETT, DON GIBSON, LAUREN CRISS, JOHN MEINERS, DANIEL UMPA, CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, and JANE RUH, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Case No. 4:25-cv-00055-SRB |
| HOUSE OF SEVEN GABLES REAL ESTATE, INC., WASHINGTON FINE PROPERTIES, LLC; SIDE, INC.; SIGNATURE PROPERTIES OF HUNTINGTON, LLC; J.P. PICCININI REAL ESTATE SERVICES, LLC; JPAR FRANCHISING, LLC; CAIRN REAL ESTATE HOLDINGS, LLC; CAIRN JPAR HOLDINGS, LLC; YOUR CASTLE REAL ESTATE, LLC; BROOKLYN NEW YORK MULTIPLE LISTING SERVICE, INC.; CENTRAL NEW YORK INFORMATION SERVICE, INC.; FIRST TEAM REAL ESTATE - ORANGE COUNTY; SIBCY CLINE, INC. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## DECLARATION OF STEVE W. BERMAN IN SUPPORT OF PRELIMINARY APPROVAL OF SIBCY CLINE SETTLEMENT; CERTIFICATION OF SETTLEMENT CLASS; AND APPOINTMENT OF CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

011207-11/2851725 V1

I, Steve W. Berman, state under oath, as follows:

1.      I am the Managing Partner of Hagens Berman Sobol Shapiro LLP ("Hagens Berman"). The Court in *Moehrl v Nat'l Ass'n of Realtors*, Case No. 1:19-cv-01610-ARW (N.D. Ill.) ("*Moehrl*") appointed my firm, together with Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), and Susman Godfrey LLP ("Susman Godfrey"), as Co-Lead Class Counsel in the *Moehrl* litigation.

2.      Hagens Berman, Cohen Milstein, and Susman Godfrey also served as co-counsel for Plaintiffs in *Umpa v Nat'l Ass'n of Realtors*, Case No. 4:23-cv-00945-FJG (W.D. Mo.) until that case was consolidated with this case ("*Gibson*") on April 23, 2024. (*Gibson* Doc. 145, *Umpa* Docs. 245–246). Our three firms, together with Ketchmark & McCreight, P.C. ("Ketchmark & McCreight"), Boulware Law LLC ("Boulware Law") and Williams Dirks Dameron LLC ("Williams Dirks Dameron") now serve as co-counsel for Plaintiffs in the consolidated *Gibson* action. (*Gibson* Doc. 146). The Court appointed these six firms as Interim Co-Lead Class Counsel, with responsibility "for any settlement negotiations with Defendants." (*Gibson* Doc. 180). The Court also appointed the six firms as Co-Lead Counsel for the Settlement Classes in the first thirteen *Gibson* Settlements. (*See Gibson* Docs. 163, 297, 348, 530, and 534).

3.      We reached settlements with a total of 9 brokerages and MLSs outside of the Burnett / Moehrl and Gibson matters. We filed this case, including as a mechanism for approval of those settlements. On February 5, 2025, we reached an additional settlement with Sibcy Cline.

4.      I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Settlement with Sibcy Cline; Certification of Settlement Class; and Appointment of Class Representatives and Settlement Class Counsel. Based on personal knowledge or discussions with

counsel in my firm and co-counsel regarding the matters stated herein, if called upon, I could and would testify competently thereto.

5.    I have served as lead or co-lead counsel in antitrust, securities, consumer, products liability, and employment class actions, and other complex litigation matters throughout the country. For example, I have represented thousands of plaintiffs in large antitrust cases and have achieved favorable results for them. I was the lead trial lawyer in *In re National Collegiate Athletic Association Athletic Grant-In-Aid Cap Antitrust Litig.*, MDL No. 2541 (N.D. Cal.) where the class obtained injunctive relief following a bench trial. As co-lead counsel in *In re Visa Check/Mastercard Antitrust Litig.*, No. 96-cv-05238 (E.D.N.Y.), I obtained the then largest antitrust settlement in history for consumers while challenging alleged anti-competitive agreements among U.S. banks, Visa, and Mastercard, regarding ATM fees. I also represented consumers in *In re Optical Disk Drive Products Antitrust Litig.*, No. 10-md-2143-RS (N.D. Cal.), *In re Electronic Books Antitrust Litig.*, No. 11-md-02293 (DLC) (S.D.N.Y.), and *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02430 (N.D. Cal.), obtaining court-approved settlements for class members in all three cases. I was approved as co-lead counsel to represent a certified class of thousands of consumers in *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637 (N.D. Ill. May 27, 2022), ECF No. 5644. I have negotiated numerous settlements in class and non-class cases during my decades of practice.

6.    Proposed Settlement Class Counsel are the following law firms:

- Ketchmark & McCreight, P.C.,
- Boulware Law LLC,
- Williams Dirks Dameron LLC,
- Cohen Milstein Sellers & Toll PLLC,
- Hagens Berman Sobol Shapiro LLP, and
- Susman Godfrey LLP.

7.      Proposed Settlement Class Counsel are highly experienced in the areas of antitrust and class action litigation. They have tried antitrust class actions to verdict and prosecuted and settled numerous others. Hagens Berman, Cohen Milstein, and Susman Godfrey—Co-Lead Class Counsel in *Moehrl*—each have extensive antitrust class action experience and have successfully prosecuted some of the most complex private antitrust cases in the last two decades. Each has a history of winning landmark verdicts and negotiating favorable settlements for their clients. Their collective and individual litigation experience—discussed in the memorandum of law and exhibits filed in Support of Plaintiffs' Motion for Appointment of Interim Co-Lead Class Counsel—amply demonstrates that all six firms have extensive knowledge of the relevant law, as well as the resources for effective representation of Settlement Class Plaintiffs, and the proven ability to reach superior results for parties injured by anticompetitive practices. (*Gibson* Doc. 156).

8.      On behalf of Plaintiffs, other Co-Lead Counsel and I participated in settlement negotiations with opposing counsel and/or analysis and deliberation among the Plaintiffs' legal team regarding settlement terms.

9.      The Settlement was achieved through extensive negotiations, and only after a mediation with Greg Lindstrom and fully evaluating Sibcy Cline's financial condition.  Attached as Exhibit A is a true and accurate copy of the Settlement Agreement between Plaintiffs and Sibcy Cline.

10.     In my opinion, and in that of highly experienced Co-Lead Counsel, the proposed Settlement Agreement is fair, reasonable, and adequate. It provides substantial monetary and non-monetary benefits to the Settlement Class, and it avoids the risks, costs, and delay of continuing protracted litigation. Details of the agreed monetary relief, changes to or maintenance of Sibcy

Cline's business practices, and cooperation in Plaintiffs' ongoing litigation against the non-settling defendants are set forth in the Settlement Agreement attached as <u>Exhibits A</u>.

11. Plaintiffs and Class Counsel reached the Settlement Agreement after arms-length negotiations, including mediation with Greg Lindstrom, and considering the risk and cost of litigation. Plaintiffs and Class Counsel believe the claims asserted are meritorious and that the evidence developed to date supports the claims, but also recognize the risk and delay of proceedings in a complex case like this, and believe that the Settlement confers substantial benefits upon the Settlement Class Members.

12. In my opinion, the Settlement is fair and reasonable in light of the financial condition of each Defendant, and the limited resources available to each to satisfy a judgment as compared to the size of the potential damages. Pursuant to FRE 408, Plaintiffs received and carefully reviewed detailed financial records from Defendants. Counsel assessed whether Settling Defendants could withstand a greater payment. The monetary settlements were reached with due consideration for the Defendants' ability to pay a judgment or settlement.

13. Class Counsel have discussed the Settlement Agreement with the Class Representatives, and they have approved them.

14. There was no collusion among counsel for the parties at any time during these settlement negotiations. To the contrary, the negotiations were contentious, hard fought, and fully informed. Plaintiffs sought to obtain the largest possible monetary recovery, as well as the most impactful changes to (or agreements to maintain) Sibcy Cline's business practices to avert potentially anticompetitive conduct going forward. Plaintiffs further sought the most helpful cooperation possible from Sibcy Cline.

15.     When the Settlement Agreement was executed with Sibcy Cline, Co-Lead Counsel were fully aware of the strengths and weaknesses of each side's positions. Extensive litigation and settlement negotiations in the related actions *Moehrl*, *Burnett*, and *Gibson*, laid the foundation for expeditiously achieving favorable settlements with Sibcy Cline. The parties in *Burnett* and *Moehrl* completed over five years of extensive fact and expert discovery, including propounding and responding to multiple sets of interrogatories and requests for production, followed by the production of well over 5 million pages of documents from the parties and dozens of non-parties across both actions. Plaintiffs briefed numerous discovery motions and disputed items in order to obtain important evidence to support their claims. The parties conducted over 100 depositions in the *Moehrl* action and over 80 depositions in the *Burnett* action. *Moehrl* Plaintiffs engaged six experts and *Burnett* Plaintiffs engaged five experts to support their claims and to rebut claims from the nine experts retained by Defendants in each case. Most experts in the case were deposed after the submission of 24 expert reports in *Moehrl* and 19 expert reports in *Burnett*. The Plaintiffs in both cases also briefed summary judgment, and the Plaintiffs in *Burnett* prevailed at trial, including against NAR, and briefed post-trial motions.

16.     Discovery in *Burnett* and *Moehrl* focused on the nationwide rules and practices of NAR and its members. Class Counsel and experts in *Burnett* and *Moehrl* analyzed rules, policies, practices, and transaction data, including on a nationwide basis. They also evaluated whether those policies and practices differed among MLSs across the country. Class Counsel obtained and analyzed information regarding the entire industry, and not just the MLSs and Defendants at issue in *Burnett* and *Moehrl*.

17.     During the course of the *Burnett* and *Moehrl* litigation, Plaintiffs' counsel engaged in extensive arm's-length settlement negotiations with various defendants in those cases that lasted

nearly four years, including several in-person and telephonic mediations with a nationally recognized and highly experienced mediator, mediations with a retired federal court judge and a federal magistrate judge, and dozens of one-on-one calls and direct communications. This work resulted in Settlement Agreements in those actions that required NAR and several of the largest real estate brokerage firms to abolish the challenged rules, provide cooperation in litigation against non-settling defendants, and pay the following amounts:

      a.      Anywhere Real Estate, Inc. (f/k/a Realogy Holdings Corp.) ("Anywhere"): $83.5 million,

      b.      RE/MAX LLC ("RE/MAX"): $55 million,

      c.      Keller Williams Realty, Inc. ("Keller Williams"): $70 million,

      d.      HomeServices of America, Inc., BHH Affiliates, LLC, Long & Foster Companies, Inc., and HSF Affiliates, LLC ("HomeServices"): $250 million, and

      e.      The National Association of Realtors ("NAR"): at least $418 million.

18.      Proposed Settlement Class Counsel are the same attorneys who successfully represented home sellers in the *Burnett, Moehrl*, and *Gibson* actions—and who prevail at trial in *Burnett* and achieved favorable settlements on behalf of home sellers. Proposed Settlement Class Counsel then used their work in those actions to further benefit the class. Plaintiffs filed the *Gibson* and *Umpa* actions alleging a nationwide class against additional Defendants. Based on their extensive work and research in *Burnett* and *Moehrl*, as well as in this action, Co-Lead Counsel were well informed of the value and consequences of the Settlement Agreement.

19.      In addition, in my opinion, the named Plaintiffs have ably represented the interests of the proposed class. Each has served as a named plaintiff in other litigation involving real estate commissions and has experience litigating such claims. In addition, each named Plaintiff

considered and approved the Settlement. Each also approved the filing of the complaint and is prepared to represent the Class.

20.     Given the considerable cost of issuing class notice in a case of this size, and the total Settlement Amount provided by this Settlement, I believe it would serve the best interest of the Class to implement a combined notice program that includes notice of several settlements in the related *Gibson* action. This would enable the Parties to make more efficient use of settlement funds. Plaintiffs intend to file a motion to approve the form of a combined notice program shortly.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed February 7, 2025.

*/s/ Steve W. Berman*
Steve W. Berman

# Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into as of the 5th day of February, 2025 (the "Execution Date"), and is by and between Sibcy Cline, Inc. and Sibcy Cline, Inc. of Kentucky (collectively, "Sibcy Cline") and Plaintiffs Rhonda Burnett, Jerod Breit, Jeremy Keel, Hollee Ellis, Frances Harvey, Christopher Moehrl, Michael Cole, Steve Darnell, Jack Ramey, Daniel Umpa, Jane Ruh, Don Gibson, Lauren Criss, and John Meiners (collectively "Plaintiffs", and together with Sibcy Cline "the Parties"), who filed suit in in the above captioned actions and in *Daniel Umpa v. The National Association of Realtors, et al.*, No. 23-cv-945 (W.D. Mo.), *Don Gibson v. The National Association of Realtors, et al.*, No. 23-cv-00788 (W.D. Mo.), and *Jeremy Keel v. Washington Fine Properties*, LLC et al., No.25-cv-00055 (W.D. Mo.) (all five actions collectively, "the Actions"), both individually and as representatives of one or more classes of home sellers.

WHEREAS, the allegations in the Actions set forth claims for damages and for injunctive relief;

WHEREAS, Sibcy Cline denies Plaintiffs' allegations in the Actions and indicated it would assert defenses to Plaintiffs' claims if sued;

WHEREAS, extensive arm's-length settlement negotiations have taken place between Plaintiffs' Co-Lead Counsel and counsel for Sibcy Cline, including a mediation with Greg Lindstrom, a nationally recognized mediator, leading to this Settlement Agreement;

WHEREAS, the Actions will continue against all other defendants in the Actions, other than Sibcy Cline (the "Non-Sibcy Cline Defendants") unless Plaintiffs separately settle with any of the Non-Sibcy Cline Defendants;

WHEREAS, Plaintiffs have conducted an extensive investigation into the facts and the law regarding the claims asserted in the Actions, and have concluded that a settlement with Sibcy Cline

1

according to the terms set forth below is fair, reasonable, and adequate and in the best interest of Plaintiffs and the Settlement Class;

WHEREAS, Sibcy Cline believes that it is not liable for any claims asserted and has good defenses to Plaintiffs' claims, but nevertheless has decided to enter into this Settlement Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, to obtain the nationwide releases, orders, and judgment contemplated by this Settlement Agreement, and to put to rest with finality all claims that Plaintiffs and Settlement Class Members have or could have asserted against the Released Parties, as defined below; and

WHEREAS, Sibcy Cline, in addition to the settlement payments set forth below, has agreed to cooperate with Plaintiffs and to implement certain practice changes, each as set forth in this Settlement Agreement.

NOW, THEREFORE, in consideration of the agreements and releases set forth herein and other good and valuable consideration, and intending to be legally bound, it is agreed by and between Sibcy Cline and the Plaintiffs that the Actions be settled, compromised, and dismissed with prejudice as to Sibcy Cline only, without costs to Plaintiffs, the Settlement Class or Sibcy Cline except as provided for herein, subject to the approval of the Court, on the following terms and conditions:

**A.** **Definitions**

The following terms, as used in this Settlement Agreement, have the following meanings:

1. "Corporate Defendants" means any defendant aside from the National Association of Realtors named in Gibson, Umpa, Burnett v. NAR, (W.D. Mo. Case No. 19-CV-0332-SRB), or Moehrl v. NAR, (N.D. Ill. Case No. 1:19-cv-01610).

2. "Co-Lead Counsel" means the following law firms:

KETCHMARK AND MCCREIGHT P.C.
11161 Overbrook Road, Suite 210
Leawood, KS 66211

BOULWARE LAW LLC
1600 Genessee, Suite 416
Kansas City, MO 64102

WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, MO 64105

HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005

SUSMAN GODFREY LLP
1900 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067

3.      "Court" means the U.S. District Court for the Western District of Missouri.

4.      "Defendants" means all defendants named in the Actions.

5.      "Effective" means that all conditions set forth below in the definition of "Effective Date" have occurred.

6.      "Effective Date" means the date when: (a) the Court has entered a final judgment order approving the Settlement set forth in this Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure and a final judgment dismissing the Actions against Sibcy Cline with prejudice has been entered; and (b) the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and the entry of a final judgment has expired or, if appealed, approval of the Settlement Agreement and the final judgment have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review; excluding, however, any appeal or other proceedings unrelated to this Settlement Agreement initiated by any Non-Sibcy Cline Defendant or any person or entity related to the Non-Sibcy Cline Defendant, and any such appeal or other proceedings shall not

3

delay the Settlement Agreement from becoming final and shall not apply to this section; nor shall this section be construed as an admission that such parties have standing or other rights of objection or appeal with respect to this Settlement Agreement. It is agreed that neither the provisions of Federal Rule of Civil Procedure 60 nor the All Writs Act, 28 U.S.C. § 1651, shall be considered in determining the above-stated times.

7.    "Gibson" means Western District of Missouri Case No. 4:19-cv-00332-SRB, which is currently pending.

8.    "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, any business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, affiliates and assignees. For the avoidance of doubt, Persons include all real estate brokerages.

9.    "Released Claims" means any and all manner of federal and state law claims regardless of the cause of action arising from or relating to conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home.

10.    "Released Parties" means Sibcy Cline and each of its respective past, present and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, sub-franchisors, officers, directors, managing directors, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns, and all

4

of the franchisees' and sub-franchisors' officers, directors, managing directors, employees, agents, and independent contractors. Notwithstanding this definition, "Released Parties" shall not include the Non-Sibcy Cline Corporate Defendants, or their past, present and future, direct and indirect corporate parents (including holding companies), subsidiaries, related entities and affiliates, associates (all as defined in SEC Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934), predecessors, and successors, and all of their respective franchisees, officers, directors, managing directors, employees, agents, contractors, independent contractors, attorneys, legal or other representatives, accountants, auditors, experts, trustees, trusts, heirs, beneficiaries, estates, executors, administrators, insurers, and assigns. For the avoidance of doubt, individuals who were members of the National Association of Realtors are not thereby excluded from being Released Parties, and entities and individuals that were sometimes associated with the Sibcy Cline Entities and other times associated with a different Corporate Defendant are included as Released Parties for the periods of time they were associated with Sibcy Cline and excluded for the periods of time they were associated with a different Corporate Defendant. For the avoidance of doubt, the foregoing release is not intended to and does not release Sibcy Cline or any other Person for any claims based on the conduct of any real estate brokerage acquired by Sibcy Cline or any other Person who becomes affiliated with Sibcy Cline after the Execution Date for conduct which took place before the Execution Date.

11.     "Releasing Parties" means Plaintiffs and any Settlement Class Members (including any of their immediate family members, heirs, representatives, administrators, executors, devisees, legatees, and estates, acting in their capacity as such; and for entities including any of their past, present or future officers, directors, insurers, general or limited partners, divisions, stockholders, agents, attorneys, employees, legal representatives, trustees, parents, associates, affiliates, joint ventures, subsidiaries, heirs, executors, administrators, predecessors, successors and assigns, acting

in their capacity as such solely with respect to the claims based on or derived from claims of the Plaintiffs or Settlement Class Members).

12.    "Settlement" means the settlement of the Actions contemplated by this Settlement Agreement.

13.    "Settlement Class" means the class of persons that will be certified by the Court for settlement purposes only, namely, all persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home between October 31, 2019 and date of Class Notice.  For avoidance of doubt, Plaintiffs and Sibcy Cline intend this Settlement Agreement to provide for a nationwide class with a nationwide settlement and release.

14.    "Settlement Class Member" means a member of the Settlement Class who does not file a valid request for exclusion from the Settlement Class.

15.    "Settling Parties" means Plaintiffs and Sibcy Cline.

16.    "Total Monetary Settlement Amount" means EIGHT HUNDRED AND NINETY FIVE THOUSAND DOLLARS ($895,000.00). The Parties agree that Sibcy Cline shall have the right, as it so chooses, to allocate the Total Monetary Settlement Amount for all damages arising out of or relating to the Plaintiffs' equitable and non-equitable claims, including, but not limited to, claims for attorneys' fees and/or loss of economic opportunities."

17.    All costs of settlement, including all payments to class members, all attorneys' fees and costs, all service awards to current and former class representatives, and all costs of notice and administration, will be paid out of the Total Monetary Settlement Amount, and Sibcy Cline will pay nothing apart from the Total Monetary Settlement Amount.

18.    "Umpa" means Western District of Missouri Case No. 23-cv-00945, which is currently pending.

**B.**     <u>Stipulation to Class Certification for Settlement Purposes</u>

      19.    Sibcy Cline acknowledges and agrees that it will be named as a defendant in the *Keel* action arising from the same conspiracy alleged in *Burnett*, *Moehrl*, *Gibson*, and *Umpa*. The new lawsuit will or has been filed in the United States District Court for the Western District of Missouri, Western Division. Sibcy Cline agrees to (a) the jurisdiction and venue of the Western District of Missouri for purposes of this settlement only, (b) accept service for the new lawsuit, and (c) to the transfer of the new lawsuit to the court of Judge Stephen R. Bough, if it is not randomly assigned there. To the extent necessary, Sibcy Cline hereby agrees to work in good faith with Plaintiffs and Co-Lead Counsel to efficiently and timely file the new action and have it transferred to Judge Bough's court.

      20.    The Settling Parties hereby stipulate for purposes of this Settlement Agreement only that the requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are satisfied and, subject to Court approval, the Settlement Class shall be certified for settlement purposes as to Sibcy Cline. Should, for whatever reason, the Settlement not become Effective, the Settling Parties' stipulation to class certification as part of this Settlement Agreement shall become null and void. Sibcy Cline and Plaintiffs expressly reserve all rights if the Settlement Agreement does not become Effective or if it is rescinded by Sibcy Cline or Plaintiffs, including, but not limited to, any defenses concerning the Court's lack of personal jurisdiction over Sibcy Cline or any Released Parties.

      21.    Sibcy Cline hereby agrees that with respect to the Released Claims, any applicable statute of limitations or other time defenses shall be deemed tolled from July 1, 2024, until this Settlement Agreement is either finalized or rescinded.

**C.**     <u>Approval of this Settlement Agreement and Dismissal of the Actions</u>

      22.    The Settling Parties agree to make reasonable best efforts to effectuate this Settlement Agreement, including, but not limited to, seeking the Court's approval of procedures (including the

7

giving of class notice under Federal Rules of Civil Procedure 23(c) and (e); and scheduling a final fairness hearing) to obtain final approval of the Settlement and the final dismissal with prejudice of the Actions as to Sibcy Cline; and Sibcy Cline's cooperation by providing information reflecting its ability to pay limitations and, if requested by Co-Lead Counsel, a declaration describing and attesting to those limitations.

23. Plaintiffs will submit to the Court a motion requesting that the Court preliminarily approve the Settlement (the "Motion"). The Motion shall include a proposed form of order preliminarily approving the Settlement and enjoining Releasing Parties from prosecuting any Released Claims in any forum until the Effective Date of this Settlement. The proposed form of the preliminary approval order shall be acceptable to Sibcy Cline provided that it is substantially in the form of the orders proposed in connection with the Keller Williams, Anywhere, and RE/MAX settlements. The Settling Parties shall take all reasonable actions as may be necessary to obtain preliminary approval of the Settlement. To the extent the Court finds that the Settlement does not meet the standard for preliminary approval, the Settling Parties will negotiate in good faith to modify the Settlement Agreement directly or with the assistance of mediator Greg Lindstrom and will endeavor to resolve any issues to the satisfaction of the Court.

24. The Settling Parties agree that Plaintiffs may at their sole discretion: (i) seek to include notice of this Settlement to the Settlement Class and for claim administration along with the settlement with any other Defendant or (ii) seek approval of a separate plan for providing class notice of this Settlement in a manner that meets the requirements of due process and Federal Rule of Civil Procedure 23 ("Class Notice"). The Settling Parties agree that the notice language shall not be subject to Sibcy Cline's review or approval so long as it is substantially in the form of one or more prior Court-approved notices. To the extent Plaintiffs seek to materially vary the language of the notice, Sibcy Cline must provide any edits or objections within twenty-four (24) hours, and the

8

Settling Parties shall promptly meet and confer to resolve any such objection. The Settling Parties agree to the use of JND as a claims and notice administrator. The timing of any request to disseminate Class Notice to the Settlement Class will be at the discretion of Co-Lead Counsel.

25.     Within ten (10) calendar days after the filing with the Court of this Settlement Agreement and the accompanying motion papers seeking its preliminary approval, JND, the notice administrator, may at Sibcy Cline's expense to be credited against the Total Monetary Settlement Amount cause notice of the Settlement Agreement to be served upon appropriate State and Federal officials as provided in the Class Action Fairness Act, 28 U.S.C. § 1715.

26.     If the Settlement is preliminarily approved by the Court, Plaintiffs shall timely seek final approval of the Settlement and entry of a final judgment order as to Sibcy Cline:

(a) certifying the Settlement Class under Federal Rule of Civil Procedure 23(b), solely for purposes of this Settlement;

(b) granting final approval of the Settlement as fair, reasonable, and adequate within the meaning of Federal Rules of Civil Procedure 23(e) and directing the consummation of the Settlement according to its terms;

(c) directing that, as to Sibcy Cline only, the Actions be dismissed with prejudice and, except as provided for herein, without costs;

(d) reserving exclusive jurisdiction over the Settlement and this Settlement Agreement, including reserving exclusive jurisdiction over the administration and consummation of this Settlement to the United States District Court for the Western District of Missouri; and

(e) If applicable, determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of final judgment as to Sibcy Cline.

9

27.     This Settlement Agreement will become Effective only after the occurrence of all conditions set forth above in the definition of the Effective Date.

**D.     Releases, Discharge, and Covenant Not to Sue**

28.     Upon the occurrence of the Effective Date, the Releasing Parties expressly and irrevocably waive, and fully, finally, and forever settle, discharge, and release each of the Released Parties from, any and all manner of claims, demands, actions, suits, and causes of action, whether individual, class, representative, or otherwise in nature, for damages, restitution, disgorgement, interest, costs, expenses, attorneys' fees, fines, civil or other penalties, or other payment of money, or for injunctive, declaratory, or other equitable relief, whenever incurred, whether directly, indirectly, derivatively, or otherwise, whether known or unknown, suspected or unsuspected, in law or in equity, that any Releasing Party ever had, now has, or hereafter can, shall, or may have and that have accrued as of the date of preliminary approval of the Settlement Agreement arising from, arising out of, or related to the Released Claims.  The Released Claims include but are not limited to the antitrust and consumer protection claims brought in the Actions and similar state and federal statutes. In connection therewith, upon the Effective Date of the Settlement, each of the Releasing Parties (i) shall forever be enjoined from prosecuting in any forum any Released Claims against any of the Released Parties that accrued from the beginning of time through the date of preliminary approval of the Settlement; and (ii) agrees and covenants not to sue any of the Released Parties with respect to any Released Claims.  For avoidance of doubt, the release set forth in this Settlement Agreement extends to, but only to, the fullest extent permitted by law.

29.     The Releasing Parties may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims. Nevertheless, the Releasing Parties expressly, fully, finally, and forever settle and release, and, upon the Effective Date, shall be deemed to have, and by operation of the Final Judgment and Order of

10

Dismissal shall have, fully, finally, and forever settled and released, any and all Released Claims, without regard to the subsequent discovery or existence of such other, different, or additional facts, as well as any and all rights and benefits existing under (i) Cal. Civ. Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

or any equivalent, similar or comparable present or future law or principle of law of any jurisdiction, including but not limited to Section 20-7-11 of the South Dakota Codified Laws, which provides that "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR;" or (ii) any law or principle of law of any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above, without regard to the subsequent discovery or existence of such other, different, or additional facts. The Releasing Parties acknowledge that the inclusion of unknown claims in the definition of Released Claims was separately bargained for and was a material element of the Agreement.

30.     The Releasing Parties intend by this Settlement Agreement to settle with and release only the Released Parties, and the Settling Parties do not intend this Settlement Agreement, or any

11

\\4164-2489-0200 v1

part hereof, or any other aspect of the proposed Settlement or release, to release or otherwise affect in any way any claims concerning product liability, breach of warranty, breach of contract or tort of any kind (other than a breach of contract or tort based on any factual predicate in this Action), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. The release does not extend to any individual claims that a class member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a class member paid an excessive commission or home price due to the claims at issue in these Actions.

### E.    Payment of the Settlement Amount

27.    Plaintiffs will open a special interest-bearing settlement escrow account or accounts, established for that purpose as a qualified settlement fund as defined in Section 1.468B-1(a) of the U.S. Treasury Regulations (the "Escrow Account"). All accrued interest shall be for the benefit of the plaintiff classes unless the Settlement is not approved, in which case the interest shall be for the benefit of Sibcy Cline. Within thirty (30) business days after preliminary approval of the Settlement by the Court, Sibcy Cline will deposit $100,000 into the Escrow Account. Sibcy Cline will pay an additional $265,000 into the Escrow Account on or before December 31, 2025. Sibcy Cline will pay an additional $265,000 into the Escrow Account on or before December 31, 2026. Sibcy Cline shall pay the remaining amount of the Total Monetary Settlement Amount on or before December 31, 2027. Time is of the essence as it relates to the timeliness of the settlement payments, and any failure to timely make any payment will constitute a material default under this Agreement. For the avoidance of any doubt, Sibcy Cline's only payment obligation under this Settlement Agreement is to pay the Total Monetary Settlement Amount.

\4164-2489-0200 v1

**F.    The Settlement Fund**

31.    The Total Monetary Settlement Amount and any interest earned thereon shall be held in the Escrow Account and constitute the "Settlement Fund."  The full and complete cost of the settlement notice, claims administration, Settlement Class Members' compensation, current and former class representatives' incentive awards, attorneys' fees and reimbursement of all actual expenses of the Actions, any other litigation costs of Plaintiffs (all as approved by the Court), and all applicable taxes, if any, assessable on the Settlement Fund or any portion thereof, will be paid out of the Settlement Fund.  In no event will Sibcy Cline's monetary liability with respect to the Settlement exceed the Total Monetary Settlement Amount.

32.    The Settling Parties and their counsel will not have any responsibility, financial obligation, or liability for any fees, costs, or expenses related to providing notice to the Settlement Class or administering the settlement, except those reflected in Paragraph 33.  Such fees, costs, or expenses shall be paid solely from the Settlement Fund with Court approval.  The balance of the Settlement Fund shall be disbursed to Settlement Class Members as provided in a Plan of Allocation (as defined below) approved by the Court.  The Settling Parties shall have the right to audit amounts paid from the Settlement Fund.

33.    After preliminary approval of the Settlement and approval of a class notice plan, Co-Lead Counsel may utilize a portion of the Settlement Fund to provide notice of the Settlement and the Settlement Agreement to potential members of the Settlement Class.  Sibcy Cline will not object to Plaintiffs' counsel withdrawing from the Settlement Fund, subject to any necessary Court approval, up to $100,000 to pay the costs for notice.  If Plaintiffs settle with one (or more) Non-Sibcy Cline Corporate Defendants or newly-named brokerage defendants and notice of one or more other settlements is included in the notice of the Sibcy Cline settlement, then the cost of such notice will be apportioned equitably between (or among) the Sibcy Cline Settlement Fund and the other settling

13

Defendant(s)' settlement funds. The amount spent or accrued for notice and notice administration costs is not refundable to Sibcy Cline in the event the Settlement Agreement is disapproved, rescinded, or otherwise fails to become Effective.

34.     Subject to Co-Lead Counsel's sole discretion as to timing, except that the timing must be consistent with rules requiring that Settlement Class Members be given the opportunity to review fee applications, Co-Lead Counsel may apply to the Court for a fee award, plus expenses, and costs incurred, and current and former class representative service awards to be paid out of the Settlement Fund.

35.     The Settlement Fund will be invested in United States Government Treasury obligations or United States Treasury money market funds.

36.     Sibcy Cline will not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, use or administration except as expressly otherwise provided in this Settlement Agreement. Sibcy Cline's only payment obligation is to pay the Total Monetary Settlement Amount.

37.     There will be no reduction of the Total Monetary Settlement Amount based on Opt-Out Sellers. The Settlement will be non-reversionary except as set forth below in Section H. If the Settlement becomes Effective, no proceeds from the Settlement will revert to Sibcy Cline regardless of the claims that are made.

38.     No disbursements shall be made from the Settlement Fund prior to the Effective Date of this Settlement Agreement except as described in Paragraphs 33 and 34 above and 41 below.

39.     The distribution of the Settlement Fund shall be administered pursuant to a plan of allocation (the "Plan of Allocation") proposed by Co-Lead Counsel in their sole and absolute discretion and subject to the approval of the Court. Sibcy Cline will have no participatory or approval

rights with respect to the Plan of Allocation. It is understood and agreed by the Settling Parties that any proposed Plan of Allocation, including, but not limited to, any adjustments to an authorized claimant's claim, is completely independent of and is not a part of this Settlement Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement and/or the terms of this Settlement Agreement. The Settlement Class, Plaintiffs, and Sibcy Cline shall be bound by the terms of the Settlement Agreement, irrespective of whether the Court or any other court, including on any appeal, disapproves or modifies the Plan of Allocation, and any modification or rejection of the Plan of Allocation shall not affect the validity or enforceability of this Settlement Agreement or otherwise operate to terminate, modify, or cancel that Agreement.

40. The Releasing Parties will look solely to the Settlement Fund for settlement and satisfaction against the Released Parties of all Released Claims and shall have no other recovery against Sibcy Cline or the Released Parties.

G. **Taxes**

41. Co-Lead Counsel is solely responsible for filing all informational and other tax returns necessary to report any net taxable income earned by the Settlement Fund and shall file all informational and other tax returns necessary to report any income earned by the Settlement Fund and shall be solely responsible for taking out of the Settlement Fund, as and when legally required, any tax payments, including interest and penalties due on income earned by the Settlement Fund. All taxes (including any interest and penalties) due with respect to the income earned by the Settlement Fund shall be paid from the Settlement Fund. Sibcy Cline has no responsibility to make any filings relating to the Settlement Fund and will have no responsibility to pay tax on any income earned by the Settlement Fund or to pay any taxes on the Settlement Fund unless the Settlement does not become Effective and the Settlement Fund is returned to Sibcy Cline. In the event the Settlement

does not become Effective and any funds including interest or other income are returned to Sibcy Cline, Sibcy Cline will be responsible for the payment of all taxes (including any interest or penalties), if any, on said interest or other income. Sibcy Cline makes no representations regarding, and will not be responsible for, the tax consequences of any payments made pursuant to this Settlement Agreement to Co-Lead Counsel or to any Settlement Class Member.

**H.    Rescission**

42.    If the Court does not certify the Settlement Class as defined in this Settlement Agreement, or if the Court does not approve this Settlement Agreement in all material respects, or if such approval is modified in any material respect or set aside on appeal in any material respects, or if the Court does not enter final approval, or if any judgment approving this Settlement Agreement is materially modified or set aside on appeal, or if all of the conditions for the Effective Date do not occur, then this Settlement Agreement may be rescinded by Sibcy Cline or by Plaintiffs on behalf of the Settlement Class by written notice to the Court and to counsel for the other Settling Party filed and served within ten (10) business days of the entry of an order not granting court approval or having the effect of disapproving or materially modifying the terms of this Settlement Agreement. A modification or reversal on appeal of any amount of the Settlement Fund that the Court authorizes to be used to pay Plaintiffs' fees or litigation expenses shall not be deemed a modification of all or a part of the terms of this Settlement Agreement or such final judgment order.

43.    If the Settlement or Settlement Agreement is validly rescinded for any reason, then the balance of the Total Monetary Settlement Amount in the Settlement Fund will be returned to Sibcy Cline. In the event that the Settlement Agreement is rescinded, the funds already expended from the Settlement Fund for the costs of notice and administration will not be returned to Sibcy Cline. Funds to cover notice and administration expenses that have been incurred but not yet paid from the Settlement Fund will also not be returned to Sibcy Cline.

\\4164-2489-0200 v1

44. If the Settlement or Settlement Agreement is rescinded for any valid reason before payment of claims to Settlement Class Members, then the Settling Parties will be restored to their respective positions as of July 1, 2024. Plaintiffs and Sibcy Cline agree that any rulings or judgments that occur in the Actions on or after July 1, 2024 and before this Settlement Agreement is rescinded will not bind Plaintiffs, Sibcy Cline or any of the Released Parties. Plaintiffs and Sibcy Cline agree to waive any argument of claim or issue preclusion against Plaintiffs or Sibcy Cline arising from such rulings or judgments. In the event of rescission, the Actions will proceed as if this Settlement Agreement had never been executed and this Settlement Agreement, and representations made in conjunction with this Settlement Agreement, may not be used in the Actions or otherwise for any purpose. Sibcy Cline and Plaintiffs expressly reserve all rights if the Settlement Agreement does not become Effective or if it is rescinded by Sibcy Cline or the Plaintiffs. The Settling Parties agree that pending deadlines for motions not yet filed, and all deadlines (whether pending or past) for motions that will be withdrawn pursuant to this Settlement Agreement, shall be tolled for the period from July 1, 2024, until the date this Settlement or Settlement Agreement is rescinded, and no Settling Party shall contend that filing or renewal of such motions was rendered untimely by or was waived by the operation of this Settlement Agreement.

45. Sibcy Cline warrants and represents that it is not "insolvent" within the meaning of applicable bankruptcy laws as of the time this Settlement Agreement is executed, and, will warrant and represent, that it is not "insolvent" within the meaning of applicable bankruptcy laws at the time that payments of the Settlement Amount are actually transferred or made. In the event of a final order of a court of competent jurisdiction, not subject to any further proceedings, determining the transfer of the Settlement Amount, or any portion thereof, by or on behalf of Sibcy Cline to be a preference, voidable transfer, fraudulent transfer or similar transaction under Title 11 of the U.S. Code (Bankruptcy) or applicable state law and any portion thereof is required to be refunded and such

17

amount is not promptly deposited in the Escrow Account by or on behalf of Sibcy Cline, then, at the election of Plaintiff counsel, the Settlement may be terminated and the releases given and the judgment entered pursuant to the Settlement shall be null and void.

46.     The Settling Parties' rights to terminate this Settlement Agreement and withdraw from this Settlement Agreement are a material term of this Settlement Agreement.

47.     Sibcy Cline reserves all of its legal rights and defenses with respect to any claims brought by potential Opt-Out Sellers.

## I. Practice Changes

48.     As soon as practicable, and in no event later than six (6) months after the Effective Date, Sibcy Cline (defined for purposes of this paragraph to include present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors but not franchisees) will implement the following practice changes:

     i.    advise and periodically remind Sibcy Cline's company-owned brokerages, franchisees (if any), and their agents that there is no Sibcy Cline requirement that they must make offers to or must accept offers of compensation from buyer brokers or other buyer representatives or that, if made, such offers must be blanket, unconditional, or unilateral;

    ii.    require that any Sibcy Cline company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (i) in their listing agreement if it is not a government or MLS-specified form, (ii) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (iii) in pre-closing disclosure documents if there are any and

18

they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents is a government or MLS-specified form, then Sibcy Cline will require that any company-owned brokerages and their agents (and recommend and encourage that any Sibcy Cline franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

iii.    prohibit all Sibcy Cline company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free;

iv.    require that Sibcy Cline owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v.    prohibit Sibcy Cline owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker, unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi.    advise and periodically remind Sibcy Cline company owned brokerages and their agents of their obligation to (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of

compensation offered to buyer brokers or other buyer representatives provided that each such property meets the buyer's articulated purchasing priorities;

    vii.    for each of the above points, for company owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

49.    If not automatically terminated earlier by their own terms, the obligations set forth in Paragraph 48 will sunset five (5) years after the Effective Date. Sibcy Cline agrees to provide proof of compliance with these practice changes if requested by Co-Lead Counsel.

50.    Sibcy Cline acknowledges that the practice changes set forth here are a material component of this Settlement Agreement and agrees to use its best efforts to implement the practice changes specified in this Section.

## J.  Cooperation

51.    Sibcy Cline (defined for purposes of this paragraph to include present and future, direct and indirect corporate subsidiaries, related entities and affiliates, predecessors, and successors but not franchisees) will provide valuable cooperation to Plaintiffs as follows in the Actions. Any disputes regarding the scope of these provisions or compliance with these provisions can be referred to Greg Lindstrom or another mediator, mutually chosen by the parties, for binding resolution. Sibcy Cline:

    i.    will use reasonable best efforts to authenticate documents and/or things produced by it in the Actions where the facts indicate that the documents and/or things at issue are authentic, by declarations or affidavits if possible, or at hearings or trial if necessary;

    ii.    use reasonable efforts to provide the facts necessary to establish, where applicable, that documents and/or things produced by it in the Actions are

20

"business records," a present sense impression, an excited utterance, a recorded recollection, or are otherwise admissible under the Federal Rules of Evidence, by declarations or affidavits if possible, or at hearings or trial if necessary;

iii.    will use reasonable best efforts at its expense to provide relevant class member and listing data and answer questions about that data to support the provision of class notice, administration of any settlements, or the litigation of the Actions;

iv.    agree that this Settlement Agreement shall not preclude Plaintiffs from seeking the production of non-privileged documents in its possession, custody, or control, provided such documents are reasonably related to the Actions;

v.    if another Defendant includes a witness on a witness list who is then a current officer or employee of Sibcy Cline or its subsidiaries, Sibcy Cline will use reasonable best efforts to cooperate in providing access via counsel to that witness prior to deposition or trial testimony; and

vi.    agree not to provide greater assistance in discovery or trial to any defendant than to the Plaintiffs, unless required by subpoena or other compulsory process.

52.    Sibcy Cline's cooperation obligations, as set forth in Paragraph 51, shall not require the production of information, testimony, and/or documents that are protected from disclosure by the attorney-client privilege, work product doctrine, joint defense privilege, or any other applicable privilege or doctrine.

53.    Sibcy Cline's obligation to cooperate will not be affected by the release set forth in this Settlement Agreement or the final judgment orders with respect to Sibcy Cline. Unless this Settlement Agreement is rescinded, disapproved, or otherwise fails to become Effective, the obligation to cooperate as set forth here will continue until the date that final judgment has been entered in the Actions against the Non-Sibcy Cline Defendants and the time for appeal or to seek

21

permission to appeal from the entry of a final judgment has expired or, if appealed, any final judgment has been affirmed in its entirety by the Court of last resort to which such appeal has been taken and such affirmance is no longer subject to further appeal or review.

54.     Sibcy Cline acknowledges that the cooperation set forth here is a material component of this Settlement Agreement and agrees to use its reasonable best efforts to provide the cooperation specified in this Section.

**L. Miscellaneous**

55.     This Settlement Agreement and any actions taken to carry out the Settlement are not intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or of the validity of any claim, defense, or point of fact or law on the part of any party. Sibcy Cline denies the material allegations of the complaints in the Actions. Neither this Settlement Agreement, nor the fact of Settlement, nor settlement proceedings, nor the settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by Sibcy Cline, or be offered in evidence as an admission, concession, presumption, or inference of any wrongdoing by Sibcy Cline in any proceeding.

56.     This Settlement Agreement was reached with the assistance of counsel after arm's-length negotiations before a neutral mediator, Greg Lindstrom, of Phillips ADR Enterprises, P.C. The Settling Parties agree to continue to maintain the confidentiality of all settlement discussions and materials exchanged during the settlement negotiation. The terms of the Settlement continue to be subject to any settlement privilege and must be kept strictly confidential until a motion for preliminary approval is filed.

57.     Any disputes relating to this Settlement Agreement will be governed by Missouri law without regard to conflicts of law provisions.

58.     This Settlement Agreement does not settle or compromise any claim by Plaintiffs or

\4164-2489-0200 v1

any other Settlement Class Member against (a) any Non-Sibcy Cline Defendant or (b) any alleged co-conspirator or other person or entity other than the Released Parties. All rights of any Settlement Class Member against any Non-Sibcy Cline Defendant or an alleged co-conspirator or other person or entity other than the Released Parties are specifically reserved by Plaintiffs and the other Settlement Class Members.

59.    This Settlement Agreement constitutes the entire agreement among Plaintiffs and Sibcy Cline pertaining to the Settlement of the Actions against Sibcy Cline. This Settlement Agreement may be modified or amended only by a writing executed by Plaintiffs and Sibcy Cline.

60.    This Settlement Agreement may be executed in counterparts by Plaintiffs and Sibcy Cline, and a facsimile or pdf signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

61.    Neither Plaintiffs nor Sibcy Cline shall be considered the drafter of this Settlement Agreement or any of its provisions for the purpose of any statute, the common law, or rule of interpretation that would or might cause any provision of this Settlement Agreement to be construed against the drafter.

62.    The provisions of this Settlement Agreement shall, where possible, be interpreted in a manner to sustain their legality and enforceability.

63.    The Court shall retain jurisdiction over the implementation and enforcement of this Settlement Agreement and the Settlement.

64.    The terms of the Settlement Agreement are and shall be binding upon and inure to the benefit of, to the fullest extent possible, each of the Releasing Parties and the Released Parties, and upon all other Persons claiming any interest in the subject matter hereto through any of the Settling Parties, Releasing Parties, Released Parties, and any Settlement Class Members.

65.    Any disputes between Sibcy Cline and Co-Lead Counsel concerning this Settlement

Agreement shall, if they cannot be resolved by the Settling Parties, be presented to Greg Lindstrom for his assistance in mediating a resolution and, if a resolution is not reached, to binding arbitration with Greg Lindstrom.

66.     Each Settling Party acknowledges that he, she or it has been and is being fully advised by competent legal counsel of such Settling Party's own choice and fully understands the terms and conditions of this Settlement Agreement, and the meaning and import thereof, and that such Settling Party's execution of this Settlement Agreement is with the advice of such Settling Party's counsel and of such Settling Party's own free will. Each Settling Party represents and warrants that it has sufficient information regarding the transaction and the other parties to reach an informed decision and has, independently and without relying upon the other parties, and based on such information as it has deemed appropriate, made its own decision to enter into this Settlement Agreement and was not fraudulently or otherwise wrongfully induced to enter into this Settlement Agreement.

67.     Each of the undersigned attorneys represents that he or she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement.

Date: 5th Day of February, 2025

ON BEHALF OF SIBCY CLINE, INC.

Hogan Lovells US LLP

ON BEHALF OF CO-LEAD COUNSEL

Hagens Berman Sobol Shapiro LLP