# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>     Defendants. | Civil Action No. 4:23-cv-00788-SRB<br><br>[Consolidated with 4:23-cv-00945-SRB]<br><br>Hon. Stephen R. Bough<br><br>JURY TRIAL DEMANDED |
| JEREMY KEEL, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, RHONDA BURNETT, DON GIBSON, LAUREN CRISS, JOHN MEINERS, DANIEL UMPA, CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, and JANE RUH, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>HOUSE OF SEVEN GABLES REAL ESTATE, INC., WASHINGTON FINE PROPERTIES, LLC; SIDE, INC.; SIGNATURE PROPERTIES OF HUNTINGTON, LLC; J.P. PICCININI REAL ESTATE SERVICES, LLC; JPAR FRANCHISING, LLC; CAIRN REAL ESTATE HOLDINGS, LLC; CAIRN JPAR HOLDINGS, LLC; YOUR CASTLE REAL ESTATE, LLC; BROOKLYN NEW YORK MULTIPLE LISTING SERVICE, INC.; CENTRAL NEW YORK INFORMATION SERVICE, INC.; FIRST TEAM REAL ESTATE - ORANGE COUNTY; SIBCY CLINE, INC.,<br><br>     Defendants. | Case No. 4:25-cv-00055-SRB |

## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND SUGGESTIONS IN SUPPORT THEREOF

i

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

I.    CLASS COUNSEL PERFORMED EXTRAORDINARY WORK AND ASSUMED SIGNIFICANT RISK ON A CONTINGENT BASIS ON BEHALF OF THE SETTLEMENT CLASS TO OBTAIN THE SETTLEMENTS. ....................................... 3

ARGUMENT ......................................................................................................................... 4

I.    THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE FACTS AND CIRCUMSTANCES PRESENTED HERE. ........................................................... 4

    A.    This Court has already determined that one-third of the overall monetary settlements is appropriate. ...................................................................................... 5

    B.    Contingent Fees Are Awarded Using the Percentage-of-the-Fund Approach. ....... 5

    C.    A Fee Equal to One-Third of the Fund is Reasonable. ........................................... 6

        1.    Class Counsel worked on a contingent basis, despite the numerous risks and time commitments. (Factors 1, 4, 6-7 and 10) ................................................. 7

        2.    The claims were difficult to prosecute. (Factor 2) ........................................... 9

        3.    Class Counsel's reputation and skillful resolution of the Litigation supports the award. (Factors 3 and 9) ................................................................................. 10

        4.    The percentage requested is supported by other awards under the facts and circumstances of this Litigation. (Factors 5 and 12) ...................................... 11

        5.    The amount involved and results obtained for the Settlement Class given the risks of the Litigation support the percentage requested. (Factor 8) .............. 12

    D.    The Requested Fee Is Reasonable Under a Lodestar Crosscheck. ....................... 13

II.    THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES. ........................... 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) .......................... 12

*Barfield v. Sho-Me Power Elec. Co-op.*, 2015 WL 3460346 (W.D. Mo. June 1, 2015) ............... 5

*Been v. O.K. Industries, Inc.*, 2011 WL 4478766 (E.D. Okla. Aug. 16, 2011) ............................ 9

*Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017) ........................................... 9

*Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823 (8th Cir. 1983) ......... 7

*Huyer v. Buckley*, 849 F.3d 395 (8th Cir. 2017) ........................................... 6, 7, 11, 14

*In re Automotive Parts Antitrust Litig.*, 2020 WL 5653257,n.5 (E.D. Mich. Sept. 23, 2020) ...... 13

*In re Capacitors Antitrust Litig.*, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ...................... 13

*In re Charter Commc'ns, Inc.,* MDL No. 1506 All Cases, No. 02-CV-1186, 2005 WL 4045741
(E.D. Mo. June 30, 2005) ......................................................... 10, 13, 14

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020)
.................................................................................................................... 9

*In re Flonase Antitrust Litig.*, 291 F.R.D. 93 (E.D. Pa. 2013) .................................................. 10

*In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056 (D.S.D. 2004) .................................................. 10

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1996) .................................. 14

*In re Peanut Farmers Antitrust Litig.*, 2021 WL 9494033 (E.D. Va. Aug. 10, 2021) ....... 9, 10, 11

*In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813 (D. Kan. Mar. 20, 2019) ............... 14

*In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968 (8th Cir. 2018) ............ 7

*In re T-Mobile Customer Data Security Breach Lit.*, 2024 WL 3561874 ............................ 13, 14

*In re U.S. Bancorp Litig.*, 291 F.3d 1035 (8th Cir. 2002) ................................................... 6

*In re Urethane Antitrust Litig.*, 2016 WL 4060156 (D. Kan. July 29, 2016) ........................ 10, 11

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................................................................................Passim

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)....................................7

*Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241 (8th Cir. 1996) ..................................5

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ................................................ 13

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140 (8th Cir. 1999) ..........................................5

*PHT Holdings II, LLC v. N. Am. Co. Life & Health Ins.*, 2023 WL 8522980 (S.D. Iowa Nov. 30, 2023)............................................................................................................... 13

*Rawa v. Monsanto Co.*, 934 F.3d 862 (8th Cir. 2019).................................... 5, 6, 13, 14

*Rogowski v. State Farm Life Ins. Co.*, 2023 WL 5125113 (W.D. Mo. April 18, 2023)................. 6

*Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848 (S.D. Iowa 2020)..........................................7

*Tussey v. ABB, Inc.*, 2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) .................................. 7, 8, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96 (2d Cir. 2005) .........................................6

*West v. PSS World Med., Inc.*, 2014 WL 1648741 (E.D. Mo. Apr. 24, 2014) .............................5

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010).................... 6, 7, 8, 14

**Other Authorities**

Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.) .................................................................... 15

*Court Awarded Attorneys Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (3rd Cir. 1985) .........................................................................................................................5

## INTRODUCTION

After years of hard-fought litigation in multiple lawsuits, Plaintiffs have achieved proposed nationwide settlements now totaling at least $1.0377 billion in monetary relief, in addition to significant practice change relief. These include settlements with all *Burnett* defendants, 16 *Gibson* Defendants, and all 9 *Keel* defendants.

Through this motion, Plaintiffs seek as attorneys' fees one-third of the $11.465 million recovered under the Settlements in *Keel* and the $8.625 million recovered under the Settlements in *Gibson*, plus and recovery of certain case expenses.[1] Plaintiffs' final approval motion for these Settlements will be heard on June 24, 2025. As with the other settlements that Plaintiffs have obtained, the additional $20.9 million created by these settlements is non-reversionary. To achieve this result, Class Counsel worked for more than six years to file and prosecute multiple lawsuits pending in different jurisdictions: *Moehrl*, *Burnett*, *Umpa*, *Gibson*, and *Keel* ("the litigation"). Class Counsel faced substantial risk representing the Settlement Class. They worked on a fully contingent basis, investing over 117,000 hours of labor through February 28, 2025 and advancing over $17 million in out-of-pocket costs without any guarantee of success. They did so despite this litigation having no pre-ordained path to a recovery. Indeed, Class Counsel faced off against well-funded and entrenched opponents represented by over *forty* of the most high-profile defense firms in the country.

Class Counsel are a diverse group of well-respected antitrust, complex litigation, and trial lawyers who spearheaded the litigation. In doing so, Class Counsel were not able to rely on any governmental prosecutions or on preexisting litigation by other private attorneys. These

---

[1] The six *Gibson* settlements are: Keyes and Illustrated ($2.4 million); NextHome ($600,000); John L. Scott ($1 million); LoKation ($925,000); Real Estate One ($1.5 million); and Baird & Warner ($2.2 million). The nine *Keel* settlements are: Side ($5.5 million); Seven Gables ($1 million); WFP ($1.3 million); JPAR ($700,000): Signature ($850,000); First Team ($1 million); Sibcy Cline ($895,000); Brooklyn MLS ($95,000); and CNYIS ($125,000). This brief will be filed in *Keel* and in *Gibson*.

Settlements are the independent product of their wholly contingent, risky, costly, and time-intensive work seeking a recovery against Defendants, not the work of anyone else.

This Circuit's precedent applied to the facts here supports Class Counsel's requests for attorneys' fees representing one-third of the settlement fund and for reimbursement of case expenses. In the Eighth Circuit, a fee based on a percentage of the fund recovered is the favored approach for calculating attorneys' fees in contingent representation, including class actions. The percentage-of-the-fund approach aligns Class Counsel's interests with those of the class because the greater the recovery the Class obtains, the greater the fee to which Class Counsel is entitled. It incentivizes counsel to continue pursuing additional claims beneficial to the class even where, as here, counsel have already obtained substantial recoveries for the class. And it also avoids disincentivizing early settlements or continued work that may benefit the class.

For these reasons, Class Counsel respectfully request that the Court approve a fee of one-third of the Settlement Fund as well as reimbursement of current expenses in the amount of $17,198,877.73 that have not already been reimbursed in prior settlements.

## FACTUAL BACKGROUND

A background of the litigation and Settlements is well-known to the Court and can be found in Plaintiffs' various motions for settlement approval (e.g., *Keel* Docs. 2, 22; *Burnett* Doc. 1192, 1371, 1458, 1469, 1478; *Gibson* Docs. 161, 294, 303, 399, 521, 531, 655). The Settlements are non-reversionary meaning the entire amount is for the benefit of the class and upon approval no amount will revert to the Settling Defendants regardless of the claims' submitted. Moreover, the Settlements include substantial practice change relief aimed at ending the Defendants' support for the challenged restraints, including their enforcement of the Mandatory Offer of Compensation Rule. To achieve these results for the Class, Class Counsel performed more than 117,000 hours of

work through February 28, 2025 across all four of their cases and invested over $17 million of their own money. Counsel continue to work on behalf of the Class even after these settlements.

## I. CLASS COUNSEL PERFORMED EXTRAORDINARY WORK AND ASSUMED SIGNIFICANT RISK ON A CONTINGENT BASIS ON BEHALF OF THE SETTLEMENT CLASS TO OBTAIN THE SETTLEMENTS.

Plaintiffs allege that the National Association of Realtors and other entities agreed to engage in anticompetitive conduct that inflated broker commissions, including by following and enforcing the Mandatory Offer of Compensation Rule and associated restraints promulgated by NAR and its members.[2] To date, Defendants in *Gibson*, *Umpa*, *Moehrl*, *Burnett* and *Keel* have been represented by more than forty defense firms – including many of the most highly-regarded firms in the world. Dirks Dec. at ¶ 13. These firms have extensively litigated in several of the cases, filing jurisdictional challenges, motions to compel arbitration, motions to dismiss, *Daubert* motions, challenges to class certification, summary judgment motions, several appeals, and—in the case of Keller Williams, NAR and HomeServices—even a jury trial. *Id.* at ¶¶ 14, 20.

Moreover, in undertaking this substantial commitment on behalf of the Settlement Class, Class Counsel assumed significant risk. There was no roadmap of previous cases or settlements filed by other counsel, and no assistance from governmental entities or regulators through parallel litigation. *Id.* at ¶ 17. Despite the odds, Class Counsel achieved tremendous success. They obtained favorable rulings on key issues including on class certification, summary judgment, and *Daubert*. *Id.* at ¶¶ 14, 20. Class counsel engaged in over six years of briefing, reviewing a universe of millions of pages of documents, retention of at least 20 experts and consultants, and approximately

---

[2] *See generally* Declaration of Eric L. Dirks ("Dirks Decl.") for an overview of the procedural history and efforts to reach the Settlements. Attached as Ex. 1. Also attached are the declarations of Michael S. Ketchmark (Ex. 2), Brandon J.B. Boulware (Ex. 3), Steve W. Berman (Ex. 4), Marc M. Seltzer (Ex. 5), Robert A. Braun (Ex. 6), Jeffrey Campisi (Ex. 7); Julie Pettit (Ex. 8); and Michael Hurst (Ex. 9). These declarations cover many of the same topics set out in the Dirks Decl. as well as each firm's individual lodestar and expense amounts.

3

180 depositions to achieve this result. *Id.* at ¶ 15-16. Reflecting these efforts, *Burnett*, *Moehrl*, *Umpa, Gibson* and *Keel* have over 2,900 docket entries as of the date of this filing.

Moreover, Plaintiffs' Counsel did not stop with their trial victory in *Burnett*. They worked to maximize the recovery for the Class by filing the *Gibson*, *Umpa*, and *Keel* complaints against additional Defendants. The *Moehrl* and *Burnett* actions originally included claims against five defendant families on behalf of home sellers who listed their properties for sale on 24 covered MLSs. The *Gibson* case advances similar claims against additional Defendants on behalf of a nationwide class of home sellers.[3] The *Keel* case involves nine Defendants with whom Plaintiffs settled outside of the *Burnett* and *Gibson* litigation. The current *Gibson* settlements before the Court involve six *Gibson* defendants. The six law firms appointed Co-Lead Class Counsel in *Moehrl* and *Burnett* also represent Plaintiffs and the putative class in the consolidated *Gibson* action. These Co-Lead Class Counsel were assisted by additional counsel in achieving the settlements in *Keel*.

With their successful track record, Class Counsel bring substantial knowledge and expertise to the *Keel* and *Gibson* actions. Plaintiffs and their counsel worked diligently to advance the litigation. Prior to filing these actions, class counsel undertook significant research regarding the Settling Defendants, their participation in NAR, their enforcement of the Mandatory Offer of Compensation Rule, and their market share and presence.

## **ARGUMENT**

**I.      THE REQUESTED ATTORNEYS' FEES ARE REASONABLE UNDER THE FACTS AND CIRCUMSTANCES PRESENTED HERE.**

---

[3] The cases were originally filed as two related actions, *Gibson, et al. v. NAR, et al.*, Case No. 4:23-CV-788-SRB ("*Gibson*") on October 31, 2023, and *Umpa v. NAR, et al.*, Case No. 4:23-CV-945-SRB ("*Umpa*") on December 27, 2023. On April 23, 2024, the Court granted Plaintiffs' motion to consolidate the *Gibson* and *Umpa* matters and to file a consolidated class action complaint under the *Gibson* caption. *Gibson* Docs. 145–146; *Umpa* Docs. 245–246.

4

Under well-established Eighth Circuit law, a fee equal to one-third of the Settlement Fund should be approved.

### A. This Court has already determined that one-third of the overall monetary settlements is appropriate.

The Court previously awarded one-third of the fund as attorneys' fees in the three previous rounds of Settlements in the litigation, most recently in *Burnett*. *See* Doc. 1622, at 77-86. *See also Burnett* Doc. 1487 (granting final approval of first three *Burnett* settlements and awarding fees of one-third of the fund); *Gibson* Doc. 530 (granting final approval of first nine settlements and awarding one-third of the fund as attorneys' fees).

### B. Contingent Fees Are Awarded Using the Percentage-of-the-Fund Approach.

Courts typically use the "percentage-of-the-fund method" to award attorneys' fees from a common fund. *See, e.g.*, *Rawa v. Monsanto Co.*, 934 F.3d 862, 870 (8th Cir. 2019). "In the Eighth Circuit, use of a percentage method of awarding attorney fees in a common-fund case is not only approved, but also 'well established,'" *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005) (quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999)), and even "preferable." *Barfield v. Sho-Me Power Elec. Co-op.*, No. 11-CV-4321, 2015 WL 3460346, at *3 (W.D. Mo. June 1, 2015) (quoting *West v. PSS World Med., Inc.*, No. 13-CV-574, 2014 WL 1648741, at *1 (E.D. Mo. Apr. 24, 2014)). The percentage method aligns the interests of the attorneys and the class members by incentivizing counsel to maximize the class's recovery. *See Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 245 (8th Cir. 1996) ("[T]he Task Force [established by the Third Circuit] recommended that the percentage of the benefit method be employed in common fund situations.") (citing *Court Awarded Attorneys Fees,*

*Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255 (3rd Cir. 1985)).[4] The Court should therefore use the percentage approach to award fees in this case.

### C. A Fee Equal to One-Third of the Fund is Reasonable.

This Court and other courts within the Eighth Circuit confirm that one-third of the common fund is an appropriate amount for class counsels' fees in complex class actions, including antitrust litigation. Eighth Circuit and Missouri courts "have frequently awarded attorney fees between twenty-five and thirty-six percent of a common fund in other class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (quoting *In re Xcel*, 364 F. Supp. 2d at 998); *see also Rawa*, 934 F.3d at 870 ("courts have frequently awarded attorneys' fees ranging up to 36% in class actions") (quoting *Huyer*, 849 F.3d at 399; *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (holding fee award of 33% reasonable); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *In re Xcel*, 364 F. Supp. 2d at 998 (collecting cases demonstrating that district courts routinely approve fee awards between 25% and 36%).

In addition to this Court's previous ruling in the real estate commission cases, this District has also approved one-third of the fund in a settlement valued at $325 million. *See Rogowski v. State Farm Life Ins. Co.*, No. 22-CV-203, 2023 WL 5125113, *4-5 (W.D. Mo. April 18, 2023). Thus, judges in the Western District of Missouri and the Eighth Circuit often apply the one-third-of-the-fund fee calculation, even to large settlements.

---

[4] In contrast, undue focus on hours or hourly rates "creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours, and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (cleaned up).

In doing so, courts typically consider some or all of the relevant factors listed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). *See In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 977 (8th Cir. 2018). The *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*In re Target,* 892 F.3d at 977 n.7. To be sure, "[m]any of the *Johnson* factors are related to one another and lend themselves to being analyzed in tandem." *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 886 (S.D. Iowa 2020). Therefore, courts in the Eighth Circuit often focus on the most relevant *Johnson* factors in evaluating fee requests. *See Huyer*, 849 F.3d at 398–400 (affirming trial court's award of one-third of the common fund after review of Johnson factors 1-5 only); *In re Xcel*, 364 F. Supp. 2d at 993; *Tussey v. ABB, Inc.*, No. 06-CV-4305, 2019 WL 3859763, at *2 (W.D. Mo. Aug. 16, 2019); *Yarrington*, 697 F. Supp. 2d at 1062; *Hardman v. Bd. of Educ. of Dollarway, Arkansas Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983). The *Johnson* factors favor Plaintiffs request here. *See, e.g.,* Declaration of Professor Robert H. Klonoff ("Klonoff Decl."), Exhibit 10 at ¶¶ 26, 36, 41.

### 1. Class Counsel worked on a contingent basis, despite the numerous risks and time commitments. (Factors 1, 4, 6-7 and 10)

Here, Class Counsel's time and labor invested was substantial and necessarily precluded other work. Dirks Decl. at ¶¶ 17-18. Prosecuting the Litigation required over $101 million in lodestar through February 28, 2025. Dirks Decl. at ¶ 42. In addition to the substantial number of hours it took to reach the Settlements, Class Counsel were also required to expend over $17 million of their own money toward litigation expenses through February 28, 2025, with more bills coming

due every day. Dirks Decl. at ¶ 47. That work, which precluded other less-risky employment, was the result of Class Counsels' efforts undertaken without any guarantee of payment. Moreover, the real estate commission litigation faced low odds of early settlements because it challenged practices that were central to the real estate brokerage industry. *See, e.g., How the $1.8 Billion Real-Estate Commissions Lawsuit Came to Be*, Wall Street Journal, November 26, 2023 ("Antitrust cases almost always settle before trial, giving attorneys some assurance they will get paid something. But in this case, the damages were so high and the threat to the industry so existential that plaintiff attorneys thought it unlikely NAR would settle."). Indeed, from the outset, NAR took the position that the cases were "baseless." *See, e.g., Realtor Group Moves to Dismiss Class Action Lawsuit Alleging Collusion,* Forbes, May 21, 2019 ("According to John Smaby, president of NAR, all three claims have no merit. 'In today's complex real estate environment, REALTORS and Multiple Listing Services promote a pro-consumer, pro-competitive market for home buyers and sellers, contrary to the baseless claims of these class action attorneys,' he said. 'Our filing today shows the lawsuit is wrong on the facts, wrong on the economics and wrong on the law.'").

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorney fees." *Yarrington*, 697 F. Supp. 2d at 1062 (quoting *In re Xcel*, 364 F. Supp. 2d at 994); Theodore Eisenberg & Geoffrey Miller, *Attorney Fees In Class Action Settlements: An Empirical Study*, 1 J. Emp. L. Studies 27, 27, 38 (2004) ("Fees are also correlated with risk: the presence of high risk is associated with a higher fee, while low-risk cases generate lower fees . . . . [This] is widely accepted in the literature."). "Unless that risk is compensated with a commensurate award, no firm, no matter how large or well-financed, will have the incentive to consider pursuing a case such as this." *Tussey*, 2019 WL 3859763, at *3. "Courts agree that a larger fee is appropriate

in contingent matters where payment depends on the attorney's success." *Been v. O.K. Industries, Inc.*, No. 02-CV-285, 2011 WL 4478766, at *9 (E.D. Okla. Aug. 16, 2011). And critically, "[t]he risks plaintiffs' counsel faced must be assessed as they existed in the morning of the action, not in light of the settlement ultimately achieved at the end of the day." *In re Xcel*, 364 F. Supp. 2d at 994.

This was the riskiest litigation at least some of Class Counsel have ever prosecuted, due both to the possibility of no recovery and the investment of time and money required to pursue the litigation and reach settlements or other judgment against entrenched defendants. Dirks Decl. at ¶ 22; *generally* Exhibits 1-6; *see also Caligiuri v. Symantec Corp.*, 855 F.3d 860, 866 (8th Cir. 2017) (affirming fee award where lower court reasoned, in part, that "[p]laintiffs' counsel, in taking this case on a contingent fee basis, was exposed to significant risk"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 17-md-2800, 2020 WL 256132, at *33 (N.D. Ga. Mar. 17, 2020) ("This action was prosecuted on a contingent basis and thus a larger fee is justified."). And that risk continued to grow throughout the years of litigation through trial, with every hour of work and every dollar of expenses compounding the risk to Class Counsels' investment. Dirks Decl. at ¶ 22. The riskiness of the cases is also confirmed by dearth of similar cases filed by other attorneys until after the *Burnett* trial verdict and the decision by attorneys in the few cases that were filed to "slow-track" them (avoiding a significant investment) pending the outcome of the Class Counsel's Litigation. In sum, "the extraordinary level of work and result achieved here in the face of enormous risk warrants a substantial fee percentage." Klonoff Decl. at ¶ 89.

### 2. The claims were difficult to prosecute. (Factor 2)

Because antitrust claims are especially complex, expensive, and difficult to prosecute, courts have recognized that attorneys' fee awards equal to one-third of the fund are often appropriate in antitrust suits. *See In re Peanut Farmers Antitrust Litig.*, No. 19-CV-00463, 2021

WL 9494033, at *6 (E.D. Va. Aug. 10, 2021) ("[A]n award of one-third is also common in antitrust class actions.") (citing cases);[5] *In re Urethane Antitrust Litig.*, No. 04-CV-1616, 2016 WL 4060156, at *5 (D. Kan. July 29, 2016) (awarding one-third of $835 million settlement, noting "a one-third fee is customary"); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 100, 106 (E.D. Pa. 2013) (awarding one-third of the settlement fund as attorneys' fees in which court relied upon the fact that class counsel had litigated a number of hotly contested *Daubert* challenges). *See also* Klonoff Decl. at ¶¶ 43.

Here it is undeniable that the antitrust claims at issue in the real estate commission litigation were challenging to prosecute. As the Court saw, no stone has been left unturned by numerous Defendants and challenges have been made at every stage (*i.e.* motions to dismiss, motions for summary judgment, *Daubert* motions, class certification, efforts to appeal from class certification orders, appeals on arbitration issues, and trial). *See* Dirks Decl. at ¶¶ 14, 20. The cases also required extensive discovery, including well over 100 depositions, the production and review of millions of pages of documents, and dozens of expert reports.

### 3. Class Counsel's reputation and skillful resolution of the Litigation supports the award. (Factors 3 and 9)

Courts often judge class counsel's skill against the "quality and vigor of opposing counsel . . . ." *In re Charter Commc'ns, Inc.*, MDL No. 1506 All Cases, No. 02-CV-1186, 2005 WL 4045741, at *29 (E.D. Mo. June 30, 2005) (citing *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004)).

Here, Class Counsel faced off against no fewer than *forty* highly-respected law firms over the course of the litigation. Dirks Decl. at ¶ 13. Although Class Counsel's team includes some of

---

[5] And observing that "[o]ther courts have determined that a higher percentage rate is appropriate where discovery has been completed and the case is ready for trial." *Id.*

the country's most accomplished class action and trial lawyers, Defendants also hired some of the country's most prominent defense attorneys and firms. This weighs heavily in favor of the requested award. *See* Klonoff Decl. at ¶¶ 58-60.

Class Counsel in their own right are well-known on both a national level and local level. *See generally* Exhibits 1-6. Indeed, trial counsel for the *Burnett* case was named as the Missouri Lawyer of the Year after the *Burnett* trial. *See Ketchmark named Lawyer of the Year*, Missouri Lawyers Weekly, December 7, 2023. And Class Counsel for the *Moehrl* case have been repeatedly recognized for their skill and expertise in antitrust litigation. *See, e.g., Burnett* Docs. 1392-4 (Berman Dec.) at ¶ 2; 1392-5, 1535-6 (Seltzer Decs) at ¶ 2; 1392-6 (Braun Dec.) at ¶ 2.

### 4. The percentage requested is supported by other awards under the facts and circumstances of this Litigation. (Factors 5 and 12)

In the Eighth Circuit, courts have "frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer*, 849 F.3d at 399.[6]  Courts have recognized that prosecution of antitrust claims should often result in a one-third-of-the-fund fee award. *See In re Peanut Farmers*, 2021 WL 9494033, at *6 ("[A]n award of one-third is also common in antitrust class actions.") (citing cases); *In re Urethane*, 2016 WL 4060156, at *5 (awarding one-third of $835 million antitrust settlement, noting "a one-third fee is customary").

Moreover, the requested one-third fee award is equal to or less than what the actual named plaintiffs—those with the most on the line and most involved in the case—agreed to at the outset of the first-filed real estate commission cases. The class representatives agreed to maximum fees between 33.3% and 35%. Dirks Decl. at ¶ 28; Berman Dec. at ¶ 10.

These factors also support Plaintiffs' request. Klonoff Decl. at ¶¶ 62-64, 79-80.

---

[6] *See also supra* pp. 6-7.

**5. The amount involved and results obtained for the Settlement Class given the risks of the Litigation support the percentage requested. (Factor 8)**

Here, the Fund is pure cash and non-reversionary; so, the Settlements, plus interest earned until distribution, requires no further valuation. In requesting a fee as a percentage of the Fund, Class Counsel necessarily seeks a fee proportionate to the degree of monetary success obtained.

Equally important, the Settlements include significant injunctive relief that requires the Settling Defendants, among other things, to train their agents that commissions are negotiable, and that there is no requirement to make offers of compensation to buyer brokers. *See also National Association of Realtors Verdict Will Send "Shock Waves" Through the Industry*, The Wall Street Journal, November 1, 2023 ("There is no question that Tuesday's nearly $1.8 billion verdict against the National Association of Realtors and brokerage firms is going to send shock waves through the industry. Commissions have stayed pretty stable at about 5% to 6% of the sales price for decades now, despite major technological upheaval in the industry. We may finally start to see those costs for home buyers and sellers go down quite a bit."); *Examining Some of the Big Changes Coming to Real Estate Commissions*, National Public Radio, August 16, 2024 ("Over time, home buyers and sellers are expected to save tens of billions of dollars a year in lower commissions"). The value of this non-monetary relief to consumers is substantial in itself and provides additional justification for the requested fee. *See* Klonoff Decl. at ¶¶ 97-99.

This factor supports a contingency percentage of one-third, particularly given the benefits achieved. Importantly, success—including "exceptional success"—is not measured solely by the maximum damages alleged but must be evaluated against any "unusually difficult or risky circumstances and the size of plaintiffs' recovery." *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204–05 (S.D. Fla. 2006). Here, the request is supported by both the size of the recovery and the results obtained as compared to the risk of a lesser recovery or none at all. And

rather than stop at the *Burnett* and *Moehrl* defendants, Class Counsel continued to prosecute these joint and several liability claims against additional Defendants in *Gibson*, *Umpa* and *Keel*. Thus, these and any future settlements or judgments will also benefit the Class.

### D. The Requested Fee Is Reasonable Under a Lodestar Crosscheck.

Although a lodestar crosscheck is "not required" in the Eighth Circuit, *Keil v. Lopez*, 862 F.3d 685, 701 (8th Cir. 2017); *PHT Holdings II, LLC v. N. Am. Co. Life & Health Ins.*, 2023 WL 8522980, at *7 (S.D. Iowa Nov. 30, 2023)[7]—performing such a crosscheck here confirms that the requested fee is reasonable and should be approved. As noted above, Class Counsel have spent over 117,000 hours through February 28, 2025 in *Gibson*, *Umpa*, *Burnett*, *Moehrl,* and *Keel*. These hours result in an overall lodestar through February 28, 2025 of **$101,540,907**. Dirks Decl. at ¶ 42.

In performing a lodestar crosscheck in litigation involving multiple settlements and multiple cases, the appropriate method is to consider the "holistic approach." *See* Klonoff Decl. at ¶¶ 105-10; *see also In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *6 (N.D. Cal. Sept. 21, 2018) ("courts typically base fee awards in subsequent settlements on all work performed in the case," based on the reality—applicable here—that "the total work performed by counsel from inception of the case makes each settlement possible."); *In re Automotive Parts Antitrust Litig.*, 2020 WL 5653257, at *3 n.5 (E.D. Mich. Sept. 23, 2020) ("In calculating the lodestar for purposes of the cross-check, it would be impractical to compartmentalize and isolate the work that . . . Class Counsel did in any particular case at any particular time because all of their work assisted in

---

[7] "'[T]o overly emphasize the amount of hours spent on a contingency fee case would penalize counsel for obtaining an early settlement and would distort the value of the attorneys' services.'" *Rawa*, 934 F.3d at 870 (quoting *In re Charter Commc'ns*, 2005 WL 4045741, at *18). *Cf. In re T-Mobile Customer Data Security Breach Lit.*, No. 23-2744, 2024 WL 3561874, at *7 (8th Cir. July 29, 2024 (observing a crosscheck is not required but can be warranted "when a megafund case settles quickly").

achieving all of the settlements and has provided and will continue to provide a significant benefit to all of the . . . classes.").

The Court previously approved a fee of one-third of the *Burnett* settlements as well as the first nine *Gibson* settlements. When those prior settlements are added to the present settlements, the total monetary settlement value is $1.037778 billion. One-third of this combined amount is approximately $345.926 million. Thus, the combined fee request constitutes a 3.41 multiplier on their time. Such a multiplier is well within the range of reasonableness. *See* Klonoff Dec. at ¶¶ 31, 36, 116, 119-122; *Rawa*, 934 F.3d at 870 (observing a lodestar multiplier of 5.3 is within the bounds of reasonableness); *Huyer v. Buckley*, 849 F.3d 395, 399–400 (8th Cir. 2017) (observing lodestar multipliers of up to 5.6 times class counsel's lodestar to be in the reasonable range for a lodestar crosscheck); *In re T-Mobile Customer Data Security Breach Litig.*, No. 23-2744, 2024 WL 3561874, at *6 (8th Cir. July 29, 2024) (observing that in a case that settled early in the litigation, a multiplier of 5.3 is on the "high" side of reasonableness) (citing *Rawa*, 934 F.3d at 870)); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-cv-1186-CAS, 2005 WL 4045741, at *18 (E.D. Mo. Jun. 30, 2005) (finding 5.61 lodestar multiplier reasonable); *In re Syngenta AG MIR 162 Corn Litig.*, 2019 WL 1274813, at *5 (D. Kan. Mar. 20, 2019) ("a multiplier of 3 is well within the range allowed in other cases involving large settlements"). Thus, under this Court's and the Eighth Circuit's standards, Plaintiffs' request of fees of one-third of the fund is reasonable.

## II. THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF REASONABLY INCURRED EXPENSES.

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *Yarrington*, 697 F. Supp. 2d at 1067 (quoting *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996)). Under the Settlements, Class Counsel are entitled to

recover their expenses. The costs and expenses through February 28, 2025 were reasonable and necessary in order to reach these Settlements. Dirks Decl. ¶¶ 47-48; *see also* Exhibits 2-6. The total costs associated with the Litigation through February 28, 2025 is $17,198,877.73. Of this, $16,528,352.83 was already awarded by the Court in conjunction with prior settlement approvals. As a result, Plaintiffs are requesting reimbursement of the $670,524.90 additional expenses that have not already been awarded.

The largest components of these costs is for experts, ESI document search and productions costs, mediations, and online research. *See Tussey*, 2019 WL 3859763, at *5 ("Reimbursable expenses include many litigation expenses beyond those narrowly defined 'costs' recoverable from an opposing party under Rule 54(d), and includes: expert fees; travel; long-distance and conference telephone; postage; delivery services; and computerized legal research.") (*citing* Alba Conte, 1 Attorney Fee Awards § 2:19 (3d ed.))). All of the expenses submitted were reasonable and necessary expenses in such a large litigation. The Court should thus approve Class Counsel's expense reimbursement request to the extent the costs have not been awarded under prior settlements.

<u>**CONCLUSION**</u>

Class Counsel respectfully request that the Court approve the requested fee of one-third of the Settlement Fund and reimbursement of current expenses that have not already been reimbursed in prior settlements.

Dated: March 26, 2025                    Respectfully submitted by,

**HAGENS BERMAN SOBOL SHAPIRO LLP**                    **WILLIAMS DIRKS DAMERON LLC**

                                                            */s/ Eric L. Dirks*
*/s/ Steve W. Berman*                    Eric L. Dirks MO # 54921
Steve W. Berman (*pro hac vice*)         1100 Main Street, Suite 2600

15

steve@hbsslaw.com
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292

Rio S. Pierce (*pro hac vice*)
riop@hbsslaw.com
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000

Jeannie Evans (*pro hac vice*)
Nathan Emmons (Mo. Bar. No. 70046)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
jeannie@hbsslaw.com
nathane@hbsslaw.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**

Benjamin D. Brown (*pro hac vice*)
Robert A. Braun (*pro hac vice*)
Sabrina Merold (*pro hac vice*) 1100 New York Ave. NW, Suit 800
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (617) 858-1990
dsilverman@cohenmilstein.com

Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
dirks@williamsdirks.com

**BOULWARE LAW LLC**

Brandon J.B. Boulware MO # 54150
Jeremy M. Suhr MO # 60075
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele: (816) 492-2826
Fax: (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

**KETCHMARK AND MCCREIGHT P.C.**

Michael Ketchmark MO # 41018
Scott McCreight MO # 44002 11161
Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele: (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

***Attorneys for Plaintiffs and the Class***

**SUSMAN GODFREY L.L.P.**

Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

*Attorneys for Plaintiffs and the Class*

**THE PETTIT LAW FIRM**
Julie Pettit (*pro hac vice forthcoming*)
jpettit@pettitfirm.com
1900 N. Pearl, Suite 1740
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

**LYNN PINKER HURST & SCHWEGMANN, LLP**
Michael K. Hurst (*pro hac vice forthcoming*)
mhurst@lynnllp.com
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice forthcoming*)

800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com

***Additional Class Counsel***