# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>THE NATIONAL ASSOCIATION OF REALTORS, et al.,<br><br>                    Defendants. | Civil Action No. 4:23-cv-00788-SRB<br><br>[Consolidated with 4:23-cv-00945-SRB]<br><br>Hon. Stephen R. Bough<br><br>JURY TRIAL DEMANDED |
| JEREMY KEEL, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, RHONDA BURNETT, DON GIBSON, LAUREN CRISS, JOHN MEINERS, DANIEL UMPA, CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, and JANE RUH, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>    v.<br><br>HOUSE OF SEVEN GABLES REAL ESTATE, INC., WASHINGTON FINE PROPERTIES, LLC; SIDE, INC.; SIGNATURE PROPERTIES OF HUNTINGTON, LLC; J.P. PICCININI REAL ESTATE SERVICES, LLC; JPAR FRANCHISING, LLC; CAIRN REAL ESTATE HOLDINGS, LLC; CAIRN JPAR HOLDINGS, LLC; YOUR CASTLE REAL ESTATE, LLC; BROOKLYN NEW YORK MULTIPLE LISTING SERVICE, INC.; CENTRAL NEW YORK INFORMATION SERVICE, INC.; FIRST TEAM REAL ESTATE - ORANGE COUNTY; SIBCY CLINE, INC.,<br><br>                    Defendants. | Case No. 4:25-cv-00055-SRB |

**PLAINTIFFS' MOTION FOR FINAL SETTLEMENT APPROVAL WITH KEYES, ILLUSTRATED, NEXTHOME, JOHN L. SCOTT, LOKATION, REAL ESTATE ONE, BAIRD & WARNER, SIDE, SEVEN GABLES, WFP, JPAR, SIGNATURE, FIRST TEAM, SIBCY CLINE, BROOKLYN MLS, AND CNYIS DEFENDANT FAMILIES AND SUGGESTIONS IN SUPPORT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................... 1

II.   BACKGROUND AND SETTLEMENT TERMS ................................................ 2

    A.    The Litigation ............................................................................................... 2

    B.    Settlement Negotiations .............................................................................. 4

    C.    Summary of Settlement Agreements ......................................................... 4

        1.    Settlement Class .............................................................................. 4

        2.    Settlement Amounts ........................................................................ 5

        3.    Practice Changes ............................................................................. 6

        4.    Release of Claims Against Settling Defendants ........................... 7

    D.    Application for Award of Attorneys' Fees and Costs ............................. 8

III.  NOTICE WAS EFFECTIVELY DISSEMINATED TO THE SETTLEMENT CLASS . 8

IV.   THE REACTION OF THE MEMBERS OF THE SETTLEMENT CLASS TO THE SETTLEMENTS HAS BEEN OVERWHELMINGLY POSITIVE ............................... 9

V.    LEGAL STANDARDS AND SETTLEMENT APPROVAL ......................... 10

    A.    The standard for reviewing a proposed settlement of a class action .................. 11

    B.    The Settlements satisfy each of the Rule 23(e)(2) factors ................... 12

    C.    The *Van Horn* Factors also support approval ..................................... 15

        1.    The Merits of the Plaintiffs' Cases, Weighed Against the Terms of the Settlement ..................................................................................... 15

        2.    The Settling Defendants' Financial Condition ......................... 15

        3.    The Complexity and Expense of Further Litigation ................ 16

    D.    The Amount of Opposition to the Settlements ....................................... 17

VI.   THE COURT SHOULD CONSIDER AND OVERRULE THE OBJECTION ............. 18

    A.    Overview and Legal Standard .................................................................. 18

VII.  CLASS CERTIFICATION REMAINS APPROPRIATE ............................. 21

VIII. THE COURT SHOULD CERTIFY ITS ORDER AS FINAL ...................... 22

IX.   CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Travelex Insurance Servs. Inc.,* 8:18-CV-362,
  2021 WL 4307093 (D. Neb. Sept. 22, 2021) ............................................................... 12

*Bishop v. DeLaval Inc.,*
  2022 WL 18957112 (W.D. Mo. July 20, 2022) ........................................................ 17

*Burnett,*
  2022 WL 1203100 (W.D. Mo. Apr. 22, 2022) ................................................... 12, 13

*Cleveland v. Whirlpool Corp.,*
  No. 20-cv-1906, 2022 WL 2256353 (D. Minn. June 23, 2022) ............................. 12

*Cohn v. Nelson,*
  375 F. Supp. 2d 844 (E.D. Mo. 2005) ...................................................................... 11

*Davis v. Hanna Holdings, Inc.,*
  2025 WL 845918 (E.D. Pa. March 18, 2025) ........................................................... 21

*DeBoer v. Mellon Mortg. Co.,*
  64 F.3d 1171 (8th Cir. 1995) ..................................................................... 18, 19, 20

*Feder v. Electronic Data Systems, Corp.,*
  248 F. App'x 579, 580 (5th Cir. 2007) ..................................................................... 20

*Gould v. Alleco, Inc.,*
  883 F.2d 281, 284 (4th Cir. 1989) ........................................................................... 20

*Grunin v. Int'l House of Pancakes,*
  513 F.2d 114 (8th Cir. 1975) ............................................................................ 12, 16

*In re Capital One Consumer Data Sec. Breach Litig.,*
  2022 WL 18107626 (E.D. Va. Sept. 13, 2022) ........................................................ 19

*In re Cardizem CD Antitrust Litig.,*
  218 F.R.D. 508 (E.D. Mich. 2003) ........................................................................... 13

*In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions,*
  410 F. Supp. 669 (D. Minn. 1974) ........................................................................... 16

*In re Flight Transp. Corp. Sec. Litig.,*
  730 F.2d 1128 (8th Cir. 1984) .................................................................................. 16
  309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................. 17

*In re Lithium Ion Batteries Antitrust Litig.*,
 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ......................................................... 13

*In re Lorazepam & Clorazepate Antitrust Litig.*,
 205 F.R.D. 369 (D.D.C. 2002) ............................................................................ 17

*In re Polyurethane Foam Antitrust Litig.*,
 168 F. Supp. 3d 985 (N.D. Ohio 2016) ................................................................. 14

*In re Pork Antitrust Litig.*,
 2022 WL 4238416 (D. Minn. Sept. 14, 2022) ....................................................... 14

*In re Sony SXRD Rear Projection T.V. Class Action Litig.*,
 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .......................................................... 16

*In re Tex. Prison Litig.*,
 191 F.R.D. 164 (W.D. Mo. 1999) .................................................................... 17, 20

*In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*,
 716 F.3d 1057 (8th Cir. 2013) ............................................................................ 10

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
 2004 WL 3671053 (W.D. Mo. Apr. 20, 2004) .................................................. 17, 19

*In re Wireless*,
 396 F.3d 922 (8th Cir. 2005) ......................................................................... 11, 12

*Keil v. Lopez*,
 862 F.3d 685 (8th Cir. 2017) ......................................................................... 17, 19

*Leeder v. Nat'l Ass'n of Realtors*,
 601 F. Supp. 3d 301 (N.D. Ill. 2022) ..................................................................... 21

*Linney v. Cellular Alaska P'ship*,
 151 F.3d 1234 (9th Cir. 1998) ............................................................................. 19

*Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No.*,
 921 F.2d 1371 (8th Cir. 1990) ............................................................................. 10

*Marshall v. Nat'l Football League*,
 787 F.3d 502 (8th Cir. 2015) ................................................................... 10, 18, 19

*Meredith Corp. v. SESAC, LLC*,
 87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................... 16

*Moehrl*,
    2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) .................................................. 12

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140 (8th Cir. 1999) ..................................................... 10, 15

*Sanderson v. Unilever Supply Chain, Inc.*,
    2011 WL 5822413 (W.D. Mo. Nov. 16, 2011) ........................................ 10

*Swinton v. SquareTrade, Inc.*,
    454 F. Supp. 3d 848 (S.D. Iowa 2020) .............................................. 12

*Van Horn v. Trickey*,
    840 F.2d (8th Cir. 1988) ....................................................... 11, 12, 18

**Rules**

Fed. R. Civ. P. 23(c)(2)(B) ............................................................. 9

Fed. R. Civ. P. 23(e)(1)(B) ........................................................... 10

Federal Rule of Civil Procedure 23(e) ............................................ 10, 12

Federal Rule of Civil Procedure 54(b) ................................................ 22

Rule 23(e)(2) ................................................................. 11, 12, 15

Rule 23(e)(3) ......................................................................... 11

Rule 23(f) ........................................................................... 16

**Other Authorities**

4 Newberg and Rubenstein on Class Actions § 13:22 (6th ed. June 2024 Update) .................... 20

4 Newberg and Rubenstein on Class Actions § 13:35 (6th ed. June 2024 Update) .................... 18

# I.    INTRODUCTION

Plaintiffs seek final approval of proposed settlements with seven sets of Defendants in *Gibson*[1] totaling $8.625 million and nine sets of Defendants in *Keel* totaling $11.465 million.[2]

These Settlements contribute an additional $20.09 million in recovery in the overall litigation ("the litigation") that now totals at least $1.0377 billion in monetary relief. In addition to providing for a monetary recovery for the class, the Settling Defendants obligate themselves to make important changes in their practices, detailed in the settlement agreements and summarized in the briefs in support of preliminary approval. *See Gibson* Docs. 531, 655; *Keel* Doc. 2. When coupled with the practice change relief reflected in the NAR settlement, these reforms will promote price competition and, over time, are expected to bring about meaningful benefits for consumers.

This Court previously preliminarily approved the proposed settlements with each of these Defendants. *See Gibson* Docs 534, 663; *Keel* Doc. 7. In granting preliminary approval, the Court directed that notice be disseminated to the Settlement Classes (or "the Class"), and preliminarily determined that the Settlements are fair, reasonable, and adequate, and that the Class Representatives and Class Counsel have adequately represented the Settlement Class. *Id.* at 2. Accordingly, the Court held that it would likely approve the Settlements, provisionally certified

---

[1] The *Gibson* Settling parties are The Keyes Company ("Keyes"), Illustrated Properties, LLC ("Illustrated"); NextHome, Inc. ("NextHome"); John L. Scott Real Estate Affiliates, Inc., and John L. Scott, Inc. ("John L. Scott"); The K Company Realty, LLC d/b/a LoKation ("LoKation"); Real Estate One, Inc. ("Real Estate One"); Baird & Warner Real Estate, Inc. ("Baird & Warner").

[2] The *Keel* Settling parties are: Side Inc. ("Side"); House of Seven Gables Real Estate, Inc. ("Seven Gables"); Washington Fine Properties, LLC ("WFP"); J.P Piccinni Real Estate Services, LLC a/k/a JPAR Real Estate Services, LLC; Cairn Real Estate Holdings, LLC; Cairn JPAR Holdings, LLC; JPAR Franchising, LLC; and Your Castle Real Estate, LLC ("JPAR"); Signature Properties of Huntington, LLC a/k/a Signature Premier Properties ("Signature"); First Team Real Estate-Orange County ("First Team"); Sibcy Cline, Inc and Sibcy Cline Inc. of Kentucky ("Sibcy Cline"); Brooklyn New York Multiple Listing Service ("Brooklyn MLS"); and Central New York Information Service, Inc. ("CNYIS").

1

the proposed Settlement Classes, and directed the Parties to issue notice to potential Class members. *Id.* In compliance with the Court's order approving notice (*See Gibson* Doc. 677; *Keel* Doc. 29) the Claims Administrator, JND, implemented a robust notice program.

The Settlements have been extremely well-received by the Class. At the end of the May 9, 2025 claim deadline more than 2.5 million claims were filed. In addition, no objections were filed in *Gibson* and only one in *Keel*. As discussed herein, that objection fails to identify any reason why the Settlements are not fair, reasonable, and adequate.

Rather than file two separate briefs, this consolidated brief addresses both Motions to Approve the present Settlements in *Gibson* and *Keel* and will be filed on both dockets.

In support of this Motion, Plaintiffs submit the declarations of Eric Dirks (Ex. 1) (attorney for the Class), Steve Berman (Ex. 2) (attorney for the Class) and Jennifer Keough (Settlement Administrator) (Ex. 3).

## II.    BACKGROUND AND SETTLEMENT TERMS

### A.    The Litigation

The *Moehrl* and *Burnett* actions brought claims against five defendant families on behalf of home sellers who listed their properties on one of 24 covered multiple listing services ("MLSs") across the country. Building upon the groundwork laid in *Burnett* and *Moehrl*, Plaintiffs Don Gibson, Lauren Criss, John Meiners, and Daniel Umpa, filed "*Gibson*," bringing similar claims against additional defendants on behalf of a nationwide class of home sellers.[3]

---

[3] The cases were originally filed as two related actions, *Gibson, et al. v. NAR, et al.*, Case No. 4:23-CV-788-SRB ("*Gibson*") on October 31, 2023, and *Umpa v. NAR, et al.*, Case No. 4:23-CV-945-SRB ("*Umpa*") on December 27, 2023. On April 23, 2024, the Court granted Plaintiffs' motion to consolidate the *Gibson* and *Umpa* matters and to file a consolidated class action complaint under the *Gibson* caption. Docs. 144-45.

Plaintiffs then filed the above-captioned *Keel* case. *Keel* resolves actual and potential claims against several real estate brokerage companies and multiple listing services entities. Certain of these entities have been sued in other litigation and engaged in settlement discussions jointly with co-lead counsel in the *Burnett*, *Moehrl*, and *Gibson* suits. Several others considered opting into the NAR Settlement but did not reach an agreement to do so before the relevant deadlines. Each Settlement is similar in structure and substance to prior settlements which this Court has already approved.

Based on their substantial work over many years of hard-fought litigation and their successful track record, Class Counsel bring unrivaled knowledge and expertise to the issues presented in this action. Plaintiffs and their counsel have worked diligently to advance the litigation. Prior to filing these actions, Class Counsel undertook significant research into the conduct of the Settling Defendants, their adherence to the challenged rules, and their market presence. Counsel reviewed publicly-available information to investigate the relationships between these companies and alleged anticompetitive practices, including those found by the jury after trial to be antitrust violations in *Burnett*. Dirks Decl. ¶ 9. Based on this investigation, Plaintiffs filed detailed complaints alleging that each of the Defendants in *Gibson* and *Keel* followed and enforced anticompetitive rules adopted in MLSs across the country, including non-Realtor MLSs. *Id.* Since then, Plaintiffs and their counsel have diligently prosecuted *Gibson*, including serving and responding to discovery requests and responding to, and surviving, a variety of dispositive motions. Dirks Decl. ¶ 9. Class Counsel continue to prosecute *Gibson* against the remaining non-Settling Defendants. As of the date of this brief, no Defendants remain in *Keel*, but Plaintiffs anticipate either filing an Amended Complaint in the near future to name as additional defendants companies that have recently reached settlements or filing a new case.

3

### B. Settlement Negotiations

The parties reached each settlement only after engaging in extensive arm's length negotiations. Dirks Decl. ¶¶ 20-22. As part of those negotiations, each Settling Defendant provided detailed financial records that Plaintiffs carefully analyzed and considered in determining each Defendant's ability to pay. *Id*.; Berman Decl. at ¶¶ 2, 6-11. In connection with the negotiations of most of the Settlements, the parties retained a highly experienced and nationally recognized mediator, Greg Lindstrom. Dirks Decl. at ¶ 20.

The parties reached the Settlement Agreements only after considering the strengths, risks and costs of continued litigation. Plaintiffs and Class Counsel believe the claims asserted have merit and that the evidence developed to date supports those claims. Plaintiffs and Class Counsel, however, also recognize the myriad risks of and delay in further proceedings, including potential appeals, in a complex case like this, and believe that the Settlements provide substantial benefits to the Settlement Class. Dirks Decl. ¶ 21. In negotiating the settlements, Class Counsel considered the strengths and weaknesses of the Class members' claims, including potential claims. *Id*. at ¶ 21. Moreover, Plaintiffs and Class Counsel thoroughly analyzed and considered each Settling Defendant's ability to pay, including whether each could withstand a greater monetary judgment. Dirks Decl. ¶¶ 21-23; Berman Decl. at ¶¶ 2, 6-11. These considerations directly affected the monetary amounts that it was feasible to recover from the Settling Defendants through settlement or a judgment. *Id.*

### C. Summary of Settlement Agreements

#### 1. Settlement Class

Each Settlement is on behalf of a class of all persons who sold a home that was listed on a multiple listing service anywhere in the United States where a commission was paid to any brokerage in connection with the sale of the home. The Class includes anyone who sold a home

4

on any multiple listing service nationwide, regardless of that MLS's affiliation with NAR (or not), including, for example, NWMLS, WPMLS, and REBNY/RLS. *See, e.g.*, Keyes Settlement Agreement at ¶ 15; *see also* Doc. 232, Consolidated Am. Compl. at ¶ 182. Each settlement covers, at least, home sales from October 31, 2019 through February 26, 2025.

### 2. Settlement Amounts

The proposed Settlements provide that the Settling Defendants will pay the following amounts for the benefit of the Settlement Class:

- **Gibson:**

  - Keyes and Illustrated: $2.4 million
  - NextHome: $600,000
  - John L. Scott: $1 million
  - LoKation: $925,000
  - Real Estate One: $1.5 million
  - Baird & Warner: $2.2 million

- **Keel:**

  - Side: $5.5 million
  - Seven Gables: $1 million
  - WFP: $1.3 million
  - JPAR: $700,000
  - Signature: $850,000
  - First Team: $1 million
  - Sibcy Cline: $895,000
  - Brooklyn MLS: $95,000
  - CNYIS: $125,000

5

*See Gibson* Docs. 531, 655; *Keel* Doc. 2. The total amount of these Settlements is $20.09 million. These amounts are inclusive of all costs of settlement, including payments to Class members, attorneys' fees and costs, and costs of notice and administration.

The Settlement Amounts are non-reversionary: after the Settlements are finally approved by the Court and after administrative costs, litigation expenses, and attorney fees are deducted, the net funds will be distributed to Settlement Class members with no amount reverting back to the Settling Defendants, regardless of the number of opt-outs or claims made. These amounts are in addition to the over $1 billion obtained in the prior *Burnett*/*Moehrl*/*Gibson* Settlements.

### 3. Practice Changes

The proposed Settlements also require Settling Defendants, and their subsidiaries and affiliates, to make the following practice changes, to the extent they are not already implemented, as soon as practicable and within six months of the Settlement Effective Dates:

     i.    advise and periodically remind company-owned brokerages, franchisees (if any), and their agents that there is no company requirement that they must make offers to or must accept offers of compensation from cooperating brokers or that, if made, such offers must be blanket, unconditional, or unilateral;

     ii.    require that any company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) disclose to prospective home sellers and buyers and state in conspicuous language that broker commissions are not set by law and are fully negotiable (i) in their listing agreement if it is not a government or MLS-specified form, (ii) in their buyer representation agreement if there is one and it is not a government or MLS-specified form, and (iii) in pre-closing disclosure documents if there are any and they are not government or MLS-specified forms. In the event that the listing agreement, buyer representation agreement, or pre-closing disclosure documents are a government or MLS-specified form, then Settling Defendant will require that any company owned brokerages and their agents (and recommend and encourage that any franchisees and their agents) include a disclosure with conspicuous language expressly stating that broker commissions are not set by law and are fully negotiable;

     iii.    prohibit all company-owned brokerages and their agents acting as buyer representatives (and recommend and encourage that franchisees and their agents acting as buyer representatives refrain) from advertising or otherwise representing that their services are free, unless they will receive no financial compensation from any source for those services;

iv.    require that company-owned brokerages and their agents disclose at the earliest moment possible any offer of compensation made in connection with each home marketed to prospective buyers in any format;

v.    prohibit company-owned brokerages and their agents (and recommend and encourage that any franchisees and their agents refrain) from utilizing any technology or taking manual actions to filter out or restrict MLS listings that are searchable by and displayed to consumers based on the level of compensation offered to any cooperating broker unless directed to do so by the client (and eliminate any internal systems or technological processes that may currently facilitate such practices);

vi.    advise and periodically remind company-owned brokerages and their agents of their obligation to (and recommend and encourage that any franchisees and their agents) show properties regardless of the existence or amount of cooperative compensation offered provided that each such property meets the buyer's articulated purchasing priorities; and

vii.    for each of the above points, for company-owned brokerages, franchisees, and their agents, develop training materials consistent with the above relief and eliminate any contrary training materials currently used.

*See, e.g.,* Keyes Settlement Agreement at ¶ 49; Side Settlement Agreement at ¶ 50.

### 4. Release of Claims Against Settling Defendants

Upon the Effective Date, Plaintiffs and the Settlement Class will release and discharge the Settling Defendants, and their respective subsidiaries, related entities, affiliated franchisees, independent contractors, and other representatives from any and all claims arising from or relating to "conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home." The complete terms of the releases are contained in the Settlement Agreements. *See, e.g.*, Keyes Settlement Agreement at ¶¶ 7, 11-13, 28-30; Side Settlement Agreement at ¶¶ 6, 10-12, 28-30.

The Settlement Agreements, however, do nothing to abrogate the rights of any member of the Settlement Class to recover from any other Defendant. *See, e.g.*, Keyes Settlement Agreement at ¶ 59; Side Settlement Agreement at ¶ 60. The Settlement Agreements also expressly exclude

from the Release a variety of individual claims that Class members may have concerning product liability, breach of warranty, breach of contract, or tort of any kind (other than a breach of contract or tort based on any factual predicate in this Action), a claim arising out of violation of the Uniform Commercial Code, or personal or bodily injury. *Id.* at ¶ 30 Also exempted are any "individual claims that a class member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence, or other tort claim, other than a claim that a Class Member paid an excessive commission or home price due to the claims at issue in these Actions." *Id.*

### D. Application for Award of Attorneys' Fees and Costs

The Settlements authorize Class Counsel to seek attorneys' fees and costs incurred in prosecuting the litigation. Plaintiffs submitted their application for an award of attorney fees and costs to be paid out of the Settlement Fund. *See Gibson* Doc. 702; Keel Doc. 41.

## III. NOTICE WAS EFFECTIVELY DISSEMINATED TO THE SETTLEMENT CLASS

The Settlement Notice Plan was robust and implemented in compliance with the requirements of the Court's Preliminary Approval Order consistent with Rule 23 and due process requirements. In consultation and collaboration with the parties, the Settlement Administrator, JND Legal Administration ("JND"), provided Notice to Settlement Class members in the manner approved by the Court through direct notice and digital and print publication. Keough Decl. at ¶ 3. The Notice Plan "met, and exceeded, the standards for providing the best practicable notice in class action settlements." Keough Decl. at ¶ 4. The notices complied with Rule 23(c)(2)(B), in that they "clearly and concisely state in plain, easily understood language": a description of the nature of the case; the class definition; a description of the claims; issues, or defenses; that a Settlement Class Member may appear at the Fairness Hearing or otherwise; the time and manner

for opting out or objecting; the binding effect of a class judgment; and the manner by which to obtain further information. *See* Fed. R. Civ. P. 23(c)(2)(B).

The Notice Program consisted in part of direct notices, in the form of email notice to all potential Settlement Class members to whom Class Counsel and JND could locate (over 24 million) and postcards to Class Members whom JND did not previously send a postcard in connection with prior real estate commission litigation settlements. Keough Decl. at ¶ 16, Combined with previous notices, over 39 million postcards were sent, and over 100 million emails were sent. *Id.* at ¶ 22.

In addition to the extensive direct notice program, JND also implemented a comprehensive digital and electronic media notice program which reached over 70% of the Settlement Class members. Keough Decl. at ¶ 34. The digital portion of the media effort alone delivered more that 359 million impressions. *Id*. at ¶ 23. Combined, the direct notice and publication notice programs reached at least **96%** of the class. *Id*. at ¶ 34. This is in addition to the previous three notice campaigns that each reached at least 95% of the Class. *Id. a*t ¶ 34.

JND also established and maintained a Settlement Website that had over 3.7 million unique visitors and over 20 million page views. *Id*. at ¶ 36.

## IV. THE REACTION OF THE MEMBERS OF THE SETTLEMENT CLASS TO THE SETTLEMENTS HAS BEEN OVERWHELMINGLY POSITIVE

The Class's reaction to the Settlements has been positive and strongly supports final approval. JND has received 2,511,244 claims. Keough Decl. at ¶ 45. Because the funds are non-reversionary, all of the money from the net Settlement fund will be distributed to authorized Claimants.

9

In contrast, only 28 Settlement Class members requested exclusion from the Settlements. Keough Decl at ¶ 50. No objections were received in *Gibson* and only one objection was received in *Keel*. This objection is discussed below.

## V. LEGAL STANDARDS AND SETTLEMENT APPROVAL

Federal Rule of Civil Procedure 23(e) sets out a two-part process for approving class settlements. The Court already completed the first stage of the approval process, often called "preliminary approval," when it determined that "the Court will likely be able to approve the Settlements," and ordered that notice be directed to the class. *See Gibson* Docs 534, 663, 677; *Keel* Doc. 7, 29; Fed. R. Civ. P. 23(e)(1)(B). Now that notice has been disseminated and reaction of the Class members has been received, the Court can make its final decision whether to approve the Settlements.

As a general matter, "the law strongly favors settlements. Courts should hospitably receive them." *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990) (noting it is especially true in "a protracted, highly divisive, even bitter litigation"); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."); *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)); *Sanderson v. Unilever Supply Chain, Inc.*, 10-cv-00775-FJG, 2011 WL 5822413, at *3 (W.D. Mo. Nov. 16, 2011) (crediting the judgment of experienced Class Counsel that settlement was fair, reasonable, and adequate). The presumption in favor of settlements is particularly strong "in class actions and other complex cases

where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005).

A.    **The standard for reviewing a proposed settlement of a class action**

The determination of whether a class action settlement is "fair, reasonable, and adequate is committed to the sound discretion of the trial judge. Great weight is accorded his views because he is exposed to the litigants, and their strategies, positions and proofs. He is aware of the expense and possible legal bars to success. Simply stated, he is on the firing line and can evaluate the action accordingly." *Van Horn v. Trickey*, 840 F.2d at 604, 606-07 (8th Cir. 1988) (cleaned up). The ultimate question is whether the settlement is "fair, reasonable, and adequate." *In re Wireless*, 396 F.3d 922, 932 (8th Cir. 2005). Rule 23(e)(2) includes four factors the Court must consider, when evaluating whether a settlement is fair, reasonable, and adequate. Those factors are whether:

(A) the Class Representatives and Class Counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the Class is adequate, taking into account:

  (i)    the costs, risks, and delay of trial and appeal;

  (ii)   the effectiveness of any proposed method of distributing relief to the Class, including the method of processing Class-Member claims;

  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

The Eighth Circuit has set forth four factors that a court should consider in determining whether to approve a proposed class action settlement: "(1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement."

11

*In re Wireless*, 396 F.3d at 932 (citing *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 124 (8th Cir. 1975)); *Van Horn*, 840 F.2d at 607; *see also Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 861 (S.D. Iowa 2020) (analysis of certain Rule 23(e)(2) factors will "necessarily include analysis of [certain] related *Van Horn* factors"); *Anderson v. Travelex Insurance Servs. Inc.*, No. 8:18-CV-362, 2021 WL 4307093, at *2 (D. Neb. Sept. 22, 2021) (approving settlement under Rule 23(e) by evaluating *Van Horn* factors); *Cleveland v. Whirlpool Corp.*, No. 20-cv-1906, 2022 WL 2256353 (D. Minn. June 23, 2022) (evaluating settlement under Rule 23(e)(2) and *Van Horn*).

## B. The Settlements satisfy each of the Rule 23(e)(2) factors

**First**, Settlement Class Representatives and Class Counsel have adequately represented the Class. Class Counsel were previously appointed to serve as lead counsel in *Moehrl* and *Burnett* after the courts overseeing those cases found they would adequately represent the class. *Burnett*, 2022 WL 1203100 (W.D. Mo. Apr. 22, 2022); *Moehrl*, 2023 WL 2683199 (N.D. Ill. Mar. 29, 2023). Class Counsel subsequently won a jury trial in *Burnett*. And, in *Gibson*, the Court appointed Class Counsel with responsibility for any settlements for the nationwide class. Doc. 180. Altogether, Class Counsel have obtained over $1 billion in proposed and approved settlements as well as historic practice change relief. Class Counsel continue to represent the class as they have done in navigating the settlement process. Likewise, the Class Representatives have bought and sold homes and have demonstrated their commitment to the litigation by responding to discovery, providing relevant documentation, and participating in the settlement process.

**Second**, as discussed above, each Settlement was conducted in good faith and at arm's length by experienced counsel on both sides. Most of the settlements were reached only with the assistance of an experienced mediator. And all occurred only after Settling Defendants provided Class Counsel with sufficient financial information for Plaintiffs to make an informed decision about settlement. Dirks Decl. at ¶¶ 21-23; Berman Decl. at ¶¶ 2, 6-11. The lengthy history of the

12

real estate commission litigation, which has proceeded for years through class certification in both the *Moehrl* and *Burnett* cases and a trial in the *Burnett* case, provide ample evidence of the skill and tenacity Class Counsel brought to the negotiation of the Settlements.

**Third**, for the reasons stated above, the relief for the Settlement Class is fair and adequate. The Settlements provide significant financial recoveries to the Settlement Class in light of the strengths and weaknesses of the case and the risks and costs of continued litigation, including potential appeals, and taking into account the Settling Defendants' financial resources. The Settlements also include meaningful changes to the Settling Defendants' policies. The parties dispute the strength of their claims and defenses. The Settlements reflect a compromise based on the parties' well-informed assessments of their best-case and worst-case scenarios, and the likelihood of various potential outcomes. Plaintiffs' best-case scenario is obtaining class certification, prevailing and recovering on the merits at trial, and then upholding a verdict on appeal. But "experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict, particularly in complex antitrust litigation." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003); *see also In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020) ("Antitrust cases are particularly risky, challenging, and widely acknowledged to be among the most complex actions to prosecute."). And under the circumstances of this case, it would make little sense to try the case against the Settling Defendants where none of them could pay anywhere near the level of any expected judgment. Dirks Decl. at ¶ 22; Berman Decl. at ¶¶ 11-12. And the only way that the Settlements were possible was if they provided for a nationwide recovery and release. Dirks Decl. at ¶ 25.

Against this risk, the Settlements provide for a $20.09 million recovery from the Settling Defendants and substantial practice changes. *See In re Pork Antitrust Litig.,* No. 18-1776, 2022 WL 4238416, at *2 (D. Minn. Sept. 14, 2022) (granting final approval of antitrust settlement that provided "substantial relief against the backdrop of a great deal of uncertainty where the merits are highly contested" in case involving alleged price-fixing conspiracy among pork processing companies); *In re Polyurethane Foam Antitrust Litig.*, 168 F. Supp. 3d 985, 995-96 (N.D. Ohio 2016) (granting final approval of settlement in light of "real possibility that [plaintiffs] could have received much less—even zero—from a jury at trial or following an appeal"). The Settlements are also supported by the fact that these are partial settlements of the claims arising from the alleged conspiracy, and Class Counsel have achieved additional recoveries on behalf of the Class.

Although Class members will not recover every dollar they paid to real estate agents, that assumes that the total amount of payments would be recoverable as damages and fails to take into account the risks of litigation and the defendants' ability to pay any higher sums. The essence of the settlement is a compromise, giving up the "highest hopes" in return for the certainty of payment while recognizing that attempting to obtain more could perhaps result in no recovery at all.

The Court-appointed notice and claims administrator, JND, will work with Class Counsel in processing class member claims and distributing relief. JND has extensive experience in distributing relief in connection with large and complex class action settlements. Keough Decl. at ¶¶ 1, 41-44. JND will be responsible for reviewing claim forms and evidence of purchase to determine whether a claim qualifies for payment, and any claim that cannot be substantiated may be subject to challenge, nonpayment, or a reduced share of the available funds. *See* Settlement

14

Notice at ¶ 8. Class members with approved claims will have several options for receiving payment, including by debit card, Zelle, Venmo, or check. *See* Claim Form at p. 1.[4]

Finally, the attorneys' fee request is reasonable and in line with Eighth Circuit precedent. *See* Pltfs.' Mot. for Attorneys' Fees, *Gibson* Doc. 702; *Keel* Doc. 41.

**Fourth**, the Settlements treat Class members fairly and equitably relative to each other. The practice change relief applies the same to all Class members nationwide. With respect to the monetary relief, every person who meets the class definition is eligible to submit and receive compensation for a claim. That is all that is required. *Petrovic*, 200 F.3d at 1152–53 ("We do not agree with the objectors' contention that a mailed notice of settlement must contain a formula for calculating individual awards.").

### C.    The *Van Horn* Factors also support approval

The *Van Horn* factors provide additional support for the Settlements.

#### 1.    The Merits of the Plaintiffs' Cases, Weighed Against the Terms of the Settlement

As discussed above under the Rule 23(e)(2) factors, the Settlements reflect a compromise based on the parties' educated assessments of their best-case and worst-case scenarios, and the likelihood of various potential outcomes, including potential financial outcomes of the Settling Defendants.

#### 2.    The Settling Defendants' Financial Condition

The fairness, adequacy, and reasonableness of the Settlements are supported by the Settling Defendants' financial condition and their inability to satisfy a judgment. Dirks Decl. ¶¶ 21-23. In order to evaluate the Settling Defendants' financial condition, Plaintiffs reviewed the financial information of each Settling Defendant and its ability to pay. *Id.*; Berman Decl. at ¶¶ 2, 6-11. Class

---

[4] See https://www.realestatecommissionlitigation.com/claimformlanding.

Counsel firmly believe these amounts are reasonable in light of limitations on the Settling Defendants' ability to pay. Dirks Dec. at ¶¶ 21-23. "[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) (quoting *In re Sony SXRD Rear Projection T.V. Class Action Litig.*, No. 06-cv-5173, 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008)); *see also Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 125 (8th Cir. 1975) (affirming antitrust settlement and explaining that a "total victory" for plaintiffs after trial "would have been financially disastrous if not fatal" to the defendant, and the final settlement "gave valuable concessions to the [settlement class] yet maintained [the defendant's] corporate viability").

### 3. The Complexity and Expense of Further Litigation

Plaintiffs' claims raise numerous complex legal and factual issues under antitrust law. This is reflected in the voluminous briefing in *Moehrl* and *Burnett* (as well as the significant briefing in *Gibson* to date) which includes extensive class certification and summary judgment briefing, as well as post-trial briefing in *Burnett*. In addition, plaintiffs have engaged in extensive appellate briefing, including Rule 23(f) petitions in both *Moehrl* and *Burnett* as well as two separate appeals in the *Burnett* litigation concerning arbitration issues, and a petition for certiorari to the United States Supreme Court.

By contrast, the Settlements provide for certain recovery for the Class. In light of the many uncertainties of continued litigation, a significant and certain recovery weighs in favor of approving the proposed Settlements. *See In re Coordinated Pretrial Proc. in Antibiotic Antitrust Actions*, 410 F. Supp. 669, 678 (D. Minn. 1974) (approving settlement where price-fixing claims faced "substantial roadblocks" on top of the "difficulties inherent" in prevailing on such claims); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128, 1137 (8th Cir. 1984) (affirming final approval of settlement where "no reported opinion addresses the precise [merits] question presented here,"

16

which created "a substantial question whether [plaintiff] would prevail"); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 393 (D.D.C. 2002) ("Any verdict would have led to an appeal and might well have resulted in appeals by both sides and a possible remand for retrial, thereby further delaying final resolution of this case. These factors weigh in favor of the proposed Settlement.") (cleaned up).

    D.    **The Amount of Opposition to the Settlements**

    The Settlement Class Representatives in this action have approved the Settlements. More than 2.5 million claims were submitted, while only one objected in *Keel* and none objected in *Gibson*. Keough Decl. at ¶¶ 45, 49. Only 28 opted out. Keough Decl. at ¶ 50. This supports granting final approval. *See, e.g.*, *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (determining with respect to a settlement class of approximately 3.5 million households, in which "only fourteen class members submitted timely objections," the "amount of opposition is minuscule when compared with other settlements that we have approved"); *Bishop v. DeLaval Inc.*, No. 5:19-cv-06129-SRB, 2022 WL 18957112, at *1 (W.D. Mo. July 20, 2022) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval") (quoting *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015)); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559 4:03-MD-015, 2004 WL 3671053, at *13 (W.D. Mo. Apr. 20, 2004) (of the 4,838,789 settlement class members who were sent notice, only 620 (0.012%) opted out of the settlement and only 33 (0.00068%) objected to the settlement, which "are strong indicators that the Settlement Agreement was viewed as fair by an overwhelming majority of Settlement Class members and weighs heavily in favor of settlement"); *In re Tex. Prison Litig.*, 191 F.R.D. 164, 175 (W.D. Mo. 1999) ("The objectors represent only about 8 per cent of the class, and this relatively low level of opposition to the settlement also indicates its fairness. The Court has an obligation not only to the minority of class members who filed

17

objections, but also to the majority who, by their silence, indicated their approval of the Settlement Agreement.") (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)); *see also, e.g.*, *Van Horn*, 840 F.2d at 607 ("the amount of opposition to the settlement" is a key factor to be considered in the settlement approval process); *Marshall*, 787 F.3d at 513 ("We have previously approved class-action settlements even when almost half the class objected to it.").

## VI.     THE COURT SHOULD CONSIDER AND OVERRULE THE OBJECTION

Class Counsel received one purported objection in *Keel* from Art Gonzalez. Mr. Gonzalez is a real estate agent who has filed numerous similar motions / papers in *Burnett* and *Gibson*. Each has been denied and should be denied here.

### A.     Overview and Legal Standard

As an initial matter, the Court previously denied multiple similar motions and purported objections filed by Mr. Gonzalez in the real estate commission cases. *See Burnett*, November 27, 2024 Order Granting Final Approval, Doc. 1622 at 32-33 (overruling Gonzalez "objection"). *See also Burnett* Docs. 1565, 1577 (denying Gonzalez motion to vacate, Docs. 1564, 1571). Although "[n]o particular standard governs judicial review of objections," courts evaluate objections in the course of "determining whether the settlement meets Rule 23's fairness standard." 4 Newberg and Rubenstein on Class Actions § 13:35 (6th ed. June 2024 Update). "[T]he trial court has some obligation to consider objections but is given significant leeway in resolving them." *Id.*

For a class of this size, or any size, the number of objections received is remarkably low. Indeed, there is only one objection in *Keel* before the Court and none in *Gibson*. This is out of a class compromised of millions of home sellers. This means that 99.99% of the Class did not object. While the Court should consider the objection, objections by a tiny minority should not prevent approval of the Settlements as fair, reasonable, and adequate. *See Marshall*, 787 F.3d at 513–14

18

("The district court refused to give credence to the vocal minority" and "the court aptly noted that "only one-tenth of one percent of the class objected, and less than ten percent of the class ha[d] requested exclusion from the settlement."); *see also In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, No. MDL 1559, 4:03-MD-015, 2004 WL 3671053, at \*13 (W.D. Mo. Apr. 20, 2004) ("[t]he Court has an obligation not only to the minority of class members who filed objections, but also to the majority who, by their silence, indicated their approval of the Settlement Agreement") (citing *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995)). The Class's actions here reflect even stronger support for the Settlements than in *Marshall* or *In re Wireless*.

"[I]n determining whether to approve a class action settlement, the issue is not whether everyone affected by the settlement is completely satisfied. Instead, the test is whether the settlement, *as a whole*, is a fair, adequate, and reasonable resolution of the class claims asserted." *In re Capital One Consumer Data Sec. Breach Litig.*, No. 1:19-md-2915, 2022 WL 18107626, at \*8 (E.D. Va. Sept. 13, 2022) (emphasis added). "As courts routinely recognize, a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate." *Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017) (cleaned up); *see also Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.") (cleaned up). "Objections that the settlement fund is too small for the class size, or that a defendant should be required to pay more to punish and deter future bad behavior, while understandable, do not take into account the risks and realities of litigation, and are not a basis for rejecting the settlement." *Capital One*, 2022 WL 18107626, at \*8.

The Court previously denied Mr. Gonzalez's "Motion for Class Members to have Certification Vacated and Class Members Settlement to be Vacated." *See Burnett* Docs. 1565, 1577 (denying Docs. 1564, 1571). Then the Court overruled Gonzalez's objection to the NAR settlement. *Burnett*, November 27, 2024 Order Granting Final Approval, Doc. 1622 at 32-33. The Court found:

> The Court previously denied Arturo Gonzalez's "Motion for Class Members to have Certification Vacated and Class Members Settlement to be Vacated." (See Doc. #1565, #1577, #1601) (denying Doc. #1564, #1571, #1598). To the extent the submission by Mr. Gonzalez is treated as an objection, Mr. Gonzalez does not appear to be a class member, but rather a member of NAR who does not like the outcome of the case and that a class was certified. He has no standing to object, does not state he is objecting, and appears to be critical of the underlying litigation and the practice changes at issue in the NAR Settlement. Moreover, even if he had standing with respect to the present Settlement, his displeasure with the case outcome and the Settlement is no basis for the Court to reject the Settlement. *See In re Tex. Prison Litig.,* 191 F.R.D. at 175 ("The Court has an obligation not only to the minority of class members who filed objections, but also to the majority who, by their silence, indicated their approval of the Settlement Agreement." (citing *DeBoer*, 64 F.3d at 1178)). His objections are overruled.

*Id.* [5]

---

[5] While not filed in *Gibson* or *Keel*, Robert Duthler filed a document in *Burnett* that could arguably be construed as an objection. *Burnett* Doc. 1693. Mr. Duthler's previous similar filing was overruled by the Court. *Burnett* Doc. 1622 at 20-21. Mr. Duthler again fails to provide any information reflecting that he is a class member with standing to object to the Settlements. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 284 (4th Cir. 1989) ("The plain language of Rule 23(e) clearly contemplates allowing only class members to object to settlement proposals."); *Feder v. Electronic Data Systems, Corp.*, 248 F. App'x 579, 580 (5th Cir. 2007) ("only class members have standing to object to a settlement. Anyone else lacks the requisite proof of injury necessary to establish the 'irreducible minimum' of standing"); 4 Newberg and Rubenstein on Class Actions § 13:22 (6th ed. June 2024 Update) ("Rule 23 confers the right to object upon class members, the Rule itself does not confer standing upon nonclass members" and "Courts regularly find that nonclass members have no standing to object to a proposed settlement[.]"). The burden is on the objector to show standing. *Feder*, 248 F. App'x at 581. Nor does Mr. Duthler comply with Rule 23(e)(5)(A), which requires that the "objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection." Mr. Duthler again objects that the requested attorney fees are too high, but he does not

The Court should deny Mr. Gonzalez's objection here for similar reasons. Mr. Gonzalez does not appear to be a class member. In addition, Mr. Gonzalez's objection appears to be premised on his claim that buyers and not sellers are harmed here. To start, the claim that home sellers did not pay buyer broker commissions is just wrong. Every home sale has a settlement sheet, and those settlement sheets show that the buyer's broker is paid directly from the seller's proceeds. *See Burnett* Doc. 956 at 32; Doc. 957 at ¶ 401. The District Court properly found this evidence sufficient to allow a jury finding that home sellers were direct purchasers who paid the commissions. *Burnett* Doc. 1019 at 12. And the jury did just that. *Burnett* Doc. 1294 at 2. The *Moehrl* court made the same finding – "[i]t is the home seller who agrees in their listing agreement to pay a single, total commission," and therefore "the seller is properly deemed to be the direct purchaser as to the services of both the seller-broker and the buyer-broker." *Leeder v. Nat'l Ass'n of Realtors*, 601 F. Supp. 3d 301, 309–10 (N.D. Ill. 2022); *see also Davis v. Hanna Holdings, Inc.*, No. 24-CV-2374, 2025 WL 845918, at *12 (E.D. Pa. March 18, 2025) ("it is home *sellers*, not home *buyers*, who directly pay the buyer-broker's commission.") (emphasis in original). Regardless of whether buyers may also have legal claims, Mr. Gonzalez fails to show why the settlement on behalf of seller class members is not fair, reasonable, and adequate.

## VII.   CLASS CERTIFICATION REMAINS APPROPRIATE

In its Preliminary Approval Orders, the Court provisionally certified the Settlement Class for settlement purposes, finding that the class met each of Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements, and that the class met each of Rule 23(b)(3)'s

---

explain why, aside from making baseless accusations that Co-Lead Counsel have somehow violated antitrust laws by filing a fee petition with the Court. Plaintiffs showed their request is reasonable pursuant to governing Eighth Circuit authority. *See Gibson* Doc. 702, *Keel* Doc. 41.

predominance and superiority requirements. The Court was able to draw on its experience of overseeing related litigation for over six years in doing so. Nothing has changed since the Court's ruling to call the Court's conclusions regarding class certification into question. Accordingly, for the reasons set forth in the Preliminary Approval Motions and Orders, Plaintiffs ask that the Court certify the Settlement Class.

## VIII.   THE COURT SHOULD CERTIFY ITS ORDER AS FINAL

Finally, Plaintiffs request that this Court direct entry of a partial final judgment with respect to the Settlement Class's claims against the Settling Defendants pursuant to Federal Rule of Civil Procedure 54(b). Entry of a partial final judgment is appropriate here because there is no just reason to delay the practice change relief reflected in the Settlements or payments to Class members. It is also equitable to the Settling Parties to have a resolution as soon as possible in light of the arguments made in the record, and it is efficient because settlement approval leaves no remaining issues as to these Settling Defendants.

## IX.   CONCLUSION

The Settlement Agreements at issue achieve the goals of the litigation, benefit the Settlement Class, and account for the risks and uncertainties of continued, vigorously contested nationwide litigation. For the reasons set forth herein, the Settlements are fair, reasonable, and adequate, and merit final approval. Plaintiffs therefore respectfully request that the Court certify the Settlement Class, consider and overrule the Gonzalez objection in *Keel,* grant final approval of the Settlements, approve the requested attorneys' fees and expenses, and enter a final judgment as to the Settling Defendants. Plaintiffs will also submit Proposed Final Approval Orders in both *Gibson* and *Keel* for consideration by the Court.

22

June 17, 2025                         Respectfully Submitted,

**HAGENS BERMAN SOBOL SHAPIRO LLP**

*/s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

Rio S. Pierce (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
riop@hbsslaw.com

Jeannie Evans (*pro hac vice*)
Nathan Emmons (Mo. Bar. No. 70046)
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
jeannie@hbsslaw.com
nathane@hbsslaw.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**

*/s/ Robert A. Braun*
Robert A. Braun (*pro hac vice*)
Benjamin D. Brown (*pro hac vice*)

Sabrina Merold (*pro hac vice*)
1100 New York Ave. NW, Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
bbrown@cohenmilstein.com
rbraun@cohenmilstein.com
smerold@cohenmilstein.com

Daniel Silverman (*pro hac vice*)
769 Centre Street, Suite 207
Boston, MA 02130
Telephone: (617) 858-1990

**WILLIAMS DIRKS DAMERON LLC**

*/s/ Eric L. Dirks*
Eric L. Dirks                    MO # 54921
Michael A. Williams          MO # 47538
1100 Main Street, Suite 2600
Kansas City, MO 64105
Tele: (816) 945 7110
Fax: (816) 945-7118
dirks@williamsdirks.com
mwilliams@williamsdirks.com

**BOULWARE LAW LLC**

*/s/ Brandon J.B. Bouleware*
Brandon J.B. Boulware       MO # 54150
Jeremy M. Suhr               MO # 60075
1600 Genessee Street, Suite 956A
Kansas City, MO 64102
Tele:   (816) 492-2826
Fax:    (816) 492-2826
brandon@boulware-law.com
jeremy@boulware-law.com

**KETCHMARK AND MCCREIGHT P.C.**

*/s/ Michael Ketchmark*
Michael Ketchmark           MO # 41018
Scott McCreight             MO # 44002
11161 Overbrook Rd. Suite 210
Leawood, Kansas 66211
Tele:   (913) 266-4500
mike@ketchmclaw.com
smccreight@ketchmclaw.com

***Attorneys for Plaintiffs and the Class***

23

dsilverman@cohenmilstein.com

**SUSMAN GODFREY L.L.P.**

*/s/ Marc M. Seltzer*
Marc M. Seltzer (*pro hac vice*)
Steven G. Sklaver (*pro hac vice*)
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com

Beatrice C. Franklin (*pro hac vice*)
One Manhattan West
New York, New York 10001
Telephone: (212) 336-8330
bfranklin@susmangodfrey.com

Matthew R. Berry (*pro hac vice*)
Floyd G. Short (*pro hac vice*)
Alexander W. Aiken (*pro hac vice*)
401 Union St., Suite 3000
Seattle, Washington 98101
Telephone: (206) 516-3880
mberry@susmangodfrey.com
fshort@susmangodfrey.com
aaiken@susmangodfrey.com

*Attorneys for Plaintiffs and the Class*

**THE PETTIT LAW FIRM**
Julie Pettit (*pro hac vice forthcoming*)
jpettit@pettitfirm.com
1900 N. Pearl, Suite 1740
Dallas, Texas 75201
Telephone: (214) 329-0151
Facsimile: (214) 329-4076

**LYNN PINKER HURST & SCHWEGMANN, LLP**
Michael K. Hurst (*pro hac vice forthcoming*)
mhurst@lynnllp.com
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800

24

Facsimile: (214) 981-3839

**KAPLAN FOX & KILSHEIMER LLP**
Frederic S. Fox (*pro hac vice forthcoming*)
800 Third Avenue, 38th Floor
New York, NY 10022
Telephone: (212) 687-1980
Facsimile: (212) 687-7714
ffox@kaplanfox.com

***Additional Class Counsel***