# Exhibit 3

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

DON GIBSON, LAUREN CRISS, JOHN MEINERS, and DANIEL UMPA, on behalf of themselves and all others similarly situated,

    Plaintiffs,

    v.

THE NATIONAL ASSOCIATION OF REALTORS, et al.,

    Defendants.

    and

JEREMY KEEL, JEROD BREIT, HOLLEE ELLIS, FRANCES HARVEY, RHONDA BURNETT, DON GIBSON, LAUREN CRISS, JOHN MEINERS, DANIEL UMPA, CHRISTOPHER MOEHRL, MICHAEL COLE, STEVE DARNELL, JACK RAMEY, and JANE RUH, on behalf of themselves and all others similarly situated,

    Plaintiffs,

    v.

HOUSE OF SEVEN GABLES REAL ESTATE, INC., et al.,

    Defendants.

Case No. 4:23-cv-00788-SRB

[Consolidated with 4:23-cv-00945-SRB]

and

Case No. 4:25-cv-00055-SRB

## DECLARATION OF JENNIFER M. KEOUGH
## REGARDING NOTICE PROGRAM IMPLEMENTATION

I, Jennifer M. Keough, declare as follows:

    1.    I am Chief Executive Officer, President, and Co-Founder of JND Legal Administration LLC ("JND"). I have more than 20 years of experience creating and supervising legal notice and claims administration programs and have personally overseen well over 1,000

matters. I am regularly called upon to submit declarations in connection with JND's notice and administration work. A comprehensive description of my experience is attached as **Exhibit A.**

2.      This Declaration describes the implementation of the Notice Program as approved in the Preliminary Approval Order entered on January 28, 2025 in *Gibson et al. v. National Association of Realtors et al.*, (W.D. Mo. Case No. 23-CV-788-SRB) ("Gibson") [ECF 633], and the Preliminary Approval Order entered on February 4, 2025 in *Keel, et al. v. Washington Fine Properties, et al.*, (W.D. Mo. Case No. 4:25-CV-00055-SRB) ("Keel") [ECF 7].

## NOTICE PROGRAM SUMMARY

3.      The Notice Program consisted of the following elements:

a.      Direct Notice to all potential Settlement Class Members for whom the Settling Defendants provided contact information or for whom contact information was located through third-party data;

b.      A targeted digital effort with the leading digital network (Google Display Network - "GDN"), a respected programmatic partner (OMTD), and the top social media platform (Facebook);

c.      A notice placement in a popular consumer magazine (*People*).

d.      An internet search campaign to assist potential Settlement Class Members interested in finding the Settlement website;

e.      An established case-specific Settlement website where information about the Settlements, as well as copies of relevant case documentation, including but not limited to the Settlement Agreements, the Long Form Notice (attached as **Exhibit B**), and the Claim Form (attached as **Exhibit C**), is accessible to Settlement Class Members; and

f.      An established toll-free telephone number with an Interactive Voice Recording system ("IVR") and staffed with Settlement Representatives that Settlement Class Members may call to obtain more information about the Settlements and request copies of the Long Form Notice and Claim Form.

4.      Based on my experience in developing and implementing class notice programs, I believe the Notice Program met, and exceeded, the standards for providing the best practicable notice in class action settlements. Each component of the Notice Program is described in more detail in the sections below.

## DIRECT NOTICE

5.      In addition to utilizing the Settlement Class Member details acquired during previous Settlements, JND also received Settlement Class Member data from the new Settling Defendants.  The files included, among other items, contact information for home buyers and sellers as well as details related to the home sale transactions.

6.      Where a Settling Defendant provided contact details for a newly identified Settlement Class Member, JND promptly loaded the potential Settlement Class Members' contact information into a case-specific database for the Settlements. A unique identification number was assigned to each potential Settlement Class Member record to identify them throughout the administration process.

7.      JND conducted a sophisticated email append process to obtain email addresses for as many potential Settlement Class Members as possible. The email append process utilized skip tracing tools to identify any email address by which the potential Settlement Class Member may be reached if an email address was not provided in the initial data. JND then reviewed the data to identify any undeliverable email addresses and duplicate records.

3

## EMAIL NOTICE

8. Prior to sending the Email Notice, JND evaluated the email for potential spam language to improve deliverability. This process included running the email through spam testing software, DKIM[1] for sender identification and authorization, and hostname evaluation. Additionally, we checked the send domain against the 25 most common IPv4 blacklists.[2]

9. JND used industry-leading email solutions to achieve the most efficient email notification campaign. Our Data Team is staffed with email experts and software solution teams to conform each notice program to the particulars of the case. JND provided individualized support during the program and managed our sender reputation with the Internet Service Providers ("ISPs"). For this program, we analyzed the data and monitored the ongoing effectiveness of the notification campaign, adjusting the campaign as needed. These actions ensured the highest possible deliverability of the email campaign so that more potential Settlement Class Members received notice.

10. JND utilized a verification program to eliminate invalid email and spam traps that would otherwise negatively impact deliverability. We then cleaned the list of email addresses for formatting and incomplete addresses to further identify all invalid email addresses.

11. To ensure readability of the Email Notice, our team reviewed and formatted the body content into a structure that is applicable to all email platforms, allowing the email to pass easily to the recipient. Before launching the email campaign, we sent a test email to multiple ISPs

[1] DomainKeys Identified Mail, or DKIM, is a technical standard that helps protect email senders and recipients from spam, spoofing, and phishing.

[2] IPv4 address blacklisting is a common practice. To ensure that the addresses being used are not blacklisted, a verification is performed against well-known IP blacklist databases. A blacklisted address affects the reputation of a company and could cause an acquired IP addresses to be blocked.

4

and opened and tested the email on multiple devices (iPhones, Android phones, desktop computers, tablets, etc.) to ensure the email opened as expected.

12. Additionally, JND included an "unsubscribe" link at the bottom of the Email Notice to allow potential Settlement Class Members to opt out of any additional email notices from JND. This step is essential to maintain JND's good reputation among the ISPs and reduce complaints relating to the email campaign.

13. Emails that are returned to JND are generally characterized as either "Hard Bounces" or "Soft Bounces." A Hard Bounce occurs when the ISP rejects the email due to a permanent reason, such as the email account is no longer active. A Soft Bounce occurs when the email is rejected for temporary reasons, such as the recipient's email address inbox is full.

14. When an email was returned due to a Soft Bounce, JND attempted to re-send the Email Notice at least three additional times in an attempt to secure deliverability. If the Soft Bounce email continued to be returned after additional attempts were made, the email was considered undeliverable. Emails that resulted in a Hard Bounce were also considered undeliverable.

15. The email notice campaign commenced on February 26, 2025. JND emailed notice to all potential Settlement Class Members for whom JND obtained a valid email address from the third-party data aggregator, Settling Defendants, or the append process noted above. The Email Notice contained links to the Settlement Website and directed potential Settlement Class Members to visit the website to learn more information and submit an online claim.

16. As of June 10, 2025 JND sent 24,220,042 Email Notices, of which 806,009 or 3.33%, bounced back and were not deliverable.

17. The Email Notice as sent is attached as **Exhibit D**.

5

## POSTCARD NOTICE

18.     JND sent a color Postcard Notice to newly identified potential Settlement Class Members for whom an email address was not available or for whom the Email Notice was deemed ultimately undeliverable.

19.     Prior to sending the Postcard Notice, JND performed address research using the United States Postal Service ("USPS") National Change of Address ("NCOA") database to obtain the most current mailing address information for potential Settlement Class Members. At my direction, JND staff tracked all Postcard Notices returned undeliverable by the USPS and promptly re-mailed Postcard Notices that were returned with a forwarding address. Also, with my oversight, JND staff took reasonable efforts to research and determine if it is possible to reach a potential Settlement Class Member for whom the Postcard Notice was returned without a forwarding address by mailing to a more recent mailing address at which the potential Settlement Class Member may be reached.

20.     As of June 10, 2025, JND sent a total of 39 million postcards, including 48,542 Postcard Notices to newly identified potential Settlement Class Members in connection with this round of notice. Of the new Postcard Notices, 3,172 have been returned as undeliverable. JND promptly sent 351 Postcard Notices to updated addresses obtained through USPS and 200 through advanced address research.

21.     The Postcard Notice as mailed is attached as **Exhibit E**.

22.     The direct notice effort was extremely successful and reached more than 96% of the potential Settlement Class Members. While the direct notice effort was extensive, JND also implemented a comprehensive media notice program to supplement the direct notice program, as

discussed below. JND has sent 103,205,450 initial notice emails and 39,626,735 postcards to potential Settlement Class Members as a part of the Realtors Settlements noticing campaigns.

## DIGITAL NOTICE

23.    JND implemented a robust nationwide digital reach effort from February 26, 2025 through April 8, 2025 with GDN, OMTD and Facebook. A total of 359,262,544 digital impressions were served.[3]

24.    The GDN effort targeted adults 35 years of age or older ("Adults 35+"), with an emphasis on adults 35-64 years of age ("Adults 35-64"). To concentrate efforts on potential Settlement Class Members, a portion of the GDN activity specifically targeted homeowners, as well as users who (1) searched on Google for key terms related to this matter, such as home improvement, house renovation, home renovation, general contractor, residential general contractors, home building contractors, house renovation ideas, mortgage refinance interest rates, home refinance calculator, mortgage assistance, real estate investing, real estate, real estate agent commission, real estate commission fees, real estate commissions; or (2) browsed websites similar to www.hgtv.com or used apps similar to Houzz or Angi: Hire Home Service Pros. In addition, a portion of the GDN effort was allocated towards users who visited the Settlement website, but had not yet submitted a claim (i.e., a "retargeting" effort), or users who had demographics/qualities similar to those who had already visited the Settlement website and/or filed an online claim (i.e., "look-alike" targeting).

25.    The OMTD programmatic impressions targeted Adults 35+, with an emphasis on Adults 35-64. Additionally, all OMTD impressions targeted likely homeowners with a length of

---

[3] Impressions or Exposures are the total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. Impressions are a gross or cumulative number that may include the same person more than once. As a result, impressions can and often do exceed the population size.

residency being between 3-10 years or anyone who sold a house one or more years ago.

26.     The Facebook effort targeted adults 18 years of age or older with an interest in homeowner association, moving company, home renovations, real estate investing, mortgage insurance, home improvement (home & garden). In addition, a portion of the Facebook activity was allocated towards retargeting or look-alike targeting.

27.     The digital activity was served across all devices (desktop, laptop, tablet and mobile), with a heavy emphasis on mobile devices. The digital ads redirected users to the Settlement website, where Settlement Class Members could access more information about the Settlements, including the Long Form Notice, as well as file a claim electronically.

28.     Screenshots of the notices as they appeared on GDN and OMTD, and Facebook are attached as **Exhibit F**.

**PRINT NOTICE**

29.     JND caused a full color half page notice placement to appear in the March 31, 2025 issue of *People* magazine, which was on-sale March 21, 2025. A QR code was placed in the print ad for easy, direct access to the Settlement website through mobile devices.

30.     A copy of the print notice as it appeared in *People* is attached as **Exhibit G**.

**GOOGLE SEARCH CAMPAIGN**

31.     From February 26, 2025 through April 8, 2025, JND caused an additional 44,247 impressions to be served through a Google search campaign. When purchased keywords/phrases related to the Settlements (e.g., content on the Settlement website landing page, legal names of the cases, as well as other case information) were searched, a paid Responsive Search Ad ("RSA") with a hyperlink to the Settlement website would sometimes appear on the search engine results page. When the RSA was clicked on, the visitor was redirected to the Settlement website where

they could get more information about the Settlements. The search effort was monitored and optimized for keywords/phrases that resulted in the best click-throughs/conversions.

32.     Screenshots of the RSAs as they appeared online are attached as **Exhibit H**.

## NEWS COVERAGE

33.     In addition to the direct notice and paid media placements, from November 17, 2024 through April 8, 2025, the Settlements received free press coverage. Attached as **Exhibit I** is a sample list of various online outlets covering the Settlements, along with select full articles from sources such as DailyMail.com, Reuters.com, Yahoo Finance, Indexbox.com, DotNews.com, among others. This news coverage further enhanced the reach and awareness of our Notice Program.

## REACH[4]

34.     To calculate media reach, JND used MRI[5] and a Comscore[6] reach tool. According to these two reputable media reach platforms, The GDN, OMTD and *People* magazine efforts alone reached more than 70% of potential Settlement Class Members. The extensive direct notice effort, Facebook activity, internet search campaign, and news coverage about the Settlements extended reach beyond 96%. This reach is in addition to the notice efforts accumulated from the three prior noticing campaigns relating to the Realtors settlements that each independently reached more than 95% of the potential Settlement Class. The reach achieved here is more robust than that of other court-approved notice programs and meets the high reach standard set forth by the FJC.

---

[4] Reach is the percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once over the course of a campaign. Reach factors out duplication, representing the total number of different/net persons.
[5] MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media through probabilistic and address-based sampling. MRI is the leading producer of media and consumer research in the United States.
[6] Comscore's multi-reach platform provides unduplicated audiences across desktop, smartphone, and tablet devices.

## SETTLEMENT WEBSITE

35.     An informational, interactive Settlement website was developed at my direction by JND staff so that potential Settlement Class Members can obtain more information about their rights and options under the Settlements and submit claims. The website contains, among other things, information about the Settlements, a Frequently Asked Questions section, a list of Key Dates and a list of Important Documents, the ability to download the Long Form Notice and Claim Form in both English and Spanish, the ability to submit claims electronically through a secure claim filing portal, a portal for Settlement Class Members to register to receive updates about the Settlements, and information about how potential Settlement Class Members can access the toll-free telephone number. The Settlement website is mobile-enabled and ADA compliant.

36.     As of June 10, 2025, JND has tracked a total of 3,774,614 unique users to the Settlement Website who registered 20,859,710 page views.

## DEDICATED TOLL-FREE NUMBER

37.     JND established a dedicated toll-free telephone number with an automated IVR, available 24 hours a day, seven days a week, which provides Settlement-related information to potential Settlement Class Members, and the ability to request and receive the notices and the Claim Form by mail, or to speak to a Settlement representative.

38.     As of June 10, 2025, JND received 142,945 calls to the case toll-free number.

## DEDICATED POST OFFICE BOXES

39.     JND established two separate United States Post Office Boxes: one dedicated for potential Settlement Class Members to submit letters, inquiries, and Claim Forms; and one dedicated strictly to receive exclusion requests.

## QR CODE

40.     JND created a QR Code (a matrix barcode) which allows quick and direct access to the Settlement website through mobile devices. The QR Code was included, where practicable, in printed notice documents (i.e., the postcard and print publication notices).

## CLAIMS RECEIVED

41.     The Claim Form explained the claims process and was designed to ensure that filing a claim was as simple as possible. While the printable Claim Form was available to potential Settlement Class Members, the direct notice portion of the Notice Program was designed to drive claimants to the Settlement website where they can utilize an interactive process for claims submission. Online claim forms not only save substantial money in postage but are generally favored by claimants since the wizard feature of the process will walk them through the form step by step and is very user-friendly. The online claim form process prevents claimants from submitting an electronic claim without clicking necessary verifications such as signature. Electronic claims also eliminate the step of manual data entry and generally make processing easier and less expensive.

42.     The interactive Claim Form can be accessed through a secure portal and requests the same information from claimants that is set forth in the printable Claim Form. The interactive Claim Form was also designed to ensure that required information is provided before a claimant can move onto the next step of the Claim Form.

43.     Broadly stated, to complete the Claim Form, the claimant needs to provide their name and contact information as well as identify, to the extent possible, information about the

home sale, such as the address of the home sold, date of sale, amount of the total commission paid, and any documents to support the proof of payment.

44.     All claimants could submit Claim Forms electronically through the Settlement website or physically by mail to the established Settlement P.O. Box.

45.     As of June 10, 2025, JND received 2,520,699 claims in total, of which 2,512,663 were timely submitted (646,358 online; 39,466 by mail; and 1,826,839 by bulk filers), and 8,036 were untimely submitted.

46.     JND has a complete process in place to allow for bulk filer submissions across all of its projects. We have a team that enables bulk filers to streamline the submission of their claims. JND coordinated with bulk filers in this matter.

47.     JND will continue to process any Claim Forms received and report to Counsel on the status of the claim intake and review process. The claim filing deadline was May 9, 2025.

## OBJECTIONS AND OPT-OUTS

48.     Members of the Settlement Classes could have objected to the Settlements by May 9, 2025. Settlement Class Members could also have excluded themselves ("opted-out") of one or more of the Settlements by the same date. The Long Form Notice explained these legal rights (and others) to potential Settlement Class Members.

49.     As of June 10, 2025, JND received or is otherwise aware of one objection filed in the Keel Settlements on behalf of one individual. JND is not aware of any objections filed in the Gibson Settlements.

50.     As of June 10, 2025, JND received or is otherwise aware of 28 requests for exclusion for *Keel* Settlements and 28 requests for exclusion for *Gibson* Settlements, of which all were timely and valid. Requests for exclusion that were sent via email were accepted. Attached as

**Exhibit J** is a list of all exclusion requests. In JND's opinion, this is a small number of exclusion requests relative to the potential Settlement Class size of more than 30 million.

## CAFA NOTICE

51.     JND was responsible for effecting notice of the proposed Settlement with each Defendant in the above-captioned action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"). On November 14, 2024, JND sent CAFA Notice for the Keyes, Illustrated, NextHome, John L. Scott, and LoKation Settlements. On February 6, 2025, JND sent CAFA Notice for the Baird & Warner, Real Estate One, Side, Seven Gables, WFP, JPAR, Signature, First Team, Brooklyn MLS and CNYIS Settlements. On February 20, 2025, JND sent CAFA Notice for the Sibcy Cline Settlement.

## CONCLUSION

52.     In conclusion, the Notice Program provided the best notice practicable under the circumstances, is consistent with the requirements of Rule 23, the due process clause of the United States Constitution, and all applicable court rules; and is consistent with other similar court-approved notice programs. The Notice Program was designed to, and did, effectively reach as many Settlement Class Members as possible and provide them with the opportunity to review a plain language notice with the ability to easily take the next steps to learn more about the Settlements.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 17, 2025, in Seattle, Washington.

_____
JENNIFER M. KEOUGH

# EXHIBIT A

# JENNIFER KEOUGH



CHIEF EXECUTIVE OFFICER AND CO-FOUNDER


LEGAL ADMINISTRATION

## I. INTRODUCTION

Jennifer Keough is Chief Executive Officer and a Co-Founder of JND Legal Administration ("JND"). She is the *only* judicially recognized expert in all facets of class action administration - from notice through distribution. With more than 25 years of legal experience, Ms. Keough has directly worked on hundreds of high-profile and complex administration engagements, including such landmark matters as the $20 billion Gulf Coast Claims Facility, $10 billion BP Deepwater Horizon Settlement, $3.4 billion Cobell Indian Trust Settlement (the largest U.S. government class action settlement ever), $2.67 billion Blue Cross Blue Shield antitrust settlement, $1.5 billion Mercedes-Benz Emissions Settlements, $1.3 billion Equifax Data Breach Settlement, $1 billion Stryker Modular Hip Settlement, National Assoc. of Realtors Settlements of over $1 billion thus far, $600 million Engle Smokers Trust Fund, $215 million USC Student Health Center Settlement, and countless other high-profile matters.

Ms. Keough has been appointed notice expert in many notable cases and has testified on settlement matters in numerous courts and before the Senate Committee for Indian Affairs. She was appointed in 2022 as a Board member of the RAND Corporation's "Kenneth R. Feinberg Center for Catastrophic Risk Management and Compensation (the Feinberg Center)." Among the Feinberg Center's missions is to identify and promote laws, programs, and institutions that reduce the adverse social and economic effects of natural and manmade catastrophes by:

- Improving incentives to reduce future losses;

- Providing just compensation to those suffering losses while appropriately allocating liability to responsible parties;

- Helping affected individuals, businesses, and communities to recover quickly; and

- Avoiding unnecessary legal, administrative, and other transaction costs.

Ms. Keough is honored to be included on the Board, which consists of only 18 people, three of whom are federal district court judges. She is the only person from the legal administration industry on the Board.

Ms. Keough is also the only female CEO/Co-Founder in the Legal Administration field. She oversees more than 300 employees throughout the country, including at JND's 35,000 square foot Seattle headquarters. She manages all aspects of JND's class action business from day-to-day processes to high-level strategies. Her comprehensive expertise with noticing, claims processing, Systems and IT work, call center, data analytics, recovery calculations, check and electronic payment distribution, and reporting gained her the reputation with attorneys on both sides of the aisle as the most dependable consultant for all legal administration needs. Ms. Keough also applies her knowledge and skills to other divisions of JND, including mass tort, lien resolution, government services, and eDiscovery. Given her extensive experience, Ms. Keough is often called upon to consult with parties prior to settlement, is frequently invited to speak on class action issues and has authored numerous articles in her multiple areas of expertise.

Ms. Keough launched JND with her partners in early 2016. Just a few months later she was named as the Independent Claims Administrator ("ICA") in a complex BP Solar Panel Settlement. Ms. Keough also started receiving numerous appointments as notice expert and in 2017 was chosen to oversee a $300 million restitution program in Canada where every adult in that country was eligible to participate. Also, in 2017, Ms. Keough was named a female entrepreneur of the year finalist in the 14th annual Stevie Awards for Women in Business. In 2015 and 2017, she was recognized as a "Woman Worth Watching" by Profiles in Diversity Journal.

Since JND's launch, Ms. Keough has also been featured in numerous media publications. In 2019, she was highlighted in an Authority Magazine article, "5 Things I wish someone told me before I became a CEO," and a Moneyish article, "This is exactly

how rampant 'imposter syndrome' is in the workforce." In 2018, she was featured in several Fierce CEO articles, "JND Legal Administration CEO Jennifer Keough aids law firms in complicated settlements," "Special Report—Women CEOs offer advice on defying preconceptions and blazing a trail to the top," and "Companies stand out with organizational excellence," as well as a Puget Sound Business Journal article, "JND Legal CEO Jennifer Keough handles law firms' big business." In 2013, Ms. Keough appeared in a CNN article, "What Changes with Women in the Boardroom."

Prior to forming JND, Ms. Keough was Chief Operating Officer and Executive Vice President for one of the then largest legal administration firms in the country, where she oversaw operations in several offices across the country and was responsible for all large and critical projects. Previously, Ms. Keough worked as a class action business analyst at Perkins Coie, one of the country's premier defense firms, where she managed complex class action settlements and remediation programs, including the selection, retention, and supervision of legal administration firms. While at Perkins she managed, among other matters, the administration of over $100 million in the claims-made Weyerhaeuser siding case, one of the largest building product class action settlements ever. In her role, she established a reputation as being fair in her ability to see both sides of a settlement program.

Ms. Keough earned her J.D. from Seattle University. She graduated from Seattle University with a B.A. and M.S.F. with honors.

# II. LANDMARK CASES

Jennifer Keough has the distinction of personally overseeing the administration of more large class action programs than any other notice expert in the field. Some of her largest engagements include the following:

## 1. *In re Blue Cross Blue Shield Antitrust Litig.*

**Master File No.: 13-CV-20000-RDP (N.D. Ala.)**

JND was appointed as the notice and claims administrator in the $2.67 billion Blue Cross Blue Shield proposed settlement. To notify class members, we mailed over 100 million postcard notices, sent hundreds of millions of email notices and reminders, and placed notice via print, television, radio, internet, and more. The call center was staffed with 250 agents during the peak of the notice program. More than eight million claims were received. In approving the notice plan designed by Jennifer Keough and her team, United States District Court Judge R. David Proctor, wrote:

> *After a competitive bidding process, Settlement Class Counsel retained JND Legal Administration LLC ("JND") to serve as Notice and Claims Administrator for the settlement. JND has a proven track record and extensive experience in large, complex matters... JND has prepared a customized Notice Plan in this case. The Notice Plan was designed to provide the best notice practicable, consistent with the latest methods and tools employed in the industry and approved by other courts...The court finds that the proposed Notice Plan is appropriate in both form and content and is due to be approved.*

## 2. *In re Equifax Inc. Customer Data Sec. Breach Litig.*

**No. 17-md-2800-TWT (N.D. Ga.)**

JND was appointed settlement administrator, under Ms. Keough's direction, for this complex data breach settlement valued at $1.3 billion with a class of 147 million individuals nationwide. Ms. Keough and her team oversaw all aspects of claims administration, including the development of the case website which provided notice in seven languages and allowed for online claim submissions. In the first week alone, over 10 million claims were filed. Overall, the website received more than 200 million hits and the Contact Center handled well over 100,000 operator calls. Ms. Keough and her team also worked closely with the Notice Provider to ensure that each element of the media campaign was executed in the time and manner as set forth in the Notice Plan.

Approving the settlement on January 13, 2020, Judge Thomas W. Thrash, Jr. acknowledged JND's outstanding efforts:

> JND transmitted the initial email notice to 104,815,404 million class members beginning on August 7, 2019. (App. 4, ¶¶ 53-54). JND later sent a supplemental email notice to the 91,167,239 class members who had not yet opted out, filed a claim, or unsubscribed from the initial email notice. (Id., ¶¶ 55-56). The notice plan also provides for JND to perform two additional supplemental email notice campaigns. (Id., ¶ 57)...JND has also developed specialized tools to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). As a result, class members have the opportunity to file a claim easily and have that claim adjudicated fairly and efficiently...The claims administrator, JND, is highly experienced in administering large class action settlements and judgments, and it has detailed the efforts it has made in administering the settlement, facilitating claims, and ensuring those claims are properly and efficiently handled. (App. 4, ¶¶ 4, 21; see also Doc. 739-6, ¶¶ 2-10). Among other things, JND has developed protocols and a database to assist in processing claims, calculating payments, and assisting class members in curing any deficient claims. (Id., ¶¶ 4, 21). Additionally, JND has the capacity to handle class member inquiries and claims of this magnitude. (App. 4, ¶¶ 5, 42). This factor, therefore, supports approving the relief provided by this settlement.

### 3. *USC Student Health Ctr. Settlement*

**No. 18-cv-04258-SVW (C.D. Cal.)**

JND was approved as the Settlement Administrator in this important $215 million settlement that provides compensation to women who were sexually assaulted, harassed and otherwise abused by Dr. George M. Tyndall at the USC Student Health Center during a nearly 30-year period. Ms. Keough and her team designed a notice effort that included: mailed and email notice to potential Class members; digital notices on Facebook, LinkedIn, and Twitter; an internet search effort; notice placements in USC publications/eNewsletters; and a press release. In addition, her team worked with USC staff to ensure notice postings around campus, on USC's website and social media accounts, and in USC alumni communications, among other things. Ms. Keough ensured the establishment of an all-female call center, whose operators were fully trained to handle delicate interactions, with the goal of providing excellent service and assistance to every woman affected. She also worked with the JND staff handling lien resolution for this case. Preliminarily approving the settlement, Honorable Stephen V. Wilson stated (June 12, 2019):

> The Court hereby designates JND Legal Administration ("JND") as Claims Administrator. The Court finds that giving Class Members notice of the Settlement

*is justified under Rule 23(e)(1) because, as described above, the Court will likely be able to: approve the Settlement under Rule 23(e)(2); and certify the Settlement Class for purposes of judgment. The Court finds that the proposed Notice satisfies the requirements of due process and Federal Rule of Civil Procedure 23 and provides the best notice practicable under the circumstances.*

### 4. Gulf Coast Claims Facility (GCCF)

The GCCF was one of the largest claims processing facilities in U.S. history and was responsible for resolving the claims of both individuals and businesses relating to the Deepwater Horizon oil spill. The GCCF, which Ms. Keough helped develop, processed over one million claims and distributed more than $6 billion within the first year-and-a-half of its existence. As part of the GCCF, Ms. Keough and her team coordinated a large notice outreach program which included publication in multiple journals and magazines in the Gulf Coast area. She also established a call center staffed by individuals fluent in Spanish, Vietnamese, Laotian, Khmer, French, and Croatian.

### 5. In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010

No. 2179 (MDL) (E.D. La.)

Following the closure of the Gulf Coast Claims Facility, the Deepwater Horizon Settlement claims program was created. There were two separate legal settlements that provided for two claims administration programs. One of the programs was for the submission of medical claims and the other was for the submission of economic and property damage claims. Ms. Keough played a key role in the formation of the claims program for the evaluation of economic and property damage claims. Additionally, Ms. Keough built and supervised the back-office mail and processing center in Hammond, Louisiana, which was the hub of the program. The Hammond center was visited several times by Claims Administrator Pat Juneau -- as well as by the District Court Judge and Magistrate -- who described it as a shining star of the program.

### 6. Loblaw Card Program

Jennifer Keough was selected by major Canadian retailer Loblaw and its counsel to act as program administrator in its voluntary remediation program. The program was created as a response to a price-fixing scheme perpetrated by some employees of the company involving bread products. The program offered a $25 gift card to all adults in Canada who purchased bread products in Loblaw stores between 2002 and 2015. Some 28 million Canadian residents were potential claimants. Ms. Keough and her team: (1) built an interactive website that was capable of withstanding hundreds of millions of "hits" in a short period

of time; (2) built, staffed and trained a call center with operators available to take calls twelve hours a day, six days a week; (3) oversaw the vendor in charge of producing and distributing the cards; (4) was in charge of designing and overseeing fraud prevention procedures; and (5) handled myriad other tasks related to this high-profile and complex project.

## 7. *Cobell v. Salazar*

No. 96 CV 1285 (TFH) (D. D.C.)

As part of the largest government class action settlement in our nation's history, Ms. Keough worked with the U.S. Government to implement the administration program responsible for identifying and providing notice to the two distinct but overlapping settlement classes. As part of the notice outreach program, Ms. Keough participated in multiple town hall meetings held at Indian reservations located across the country. Due to the efforts of the outreach program, over 80% of all class members were provided notice. Additionally, Ms. Keough played a role in creating the processes for evaluating claims and ensuring the correct distributions were made. Under Ms. Keough's supervision, the processing team processed over 480,000 claims forms to determine eligibility. Less than one half of one percent of all claim determinations made by the processing team were appealed. Ms. Keough was called upon to testify before the Senate Committee for Indian Affairs, where Senator Jon Tester of Montana praised her work in connection with notice efforts to the American Indian community when he stated: "Oh, wow. Okay… the administrator has done a good job, as your testimony has indicated, [discovering] 80 percent of the whereabouts of the unknown class members." Additionally, when evaluating the Notice Program, Judge Thomas F. Hogan concluded (July 27, 2011):

> …that adequate notice of the Settlement has been provided to members of the Historical Accounting Class and to members of the Trust Administration Class.… Notice met and, in many cases, exceeded the requirements of F.R.C.P. 23(c)(2) for classes certified under F.R.C.P. 23(b)(1), (b)(2) and (b)(3). The best notice practicable has been provided class members, including individual notice where members could be identified through reasonable effort. The contents of that notice are stated in plain, easily understood language and satisfy all requirements of F.R.C.P. 23(c)(2)(B).

## 8. *The National Association of Realtors Settlements*

No. 19-cv-00332 (W.D. Miss.)

JND was appointed as Notice and Claims Administrator in the Real Estate Commission Litigation, including the Settlement with the National Association of Realtors (NAR) for $418 million. In total, JND is handling the administration for all Settling Defendants, with total Settlements valuing over $1 billion thus far. This

high-profile nationwide settlement arises from allegations that the Defendants conspired to inflate real estate agent commissions. The initial noticing program included direct notice to more than 37 million potential Class Members and a media effort through both online and print advertising.

In providing Final Approval of the first round of Settlements with Keller Williams, Anywhere, and RE/MAX, (*Burnett v. The Nat'l Assoc. of Realtors*, No. 19-cv-00332 (W.D. Miss.)), Judge Stephen R. Bough stated on May 9, 2024:

> *At preliminary approval, the Court appointed JND Legal Administration ("JND") as the Settlement Administrator. As directed by the Court, JND implemented the parties' Class Notice Plan...Notice was provided by first-class U.S. mail, electronic mail, and digital and print publication. Without repeating all the details from Keough's declaration, the Court finds that the direct notice program was extremely successful and reached more than 95% of the potential Settlement class members...The media effort alone reached at least 71 percent of the Settlement Class members....Based on the record, the Court finds that the notice given to the Settlement Class constituted the best notice practicable under the circumstances and fully satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all applicable law. The Court further finds that the notice given to the Settlement Class was adequate and reasonable.*

Judge Stephen R. Bough also stated on November 4, 2024 in his final approval order for *Gibson v. The Nat'l Assoc. of Realtors*, No. 23-cv-00788-SRB (W.D. Miss.):

> *At preliminary approval, the Court appointed JND Legal Administration ("JND") as the Settlement Administrator. As directed by the Court, JND implemented the Class Notice Plan. In connection with their final approval motion, Plaintiffs submitted a declaration of Jennifer M. Keough from JND summarizing the notice that was given to class members and the resulting claims to date, opt-outs, and objections. (Doc. #521-3.). Notice was provided by first-class U.S. mail, electronic mail, and digital and print publication. Without repeating all the details from Keough's declaration, the Court finds that the direct notice program was extremely successful and reached more than 97% of identified Settlement Class members. Nearly 40 million direct notices were mailed or emailed to the Class. JND's digital effort alone delivered more than 300 million impressions, and its press release was picked up at least 495 times with a potential audience of 113 million. In addition to the formal class notice process, and beyond the paid press release, more than 470 news stories addressed the litigation and settlement, including full articles in outlets such as the New York Times, USAToday, and CNN. JND also implemented a Settlement Website that had over 2 million unique visitors and over 11 million page views...Based on the record, the Court finds that the notice given to the Settlement Class constituted the best notice practicable under the*

*circumstances and fully satisfied the requirements of due process, Federal Rule of Civil Procedure 23, and all applicable law. The Court further finds that the notice given to the Settlement Class was adequate and reasonable.*

In the *Burnett* final approval order for Settlements with the National Association of Realtors ("NAR"), Judge Stephen R. Bough stated on November 27, 2024:

*At preliminary approval, the Court appointed JND Legal Administration ("JND") as the Settlement Administrator. In connection with their final approval motion, Plaintiffs submitted a declaration of Jennifer M. Keough from JND summarizing the notice that was given to Class members and the resulting claims to date, opt-outs, and objections. (Doc. #1595-7.) As directed by the Court, JND implemented the Class Notice Plan. Notice was provided by first-class U.S. mail, electronic mail, and digital and print publication. As stated in that declaration, nearly 40 million direct notices were mailed or emailed to the Class. JND's digital notice effort delivered more than 300 million impressions. More than 500 news stories addressed the litigation and settlement, including full articles in outlets such as the ABC News, CBS News, NBC News, and the New York Times. JND also implemented a Settlement Website that had over 2 million unique visitors and over 12 million page views. The Court finds that the direct notice program was adequate and reached more than 99% of identified Settlement Class members.*

## 9. *Allagas v. BP Solar Int'l, Inc.*
### No. 14-cv-00560 (N.D. Cal.)

Ms. Keough was appointed by the United States District Court for the Northern District of California as the Independent Claims Administrator ("ICA") supervising the notice and administration of this complex settlement involving inspection, remediation, and replacement of solar panels on homes and businesses throughout California and other parts of the United States. Ms. Keough and her team devised the administration protocol and built a network of inspectors and contractors to perform the various inspections and other work needed to assist claimants. She also built a program that included a team of operators to answer claimant questions, a fully interactive dedicated website with online claim filing capability, and a team trained in the very complex intricacies of solar panel mechanisms. In her role as ICA, Ms. Keough regularly reported to the parties and the Court regarding the progress of the case's administration. In addition to her role as ICA, Ms. Keough also acted as mediator for those claimants who opted out of the settlement to pursue their claims individually against BP. Honorable Susan Illston, recognized the complexity of the settlement when appointing Ms. Keough the ICA (December 22, 2016):

*The complexity, expense and likely duration of the litigation favors the Settlement, which provides meaningful and substantial benefits on a much*

*shorter time frame than otherwise possible and avoids risk to class certification and the Class's case on the merits...The Court appoints Jennifer Keough of JND Legal Administration to serve as the Independent Claims Administrator ("ICA") as provided under the Settlement.*

## 10. *Health Republic Ins. Co. v. United States*

### No. 16-259C (F.C.C.)

For this $1.9 billion settlement, Ms. Keough and her team used a tailored and effective approach of notifying class members via Federal Express mail and email. Opt-in notice packets were sent via Federal Express to each potential class member, as well as the respective CEO, CFO, General Counsel, and person responsible for risk corridors receivables, when known. A Federal Express return label was also provided for opt-in returns. Notice Packets were also sent via electronic-mail. The informational and interactive case-specific website posted the notices and other important Court documents and allowed potential class members to file their opt-in form electronically.

## 11. *In re Mercedes-Benz Emissions Litig.*

### No. 16-cv-881 (D.N.J.)

JND Legal Administration was appointed as the Settlement Administrator in this $1.5 billion settlement wherein Daimler AG and its subsidiary Mercedes-Benz USA reached an agreement to settle a consumer class action alleging that the automotive companies unlawfully misled consumers into purchasing certain diesel type vehicles by misrepresenting the environmental impact of these vehicles during on-road driving. As part of its appointment, the Court approved Jennifer Keough's proposed notice plan and authorized JND Legal Administration to provide notice and claims administration services.

*The Court finds that the content, format, and method of disseminating notice, as set forth in the Motion, Declaration of JND Legal Administration, the Class Action Agreement, and the proposed Long Form Notice, Short Form Notice, and Supplemental Notice of Class Benefits (collectively, the "Class Notice Documents") – including direct First Class mailed notice to all known members of the Class deposited in the mail within the later of (a) 15 business days of the Preliminary Approval Order; or (b) 15 business days after a federal district court enters the US-CA Consent Decree – is the best notice practicable under the circumstances and satisfies all requirements provided in Rule 23(c)(2)(B). The Court approves such notice, and hereby directs that such notice be disseminated in the manner set forth in the Class Action Settlement to the Class under Rule 23(e)(1)...JND Legal Administration is hereby appointed as the Settlement Administrator and shall perform all duties of the Settlement Administrator set forth in the Class Action Settlement.*

On July 12, 2021, the Court granted final approval of the settlement:

> *The Court has again reviewed the Class Notice Program and finds that Class Members received the best notice practicable under the circumstances.*

## 12. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

GM Ignition Switch Compensation Claims Resolution Facility

Ms. Keough oversaw the creation of a Claims Facility for the submission of injury claims allegedly resulting from the faulty ignition switch. The Claims Facility worked with experts when evaluating the claim forms submitted. First, the Claims Facility reviewed thousands of pages of police reports, medical documentation, and pictures to determine whether a claim met the threshold standards of an eligible claim for further review by the expert. Second, the Claims Facility would inform the expert that a claim was ready for its review. Ms. Keough constructed a database which allowed for a seamless transfer of claim forms and supporting documentation to the expert for further review.

## 13. *In re General Motors LLC Ignition Switch Litig.*

No. 2543 (MDL) (S.D.N.Y.)

Class Action Settlement

Ms. Keough was appointed the class action settlement administrator for the $120 million GM Ignition Switch settlement. On April 27, 2020, Honorable Jesse M. Furman approved the notice program designed by Ms. Keough and her team and the notice documents they drafted with the parties:

> *The Court further finds that the Class Notice informs Class Members of the Settlement in a reasonable manner under Federal Rule of Civil Procedure 23(e)(1)(B) because it fairly apprises the prospective Class Members of the terms of the proposed Settlement and of the options that are open to them in connection with the proceedings.*
>
> *The Court therefore approves the proposed Class Notice plan, and hereby directs that such notice be disseminated to Class Members in the manner set forth in the Settlement Agreement and described in the Declaration of the Class Action Settlement Administrator...*

Under Ms. Keough's direction, JND mailed notice to nearly 30 million potential class members.

On December 18, 2020, Honorable Jesse M. Furman granted final approval:

> *The Court confirms the appointment of Jennifer Keough of JND Legal Administration ("JND") as Class Action Settlement Administrator and directs*

*Ms. Keough to carry out all duties and responsibilities of the Class Action Settlement Administrator as specified in the Settlement Agreement and herein...The Court finds that the Class Notice and Class Notice Plan satisfied and continue to satisfy the applicable requirements of Federal Rules of Civil Procedure 23(c)(2)(b) and 23(e), and fully comply with all laws, including the Class Action Fairness Act (28 U.S.C. § 1711 et seq.), and the Due Process Clause of the United States Constitution (U.S. Const., amend. V), constituting the best notice that is practicable under the circumstances of this litigation.*

## 14. *Senne v. Office of the Commission of Baseball*

No. 14-00608-JCS (N.D. Cal.)

Ms. Keough and her team acted as the Settlement Administrator in the $185M settlement encompassing nearly 25,000 minor league baseball players who signed a uniform player's contract and played in certain non-regular season periods from 2009 to 2022. The administration included direct notice by mail and e-mail, a media campaign, a primary distribution, and a redistribution of unclaimed funds to eligible class members. The administration also included a dedicated, bilingual online platform allowing players to submit work period disputes, update their addresses, view settlement payment estimates, and select the method in which they wished to receive their settlement payment. JND overcame unique challenges in the administration which included highly mobile class members who shared residences and sometimes accounts with fellow players, the provision of multi-lingual services, complex employment and non-employment tax reporting to most states and the federal government, as well as facilitating payment to the significant proportion of players who reside primarily outside the US.

## 15. *In re Navistar Maxx Force Engines Mktg., Sales Practices, and Prods.*

No. 14-cv-10318 (N.D. Ill.)

The Navistar litigation resulted in a $135 million settlement on behalf of truck owners throughout the United States. The most complicating factor here was the number of claims filed by third-party claim preparers on behalf of the vehicle fleets. In short, every claim submission involved thousands of pages of documentation, all of which had to be reviewed and audited to confirm adherence to the settlement agreement and plan of allocation. Also compounding the complexity is the fact that both sides invoked the right to review claims to try to raise or lower the claim rate in their favor. As per the settlement agreement, JND was the arbiter of these disagreements and was required to mediate disputes between the parties about various claims.

Part of JND's responsibility pursuant to the court's direction was to ensure that class members had ample opportunity to submit claims. Through our efforts,

more than 66% of eligible vehicles claimed here – a very high rate for a class action. We were also charged with following up on the distribution of proceeds to make sure that claimants cashed their checks. Through our efforts over 99% of all monies ended up being cashed.

## 16. *Express Freight Int'l v. Hino Motors Ltd.*

**No. 22-cv-22483-Gayles/Torres (S.D. Fla.)**

JND was retained as the Settlement Administrator in this $237.5 million class action settlement stemming from allegations that the emission levels in certain Hino trucks were misrepresented and exceed regulatory limits. Ms. Keough and her team designed a robust notice program that combined direct notice, a press release, an internet search campaign, and industry targeted digital and publication notice to maximize reach. As the settlement class included numerous fleet owners, the JND team under Ms. Keough's leadership successfully implemented a claim submission process to facilitate the filing of bulk claims that resulted in over 55,000 fleet filer claims. On April 1, 2024 Judge Darrin P. Gayles approved the notice program:

> *The Court finds that Settlement Class Notice program was implemented in the manner approved by the Court in its Preliminary Approval Order. See Supplemental Keough Decl. ¶¶ 4-9, 16. The Court finds that the form, content, and methods of disseminating notice to the Settlement Class Members: (1) comply with Rule 23(c)(2) of the Federal Rules of Civil Procedure as they are the best practicable notice under the circumstances and are reasonably calculated to apprise the Settlement Class Members of the pendency of this Action, the terms of the Settlement, and their right to object to the Settlement; (2) comply with Rule 23(e), as they are reasonably calculated to apprise the Settlement Class Members of the pendency of the Action, the terms of the proposed Settlement, and their rights under the proposed Settlement, including, but not limited to, their right to object to, or opt out of, the proposed Settlement and other rights under the terms of the Settlement Agreement; (3) comply with Rule 23(h), as they are reasonably calculated to apprise the Settlement Class Members of any motion by Settlement Class Counsel for reasonable attorney's fees and costs, and their right to object to any such motion; (4) constitute due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (5) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c), (e), and (h), and the Due Process Clause of the United States Constitution.*

### 17. FTC v. Reckitt Benckiser Grp. PLC

No. 19CV00028 (W.D. Va.)

Ms. Keough and her team designed a multi-faceted notice program for this $50 million settlement resolving charges by the FTC that Reckitt Benckiser Group PLC violated antitrust laws by thwarting lower-priced generic competition to its branded drug Suboxone.

The plan reached 80% of potential claimants nationwide, and a more narrowed effort extended reach to specific areas and targets. The nationwide effort utilized a mix of digital, print, and radio broadcast through Sirius XM. Extended efforts included local radio in areas defined as key opioid markets and an outreach effort to medical professionals approved to prescribe Suboxone in the U.S., as well as to substance abuse centers; drug abuse and addiction info and treatment centers; and addiction treatment centers nationwide.

### 18. In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.

No. 13-2441 (MDL) (D. Minn.)

Ms. Keough and her team were designated as the escrow agent and claims processor in this $1 billion settlement designed to compensate eligible U.S. Patients who had surgery to replace their Rejuvenate Modular-Neck and/or ABG II Modular-Neck hip stems prior to November 3, 2014. As the claims processor, Ms. Keough and her team designed internal procedures to ensure the accurate review of all medical documentation received; designed an interactive website which included online claim filing; and established a toll-free number to allow class members to receive information about the settlement 24 hours a day. Additionally, she oversaw the creation of a deficiency process to ensure claimants were notified of their deficient submission and provided an opportunity to cure. The program also included an auditing procedure designed to detect fraudulent claims and a process for distributing initial and supplemental payments. Approximately 95% of the registered eligible patients enrolled in the settlement program.

### 19. In re The Engle Trust Fund

No. 94-08273 CA 22 (Fla. 11th Jud. Cir. Ct.)

Ms. Keough played a key role in administering this $600 million landmark case against the country's five largest tobacco companies. Miles A. McGrane, III, Trustee to the Engle Trust Fund recognized Ms. Keough's role when he stated:

> The outstanding organizational and administrative skills of Jennifer Keough cannot be overstated. Jennifer was most valuable to me in handling numerous substantive issues in connection with the landmark Engle Trust Fund matter. And, in her communications with affected class members, Jennifer proved to be a caring expert at what she does.

### 20. *In re Air Cargo Shipping Servs. Antitrust Litig.*

**No. 06-md-1775 (JG) (VVP) (E.D.N.Y.)**

This antitrust settlement involved five separate settlements. As a result, many class members were affected by more than one of the settlements, Ms. Keough constructed the notice and claims programs for each settlement in a manner which allowed for the comparison of claims data. Each claims administration program included claims processing, review of supporting evidence, and a deficiency notification process. The deficiency notification process included mailing of deficiency letters, making follow up phone calls, and sending emails to class members to help them complete their claim. To ensure accuracy throughout the claims process for each of the settlements, Ms. Keough created a process which audited many of the claims that were eligible for payment.



# III.

# JUDICIAL RECOGNITION

Courts have favorably recognized Ms. Keough's work as outlined above and by the sampling of judicial comments from JND programs listed below.

## 1. Honorable Terrence G. Berg

***Chapman v Gen. Motors, LLC,*** (July 16, 2024)
No. 19-CV-12333-TGB-DRG (E.D. Mich.):

*The Court has reviewed the plan for distributing Notice to the Settlement Class and finds that Settlement Class Members will receive the best notice practicable under the circumstances…The Court appoints JND Legal Administration as the Settlement Administrator.*

## 2. Honorable Joseph H. Rodriguez

***Cohen v. Subaru Corp.,*** (July 11, 2024)
No. 20-cv-8442-JHR-AMD (D.N.J.):

*The Court appoints JND Legal Administration as the Settlement Administrator ("Settlement Administrator")…The notices and Notice Program satisfy all applicable requirements of law, including, but not limited to, Rule 23 and the constitutional requirement of due process.*

## 3. Honorable Dana M. Sabraw

***In re Packaged Seafood Prods. Antitrust Litig. (EPP Class),*** (November 22, 2024)
No. 15-md-02670 (S.D. Cal.):

*The EPPs again retained JND, an experienced and well-respected claims administrator. The Court previously approved JND as Claims Administrator for the COSI Settlement and to disseminate the Class Notice…The Settlement Notice Plan, approved by the Court's Preliminary Approval Order, was robust and provided the Settlement Class Notice (in various forms) to Settlement Class Members…The digital and print efforts alone reached more than 70% of potential Settlement Class Members and further extended by Mail Notice.*

## 4. Honorable Joanna Seybert

***Natale v. 9199-4467 Quebec Inc.,*** (May 14, 2024)
No. 21-cv-6775-JS-SIL (E.D.N.Y.):

*The Court further finds that the method of dissemination of notice to the Settlement Class…satisfies Rule 23, due process, and constitutes the best notice practicable*

*under the circumstances…The Court appoints JND Legal Administration as the Settlement Administrator.*

### 5. Honorable Philip S. Gutierrez

**Grey Fox, LLC v. Plains All Am. Pipeline, L.P.,** (May 1, 2024)
No. 16-cv-03157-PSG-JEM (C.D. Cal.):

*The Court appoints JND Legal Administration as Settlement Administrator and directs it to carry out all duties and responsibilities of the Settlement Administrator as specified in the Settlement Agreement Section VI (B) and herein.*

### 6. Honorable Daniel J. Calabretta

**Weiner v. Ocwen Fin. Corp.,** (March 28, 2024)
No. 14-cv-02597-DJC-DB (E.D. Cal.):

*The Court hereby appoints JND Legal Administration as Settlement Administrator… the Court finds that the proposed Notice program meets the requirements of due process under the U.S. Constitution and Rule 23; and that such Notice program, which includes direct notice to Settlement Class Members via e-mail and/or mail to the extent practicable, the establishment of a settlement website, the establishment of a toll-free telephone helpline, and the notice provided via internet search platforms and other online advertisements, is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.*

### 7. Judge Barbara J. Rothstein

**Moore v Robinhood Fin. LLC,** (February 13, 2024)
No. 21-cv-01571-BJR (W.D. Wash.):

*The Court appoints JND Legal Administration as the Settlement Administrator…The Court finds this manner of giving notice fully satisfies the requirements of Fed. R. Civ. P. 23 and due process, constitutes the best notice practicable under the circumstances, including its use of individual notice to all Settlement Class Members who can be identified with the available data and reasonable effort, and shall constitute due and sufficient notice to all persons entitled thereto.*

### 8. Honorable Jon S. Tigar

**Aberin v. Am. Honda Motor Co., Inc.,** (February 1, 2024)
No. 16-cv-04384-JST (N.D. Cal.):

*The proposed Class Notice Program consists of (a) a mailed notice ("Class Notice," attached as Exhibit 1 to Plaintiffs' Preliminary Approval Motion), sent to the last known address of Settlement Class Members; (b) email follow-ups to each Settlement Class Member for whom email addresses are known; (c) a social-media component; (d) targeted notice based on search terms used by persons on Google; and (e) a website*

publication of the Settlement Agreement and Class Notice and other case-related documents at a public website with a domain name related to the action With respect to such Class Notice Program, the Court finds that such Class Notice is fair and adequate. The Court further reaffirms its findings in support of the appointment of JND Legal Administration as Notice Administrator, ECF No. 326, and now appoints JND Legal Administration to serve as Settlement Notice Administrator.

### 9. Judge Cormac J. Carney

***Doe v. MindGeek USA Incorp.,*** (January 26, 2024)
No. 21-cv-00338 (C.D. Cal.):

*...the Court finds that the notice and plan satisfy the statutory and constitutional requirements because, given the nature and complexity of this case, "a multi-faceted notice plan is the best notice that is practicable under the circumstances."*

### 10. Honorable Jesse M. Furman

***City of Philadelphia v. Bank of Am. Corp.,*** (October 12, 2023)
No. 19-CV-1608 (JMF) (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form and Long-Form Notices (collectively, the "Notices")...In addition to directly mailing notice, JND will run digital ads targeting a custom audience using the Google Display Network (GDN) and LinkedIn in an effort to target likely Class Members...JND will cause the publication notice... to be published in the Wall Street Journal and Investor's Business Daily. JND will also cause an informational press release...to be distributed to approximately 11,000 media outlets nationwide.*

### 11. Chief Judge Stephanie M. Rose

***PHT Holding II LLC v. N. Am. Co. for Life and Health Ins.,*** (August 25, 2023)
No. 18-CV-00368 (S.D. Iowa):

*The Court appoints JND Legal Administration LLC ("JND") as the Settlement Administrator...The Court finds that the manner of distribution of the Notices constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to the Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

### 12. Judge Mary Kay Vyskocil

***Advance Trust & Life Escrow Serv., LTA v. PHL Variable Ins. Co.,*** (August 9, 2023)
No. 18-cv-03444 (MKV) (S.D.N.Y.):

*The Court appoints JND Legal Administration LLC ("JND"), which is a competent firm, as the Settlement Administrator... The Court finds that the manner of distribution of the Notices constitutes the best practicable notice under the circumstances, as well as*

*valid, due, and sufficient notice to the Class, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

### 13. Honorable Terrence G. Berg

***Chapman v Gen. Motors, LLC,*** (June 29, 2023)
No. 19-CV-12333-TGB-DRG (E.D. Mich.):

*Pursuant to Federal Rules of Civil Procedure 23(c)(2)(B), the Court finds that the content, format, and method of disseminating Class Notice...is the best notice practicable under the circumstances and satisfies all legal requirements, including Federal Rule of Civil Procedure 23(c)(2)(B) and the Due Process Clause.*

### 14. Honorable Virginia M. Kendall

***In re Local TV Advert. Antitrust Litig.,*** (June 14, 2023)
MDL No. 2867 (N.D. Ill.):

*JND Legal Administration is hereby appointed as the Settlement Administrator with respect to the CBS, Fox, Cox Entities, and ShareBuilders Settlements. The Court approves the proposed Notice Program, including the Email Notice, Postcard Notice, Print Notice, Digital Notice, Long Form Notice and the Claim Form...*

### 15. Judge Edward J. Davila

***In re MacBook Keyboard Litig.,*** (May 25, 2023)
No. 18-cv-02813-EDJ (N.D. Cal.):

*The Settlement Agreement is being administered by JND Legal Administration ("JND")...the Settlement Administrator provided direct and indirect notice through emails, postcards, and the settlement website, in addition to the press and media coverage the settlement received...the Court finds that the Settlement Class has been provided adequate notice.*

### 16. Honorable David O Carter

***Gutierrez, Jr. v. Amplify Energy Corp.,*** (April 24, 2023)
No. 21-cv-01628-DOC-JDE (C.D. Cal.):

*The Court finds that the Notice set forth in Article VI of the Settlement Agreement, detailed in the Notice Plan attached to the Declaration of Jennifer Keough of JND Legal Administration, and effectuated pursuant to the Preliminary Approval Order: (a) constitutes the best notice practicable under the circumstances of this Action; (b) constitutes due and sufficient notice to the Classes of the terms of the Settlement Agreement and the Final Approval Hearing; and (c) fully complied with the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law, including the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.*

### 17. Honorable Joseph C. Spero

***Shuman v. Squaretrade Inc.,*** (March 1, 2023)
No. 20-cv-02725-JCS (N.D. Cal.):

*As of February 10, 2023, 703,729 Class Members were mailed or emailed at least one Notice that was not returned as undeliverable, representing over 99.76% of the total Class Member population. Supplemental Declaration of Jennifer Keough Regarding Notice Administration (dkt. no. 140-2) ("Keough Supp. Decl."), ¶ 7. The Court finds that notice was provided in the best practicable manner to class members and fulfills the requirements of due process.*

### 18. Honorable J.P. Boulee

***In re TransUnion Rental Screening Sol. Inc. FCRA Litig.,*** (January 6, 2023)
No. 20-md-02933-JPB (N.D. Ga.):

*The Parties have proposed JND Legal Administration as the Settlement Administrator for the Rule 23(b)(2) and Rule 23(b)(3) Settlement Classes. The Court has reviewed the materials about this organization and concludes that it has extensive and specialized experience and expertise in class action settlements and notice programs. The Court hereby appoints JND Legal Administration as the Settlement Administrator, to assist and provide professional guidance in the implementation of the Notice Plans and other aspects of the settlement administration.*

### 19. Honorable David O Carter

***Gutierrez, Jr. v. Amplify Energy Corp.,*** (December 7, 2022)
21-cv-01628-DOC-JDE (C.D. Cal.):

*The Court appoints JND Legal Administration as the Settlement Administrator in this Action...The Court approves, as to form and content, the Direct Notices, Long Form Notices, and Email notices substantially in the forms attached as Exhibits B-J to the Declaration of Jennifer Keough In Support of Motion for Preliminary Approval of Class Action Settlement and Direction of Notice ("Keough Declaration").*

### 20. Honorable Charles R. Breyer

***In re Volkswagen "Clean Diesel" Mktg., Sales Practice and Prods. Liab. Litig.,*** (November 9, 2022)
MDL 2672 CRB (N.D. Cal.):

*The Settlement Administrator has also taken the additional step to allow potential class members to submit claims without any documentation on the settlement website, allowing the settlement administrator to seek out the documentation independently (which can often be found without further aid from the class member). Id. at 5; Third Keough Decl. (dkt. 8076) ¶ 3. On October 6, 2022, the Settlement Administrator*

*also sent reminder notices to the class members who have not yet submitted a claim, stating that they may file a claim without documentation, and their claim will be verified based on the information they provide. Third Keough Decl. ¶ 4. In any case, Lochridge's concerns about the unavailability of documentation have not been borne out by the majority of claimants: According to the Settlement Administrator, of the 122,467 claims submitted, 100,657 have included some form of documentation. Id. ¶ 6. Lochridge's objection on this point is thus overruled...Additionally, the claims process has been unusually successful—as of October 20, 122,467 claim forms have been submitted, covering 22% of the estimated eligible Class vehicles. Third Keough Decl. ¶ 6. This percentage rises to 24% when the Sport+ Class vehicles that have already received a software update (thus guaranteeing their owners a $250 payment without submission of a claim form) are included. Id. This reaction strongly favors approval of the settlement.*

### 21. Honorable Joseph C. Spero

***Shuman v. Squaretrade Inc.,*** (October 17, 2022)
No. 20-cv-02725-JCS (N.D. Cal.):

*JND Legal Administration is appointed to serve as the Settlement Administrator and is authorized to email and mail the approved Notice to members of the Settlement Class and further administer the Settlement in accordance with the Amended Agreement and this Order.*

### 22. Judge Stephen V. Wilson

***LSIMC, LLC v. Am. Gen. Life Ins. Co.,*** (September 21, 2022)
No. 20-cv-11518 (C.D. Cal.):

*JND Legal Administration LLC ("JND") shall be appointed to serve as Class Notice Administrator...*

### 23. Judge Valerie Figueredo

***Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York,*** (August 19, 2022)
No. 19-cv-06004 (S.D.N.Y.):

*The Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 24. Honorable Dana M. Sabraw

***In re Packaged Seafood Prods. Antitrust Litig. (EPP Class),*** (July 15, 2022)
No. 15-md-02670 (S.D. Cal.):

*An experienced and well-respected claims administrator, JND Legal Administration LLC ("JND"), administered a comprehensive and robust notice plan to alert Settlement*

*Class Members of the COSI Settlement Agreement...The Notice Plan surpassed the 85% reach goal...The Court recognizes JND's extensive experience in processing claim especially for millions of claimants...The Court finds due process was satisfied and the Notice Program provided adequate notice to settlement class members in a reasonable manner through all major and common forms of media.*

## 25. Honorable Charles R. Breyer

***In re Volkswagen "Clean Diesel" Mktg., Sales Practice and Prods. Liab. Litig.,*** (July 8, 2022) MDL 2672 CRB (N.D. Cal.):

*As applied here, the Court finds that the content, format, and method of disseminating Notice—set forth in the Motion, the Declaration of Jennifer Keough on Settlement Notice Plan, and the Settlement Agreement and Release—is state of the art and satisfies Rule 23(c)(2) and all contemporary notice standards. The Court approves the notice program, and hereby directs that such notice be disseminated in the manner set forth in the proposed Settlement Agreement and Declaration of Jennifer Keough on Settlement Notice Plan to Class Members under Rule 23(e)(1).*

## 26. Judge Fernando M. Olguin

***Gupta v. Aeries Software, Inc.,*** (July 7, 2022) No. 20-cv-00995 (C.D. Cal.):

*Under the circumstances, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and complies with the requirements of due process...The court appoints JND as settlement administrator.*

## 27. Judge Cormac J. Carney

***Gifford v. Pets Global, Inc.,*** (June 24, 2022) No. 21-cv-02136-CJC-MRW (C.D. Cal.):

*The Settlement also proposes that JND Legal Administration act as Settlement Administrator and offers a provisional plan for Class Notice...*

*The proposed notice plan here is designed to reach at least 70% of the class at least two times. The Notices proposed in this matter inform Class Members of the salient terms of the Settlement, the Class to be certified, the final approval hearing and the rights of all parties, including the rights to file objections or to opt-out of the Settlement Class...This proposed notice program provides a fair opportunity for Class Members to obtain full disclosure of the conditions of the Settlement and to make an informed decision regarding the Settlement.*

### 28. Judge David J. Novak

***Brighton Tr. LLC, as Tr. v. Genworth Life & Annuity Ins. Co.,*** (June 3, 2022)
No. 20-cv-240-DJN (E.D. Va.):

*The Court appoints JND Legal Administration LLC ("JND"), a competent firm, as the Settlement Administrator.*

### 29. Judge Donovan W. Frank

***Advance Trust & Life Escrow Serv., LTA v. ReliaStar Life Ins. Co.,*** (June 2, 2022)
No. 18-cv-2863-DWF-ECW (D. Minn.):

*The Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 30. Honorable Philip S. Gutierrez

***Andrews v. Plains All Am. Pipeline, L.P.,*** (May 25, 2022)
No. 15-cv-04113-PSG-JEM (C.D. Cal.):

*Court appoints JND Legal Administration as the Settlement Administrator in this Action...The Court approves, as to form and content, the Mail Notice and the Publication Notice, substantially in the forms attached as Exhibits D, E, and F to the Declaration of Jennifer Keough In Support of Motion for Preliminary Approval of Class Action Settlement and Direction of Notice ("Keough Declaration").*

### 31. Judge Victoria A. Roberts

***Graham v. Univ. of Michigan,*** (March 29, 2022)
No. 21-cv-11168-VAR-EAS (E.D. Mich.):

*The Court has received and reviewed...the proposed notice plan as described in the Declaration of Jennifer Keough...The Court finds that the foregoing program of Class Notice and the manner of its dissemination is sufficient under the circumstances and is reasonably calculated to apprise the Settlement Class of the pendency of this Action and their right to object to the Settlement. The Court further finds that the Class Notice program is reasonable; that it constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and that it meets the requirements of due process and Federal Rule of Civil Procedure 23.*

### 32. Honorable Michael Markman

***DC 16 v. Sutter Health,*** (March 11, 2022)
No. RG15753647 (Cal. Super. Ct.):

*The Court approves and appoints JND Legal Administration ("JND") to serve as the notice provider and directs JND to carry out all duties and responsibilities of providing notice and processing requests for exclusion.*

### 33. Honorable P. Kevin Castel

**Hanks v. Lincoln Life & Annuity Co. of New York,** (February 23, 2022)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court appoints JND Legal Administration LLC ("JND"), a competent firm, as the Settlement Administrator...The form and content of the notices, as well as the manner of dissemination described below, meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

### 34. Judge David G. Campbell

**In re Arizona Theranos, Inc. Litig.,** (February 2, 2022)
No. 16-cv-2138-DGC (D. Ariz.):

*The Court appoints JND Legal Administration ("JND") to serve as Class Administrator and directs JND to carry out all duties and responsibilities of the Class Administrator as specified in the Notice Plan...This approval includes the proposed methods of providing notice, the proposed forms of notice attached as Exhibits B through D to the Declaration of Jennifer M. Keough (Doc. 445-1 – "Keough Decl."), and the proposed procedure for class members to opt-out.*

### 35. Judge William M. Conley

**Bruzek v. Husky Oil Operations Ltd.,** (January 31, 2022)
No. 18-cv-00697 (W.D. Wis.):

*The claims administrator estimates that at least 70% of the class received notice... the court concludes that the parties' settlement is fair, reasonable and adequate under Rule 23(e).*

### 36. Honorable Dana M. Sabraw

**In re Packaged Seafood Prods. Antitrust Litig. (DPP Class),** (January 26, 2022)
No. 15-md-02670 (S.D. Cal.):

*The rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution. Moreover, the contents of the notice satisfactorily informs Settlement Class members of their rights under the Settlement.*

### 37. Honorable Dana M. Sabraw

**In re Packaged Seafood Prods. Antitrust Litig. (EPP Class),** (January 26, 2022)
No. 15-md-02670 (S.D. Cal.):

*Class Counsel retained JND, an experienced notice and claims administrator, to serve as the notice provider and settlement claims administrator.  The Court approves*

*and appoints JND as the Claims Administrator. EPPs and JND have developed an extensive and robust notice program which satisfies prevailing reach standards. JND also developed a distribution plan which includes an efficient and user-friendly claims process with an effective distribution program. The Notice is estimated to reach over 85% of potential class members via notice placements with the leading digital network (Google Display Network), the top social media site (Facebook), and a highly read consumer magazine (People)... The Court approves the notice content and plan for providing notice of the COSI Settlement to members of the Settlement Class.*

### 38. Judge Alvin K. Hellerstein

**Leonard v. John Hancock Life Ins. Co. of NY,** (January 10, 2022)
No. 18-CV-04994 (S.D.N.Y.):

*The Court finds that the manner of distribution of the Notices constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to the Class and complies fully with the requirements of Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution.*

### 39. Honorable Justice Edward Belobaba

**Kalra v. Mercedes-Benz Canada Inc.,** (December 9, 2021)
No. 15-MD-2670 (Ont. Super. Ct.):

*THIS COURT ORDERS that JND Legal Administration is hereby appointed the Settlement Administrator to implement and oversee the Notice Program, the Claims Program, the Honorarium Payment to the Class Representative, and the payment of the Levy to the Class Proceedings Fund.*

### 40. Judge Timothy J. Corrigan

**Levy v. Dolgencorp, LLC,** (December 2, 2021)
No. 20-cv-01037-TJC-MCR (M.D. Fla.):

*No Settlement Class Member has objected to the Settlement and only one Settlement Class Member requested exclusion from the Settlement through the opt-out process approved by this Court...The Notice Program was the best notice practicable under the circumstances. The Notice Program provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed Settlement set forth in the Agreement, to all persons entitled to such notice. The Notice Program fully satisfied the requirements of the Federal Rules of Civil Procedure and the United States Constitution, which include the requirement of due process.*

### 41. Honorable Nelson S. Roman

***Swetz v. GSK Consumer Health, Inc.,*** (November 22, 2021)
No. 20-cv-04731 (S.D.N.Y.):

*The Notice Plan provided for notice through a nationwide press release; direct notice through electronic mail, or in the alternative, mailed, first-class postage prepaid for identified Settlement Class Members; notice through electronic media—such as Google Display Network and Facebook—using a digital advertising campaign with links to the dedicated Settlement Website; and a toll-free telephone number that provides Settlement Class Members detailed information and directs them to the Settlement Website. The record shows, and the Court finds, that the Notice Plan has been implemented in the manner approved by the Court in its Preliminary Approval Order.*

### 42. Honorable James V. Selna

***Herrera v. Wells Fargo Bank, N.A.,*** (November 16, 2021)
No. 18-cv-00332-JVS-MRW (C.D. Cal.):

*On June 8, 2021, the Court appointed JND Legal Administration ("JND") as the Claims Administrator... JND mailed notice to approximately 2,678,266 potential Non-Statutory Subclass Members and 119,680 Statutory Subclass Members. Id. ¶ 5. 90% of mailings to Non-Statutory Subclass Members were deemed delivered, and 81% of mailings to Statutory Subclass Members were deemed delivered. Id. ¶ 9. Follow-up email notices were sent to 1,977,514 potential Non-Statutory Subclass Members and 170,333 Statutory Subclass Members, of which 91% and 89% were deemed delivered, respectively. Id. ¶ 12. A digital advertising campaign generated an additional 5,195,027 views. Id. ¶ 13...Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.*

### 43. Judge Mark C. Scarsi

***Patrick v. Volkswagen Grp. of Am., Inc.,*** (September 18, 2021)
No. 19-cv-01908-MCS-ADS (C.D. Cal.):

*The Court finds that, as demonstrated by the Declaration of Jennifer M. Keough and counsel's submissions, Notice to the Settlement Class was timely and properly effectuated in accordance with Fed. R. Civ. P. 23(e) and the approved Notice Plan set forth in the Court's Preliminary Approval Order. The Court finds that said Notice constitutes the best notice practicable under the circumstances, and satisfies all requirements of Rule 23(e) and due process.*

### 44. Judge Morrison C. England, Jr.

***Martinelli v. Johnson & Johnson,*** (September 27, 2021)
No. 15-cv-01733-MCE-DB (E.D. Cal.):

*The Court appoints JND, a well-qualified and experienced claims and notice administrator, as the Settlement Administrator.*

### 45. Honorable Nathanael M. Cousins

***Malone v. Western Digital Corp.,*** (July 21, 2021)
No. 20-cv-03584-NC (N.D. Cal.):

*The Court hereby appoints JND Legal Administration as Settlement Administrator...The Court finds that the proposed notice program meets the requirements of Due Process under the U.S. Constitution and Rule 23; and that such notice program—which includes individual direct notice to known Settlement Class Members via email, mail, and a second reminder email, a media and Internet notice program, and the establishment of a Settlement Website and Toll-Free Number—is the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto. The Court further finds that the proposed form and content of the forms of the notice are adequate and will give the Settlement Class Members sufficient information to enable them to make informed decisions as to the Settlement Class, the right to object or opt-out, and the proposed Settlement and its terms.*

### 46. Judge Mark H. Cohen

***Pinon v. Mercedes-Benz USA, LLC and Daimler AG,*** (March 29, 2021)
No. 18-cv-3984 (N.D. Ga.):

*The Court finds that the content, format, and method of disseminating the Notice Plan, as set forth in the Motion, the Declaration of the Settlement Administrator (Declaration of Jennifer M. Keough Regarding Proposed Notice Plan) [Doc. 70-7], and the Settlement Agreement, including postcard notice disseminated through direct U.S. Mail to all known Class Members and establishment of a website: (a) constitutes the best notice practicable under the circumstances; (b) are reasonably calculated, under the circumstances, to apprise settlement class members of the pendency of the action, the terms of the proposed Settlement Agreement, and their rights under the proposed Settlement Agreement; (c) are reasonable and constitute due, adequate, and sufficient notice to those persons entitled to receive notice; and (d) satisfies all requirements provided Federal Rule of Civil Procedure 23, the constitutional requirement of due process, and any other legal requirements. The Court further finds that the notices are written in plain language, use simple terminology, and are designated to be readily understandable by the Settlement Class.*

### 47. Honorable Daniel D. Domenico

***Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.,*** (January 29, 2021)
No. 18-cv-01897-DDD-NYW (D. Colo.):

*The court approves the form and contents of the Short-Form and Long Form Notices attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on January 26, 2021...The proposed form and content of the Notices meet the requirements of Federal Rule of Civil Procedure 23(c)(2)(B)...The court approves the retention of JND Legal Administration LLC as the Notice Administrator.*

### 48. Honorable Virginia A. Phillips

***Sonner v. Schwabe N. Am., Inc.,*** (January 25, 2021)
No. 15-cv-01358 VAP (SPx) (C.D. Cal.):

*Following preliminary approval of the settlement by the Court, the settlement administrator provided notice to the Settlement Class through a digital media campaign. (Dkt. 203-5). The Notice explains in plain language what the case is about, what the recipient is entitled to, and the options available to the recipient in connection with this case, as well as the consequences of each option. (Id., Ex. E). During the allotted response period, the settlement administrator received no requests for exclusion and just one objection, which was later withdrawn. (Dkt. 203-1, at 11).*

*Given the low number of objections and the absence of any requests for exclusion, the Class response is favorable overall. Accordingly, this factor also weighs in favor of approval.*

### 49. Honorable R. Gary Klausner

***A.B. v. Regents of the Univ. of California,*** (January 8, 2021)
No. 20-cv-09555-RGK-E (C.D. Cal.):

*The parties intend to notify class members through mail using UCLA's patient records. And they intend to supplement the mail notices using Google banners and Facebook ads, publications in the LA times and People magazine, and a national press release. Accordingly, the Court finds that the proposed notice and method of delivery sufficient and approves the notice.*

### 50. Judge Nathanael M. Cousins

***King v. Bumble Trading Inc.,*** (December 18, 2020)
No. 18-cv-06868-NC (N.D. Cal.):

*Pursuant to the Court's Preliminary Approval Order, the Court appointed JND Settlement Administrators as the Settlement Administrator... JND sent court-approved Email Notices to millions of class members...Overall, approximately 81% of the Settlement Class Members were successfully sent either an Email or Mailed Notice...*

*JND supplemented these Notices with a Press Release which Global Newswire published on July 18, 2020... In sum, the Court finds that, viewed as a whole, the settlement is sufficiently "fair, adequate, and reasonable" to warrant approval.*

### 51. Judge Vernon S. Broderick, Jr.

**In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,** (December 16, 2020) No. 14-md-02542 (S.D.N.Y.):

*I further appoint JND as Claims Administrator. JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement. (Doc. 1115 ¶ 5.) JND also has extensive experience in handling claims administration in the antitrust context. (Id. ¶ 6.) Accordingly, I appoint JND as Claims Administrator.*

### 52. Honorable Laurel Beeler

**Sidibe v. Sutter Health,** (November 5, 2020) No. 12-cv-4854-LB (N.D. Cal.):

*Class Counsel has retained JND Legal Administration ("JND"), an experienced class notice administration firm, to administer notice to the Class. The Court appoints JND as the Class Notice Administrator. JND shall provide notice of pendency of the class action consistent with the procedures outlined in the Keough Declaration.*

### 53. Judge Carolyn B. Kuhl

**Sandoval v. Merlex Stucco Inc.,** (October 30, 2020) No. BC619322 (Cal. Super. Ct.):

*Additional Class Member class members, and because their names and addresses have not yet been confirmed, will be notified of the pendency of this settlement via the digital media campaign outlined by the Keough/JND Legal declaration...the Court approves the Parties selection of JND Legal as the third-party Claims Administrator.*

### 54. Honorable Louis L. Stanton

**Rick Nelson Co. v. Sony Music Ent.,** (September 16, 2020) No. 18-cv-08791 (S.D.N.Y.):

*The parties have designated JND Legal Administration ("JND") as the Settlement Administrator. Having found it qualified, the Court appoints JND as the Settlement Administrator and it shall perform all the duties of the Settlement Administrator as set forth in the Stipulation...The form and content of the Notice, Publication Notice and Email Notice, and the method set forth herein of notifying the Class of the Settlement and its terms and conditions, meet the requirements of Rule 23 of the Federal Rules of*

*Civil Procedure, due process. and any other applicable law, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto.*

## 55. Judge Steven W. Wilson

***Amador v Baca,*** (August 11, 2020)
No. 10-cv-1649 (C.D. Cal.):

*Class Counsel, in conjunction with JND, have also facilitated substantial notice and outreach to the relatively disparate and sometimes difficult to contact class of more than 94,000 individuals, which has resulted in a relatively high claims rate of between 33% and 40%, pending final verification of deficient claims forms. Their conduct both during litigation and after settlement was reached was adequate in all respects, and supports approval of the Settlement Agreement.*

## 56. Judge Stephanie M. Rose

***Swinton v. SquareTrade, Inc.,*** (April 14, 2020)
No. 18-CV-00144-SMR-SBJ (S.D. Iowa):

*This publication notice appears to have been effective. The digital ads were linked to the Settlement Website, and Google Analytics and other measures indicate that, during the Publication Notice Period, traffic to the Settlement Website was at its peak.*

## 57. Judge Joan B. Gottschall

***In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods.,*** (January 3, 2020)
No. 14-cv-10318 (N.D. Ill.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

## 58. Judge Edward M. Chen

***In re MyFord Touch Consumer Litig.,*** (December 17, 2019)
No. 13-cv-3072 (EMC) (N.D. Cal.):

*The Court finds that the Class Notice was the best practicable notice under the circumstances, and has been given to all Settlement Class Members known and reasonably identifiable in full satisfaction of the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process... The Court notes that the reaction of the class was positive: only one person objected to the settlement although, by request of the objector and in the absence of any opposition from the parties, that objection was converted to an opt-out at the hearing.*

### 59. Honorable Steven I. Locke

***Donnenfield v. Petro, Inc.,*** (December 4, 2019)
No. 17-cv-02310 (E.D.N.Y.):

*WHEREAS, the Parties have agreed to use JND Legal Administration ("JND"), an experienced administrator of class action settlements, as the claims administrator for this Settlement and agree that JND has the requisite experience and expertise to serve as claims administrator; The Court appoints JND as the claims administrator for the Settlement.*

### 60. Honorable Amy D. Hogue

***Trepte v. Bionaire, Inc.,*** (November 5, 2019)
No. BC540110 (Cal. Super. Ct.):

*The Court appoints JND Legal Administration as the Class Administrator... The Court finds that the forms of notice to the Settlement Class regarding the pendency of the action and of this settlement, and the methods of giving notice to members of the Settlement Class... constitute the best notice practicable under the circumstances and constitute valid, due, and sufficient notice to all members of the Settlement Class. They comply fully with the requirements of California Code of Civil Procedure section 382, California Civil Code section 1781, California Rules of Court 3.766 and 3.769, the California and United States Constitutions, and other applicable law.*

### 61. Judge Barbara Jacobs Rothstein

***Wright v. Lyft, Inc.,*** (May 29, 2019)
No. 17-cv-23307-MGC 14-cv-00421-BJR (W.D. Wash.):

*The Court also finds that the proposed method of distributing relief to the class is effective. JND Legal Administration ("JND"), an experienced claims administrator, undertook a robust notice program that was approved by this Court...*

### 62. Judge J. Walton McLeod

***Boskie v. Backgroundchecks.com,*** (May 17, 2019)
No. 2019CP3200824 (S.C. C.P.):

*The Court appoints JND Legal Administration as Settlement Administrator...The Court approves the notice plans for the HomeAdvisor Class and the Injunctive Relief Class as set forth in the declaration of JND Legal Administration. The Court finds the class notice fully satisfies the requirements of due process, the South Carolina Rules of Civil Procedure. The notice plan for the HomeAdvisor Class and Injunctive Relief Class constitutes the best notice practicable under the circumstances of each Class.*

### 63. Honorable James Donato

*In re Resistors Antitrust Litig.,* (May 2, 2019)
No. 15-cv-03820-JD (N.D. Cal.):

*The Court approves as to form and content the proposed notice forms, including the long form notice and summary notice, attached as Exhibits B and D to the Second Supplemental Declaration of Jennifer M. Keough Regarding Proposed Notice Program (ECF No. 534-3). The Court further finds that the proposed plan of notice – including Class Counsel's agreement at the preliminary approval hearing for the KOA Settlement that direct notice would be effectuated through both U.S. mail and electronic mail to the extent electronic mail addresses can be identified following a reasonable search – and the proposed contents of these notices, meet the requirements of Rule 23 and due process, and are the best notice practicable under the circumstances and shall constitute due and sufficient notice to all persons entitled thereto.The Court appoints the firm of JND Legal Administration LLC as the Settlement Administrator.*

### 64. Honorable Leigh Martin May

*Bankhead v. First Advantage Background Serv. Corp.,* (April 30, 2019)
No. 17-cv-02910-LMM-CCB (N.D. Ga.):

*The Court appoints JND Legal Administration as Settlement Administrator… The Court approves the notice plans for the Class as set forth in the declaration of the JND Legal Administration. The Court finds that class notice fully satisfies the requirements of due process of the Federal Rules of Civil Procedure. The notice plan constitutes the best notice practicable under the circumstances of the Class.*

### 65. Honorable P. Kevin Castel

*Hanks v. Lincoln Life & Annuity Co. of New York,* (April 23, 2019)
No. 16-cv-6399 PKC (S.D.N.Y.):

*The Court approves the form and contents of the Short-Form Notice and Long-Form Notice (collectively, the "Notices") attached as Exhibits A and B, respectively, to the Declaration of Jennifer M. Keough, filed on April 2, 2019, at Docket No. 120…The form and content of the notices, as well as the manner of dissemination described below, therefore meet the requirements of Rule 23 and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto…the Court approves the retention of JND Legal Administration LLC ("JND") as the Notice Administrator.*

### 66. Judge Kathleen M. Daily

***Podawiltz v. Swisher Int'l, Inc.,*** (February 7, 2019)
No. 16CV27621 (Or. Cir. Ct.):

*The Court appoints JND Legal Administration as settlement administrator…The Court finds that the notice plan is reasonable, that it constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and that it meets the requirements of due process, ORCP 32, and any other applicable laws.*

### 67. Honorable Kenneth J. Medel

***Huntzinger v. Suunto Oy,*** (December 14, 2018)
No. 37-2018-27159 (CU) (BT) (CTL) (Cal. Super. Ct.):

*The Court finds that the Class Notice and the Notice Program implemented pursuant to the Settlement Agreement and Preliminary Approval Order constituted the best notice practicable under the circumstances to all persons within the definition of the Class and fully complied with the due process requirement under all applicable statutes and laws and with the California Rules of Court.*

### 68. Honorable Thomas M. Durkin

***In re Broiler Chicken Antitrust Litig.,*** (November 16, 2018)
No. 16-cv-8637 (N.D. Ill.):

*The notice given to the Class, including individual notice to all members of the Class who could be identified through reasonable efforts, was the best notice practicable under the circumstances. Said notice provided due and adequate notice of the proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to all persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(1) of the Federal Rules of Civil Procedure and the requirements of due process.*

### 69. Judge Maren E. Nelson

***Granados v. Cnty. of Los Angeles,*** (October 30, 2018)
No. BC361470 (Cal. Super. Ct.):

*JND's Media Notice plan is estimated to have reached 83% of the Class. The overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at ¶12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 70. Judge Maren E. Nelson

***McWilliams v. City of Long Beach,*** (October 30, 2018)
No. BC261469 (Cal. Super. Ct.):

*It is estimated that JND's Media Notice plan reached 88% of the Class and the overall reach of the Notice Program was estimated to be over 90% of the Class. (Keough Decl., at 12.). Based upon the notice campaign outlined in the Keough Declaration, it appears that the notice procedure was aimed at reaching as many class members as possible. The Court finds that the notice procedure satisfies due process requirements.*

### 71. Judge Cheryl L. Pollak

***Dover v. British Airways, PLC (UK),*** (October 9, 2018)
No. 12-cv-5567 (E.D.N.Y.), in response to two objections:

*JND Legal Administration was appointed as the Settlement Claims Administrator, responsible for providing the required notices to Class Members and overseeing the claims process, particularly the processing of Cash Claim Forms...the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate, and reasonable.*

### 72. Judge Edward J. Davila

***In re Intuit Data Litig.,*** (October 4, 2018)
No. 15-CV-1778-EJD (N.D. Cal.):

*The Court appoints JND Legal Administration ("JND") to serve as the Settlement Administrator...The Court approves the program for disseminating notice to Class Members set forth in the Agreement and Exhibit A thereto (herein, the "Notice Program"). The Court approves the form and content of the proposed forms of notice, in the forms attached as Attachments 1 through 3 to Exhibit A to the Agreement. The Court finds that the proposed forms of notice are clear and readily understandable by Class Members. The Court finds that the Notice Program, including the proposed forms of notice, is reasonable and appropriate and satisfies any applicable due process and other requirements, and is the only notice to the Class Members of the Settlement that is required.*

### 73. Honorable Otis D. Wright, II

***Chester v. The TJX Cos.,*** (May 15, 2018)
No. 15-cv-01437 (C.D. Cal.):

*... the Court finds and determines that the Notice to Class Members was complete and constitutionally sound, because individual notices were mailed and/or emailed to all Class Members whose identities and addresses are reasonably known to the Parties, and Notice was published in accordance with this Court's Preliminary Approval Order, and such notice was the best notice practicable ...*

### 74. Honorable Susan J. Dlott

***Linneman v. Vita-Mix Corp.,*** (May 3, 2018)
No. 15-cv-01437 (C.D. Cal.):

*JND Legal Administration, previously appointed to supervise and administer the notice process, as well as oversee the administration of the Settlement, appropriately issued notice to the Class as more fully set forth in the Agreement, which included the creation and operation of the Settlement Website and more than 3.8 million mailed or emailed notices to Class Members. As of March 27, 2018, approximately 300,000 claims have been filed by Class Members, further demonstrating the success of the Court-approved notice program.*

### 75. Honorable David O. Carter

***Hernandez v. Experian Info. Sols., Inc.,*** (April 6, 2018)
No. 05-cv-1070 (C.D. Cal.):

*The Court finds, however, that the notice had significant value for the Class, resulting in over 200,000 newly approved claims—a 28% increase in the number of Class members who will receive claimed benefits—not including the almost 100,000 Class members who have visited the CCRA section of the Settlement Website thus far and the further 100,000 estimated visits expected through the end of 2019. (Dkt. 1114-1 at 3, 6). Furthermore, the notice and claims process is being conducted efficiently at a total cost of approximately $6 million, or $2.5 million less than the projected 2009 Proposed Settlement notice and claims process, despite intervening increases in postage rates and general inflation. In addition, the Court finds that the notice conducted in connection with the 2009 Proposed Settlement has significant ongoing value to this Class, first in notifying in 2009 over 15 million Class members of their rights under the Fair Credit Reporting Act (the ignorance of which for most Class members was one area on which Class Counsel and White Objectors' counsel were in agreement), and because of the hundreds of thousands of claims submitted in response to that notice, and processed and validated by the claims administrator, which will be honored in this Settlement.*

### 76. Judge Ann D. Montgomery

***In re Wholesale Grocery Prod. Antitrust Litig.,*** (November 16, 2017)
No. 9-md-2090 (ADM) (TNL) (D. Minn.):

*Notice provider and claims administrator JND Legal Administration LLC provided proof that mailing conformed to the Preliminary Approval Order in a declaration filed contemporaneously with the Motion for Final Approval of Class Settlement. This notice program fully complied with Fed. R. Civ. P. 23, satisfied the requirements of due process, is the best notice practicable under the circumstances, and constituted due and adequate notice to the Class of the Settlement, Final Approval Hearing and other matters referred to in the Notice.*



# IV.

# CASE EXPERIENCE

Ms. Keough has played an important role in hundreds of matters throughout her career. A partial listing of her notice and claims administration case work is provided below.

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Aaland v. Contractors.com and One Planet Ops* | 19-2-242124 SEA | Wash. Super. Ct. |
| *A.B. v. Regents of the Univ. of California* | 20-cv-09555-RGK-E | C.D. Cal. |
| *Aberin v. Am. Honda Motor Co., Inc.* | 16-cv-04384-JST | N.D. Cal. |
| *Achziger v. IDS Prop. Cas. Ins.* | 14-cv-5445 | W.D. Wash. |
| *Adair v. Michigan Pain Specialist, PLLC* | 14-28156-NO | Mich. Cir. |
| *Adkins v. EQT Prod. Co.* | 10-cv-00037-JPJ-PMS | W.D. Va. |
| *Advance Trust & Life Escrow Serv., LTA v. PHL Variable Ins. Co.* | 18-cv-03444 (MKV) | S.D.N.Y. |
| *Advance Trust & Life Escrow Serv., LTA v. ReliaStar Life Ins. Co.* | 18-cv-2863-DWF-ECW | D. Minn. |
| *Advance Trust & Life Escrow Serv., LTA v. Sec. Life of Denver Ins. Co.* | 18-cv-01897-DDD-NYW | D. Colo. |
| *Ahmed v. HSBC Bank USA, NA* | 15-cv-2057-FMO-SPx | N.D. Ill. |
| *Alexander v. District of Columbia* | 17-1885 (ABJ) | D.D.C. |
| *Allagas v. BP Solar Int'l, Inc.* | 14-cv-00560 (SI) | N.D. Cal. |
| *Allen v. Apache Corp.* | 22-cv-00063-JAR | E.D. Okla. |
| *Amador v. Baca* | 10-cv-1649 | C.D. Cal. |
| *Amin v. Mercedes-Benz USA, LLC* | 17-cv-01701-AT | N.D. Ga. |
| *Armstead v. VGW Malta Ltd.* | 2022-CI-00553 | Ky. Cir. Ct. |
| *Andrews v. Plains All Am. Pipeline, L.P.* | 15-cv-04113-PSG-JEM | C.D. Cal. |
| *Anger v. Accretive Health* | 14-cv-12864 | E.D. Mich. |
| *Arnold v. State Farm Fire and Cas. Co.* | 17-cv-148-TFM-C | S.D. Ala. |
| *Arthur v. Sallie Mae, Inc.* | 10-cv-00198-JLR | W.D. Wash. |
| *Atkins v. Nat'l. Gen. Ins. Co.* | 16-2-04728-4 | Wash. Super. Ct. |
| *Atl. Ambulance Corp. v. Cullum & Hitti* | MRS-L-264-12 | N.J. Super. Ct. |
| *Backer Law Firm, LLC v. Costco Wholesale Corp.* | 15-cv-327 (SRB) | W.D. Mo. |
| *Baker v. Equity Residential Mgmt., LLC* | 18-cv-11175 | D. Mass. |
| *Bankhead v. First Advantage Background Servs. Corp.* | 17-cv-02910-LMM-CCB | N.D. Ga. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Banks v. R.C. Bigelow, Inc.* | 20-cv-06208-DDP (RAOx) | C.D. Cal. |
| *Barbanell v. One Med. Grp., Inc.* | CGC-18-566232 | Cal. Super. Ct. |
| *Barrios v. City of Chicago* | 15-cv-02648 | N.D. Ill. |
| *Beaucage v. Ticketmaster Canada Holdings, ULC* | CV-20-00640518-00CP | Ont. Super. Ct. |
| *Belanger v. RoundPoint Mortg. Servicing* | 17-cv-23307-MGC | S.D. Fla. |
| *Belin v. Health Ins. Innovations, Inc.* | 19-cv-61430-AHS | S.D. Fla |
| *Beltran v. InterExchange, Inc.* | 14-cv-3074 | D. Colo. |
| *Benson v. DoubleDown Interactive, LLC* | 18-cv-00525-RSL | W.D. Wash. |
| *Bland v. Premier Nutrition Corp.* | RG19-002714 | Cal. Super. Ct. |
| *Blankenship v. HAPO Cmty. Credit Union* | 19-2-00922-03 | Wash. Super. Ct. |
| *Blasi v. United Debt Serv., LLC* | 14-cv-0083 | S.D. Ohio |
| *Bollenbach Enters. Ltd. P'ship. v. Oklahoma Energy Acquisitions* | 17-cv-134 | W.D. Okla. |
| *Boskie v. Backgroundchecks.com* | 2019CP3200824 | S.C. C.P. |
| *Botts v. Johns Hopkins Univ.* | 20-cv-01335-JRR | D. Md. |
| *Boyd v. RREM Inc., d/b/a Winston* | 2019-CH-02321 | Ill. Cir. Ct. |
| *Bradley v. Honecker Cowling LLP* | 18-cv-01929-CL | D. Or. |
| *Brasch v. K. Hovnanian Enter. Inc.* | 30-2013-00649417-CU-CD-CXC | Cal. Super. Ct. |
| *Brighton Tr. LLC, as Tr. v. Genworth Life & Annuity Ins. Co.* | 20-cv-240-DJN | E.D. Va. |
| *Brna v. Isle of Capri Casinos* | 17-cv-60144 (FAM) | S.D. Fla. |
| *Bromley v. SXSW LLC* | 20-cv-439 | W.D. Tex. |
| *Browning v. Yahoo!* | C04-01463 HRL | N.D. Cal. |
| *Bruzek v. Husky Oil Operations Ltd.* | 18-cv-00697 | W.D. Wis. |
| *Burnett v. Nat'l Assoc. of Realtors* | 19-CV-00332-SRB | W.D. Mo. |
| *Careathers v. Red Bull N. Am., Inc.* | 13-cv-369 (KPF) | S.D.N.Y. |
| *Carillo v. Wells Fargo Bank, N.A.* | 18-cv-03095 | E.D.N.Y. |
| *Carmack v. Amaya Inc.* | 16-cv-1884 | D.N.J. |
| *Cavallaro v. USAA* | 20-CV-00414-TSB | S.D. Ohio |
| *Cecil v. BP Am. Prod. Co.* | 16-cv-410 (RAW) | E.D. Okla. |
| *Chapman v. GEICO Cas. Co.* | 37-2019-00000650-CU-CR-CTL | Cal. Super. Ct. |
| *Chapman v. Gen. Motors, LLC* | 19-CV-12333-TGB-DRG | E.D. Mich. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| City of Philadelphia v. Bank of Am. Corp. | 19-CV-1608 (JMF) | S.D.N.Y. |
| Chester v. TJX Cos. | 15-cv-1437 (ODW) (DTB) | C.D. Cal. |
| Chieftain Royalty Co. v. BP Am. Prod. Co. | 18-cv-00054-JFH-JFJ | N.D. Okla. |
| Chieftain Royalty Co. v. Marathon Oil Co. | 17-cv-334 | E.D. Okla. |
| Chieftain Royalty Co. v. Newfield Exploration Mid-Continent Inc. | 17-cv-00336-KEW | E.D. Okla. |
| Chieftain Royalty Co. v. SM Energy Co. | 18-cv-01225-J | W.D. Okla. |
| Chieftain Royalty Co. v. XTO Energy, Inc. | 11-cv-00029-KEW | E.D. Okla. |
| Christopher v. Residence Mut. Ins. Co. | CIVDS1711860 | Cal. Super. Ct. |
| City of Los Angeles v. Bankrate, Inc. | 14-cv-81323 (DMM) | S.D. Fla. |
| Cline v. Sunoco, Inc. | 17-cv-313-JAG | E.D. Okla. |
| Cline v. TouchTunes Music Corp. | 14-CIV-4744 (LAK) | S.D.N.Y. |
| Cobell v. Salazar | 96-cv-1285 (TFH) | D.D.C. |
| Cohen v. Subaru Corp. | 20-cv-8442-JHR-AMD | D.N.J. |
| Common Ground Healthcare Coop. v. United States | 17-877C | F.C.C. |
| Condo. at Northpointe Assoc. v. State Farm Fire & Cas. Co. | 16-cv-01273 | N.D. Ohio |
| Cooper Clark Found. v. Oxy USA | 2017-CV-000003 | D. Kan. |
| Corker v. Costco Wholesale Corp. | 19-cv-00290-RSL | W.D. Wash. |
| Corona v. Sony Pictures Entm't Inc. | 14−CV−09600−RGK−E | C.D. Cal. |
| Courtney v. Avid Tech., Inc. | 13-cv-10686-WGY | D. Mass. |
| Cowan v. Devon Energy Corp. | 22-cv-00220-JAR | E.D. Okla. |
| DC 16 v. Sutter Health | RG15753647 | Cal. Super. Ct. |
| D'Amario v. Univ. of Tampa | 20-cv-03744 | S.D.N.Y. |
| Dahy v. FedEx Ground Package Sys., Inc. | GD-17-015638 | C.P. Pa. |
| Dargoltz v. Fashion Mkting & Merch. Grp. | 2021-009781-CA-01 | Fla. Cir. Ct. |
| DASA Inv., Inc. v. EnerVest Operating LLC | 18-cv-00083-SPS | E.D. Okla. |
| Davis v. Carfax, Inc. | CJ-04-1316L | D. Okla. |
| Davis v. State Farm Ins. | 19-cv-466 | W.D. Ky. |
| DDL Oil & Gas, LLC v. Tapstone Energy, LLC | CJ-2019-17 | D. Okla. |
| DeCapua v. Metro. Prop. and Cas. Ins. Co. | 18-cv-00590 | D.R.I. |
| DeFrees v. Kirkland and U.S. Aerospace, Inc. | CV 11-04574 | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Deitrich v. Enerfin Res. I Ltd. P'ship* | 20-cv-084-KEW | E.D. Okla. |
| *de Lacour v. Colgate-Palmolive Co.* | 16-cv-8364-KW | S.D.N.Y. |
| *Delkener v. Cottage Health Sys.* | 30-2016-847934 (CU) (NP) (CXC) | Cal. Super. Ct. |
| *DeMarco v. AvalonBay Communities, Inc.* | 15-cv-00628-JLL-JAD | D.N.J. |
| *Diel v. Salal Credit Union* | 19-2-10266-7 KNT | Wash. Super. Ct. |
| *Dinsmore v. ONEOK Field Serv. Co., L.L.C.* | 22-cv-00073-GKF-CDL | N.D. Okla. |
| *Dinsmore v. Phillips 66 Co.* | 22-CV-44-JFH | E.D. Okla. |
| *Djoric v. Justin Brands, Inc.* | BC574927 | Cal. Super. Ct. |
| *Doan v. CORT Furniture Rental Corp.* | 30-2017-00904345-CU-BT-CXC | Cal. Super. Ct. |
| *Doan v. State Farm Gen. Ins. Co.* | 1-08-cv-129264 | Cal. Super. Ct. |
| *Dobbins v. Bank of Am., N.A.* | 17-cv-00540 | D. Md. |
| *Doe v. California Dep't. of Pub. Health* | 20STCV32364 | Cal. Super. Ct. |
| *Doe v. MasterCorp, Inc.* | 24-cv-678 | E.D. Va. |
| *Doe v. MindGeek USA Incorp.* | 21-cv-00338 | C.D. Cal. |
| *Donnenfield v. Petro, Inc.* | 17-cv-02310 | E.D.N.Y. |
| *Dougherty v. Barrett Bus. Serv., Inc.* | 17-2-05619-1 | Wash. Super. Ct. |
| *Doughtery v. QuickSIUS, LLC* | 15-cv-06432-JHS | E.D. Pa. |
| *Dover v. British Airways, PLC (UK)* | 12-cv-5567 | E.D.N.Y. |
| *Duarte v. US Metals Ref. Co.* | 17-cv-01624 | D.N.J. |
| *Dwyer v. Snap Fitness, Inc.* | 17-cv-00455-MRB | S.D. Ohio |
| *Dye v. Richmond Am. Homes of California, Inc.* | 30-2013-00649460-CU-CD-CXC | Cal. Super. Ct. |
| *Edwards v. Arkansas Cancer Clinic, P.A.* | 35CV-18-1171 | Ark. Cir. Ct. |
| *Edwards v. Hearst Commc'ns., Inc.* | 15-cv-9279 (AT) (JLC) | S.D.N.Y. |
| *Elec. Welfare Trust Fund v. United States* | 19-353C | Fed. Cl. |
| *Engquist v. City of Los Angeles* | BC591331 | Cal. Super. Ct. |
| *Expedia Hotel Taxes & Fees Litig.* | 05-2-02060-1 (SEA) | Wash. Super. Ct. |
| *Express Freight Int'l v. Hino Motors, LTD.* | 22-cv-22483 | S.D. Fla. |
| *Family Med. Pharmacy LLC v. Impax Labs., Inc.* | 17-cv-53 | S.D. Ala. |
| *Family Med. Pharmacy LLC v. Trxade Grp. Inc.* | 15-cv-00590-KD-B | S.D. Ala. |
| *Farmer v. Bank of Am.* | 11-cv-00935-OLG | W.D. Tex. |
| *Farris v. Carlinville Rehab and Health Care Ctr.* | 2019CH42 | Ill. Cir. Ct. |
| *Ferrando v. Zynga Inc.* | 22-cv-00214-RSL | W.D. Wash. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Fielder v. Mechanics Bank | BC721391 | Cal. Super. Ct. |
| Finerman v. Marriott Ownership Resorts, Inc. | 14-cv-1154-J-32MCR | M.D. Fla. |
| Fishon v. Premier Nutrition Corp. | 16-CV-06980-RS | N.D. Cal. |
| Fitzgerald v. Lime Rock Res. | CJ-2017-31 | Okla. Dist. Ct. |
| Folweiler v. Am. Family Ins. Co. | 16-2-16112-0 | Wash. Super. Ct. |
| Fosbrink v. Area Wide Protective, Inc. | 17-cv-1154-T-30CPT | M.D. Fla. |
| Franklin v. Equity Residential | 651360/2016 | N.Y. Super. Ct. |
| Frederick v. ExamSoft Worldwide, Inc. | 2021L001116 | Ill. Cir. Ct. |
| Frost v. LG Elec. MobileComm U.S.A., Inc. | 37-2012-00098755-CU-PL-CTL | Cal. Super. Ct. |
| FTC v. AT&T Mobility, LLC | 14CV4785 | N.D. Cal. |
| FTC v. Consumerinfo.com | SACV05-801 AHS (MLGx) | C.D. Cal. |
| FTC v. Fashion Nova, LLC | C4759 | |
| FTC v. Reckitt Benckiser Grp. PLC | 19CV00028 | W.D. Va. |
| Gagnon v. Gen. Motors of Canada Co. and Gen. Motors LLC | 500-06-000687-141 and 500-06-000729-158 | Quebec Super. Ct. |
| Gehrich v. Howe | 37-2018-00041295-CU-SL-CTL | N.D. Ga. |
| Gibson v. Nat'l Assoc. of Realtors | 23-cv-00788-SRB | W.D. Mo. |
| Gifford v. Pets Global, Inc. | 21-cv-02136-CJC-MRW | C.D. Cal. |
| Gomez v. Mycles Cycles, Inc. | 37-2015-00043311-CU-BT-CTL | Cal. Super. Ct. |
| Gonzalez v. Banner Bank | 20-cv-05151-SAB | E.D. Wash. |
| Gonzalez-Tzita v. City of Los Angeles | 16-cv-00194 | C.D. Cal. |
| Graf v. Orbit Machining Co. | 2020CH03280 | Ill. Cir. Ct. |
| Gragg v. Orange Cab Co. | C12-0576RSL | W.D. Wash. |
| Graham v. Univ. of Michigan | 21-cv-11168-VAR-EAS | E.D. Mich. |
| Granados v. Cnty. of Los Angeles | BC361470 | Cal. Super., Ct. |
| Grey Fox, LLC v. Plains All Am. Pipeline, L.P. | 16-cv-03157-PSG-JEM | C.D. Cal. |
| Gudz v. Jemrock Realty Co., LLC | 603555/2009 | N.Y. Super. Ct. |
| Gupta v. Aeries Software, Inc. | 20-cv-00995 | C.D. Cal. |
| Gutierrez, Jr. v. Amplify Energy Corp. | 21-cv-01628-DOC-JDE | C.D. Cal. |
| Hahn v. Hanil Dev., Inc. | BC468669 | Cal. Super. Ct. |
| Haines v. Washington Trust Bank | 20-2-10459-1 | Wash. Super. Ct. |
| Halperin v. YouFit Health Clubs | 18-cv-61722-WPD | S.D. Fla. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Hanks v. Lincoln Life & Annuity Co. of New York* | 16-cv-6399 PKC | S.D.N.Y. |
| *Harrington v. Wells Fargo Bank NA* | 19-cv-11180-RGS | D. Mass. |
| *Harris v. Chevron U.S.A., Inc.* | 15-cv-00094 | W.D. Okla. |
| *Hartnett v. Washington Fed., Inc.* | 21-cv-00888-RSM-MLP | W.D. Wash. |
| *Hawker v. Pekin Ins. Co.* | 20-cv-00830 | S.D. Ohio |
| *Hay Creek Royalties, LLC v. Mewbourne Oil Co.* | CIV-20-1199-F | W.D. Okla. |
| *Hay Creek Royalties, LLC v. Roan Res. LLC* | 19-cv-00177-CVE-JFJ | N.D. Okla. |
| *Health Republic Ins. Co. v. United States* | 16-259C | F.C.C. |
| *Heathcote v. SpinX Games Ltd.* | 20-cv-01310 | W.D. Wis. |
| *Henry Price Trust v. Plains Mkting* | 19-cv-00390-RAW | E.D. Okla. |
| *Hernandez v. Experian Info. Sols., Inc.* | 05-cv-1070 (DOC) (MLGx) | C.D. Cal. |
| *Hernandez v. Wells Fargo Bank, N.A.* | 18-cv-07354 | N.D. Cal. |
| *Herrera v. Wells Fargo Bank, N.A.* | 18-cv-00332-JVS-MRW | C.D. Cal. |
| *Hicks v. State Farm Fire and Cas. Co.* | 14-cv-00053-HRW-MAS | E.D. Ky. |
| *Hill v. Valli Produce of Evanston* | 2019CH13196 | Ill. Cir. Ct. |
| *Hill-Green v. Experian Info. Solutions, Inc.* | 19-cv-708-MHL | E.D. Va. |
| *Holmes v. LM Ins. Corp.* | 19-cv-00466 | M.D. Tenn. |
| *Holt v. Murphy Oil USA, Inc.* | 17-cv-911 | N.D. Fla. |
| *Hoog v. PetroQuest Energy, L.L.C.* | 16-cv-00463-KEW | E.D. Okla. |
| *Horton v. Cavalry Portfolio Serv., LLC and Krejci v. Cavalry Portfolio Serv., LLC* | 13-cv-0307-JAH-WVG and 16-cv-00211-JAH-WVG | C.D. Cal. |
| *Howell v. Checkr, Inc.* | 17-cv-4305 | N.D. Cal. |
| *Hoyte v. Gov't of D.C.* | 13-cv-00569 | D.D.C. |
| *Hufford v. Maxim Inc.* | 19-cv-04452-ALC-RWL | S.D.N.Y. |
| *Huntzinger v. Suunto Oy* | 37-2018-27159 (CU) (BT) (CTL) | Cal. Super. Ct. |
| *In re Air Cargo Shipping Servs. Antitrust Litig.* | 06-md-1775 (JG) (VVP) | E.D.N.Y. |
| *In re Am. Express Fin. Advisors Sec. Litig.* | 04 Civ. 1773 (DAB) | S.D.N.Y. |
| *In re AMR Corp. (Am. Airlines Bankr.)* | 1-15463 (SHL) | S.D.N.Y. |
| *In re Arizona Theranos, Inc. Litig.* | 16-cv-2138-DGC | D. Ariz. |
| *In re Auction Houses Antitrust Litig.* | 00-648 (LAK) | S.D.N.Y. |
| *In re AXA Equitable Life Ins. Co. COI Litig.* | 16-cv-740 (JMF) | S.D.N.Y. |
| *In re Banner Health Data Breach Litig.* | 16-cv-02696 | D. Ariz. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *In re Blue Cross Blue Shield Antitrust Litig.* | 13-CV-20000-RDP | N.D. Ala. |
| *In re Broiler Chicken Antitrust Litig.* | 16-cv-08637 | N.D. Ill. |
| *In re Chaparral Energy, Inc.* | 20-11947 (MFW) | D. Del. Bankr. |
| *In re Classmates.com* | C09-45RAJ | W.D. Wash. |
| *In re Equifax Inc. Customer Data Sec. Breach Litig.* | 17-md-2800-TWT | N.D. Ga. |
| *In re Farm-raised Salmon and Salmon Prod. Antitrust Litig.* | 19-cv-21551-CMA | S.D. Fla. |
| *In re Gen. Motors LLC Ignition Switch Litig.* | 14-md-2543 | S.D.N.Y. |
| *In re Glob. Tel*Link Corp. Litig.* | 14-CV-5275 | W.D. Ark. |
| *In re Guess Outlet Store Pricing* | JCCP No. 4833 | Cal. Super. Ct. |
| *In re Intuit Data Litig.* | 15-CV-1778-EJD | N.D. Cal. |
| *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig. (Indirect-Purchasers)* | 14-md-02542 | S.D.N.Y. |
| *In re LIBOR-Based Fin. Instruments Antitrust Litig.* | 11-md-2262 (NRB) | S.D.N.Y. |
| *In re Local TV Advert. Antitrust Litig.* | MDL No. 2867 | N.D. Ill. |
| *In re MacBook Keyboard Litig.* | 18-cv-02813-EDJ | N.D. Cal. |
| *In re Mercedes-Benz Emissions Litig.* | 16-cv-881 (KM) (ESK) | D.N.J. |
| *In re MyFord Touch Consumer Litig.* | 13-cv-3072 (EMC) | N.D. Cal. |
| *In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.* | 14-cv-10318 | N.D. Ill. |
| *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* | 2179 (MDL) | E.D. La. |
| *In re Packaged Seafood Products Antitrust Litig. (DPP and EPP Class)* | 15-md-02670 | S.D. Cal. |
| *In re PHH Lender Placed Ins. Litig.* | 12-cv-1117 (NLH) (KMW) | D.N.J. |
| *In re Pokémon Go Nuisance Litig.* | 16-cv-04300 | N.D. Cal. |
| *In re Polyurethane Foam Antitrust Litig.* | 10-md-196 (JZ) | N.D. Ohio |
| *In re Pre-Filled Propane Tank Antitrust Litig.* | 14-md-02567 | W.D. Mo. |
| *In re Processed Egg Prod. Antitrust Litig.* | 08-MD-02002 | E.D. Pa. |
| *In re Resistors Antitrust Litig.* | 15-cv-03820-JD | N.D. Cal. |
| *In re Ripple Labs Inc. Litig.* | 18-cv-06753-PJH | N.D. Cal. |
| *In re Rockwell Med. Inc. Stockholder Derivative Litig.* | 19-cv-02373 | E.D. N.Y. |
| *In re Sheridan Holding Co. I, LLC* | 20-31884 (DRJ) | Bankr. S.D. Tex. |

| CASE NAME | CASE NUMBER | LOCATION |
| --- | --- | --- |
| *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.* | 13-md-2441 | D. Minn. |
| *In re Subaru Battery Drain Prods. Liab. Litig.* | 20-cv-03095-JHR-MJS | D.N.J. |
| *In re The Engle Trust Fund* | 94-08273 CA 22 | Fla. 11th Cir. Ct. |
| *In re TransUnion Rental Screening Sol. Inc. FCRA Litig.* | 20-md-02933-JPB | N.D. Ga. |
| *In re Unit Petroleum Co.* | 20-32738 (DRJ) | Bankr. S.D. Tex. |
| *In re Volkswagen "Clean Diesel" Mktg., Sales Practice and Prods. Liab. Litig.* | MDL 2672 CRB | N.D. Cal. |
| *In re Washington Mut. Inc. Sec. Litig.* | 8-md-1919 (MJP) | W.D. Wash. |
| *In re Webloyalty.com, Inc. Mktg. & Sales Practices Litig.* | 06-11620-JLT | D. Mass. |
| *In re Wholesale Grocery Prod. Antitrust Litig.* | 9-md-2090 (ADM) (TNL) | D. Minn. |
| *In re Yahoo! Inc. Sec. Litig.* | 17-cv-373 | N.D. Cal. |
| *In the Matter of the Complaint of Dordellas Finance Corp.* | 22-cv-02153-DOC-JDE | C.D. Cal. |
| *James v. PacifiCorp.* | 20cv33885 | Or. Cir. Ct. |
| *Jerome v. Elan 99, LLC* | 2018-02263 | Tx. Dist. Ct. |
| *Jet Capital Master Fund L.P. v. HRG Grp. Inc.* | 21-cv-552-jdp | W.D. Wis. |
| *Jeter v. Bullseye Energy, Inc.* | 12-cv-411 (TCK) (PJC) | N.D. Okla. |
| *Johnson v. Hyundai Capital Am.* | BC565263 | Cal. Super. Ct. |
| *Johnson v. MGM Holdings, Inc.* | 17-cv-00541 | W.D. Wash. |
| *Johnston v. Camino Natural Res., LLC* | 19-cv-02742-CMA-SKC | D. Colo. |
| *Jones v. USAA Gen. Indem. Co.* | D01CI200009724 | D. Neb. |
| *Jordan v. WP Co. LLC, d/b/a The Washington Post* | 20-cv-05218 | N.D. Cal. |
| *Kain v. Economist Newspaper NA, Inc.* | 21-cv-11807-MFL-CI | E.D. Mich. |
| *Kalra v. Mercedes-Benz Canada Inc.* | CV-16-550271-00CP | Ont. Super. Ct. |
| *Kennedy v. McCarthy* | 16-cv-2010-CSH | D. Conn. |
| *Kent v. R.L. Vallee, Inc.* | 617-6-15 | D. Vt. |
| *Kernen v. Casillas Operating LLC* | 18-cv-00107-JD | W.D. Okla. |
| *Khona v. Subaru of Am., Inc.* | 19-cv-09323-RMB-AMD | D.N.J. |
| *Kin-Yip Chun v. Fluor Corp.* | 8-cv-01338-X | N.D. Tex. |
| *King v. Bumble Trading Inc.* | 18-cv-06868-NC | N.D. Cal. |
| *Kissel v. Code 42 Software Inc.* | 15-1936 (JLS) (KES) | C.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Kokoszki v. Playboy Enter., Inc.* | 19-cv-10302 | E.D. Mich. |
| *Komesar v. City of Pasadena* | BC 677632 | Cal. Super. Ct. |
| *Kommer v. Ford Motor Co.* | 17-cv-00296-LEK-DJS | N.D.N.Y. |
| *Konecky v. Allstate* | CV-17-10-M-DWM | D. Mont. |
| *Krueger v. Ameriprise Fin., Inc.* | 11-cv-02781 (SRN/JSM) | D. Minn. |
| *Kunneman Props. LLC v. Marathon Oil Co.* | 17-cv-00456-GKF-JFJ | N.D. Okla. |
| *Lambert v. Navy Fed. Credit Union* | 19-cv-00103-LO-MSN | E.D. Va. |
| *Langan v. Johnson & Johnson Consumer Co.* | 13-cv-01471 | D. Conn. |
| *Langer v. CME Grp.* | 2014CH00829 | Ill. Cir. Ct. |
| *Larson v. Allina Health Sys.* | 17-cv-03835 | D. Minn. |
| *Lee v. Hertz Corp., Dollar Thrifty Auto. Grp. Inc.* | CGC-15-547520 | Cal. Super. Ct. |
| *Lee v. PetroQuest Energy, L.L.C.* | 16-cv-00516-KEW | E.D. Okla. |
| *Leonard v. John Hancock Life Ins. Co. of NY* | 18-CV-04994 | S.D.N.Y. |
| *Lerman v. Apple Inc* | 15-cv-07381 | E.D.N.Y. |
| *Levy v. Dolgencorp, LLC* | 20-cv-01037-TJC-MCR | M.D. Fla. |
| *Linderman v. City of Los Angeles* | BC650785 | Cal. Super. Ct. |
| *Linneman v. Vita-Mix Corp.* | 15-cv-748 | S.D. Ohio |
| *Liotta v. Wolford Boutiques, LLC* | 16-cv-4634 | N.D. Ga. |
| *Lippert v. Baldwin* | 10-cv-4603 | N.D. Ill. |
| *Lloyd v. CVB Fin. Corp.* | 10-cv-6256 (CAS) | C.D. Cal. |
| *Loblaw Card Program* | Remediation Program | |
| *Loftus v. Outside Integrated Media, LLC* | 21-cv-11809-MAG-DRG | E.D. Mich. |
| *LSIMC, LLC v. Am. Gen. Life Ins. Co.* | 20-cv-11518 | C.D. Cal. |
| *Mabrey v. Autovest* | CGC-18-566617 | Cal. Super. Ct. |
| *Macias v. Los Angeles County Dep't. of Water and Power* | BC594049 | Cal. Super. Ct. |
| *Malin v. Ambry Gentics Corp.* | 30-2018-00994841-CU-SL-CXC | Cal. Super. Ct. |
| *Malone v. Western Digital Corp.* | 20-cv-03584-NC | N.D. Cal. |
| *Marical v. Boeing Employees' Credit Union* | 19-2-20417-6 | Wash. Super. Ct. |
| *Markson v. CRST Int'l, Inc.* | 17-cv-01261-SB (SPx) | C.D. Cal. |
| *Martin v. Lindenwood Univ.* | 20-cv-01128 | E.D. Mo. |
| *Martinelli v. Johnson & Johnson* | 15-cv-01733-MCE-DB | E.D. Cal. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| McCall v. Hercules Corp. | 66810/2021 | N.Y. Super. Ct. |
| McClellan v. Chase Home Fin. | 12-cv-01331-JGB-JEM | C.D. Cal. |
| McClintock v. Continuum Producer Serv., LLC | 17-cv-00259-JAG | E.D. Okla. |
| McClintock v. Enter. | 16-cv-00136-KEW | E.D. Okla. |
| McGann v. Schnuck Markets Inc. | 1322-CC00800 | Mo. Cir. Ct. |
| McGraw v. Geico Gen. Ins. Co. | 15-2-07829-7 | Wash. Super. Ct. |
| McKibben v. McMahon | 14-2171 (JGB) (SP) | C.D. Cal. |
| McKnight Realty Co. v. Bravo Arkoma, LLC | 17-CIV-308 (KEW); 20-CV-428-KEW | E.D. Okla. |
| McNeill v. Citation Oil & Gas Corp. | 17-CIV-121 (KEW) | E.D. Okla. |
| McWilliams v. City of Long Beach | BC361469 | Cal. Super. Ct. |
| Messner v. Cambridge Real Estate Servs., Inc. | 19CV28815 | Or. Cir. Ct. |
| Metzner v. Quinnipiac Univ. | 20-cv-00784 | D. Conn. |
| Mid Is. LP v. Hess Corp. | 650911/2013 | N.Y. Super. Ct. |
| Miller Revocable Trust v. DCP Operating Co., LP | 18-cv-00199-JH | E.D. Okla. |
| Miller v. Carrington Mortg. Serv., LLC | 19-cv-00016-JDL | D. Me. |
| Miller v. Guenther Mgmt. LLC | 20-2-02604-32 | Wash. Super. Ct. |
| Miller v. Mut. of Enumclaw Ins. Co. | 19-2-12357-1 | Wash. Super. Ct. |
| Milstead v. Robert Fiance Beauty Sch., Inc. | CAM-L-328-16 | N.J. Super. Ct. |
| Mitchell v. Red Bluff Res. Operating, LLC | CJ-2021-323 | D. Okla. |
| Moehrl v. Nat'l Assoc. of Realtors | 19-cv-01610-ARW | N.D. Ill. |
| Moeller v. Advance Magazine Publishers, Inc. | 15-cv-05671 (NRB) | S.D.N.Y. |
| Mojica v. Securus Techs., Inc. | 14-cv-5258 | W.D. Ark. |
| Molnar v. 1-800-Flowers Retail, Inc. | BC 382828 | Cal. Super. Ct. |
| Monteleone v. Nutro Co. | 14-cv-00801-ES-JAD | D.N.J. |
| Moodie v. Maxim HealthCare Servs. | 14-cv-03471-FMO-AS | C.D. Cal. |
| Moore v Robinhood Fin. LLC | 21-cv-01571-BJR | W. D. Wash. |
| Muir v. Early Warning Servs., LLC | 16-cv-00521 | D.N.J. |
| Mylan Pharm., Inc. v. Warner Chilcott Pub. Ltd. | 12-3824 | E.D. Pa. |
| Nasseri v. Cytosport, Inc. | BC439181 | Cal. Super. Ct. |
| Natale v. 9199-4467 Quebec Inc., d/b/a Earth Rated | 21-cv-6775-JS-SIL | E.D.N.Y. |
| Nesbitt v. Postmates, Inc. | CGC-15-547146 | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| New Orleans Tax Assessor Project | Tax Assessment Program | |
| NMPA Late Fee Program Grps. I-IVA | Remediation Program | CRB |
| Noble v. Northland | UWY-CV-16-6033559-S | Conn. Super. Ct. |
| Novoa v. GEO Grp., Inc. | 17-cv-02514-JGB-SHK | C.D. Cal. |
| Nozzi v. Housing Auth. of the City of Los Angeles | CV 07-0380 PA (FFMx) | C.D. Cal. |
| Nwabueza v. AT&T | C 09-01529 SI | N.D. Cal. |
| Nwauzor v. GEO Grp., Inc. | 17-cv-05769 | W.D. Wash. |
| Oberski v. Gen. Motors LLC and Gen. Motors of Canada Ltd. | CV-14-502023-00CP | Ont. Super. Ct. |
| Ocana v. Renew Fin. Holdings, Inc. | BC701809 | Cal. Super. Ct. |
| O'Donnell v. Fin. Am. Life Ins. Co. | 14-cv-01071 | S.D. Ohio |
| Ostendorf v. Grange Indem. Ins. Co. | 19-cv-01147-ALM-KAJ | S.D. Ohio |
| Paetzold v. Metro. Dist. Comm'n | X07-HHD-CV-18-6090558-S | Conn. Super. Ct. |
| Palmer v. City of Anaheim | 30-2017-00938646 | Cal. Super. Ct. |
| Parker v. Time Warner Entm't Co. | 239 F.R.D. 318 | E.D.N.Y. |
| Parker v. Universal Pictures | 16-cv-1193-CEM-DCI | M.D. Fla. |
| Patrick v. Volkswagen Grp. of Am., Inc. | 19-cv-01908-MCS-ADS | C.D. Cal. |
| Pauper Petroleum, LLC v. Kaiser-Francis Oil Co. | 19-cv-00514-JFH-JFJ | N.D. Okla. |
| Pemberton v. Nationstar Mortg. LLC | 14-cv-1024-BAS (MSB) | S.D. Cal. |
| Pena v. Wells Fargo Bank | 19-cv-04065-MMC-TSH | N.D. Cal. |
| Perchlak v. Liddle & Liddle | 19-cv-09461 | C.D. Cal. |
| Perez v. DIRECTV | 16-cv-01440-JLS-DFM | C.D. Cal. |
| Perez v. Wells Fargo Co. | 17-cv-00454-MMC | N.D. Cal. |
| Peterson v. Apria Healthcare Grp., Inc. | 19-cv-00856 | M.D. Fla. |
| Petersen v. Costco Wholesale Co. | 13-cv-01292-DOC-JCG | C.D. Cal. |
| Phillips v. Hobby Lobby Stores, Inc. | 18-cv-01645-JHE; 16-cv-837-JHE | N.D. Ala. |
| PHT Holding II LLC v. N. Am. Co. for Life and Health Ins. | 18-CV-00368 | S.D. Iowa |
| Pierce v. Anthem Ins. Cos. | 15-cv-00562-TWP-TAB | S. D. Ind. |
| Pine Manor Investors v. FPI Mgmt., Inc. | 34-2018-00237315 | Cal. Super. Ct. |
| Pinon v. Mercedes-Benz USA, LLC and Daimler AG | 18-cv-3984 | N.D. Ga. |
| Podawiltz v. Swisher Int'l, Inc. | 16CV27621 | Or. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| *Press v. J. Crew Grp., Inc.* | 56-2018-512503 (CU) (BT) (VTA) | Cal. Super. Ct. |
| *Pruitt v. Par-A-Dice Hotel Casino* | 2020-L-000003 | Ill. Cir. Ct. |
| *Purcell v. United Propane Gas, Inc.* | 14-CI-729 | Ky. 2nd Cir. |
| *Quezada v. ArbiterSports, LLC* | 20-cv-05193-TJS | E.D. Pa. |
| *Ramos v. Hopele of Fort Lauderdale, LLC* | 17-cv-62100 | S.D. Fla. |
| *Rayburn v. Santander Consumer USA, Inc.* | 18-cv-1534 | S.D. Ohio |
| *RCC, P.S. v. Unigard Ins. Co.* | 19-2-17085-9 | Wash. Super. Ct. |
| *Reed v. Scientific Games Corp.* | 18-cv-00565-RSL | W.D. Wash. |
| *Reirdon v. Cimarex Energy Co.* | 16-CIV-113 (KEW) | E.D. Okla. |
| *Reirdon v. XTO Energy Inc.* | 16-cv-00087-KEW | E.D. Okla. |
| *Rhea v. Apache Corp.* | 14-cv-00433-JH | E.D. Okla. |
| *Rice v. Burlington Res. Oil & Gas Co., LP* | 20-cv-00431-GFK-FHM | N.D. Cal. |
| *Rice v. Insync* | 30-2014-00701147-CU-NP-CJC | Cal. Super. Ct. |
| *Rice-Redding v. Nationwide Mut. Ins. Co.* | 18-cv-01203 | N.D. Ga. |
| *Rich v. EOS Fitness Brands, LLC* | RIC1508918 | Cal. Super. Ct. |
| *Rick Nelson Co. v. Sony Music Ent.* | 18-cv-08791 | S.D.N.Y. |
| *Rocchio v. Rutgers, The State Univ. of New Jersey* | MID-L-003039-20 | N.J. Super. Ct. |
| *Rollo v. Universal Prop. & Cas. Ins.* | 2018-027720-CA-01 | Fla. Cir. Ct. |
| *Rosado v. Barry Univ., Inc.* | 20-cv-21813 | S.D. Fla. |
| *Rosenberg, D.C., P.A. v. Geico Gen. Ins. Co.* | 19-cv-61422-CANNON/Hunt | S.D. Fla. |
| *Roth v. GEICO Gen. Ins. Co. and Joffe v. GEICO Indem. Co.* | 16-cv-62942 | S.D. Fla. |
| *Rounds v. FourPoint Energy, LLC* | CIV-20-00052-P | W.D. Wis. |
| *Routh v. SEIU Healthcare 775NW* | 14-cv-00200 | W.D. Wash. |
| *Ruppel v. Consumers Union of United States, Inc.* | 16-cv-2444 (KMK) | S.D.N.Y. |
| *Russett v. Nw. Mut. Life Ins. Co.,* | 19-cv-07414-KMK | S.D.N.Y. |
| *Saccoccio v. JP Morgan Chase* | 13-cv-21107 | S.D. Fla. |
| *Salgado v. UPMC Jameson* | 30008-18 | C.P. Pa. |
| *Sanders v. Glob. Research Acquisition, LLC* | 18-cv-00555 | M.D. Fla. |
| *Sandoval v. Merlex Stucco Inc.* | BC619322 | Cal. Super. Ct. |
| *Santa Barbara Channelkeeper v. State Water Res. Control Bd.* | 37-2020-00005776 | Cal. Super. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Schlesinger v. Ticketmaster* | BC304565 | Cal. Super. Ct. |
| *Schulte v. Liberty Ins. Corp.* | 19-cv-00026 | S.D. Ohio |
| *Schwartz v. Intimacy in New York, LLC* | 13-cv-5735 (PGG) | S.D.N.Y. |
| *Seegert v. P.F. Chang's China Bistro* | 37-2017-00016131-CU-MC-CTL | Cal. Super. Ct. |
| *Senne v. Office of the Comm'r of Baseball* | 14-cv-00608-JCS | N.D. Cal. |
| *Sholopa v. Turkish Airlines, Inc.* | 20-cv-03294-ALC | S.D.N.Y. |
| *Shumacher v. Bank of Hope* | 18STCV02066 | Cal. Super. Ct. |
| *Sidibe v. Sutter Health* | 12-cv-4854-LB | N.D. Cal. |
| *Silverstein v. Genworth Life Ins. Co.* | 23-cv-684 | E.D. Va. |
| *Smith v. Pulte Home Corp.* | 30-2015-00808112-CU-CD-CXC | Cal. Super. Ct. |
| *Soderstrom v. MSP Crossroads Apartments LLC* | 16-cv-233 (ADM) (KMM) | D. Minn. |
| *Solorio v. Fresno Comty. Hosp.* | 15CECG03165 | Cal. Super. Ct. |
| *Solberg v. Victim Serv., Inc.* | 14-cv-05266-VC | N.D. Cal. |
| *Sonner v. Schwabe N. Am., Inc.* | 15-cv-01358 VAP (SPx) | C.D. Cal. |
| *Speed v. JMA Energy Co., LLC* | CJ-2016-59 | Okla. Dist. Ct. |
| *Staats v. City of Palo Alto* | 2015-1-CV-284956 | Cal. Super. Ct. |
| *Stanley v. Capri Training Ctr.* | ESX-L-1182-16 | N.J. Super. Ct. |
| *Staunton Lodge No. 177 v. Pekin Ins. Co.* | 2020-L-001297 | Ill. Cir. Ct. |
| *Steele v. PayPal, Inc.* | 05-CV-01720 (ILG) (VVP) | E.D.N.Y. |
| *Stewart v. Early Warning Serv., LLC* | 18-cv-3277 | D.N.J. |
| *Stier v. PEMCO Mut. Ins. Co.* | 18-2-08153-5 | Wash. Super. Ct. |
| *Stillman v. Clermont York Assocs. LLC* | 603557/09E | N.Y. Super. Ct. |
| *Stout v. The GEO Grp., Inc.* | 37-2019-00000650-CU-CR-CTL | Cal. Super. Ct. |
| *Strano v. Kiplinger Washington Editors, Inc.* | 21-cv-12987-TLL-PTM | E.D. Mich. |
| *Strickland v. Carrington Mortg. Servs., LLC* | 16-cv-25237 | S.D. Fla. |
| *Strohm v. Missouri Am. Water Co.* | 16AE-CV01252 | Mo. Cir. Ct. |
| *Stuart v. State Farm Fire & Cas. Co.* | 14-cv-04001 | W.D. Ark. |
| *Sullivan v. Wenner Media LLC* | 16–cv–00960–JTN–ESC | W.D. Mich. |
| *Swafford v. Ovintiv Exploration Inc.* | 21-cv-00210-SPS | E.D. Okla. |
| *Swetz v. GSK Consumer Health, Inc.* | 20-cv-04731 | S.D.N.Y. |
| *Swinton v. SquareTrade, Inc.* | 18-CV-00144-SMR-SBJ | S.D. Iowa |
| *Sylvain v. Longwood Auto Acquisitions, Inc.* | 2021-CA-009091-O | Fla. Cir. Ct. |

| CASE NAME | CASE NUMBER | LOCATION |
|---|---|---|
| Terrell v. Costco Wholesale Corp. | 16-2-19140-1-SEA | Wash. Super. Ct. |
| Timberlake v. Fusione, Inc. | BC 616783 | Cal. Super. Ct. |
| Tkachyk v. Traveler's Ins. | 16-28-m (DLC) | D. Mont. |
| T-Mobile Remediation Program | Remediation Program | |
| Townes, IV v. Trans Union, LLC | 04-1488-JJF | D. Del. |
| Townsend v. G2 Secure Staff | 18STCV04429 | Cal. Super. Ct. |
| Trepte v. Bionaire, Inc. | BC540110 | Cal. Super. Ct. |
| Tyus v. Gen. Info. Sols. LLC | 2017CP3201389 | S.C. C.P. |
| Udeen v. Subaru of Am., Inc. | 10-md-196 (JZ) | D.N.J. |
| Underwood v. NGL Energy Partners LP | 21-CV-0135-CVE-SH | N.D. Okla. |
| United States v. City of Austin | 14-cv-00533-LY | W.D. Tex. |
| United States v. City of Chicago | 16-c-1969 | N.D. Ill. |
| United States v. Greyhound Lines, Inc. | 16-67-RGA | D. Del. |
| USC Student Health Ctr. Settlement | 18-cv-04258-SVW | C.D. Cal. |
| Van Jacobs v. New World Van Lines, Inc. | 2019CH02619 | Ill. Cir. Ct. |
| Vasquez v. Libre by Nexus, Inc. | 17-cv-00755-CW | N.D. Cal. |
| Vassalle v. Midland Funding LLC | 11-cv-00096 | N.D. Ohio |
| Vida Longevity Fund, LP v. Lincoln Life & Annuity Co. of New York | 19-cv-06004 | S.D.N.Y. |
| Viesse v. Saar's Inc. | 17-2-7783-6 (SEA) | Wash. Super. Ct. |
| Wahl v. Yahoo! Inc. | 17-cv-2745 (BLF) | N.D. Cal. |
| Wake Energy, LLC v. EOG Res., Inc. | 20-cv-00183-ABJ | D. Wyo. |
| Watson v. Checkr, Inc. | 19-CV-03396-EMC | N.D. Cal. |
| Weimar v. Geico Advantage Ins. Co. | 19-cv-2698-JTF-tmp | W.D. Tenn. |
| Weiner v. Ocwen Fin. Corp. | 14-cv-02597-DJC-DB | E.D. Cal. |
| Welsh v. Prop. and Cas. Ins. Co. of Hartford | 20-2-05157-3 | Wash. Super. Ct. |
| White Family Minerals, LLC v. EOG Res., Inc. | 19-cv-409-KEW | E.D. Okla. |
| Williams v. Children's Mercy Hosp. | 1816-CV 17350 | Mo. Cir. Ct. |
| Williams v. Weyerhaeuser Co. | 995787 | Cal. Super. Ct. |
| Wills v. Starbucks Corp. | 17-cv-03654 | N.D. Ga. |
| Wilner v. Leopold & Assoc, | 15-cv-09374-PED | S.D.N.Y. |
| Wilson v. Santander Consumer USA, Inc. | 20-cv-00152 | E.D. Ark. |

| CASE NAME | CASE NUMBER | LOCATION |
|-----------|-------------|----------|
| *Wornicki v. Brokerpriceopinion.com, Inc.* | 13-cv-03258 (PAB) (KMT) | D. Colo. |
| *Wright v. Lyft, Inc.* | 14-cv-00421-BJR | W.D. Wash. |
| *Wright v. Southern New Hampshire Univ.* | 20-cv-00609 | D.N.H. |
| *Yamagata v. Reckitt Benckiser, LLC* | 17-cv-03529-CV | N.D. Cal. |
| *Yates v. Checkers* | 17-cv-09219 | N.D. Ill. |
| *Yeske v. Macoupin Energy* | 2017-L-24 | Ill. Cir. Ct. |
| *Z.B. v. Birmingham Cmty. Charter High Sch.* | 19STCV17092 | Cal. Super. Ct. |

# EXHIBIT B

# RESIDENTIAL REAL ESTATE BROKER COMMISSIONS
## ANTITRUST SETTLEMENTS

# NOTICE OF PROPOSED SETTLEMENTS
# FOR OVER $11.4 MILLION WITH:

- Side Inc. ("Side");
- House of Seven Gables Real Estate, Inc. ("Seven Gables");
- Washington Fine Properties, LLC ("WFP");
- J.P Piccinni Real Estate Services, LLC a/k/a JPAR Real Estate Services, LLC; Cairn Real Estate Holdings, LLC; Cairn JPAR Holdings, LLC; JPAR Franchising, LLC; and Your Castle Real Estate, LLC ("JPAR");
- Signature Properties of Huntington, LLC a/k/a Signature Premier Properties ("Signature");
- First Team Real Estate-Orange County ("First Team");
- Sibcy Cline, Inc. and Sibcy Cline, Inc. of Kentucky ("Sibcy Cline");
- Brooklyn New York Multiple Listing Service, Inc. ("Brooklyn MLS"); and
- Central New York Information Service, Inc. ("CNYIS").

**If you sold a home and paid a commission to a real estate agent,
then you *may* be part of class action settlements.
Please read this Notice carefully because it may affect your legal rights.**

*Para una notificación en español, visite* www.RealEstateCommissionLitigation.com

*A federal court has ordered this Notice. It is not from a lawyer, and you are not being sued.*

- These Settlements resolve claims against the following Defendants in a lawsuit that alleges the existence of an anticompetitive agreement that resulted in home sellers paying inflated commissions to real estate brokers or agents in violation of antitrust law for a total of over **$11.4 million**, as follows: Side: $5.5 million; Seven Gables: $1 million; WFP: $1.3 million; JPAR: $700,000; Signature: $850,000; First Team: $1 million; Sibcy Cline: $895,000; Brooklyn MLS $95,000; and CNYIS: $125,000.
- The current value of all settlements with these and other Defendants in related litigation is over **$1 billion**.
- To be eligible to receive the benefits of the Settlements, you must have: (1) sold a home during the Eligible Date Range (see below); (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The Eligible Date Range depends on which MLS you listed your home for sale. The terms "multiple listing service" and "MLS" encompass multiple listing services nationwide, regardless of whether they are affiliated with NAR or not, including, for example, NWMLS, WPMLS, and REBNY/RLS. You may be eligible for benefits under one or more of the proposed Settlements.
- If you have already submitted a claim form in this case for a prior settlement with other Defendants on the website: *www.RealEstateCommissionLitigation.com*, you do not need to submit another claim form. You may be eligible for a share of multiple settlements. With one claim form, you will receive your share of each settlement that you are eligible for.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

| What Eligible Date Ranges* apply to me? | |
|---|---|
| **Where was my home listed?** | **Eligible Date Ranges* to make a claim** |
| Heartland MLS (encompassing the Kansas City metropolitan area, counties in eastern Kansas, counties in southwest Missouri, and counties in northwest Missouri); <br><br> MARIS MLS (encompassing the St. Louis metropolitan area, counties in eastern Missouri, and counties in western Illinois); <br><br> Columbia Board of Realtors MLS (encompassing Columbia, Missouri and its surrounding areas); *or* <br><br> Southern Missouri Regional MLS (encompassing Springfield and Joplin, Missouri and their surrounding areas). | April 29, 2014, through February 26, 2025 |
| Bright MLS (Delaware, Baltimore, Maryland area, District of Columbia, parts of New Jersey, Philadelphia, Pennsylvania area, Richmond, Virginia areas, parts of West Virginia); <br><br> Carolina/Canopy MLS (Charlotte, North Carolina area, including portions of South Carolina); <br><br> Triangle MLS (Research Triangle Area, North Carolina); <br><br> Stellar MLS (Tampa, Orlando, and Sarasota, Florida areas); <br><br> Miami MLS (Miami, Florida area); <br><br> Florida Gulf Coast (Fort Myers, Florida area); <br><br> Metro MLS (parts of Wisconsin, including the Milwaukee areas); <br><br> Yes MLS/MLS Now (Cleveland, Ohio, Eastern Ohio, and parts of West Virginia); <br><br> Columbus Realtors MLS (Columbus, Ohio areas); <br><br> Northstar MLS (Minnesota, Wisconsin); <br><br> Wasatch Front/Utah Real Estate (Salt Lake City, Utah area); <br><br> REcolorado/Metrolist (Denver, Colorado area); <br><br> Pikes Peak MLS (Colorado Springs, Colorado area); <br><br> GLVAR MLS (Las Vegas, Nevada area); <br><br> SABOR (San Antonio, Texas area); <br><br> ACTRIS/ABOR (Austin, Texas area); <br><br> HAR MLS (Houston, Texas area); <br><br> NTREIS (Dallas, Texas area); <br><br> ARMLS (Phoenix, Arizona area); and <br><br> Realcomp II (Detroit, Michigan area) | March 6, 2015, through February 26, 2025 |

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

| | |
|---|---|
| MLS PIN (Massachusetts) | December 17, 2016, through February 26, 2025 |
| Arkansas, Kentucky, and Missouri, but not identified above | October 31, 2018, through February 26, 2025 |
| Homes in Alabama, Georgia, Indiana, Maine, Michigan, Minnesota, New Jersey, Pennsylvania, Tennessee, Vermont, Wisconsin, or Wyoming, but not identified above | October 31, 2017, through February 26, 2025 |
| Any MLS in the United States other than the MLSs listed above | October 31, 2019, through February 26, 2025 |

*The Eligible Date Ranges for the date of home sale vary across the multiple Settlements. You may be eligible for a share of another settlement with a different eligible date range. For more information, see the Settlement Agreements and/or FAQs for the multiple settlements at www.RealEstateCommissionLitigation.com.*

Your Legal rights are affected whether or not you act. ***Please read this Notice carefully***

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS: | |
|---|---|
| **SUBMIT A CLAIM FORM BY MAY 9, 2025** | The only way to get a payment. |
| **ASK TO BE EXCLUDED BY MAY 9, 2025** | If you do not want to be included in the Settlements with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and/or CNYIS you must exclude yourself. This is called "opting out." This is the only option that allows you to sue these Defendants for these same issues again. |
| **OBJECT BY MAY 9, 2025** | You may write to the Court about why you don't like the proposed Settlements with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and/or CNYIS. You cannot object if you opt-out. |
| **GO TO A HEARING ON JUNE 24, 2025** | You may ask to speak in Court about the fairness of the proposed Settlements with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and/or CNYIS |
| **DO NOTHING** | If you do nothing and the Court approves the proposed Settlements, you will get no payment. You will not be able to sue Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and/or CNYIS for these same issues again**.** |

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the proposed Settlements. Payments will be made if the Court approves the Settlements and after appeals are resolved. Please be patient.

- Along with these proposed settlements with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, other settlements have been reached with Anywhere, RE/MAX, Keller Williams, the National Association of Realtors ("NAR"), HomeServices, Compass, Real Brokerage, Realty ONE, @properties, Douglas Elliman, Redfin, Engel & Völkers, HomeSmart, and United Real Estate (and certain of their affiliates). Those settlements have already received final approval from the District Court. Additional settlements may be reached with other Defendants. See www.RealEstateCommissionLitigation.com for more information about these settlements and any additional settlements. You may not receive any additional written notice about future Settlements, so it is important that you continue to check the website to stay up to date.

## BASIC INFORMATION

| **1.** | **Why did I get this Notice?** |
|---|---|

This Notice has been posted for the benefit of potential members of the Settlement Class. If you are uncertain about whether you are a member of the Settlement Class, you may contact the Settlement Administrator at 888-995-0207.

This Notice has been posted because members of the Settlement Class have a right to know about the proposed settlements of a class action lawsuit in which they are class members, and about all of their options, before the Court decides whether to approve the Settlements. If the Court approves the Settlements, and after objections or appeals relating to the Settlements are resolved, the benefits provided by the Settlements will be available to members of the Class.

This Notice explains the lawsuits, the Settlements, your legal rights, what benefits are available, who is eligible for them, and how to get them. A full copy of the Settlement Agreements may be viewed at the settlement website: www.RealEstateCommissionLitigation.com. This Notice contains only a summary of the Settlements.

The Court in charge of the Settlements with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, is the United States District Court for the Western District of Missouri. The case before this Court is known as *Keel, et al. v. Washington Fine Properties, et al.*, (W.D. Mo. Case No. 4:25-CV-00055-SRB) ("Keel"). The people who filed this lawsuit are called the Plaintiffs. The people being sued are called the Defendants.

Notice of additional related settlements from other litigations is also available on the settlement website: www.RealEstateCommissionLitigation.com.

These Settlements may also release claims against Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, raised in other lawsuits involving alleged anticompetitive conduct in connection with commissions charged by brokers and agents in residential real estate transactions. Those other lawsuits are discussed further below in response to Question 21.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 70 of 151

## 2. What is this lawsuit about?

The lawsuits claim that Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS created and implemented rules that require home sellers to pay commissions to the broker or agent representing the buyer and that caused home sellers to pay total commissions at inflated rates. They also allege that Defendants enforced these rules through anticompetitive and unlawful practices.

The lawsuits claim that these rules are anticompetitive and unfair, and that they violate antitrust laws. You can read Plaintiffs' complaints at www.RealEstateCommissionLitigation.com. Specifically, the lawsuits allege violations of the Sherman Act (a federal antitrust statute found at 15 U.S.C. § 1 *et seq.*) among other things. The Sherman Act claims apply to home sales that occurred anywhere in the United States during the Eligible Date Range.

## 3. Has the Court decided who is right?

Although the Court has authorized notice to be given of the proposed Settlements, this Notice does not express the opinion of the Court on the merits of the claims or defenses asserted by either side of the lawsuit.

Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, dispute Plaintiffs' allegations and deny all liability to Plaintiffs and the Class. On October 31, 2023, a jury found in favor of Plaintiffs against different defendants in an action involving similar claims and allegations: *Burnett et al. v. National Association of Realtors, et al.*, Case No. 19-CV-00332-SRB (Western District of Missouri) ("Burnett"). The Court granted final approval of settlements with all Defendants in the *Burnett* action on May 9, 2024, and November 27, 2024. On November 4, 2024, the Court granted final approval of the Settlements with Defendants Compass, Real Brokerage, Realty ONE, @properties, Douglas Elliman, Redfin, Engel & Völkers, HomeSmart and United Real Estate in the consolidated action: *Gibson et al. v. National Association of Realtors et al.,* (W.D. Mo. Case No. 23-CV-788-SRB) ("Gibson").

## 4. Why is this case a class action?

In a class action, one or more people called Class Representatives sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." The consumers who sued Defendants—and all the Class Members like them—are called Plaintiffs. The companies they sued are called the Defendants. One court resolves the issues for everyone in the Class – except for those who choose to exclude themselves from the Class.

Here, the Court decided that this lawsuit can be a class action for settlement purposes because it preliminarily meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that: (1) there are numerous people who fit the class definition; (2) there are legal questions and facts that are common to each of them; (3) the Plaintiffs' claims are typical of the claims of the rest of the Class; (4) Plaintiffs, and the lawyers representing the Class, will fairly and adequately represent the Class Members' interests; (5) the common legal questions and facts are more important than questions that affect only individuals; and (6) this class action will be more efficient than having individual lawsuits.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB     Document 50-3     Filed 06/17/25     Page 71 of 151

**5. Why are there Settlements?**

Although Plaintiffs prevailed at trial against other defendants in the related *Burnett* action, the Court has not ruled in favor of the Plaintiffs or Defendants in this *Keel* action. Counsel for the Settlement Class investigated the facts and applicable law regarding Plaintiffs' claims and Defendants' defenses, potential issues at trial and on appeal, and the Defendants' ability to pay. The parties engaged in arms-length negotiations to reach the Settlements. Plaintiffs and Counsel for the Settlement Class believe that the proposed Settlements are fair, reasonable, and adequate, and in the best interest of the Class.

Both sides agree that by settling, Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, are not admitting any liability or that they did anything wrong. Both sides want to avoid the uncertainties and expense of further litigation.

## WHO IS IN THE SETTLEMENTS?

**6. How do I know if I am a part of the Settlements?**

You are a part of the Settlement Class if you: (1) sold a home during the Eligible Date Range (as defined above); (2) listed the home that was sold on a multiple listing service (as defined above) anywhere in the United States; and (3) paid a commission to a real estate brokerage in connection with the sale of the home. More information about the Eligible Date Range for each Settlement can be found in each Settlement Agreement, at www.RealEstateCommissionLitigation.com.

If you are uncertain as to whether you are a member of the Settlement Class, you may contact the Settlement Administrator at 888-995-0207 to find out.

## THE SETTLEMENT BENEFITS

**7. What do the Settlements provide?**

If you are a member of the Settlement Class, you are eligible to receive a benefit under the Settlements.

The Settling Defendants named here have agreed to pay $11.465 million into a settlement fund: Side: $5.5 million; Seven Gables: $1 million; WFP: $1.3 million; JPAR: $700,000; Signature: $850,000; First Team: $1 million; Sibcy Cline: $895,000; Brooklyn MLS $95,000; and CNYIS: $125,000. The current value of all settlements with these and other Defendants in related cases is over $1 billion. The settlement fund will be distributed to qualifying Settlement Class Members who submit an approved claim form, after any awarded attorneys' fees, expenses, settlement administration costs, and service awards have been deducted. Defendants have also agreed to implement Practice Changes and provide Cooperation. You can learn more about the Practices Changes and Cooperation in the Settlement Agreements, which are available at www.RealEstateCommissionLitigation.com.

## HOW YOU GET A PAYMENT – SUBMITTING A CLAIM FORM

**8. How can I get a benefit?**

*Note: If you have already submitted a claim form in this case for a prior settlement with other Defendants through the website: www.RealEstateCommissionLitigation.com, you do not need to submit another claim form. With one claim form, you will receive your share of each settlement that you are eligible for.*

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

To receive a benefit, a Settlement Class Member must submit a claim form with information pertaining to and/or evidence of your home sale and commissions paid to the Notice and Claims Administrator. The Notice and Claims Administrator will be responsible for reviewing all claim forms and evidence of purchase to determine whether a claim is an approved claim. The Notice and Claims Administrator will reject any claim that is not: (a) submitted timely and in accordance with the directions on the claim form, the provisions of these Settlement Agreements, and the Preliminary Approval Order; (b) fully and truthfully completed by a Settlement Class Member or their representative with all of the information requested in the claim form; and (c) signed by the Settlement Class Member. Claims that cannot be confirmed by the Settlement Administrator may be subject to challenge, nonpayment, or a reduced share of the available funds.

You can submit a claim form by clicking this link, or by printing the claim form from the website and returning it to the Settlement Administrator via mail or email on or before **May 9, 2025**.

*Keel, et al. v. Washington Fine Properties, et al.*
c/o JND Legal Administration
PO Box 91479
Seattle, WA 98111

Email: info@RealEstateCommissionLitigation.com

| **9.** | **When would I get my benefit?** |
|---|---|

The Court will hold a final Fairness Hearing at **2:30 PM** on **June 24, 2025**, in the United States District Court for the Western District of Missouri, 400 E. 9th St., Courtroom 7B, Kansas City, Missouri 64106, to decide whether to finally approve the Settlements. If the Settlements are approved, there may be appeals. Payments to members of the Settlement Class will be made only if the Settlements are approved and after any claims period and appeals are resolved. This may take some time, so please be patient.

| **10.** | **What am I giving up to get a benefit?** |
|---|---|

Upon the Court's approval of the proposed Settlements, all members of the Settlement Class who do not exclude themselves (as well as their representatives) will release Defendants Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS (and their affiliates, subsidiaries, franchisees, employees, and certain others as specified in the Settlement Agreements).

All members of the Settlement Class who do not exclude themselves will release claims whether known or unknown that they ever had, now have, or hereafter may have and that have accrued as of the date of Class Notice of the Settlements arising from or related to the Released Claims. "Released Claims" means any and all manner of claims regardless of the cause of action arising from or relating to conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home. The release does not extend to any individual claims that a Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Class Member paid an excessive commission or home price due to the claims at issue.

This release may affect your rights, and may carry obligations, in the future. To view terms of the release, review the Settlement Agreements, which are available at www.RealEstateCommissionLitigation.com.

## EXCLUDING YOURSELF FROM THE SETTLEMENTS

If you do not want a payment from the Settlements, and you want to keep the right to sue or continue to sue Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, and affiliated entities on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

| | |
|---|---|
| **11.** | **How do I ask to be excluded?** |

To ask to be excluded, you must execute and send a Request for Exclusion to the Settlement Administrator postmarked on or before **May 9, 2025**. Additionally, a Request for Exclusion must include the potential Settlement Class Member's present name and address, the address of the home(s) sold and approximate date(s) of sale of the home(s), a clear and unequivocal statement that the potential Settlement Class Member wishes to be excluded from the Settlement Class as to Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and/or CNYIS, and the signature of the putative Settlement Class Member or, in the case of a potential Settlement Class Member who is deceased or incapacitated only, the signature of the legally authorized representative of the putative Settlement Class Member.

*Note: if you did not exclude yourself from previous settlements, you may still exclude yourself from some or all of these nine Settlements.*

If the request is not postmarked on or before **May 9, 2025**, your exclusion will be invalid, and you will be bound by the terms of the Settlements approved by the Court, including without limitation, the judgment ultimately rendered in the case, and you will be barred from bringing any claims against Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, or their affiliates as outlined in Question 10 above which arise out of or relate in any way to the claims in the case as specified in the release referenced in Question 10 above.

You must mail your Exclusion Request to:

*Keel, et al. v. Washington Fine Properties, et al.*
c/o JND Legal Administration – Exclusion Dpt.
PO Box 91486
Seattle, WA 98111

| | |
|---|---|
| **12.** | **If I don't exclude myself, can I sue Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS for the same thing later?** |

No. Unless you exclude yourself, you give up any right to sue Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, and their affiliates for the claims that the Settlements resolve. If you have a pending lawsuit against Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, or certain affiliated entities such as MLSs or small brokers, speak to your lawyer in that case immediately. You may have to exclude yourself from this Class to continue your own lawsuit. Remember, the exclusion deadline is **May 9, 2025.**

| | |
|---|---|
| **13.** | **If I exclude myself, can I get benefits from the Settlements?** |

No. If you exclude yourself as to the Settlements with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, do not send in a claim form to ask for any

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB     Document 50-3     Filed 06/17/25     Page 74 of 151

money. If you exclude yourself only as to some of these Defendants, you may still ask for money from the Settlements with other Defendants. If you exclude yourself as to Defendants Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, you may sue, continue to sue, or be a part of a different lawsuit against these Defendants.

## THE LAWYERS REPRESENTING YOU

| **14.** | **Do I have a lawyer in this case?** |
|---|---|

The Court decided that the law firms Ketchmark and McCreight P.C.; Williams Dirks Dameron LLC; Boulware Law LLC; Hagens Berman Sobol Shapiro LLP; Cohen Milstein Sellers & Toll PLLC; and Susman Godfrey LLP, are qualified to represent you and all other Settlement Class Members. These lawyers are called "Class Counsel." You will not be charged for these lawyers. They are experienced in handling similar cases against other entities. More information about the law firms, their practices, and their lawyers' experience is available at: www.kansascitylawoffice.com, www.williamsdirks.com, www.boulware-law.com, www.hbsslaw.com, www.cohenmilstein.com, and www.susmangodfrey.com.

Class Counsel represent the interests of the Settlement Class. You may hire your own attorney to advise you, but if you hire your own attorney, you will be responsible for paying that attorney's fees.

| **15.** | **How will the lawyers be paid?** |
|---|---|

Class Counsel will ask the Court for attorneys' fees, in an amount not to exceed one-third (33.3%) of the settlement fund, plus out-of-pocket expenses incurred during the case. The Court may award less. Class Counsel may also seek compensation for each current and/or former class representative in the action captioned *Keel*.

The Class Representatives will make their request for attorneys' fees, costs, and service awards on or before March 26, 2025 and that request will be published at www.RealEstateCommissionLitigation.com.

Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS will pay the fees and expenses that the Court awards from the settlement fund. You are not responsible for any fees or expenses that the Court awards.

## OBJECTING TO THE PROPOSED SETTLEMENTS

You can tell the Court that you don't agree with the any or all of the Settlements or some parts of them.

| **16.** | **How do I tell the Court that I don't like the Settlements?** |
|---|---|

If you are a Class Member, you can object to these Settlements if you do not like any part of them, including the forthcoming motion for attorneys' fees, costs and service awards. You can give reasons why you think the Court should not approve them. The Court will consider your view. To object, you must file or send a written objection to the Court, as instructed by the Court, by **May 9, 2025** or you will waive your right to object (whether in opposition to the motion for Final Approval, motion for attorneys' fees, costs and service awards, on appeal, or otherwise) to the Settlements. Be sure to include the case name and number (*Keel, et al. v. Washington Fine Properties, et al.*, (W.D. Mo. Case No. 4:25-CV-00055-SRB)), as well as the following information: (a) your full name, address, telephone number and email address, if any; (b) the address of the home(s) sold, the date of the sale, the listing broker(s), and the buyer's broker(s); (c) a specific statement of all grounds for your objection and, if applicable, any legal support for

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 75 of 151

the objection; (d) a statement whether the objection applies only to you, to a specific subset of one or both of the Settlement Classes, or to the entirety of both of the Settlement Classes; (e) a statement whether the objection applies to all of the Settlements addressed in this order or only those with certain of the Settling Defendants; (f) the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; (g) a list of all class action settlements to which you have objected in the past five (5) years, if any; (h) copies of any papers, briefs, or other documents upon which the objection is based; and (i) your signature.

**You must file any objection with the Clerk of the Court at the address below by May 9, 2025:**

United States District Court for the Western District of Missouri
400 E. 9th St., Room 7462, Kansas City, Missouri 64106
*Keel, et al. v. Washington Fine Properties, et al.*, (W.D. Mo. Case No. 4:25-CV-00055-SRB)

**You must also send your objection by first class mail, postmarked on or before May 9, 2025,** to Class Counsel and Defendants' Counsel at the following addresses:

| Counsel for the Settlement Class: | Counsel for Side: | Counsel for Seven Gables: |
|---|---|---|
| WILLIAMS DIRKS DAMERON LLC c/o Eric Dirks 1100 Main Street, Ste 2600 Kansas City, MO 64105 | BROWN FOX c/o Brian Robison 6303 Cowboys Way, Ste 450 Frisco, TX 75034 | SEVEN GABLES REAL ESTATE c/o Michael Hickman 12651 Newport Avenue Tustin, CA 92780 |
| **Counsel for WFP:** | **Counsel for JPAR:** | **Counsel for Signature:** |
| WASHINGTON FINE PROPERTIES c/o Mark MacDougall 555 13th Street, NW, Ste 500 West Washington, DC 20004 | MAYNARD NEXSEN c/o Marcus Angelo Manos 1230 Main Street, Ste 700 Columbia, SC 29201 | Kiely LLP c/o Denis Kiely 17 Turkey Lane Cold Spring Harbor, NY 11724 |
| **Counsel for First Team:** | **Counsel for Brooklyn MLS:** | **Counsel for CNYIS:** |
| MANNING KASS c/o Fredric W. Trester 801 S Figueroa Street, 15th Floor Los Angeles, CA 90017 | CAPUDER FAZIO GIACOIA LLP c/o Alfred Fazio 90 Broad Street New York, NY 10004 | VAUGHN DAVID LANG ESQ c/o Vaughn Lang 6838 E Genesse Street Fayetteville, NY 13066 |
| **Counsel for Sibcy Cline:** | | |
| HOGAN LOVELLS US LLP c/o Claude Szyfer 390 Madison Avenue New York, NY 10017 | | |

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 76 of 151

Any member of the Settlement Class who does not file and serve an objection in the time and manner described above will not be permitted to raise that objection later. If you send an objection, you may need to personally appear at the Fairness Hearing on **June 24, 2025**, or your objection may be waived. Please check the settlement website and/or Court docket for the Court's instruction.

| **17.** | **What's the difference between objecting and excluding?** |
|---|---|

Objecting is simply telling the Court that you don't like something about the Settlements. You can object to a Settlement only if you stay in it. Excluding yourself is telling the Court that you do not want to be part of a Settlement. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## THE COURT'S FAIRNESS HEARING

| **18.** | **When and where will the Court decide whether to approve the Settlements?** |
|---|---|

There will be a final Fairness Hearing to consider approval of the proposed Settlements, **at 2:30 PM on June 24, 2025** at the United States District Court for the Western District of Missouri, 400 E. 9th St., Courtroom 7B, Kansas City, Missouri 64106. The hearing may be postponed to a later date without further notice. Any such postponements will be posted on the Court docket and/or settlement website at www.RealEstateCommissionLitigation.com. The purpose of the hearing is to determine the fairness, reasonableness, and adequacy of the terms of the Settlements, whether the Settlement Class is adequately represented by the Plaintiffs and Class Counsel, and whether an order and final judgment should be entered approving the proposed Settlements. The Court will also consider Class Counsel's application for an award of attorneys' fees and expenses, and any class representative service awards.

If you do not object to the Settlements, you will be represented by Class Counsel at the Fairness Hearing unless you choose to enter an appearance in person or through your own counsel. The appearance of your own attorney is not necessary to participate in the Fairness Hearing. If you send an objection, you may need to personally appear at the Fairness Hearing on June 24, 2025, or your objection may be waived. Please check the settlement website and/or Court docket for the Court's instruction.

| **19.** | **Do I have to come to the hearing?** |
|---|---|

If you do not object, you do not need to come to the hearing. Class Counsel will represent the Settlement Class at the Fairness Hearing, but you are welcome to come at your own expense. You may also pay your own lawyer to attend if you wish. If you send an objection, you may need to personally appear at the Fairness Hearing on June 24, 2025, or your objection may be waived. Please check the settlement website and/or Court docket for the Court's instruction.

| **20.** | **May I speak at the hearing?** |
|---|---|

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Keel, et al. v. Washington Fine Properties, et al.*, (W.D. Mo. Case No. 4:25-CV-00055-SRB)." Be sure to include your name, address, telephone number and your signature. Your Notice of Intention to Appear must be postmarked no later than **May 9, 2025**, and be sent to the Clerk of the Court, Class Counsel and Counsel at the addresses in Question 16. You cannot speak at the hearing if you exclude yourself.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 77 of 151

# ARE THERE OTHER REAL ESTATE COMMISSIONS LAWSUITS
# OR OTHER DEFENDANTS?

## 21. Are there other similar cases?

In addition to *Keel*, there are numerous other class actions involving similar claims, including: *Burnett et al., v. National Ass'n of Realtors et al.*, Case No. 19-CV-00332-SRB (W.D. Missouri); *Moehrl et al., v. National Ass'n of Realtors et al.*, Case No. 1:19-cv-01610 (N.D. Illinois); *Gibson et al. v. The National Association of Realtors et al.*, Case No. 23-CV-788-SRB (W.D. Missouri); *Batton v. NAR*, Case No. 1:21-cv-00430 (N.D. Ill.); *Batton v. Compass*, Case No. 1:23-cv-15618 (N.D. Ill.); *Burton v. NAR*, Case No. 7:23-cv-05666-JD (D.S.C.); *QJ Team, LLC and Five Points Holdings, LLC v. TAR*, Case No. 4:23-cv-01013 (E.D. Tx.); *March v. REBNY*, Case No. 1:23-cv-09995 (S.D.N.Y.); *1925 Hooper LLC v. NAR*, Case No. 1:23-cv-05392-SEG (N.D. Ga.); *Kay v. West Penn Multi-List, Inc.*, Case No. 2:23-cv-2061 (W.D. Pa.); *Grace v. NAR*, Case No. 3:23-cv-06352 (N.D. Cal.); *Masiello v. Arizona Association of Realtors*, Case No. 2:24-cv-00045 (D. Ariz.); *Tuccori v. At World Properties, LLC*, Case No. 2:24-cv-00150 (N.D. Ill.); *Whaley v. Arizona Association of Realtors*, Case No. 2:24-cv-00105 (D. Nev.); *Fierro v. National Association of Realtors*, Case No. 2:24-cv-00449 (C.D. Cal.); *Friedman v. REBNY et al.*, Case No. 1:23-cv-00405 (S.D.N.Y.); *Willsim Latham v. MetroList*, Case No. 2:24-cv-00244 (E.D. Cal.); *Jensen v. National Ass'n of Realtors et al*, Case No. 2:24-cv-00109 (D. Utah); *Peiffer v. Latter & Blum Holding, LLC, et al.*, Case No. 2:24-cv-00557 (E.D. La.); *Wang v. National Ass'n of Realtors et al.*, Case No. 1:24-cv-02371 (S.D.N.Y.); *Jutla v. Redfin Corporation*, Case No. 2:24-cv-00464 (W.D. Wash.); *Burton v. Bluefield Realty*, Case No. 7:24−cv−01800-JDA (D.S.C.); *1925 Hooper LLC v. Watson Realty Corp.*, Case No. 3:24-cv-00374 (M.D. Fla.); *Wallach v. Silvercreek Realty Group LLC*, Case No. 1:24-cv-3356 (N.D. Ill.); *Lutz v. HomeServices of America, Inc., et al.* 4:24-cv-10040-KMM (S.D. Fla.); *Davis v. Hanna Holdings, Inc.* 2:24-cv-02374 (E.D. Pa.); among others.

The Settlements may release claims against Defendants Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS, and related entities and affiliates, asserted on behalf of members of the putative classes in those cases. But the Settlements may not release claims against other unaffiliated Defendants in those cases. If you are a member of a putative class in any other cases involving similar claims, you may have additional rights to participate in or exclude yourself from ongoing litigation or settlements in those cases.

# GETTING MORE INFORMATION

## 22. Are there more details available?

This Notice is only a summary. For a more detailed statement of the matters involved in the lawsuit or the Settlements, you may refer to the papers filed in this case during regular business hours at the office of the Clerk of Court, United States District Court for the Western District of Missouri, 400 E. 9th St, Kansas City, Missouri 64106: *Keel, et al. v. Washington Fine Properties, et al.*, (W.D. Mo. Case No. 4:25-CV-00055-SRB). The full Settlement Agreements and certain pleadings filed in the cases are also available at www.RealEstateCommissionLitigation.com, or can be requested from Class Counsel, identified in answers to Questions 14 and 16 above, or from the Settlement Administrator, with the contact information provided in Question 8 above.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 30-3    Filed 06/17/25    Page 78 of 151

**RESIDENTIAL REAL ESTATE BROKER COMMISSIONS**
**ANTITRUST SETTLEMENTS**

# NOTICE OF PROPOSED SETTLEMENTS
# FOR OVER $8 MILLION
# WITH KEYES, ILLUSTRATED, NEXTHOME,
# JOHN L. SCOTT, LOKATION, REAL ESTATE ONE,
# AND BAIRD & WARNER

**If you sold a home and paid a commission to a real estate agent,
then you *may* be part of class action settlements.
Please read this Notice carefully because it may affect your legal rights.**

*Para una notificación en español, visite www.RealEstateCommissionLitigation.com*

*A federal court has ordered this Notice. It is not from a lawyer, and you are not being sued.*

- These Settlements resolve claims against the following Defendants in a lawsuit that alleges the existence of an anticompetitive agreement that resulted in home sellers paying inflated commissions to real estate brokers or agents in violation of antitrust law for a total of over **$8 million**: The Keyes Company ("Keyes"), Illustrated Properties, LLC ("Illustrated"); NextHome, Inc. ("NextHome"); John L. Scott Real Estate Affiliates, Inc., and John L. Scott, Inc. ("John L. Scott"); The K Company Realty, LLC d/b/a LoKation ("LoKation"); Real Estate One, Inc. ("Real Estate One"); Baird & Warner Real Estate, Inc. ("Baird & Warner"); and related entities and affiliates as defined in the Settlement Agreements.

- The current value of all settlements with these and other Defendants is over **$1 billion**.

- To be eligible to receive the benefits of the Settlements, you must have: (1) sold a home during the Eligible Date Range (see below); (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The Eligible Date Range depends on the state where you listed your home for sale. The terms "multiple listing service" and "MLS" encompass multiple listing services nationwide, regardless of whether they are affiliated with NAR or not, including, for example, NWMLS, WPMLS, and REBNY/RLS. You may be eligible for benefits under one or more of the proposed Settlements.

- If you have already submitted a claim form in this case for a prior settlement with other Defendants on the website: *www.RealEstateCommissionLitigation.com*, you do not need to submit another claim form. You may be eligible for a share of multiple settlements. With one claim form, you will receive your share of each settlement that you are eligible for.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

| What Eligible Date Ranges* apply to me? | |
|---|---|
| **Where was my home listed?** | **Eligible Date Ranges* to make a claim** |
| On an MLS in Alabama, Georgia, Indiana, Maine, Michigan, Minnesota, New Jersey, Pennsylvania, Tennessee, Vermont, Wisconsin, or Wyoming | October 31, 2017, through February 26, 2025 |
| On an MLS in Arkansas, Kentucky, or Missouri | October 31, 2018, through February 26, 2025 |
| On an MLS anywhere in the United States, other than in the states listed above. | October 31, 2019, through February 26, 2025 |

*  *The Eligible Date Ranges for the date of home sale vary across the multiple Settlements. You may be eligible for a share of another settlement with a different eligible date range. For more information, see the Settlement Agreements and/or FAQs for the multiple settlements at www.RealEstateCommissionLitigation.com.*

Your Legal rights are affected whether or not you act. ***Please read this Notice carefully***

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS: | |
|---|---|
| **SUBMIT A CLAIM FORM BY MAY 9, 2025** | The only way to get a payment. |
| **ASK TO BE EXCLUDED BY MAY 9, 2025** | If you do not want to be included in the Settlements with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, or Baird & Warner, you must exclude yourself. This is called "opting out." This is the only option that allows you to sue these Defendants for these same issues again. |
| **OBJECT BY MAY 9, 2025** | You may write to the Court about why you don't like the proposed Settlements with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, or Baird & Warner. You cannot object if you opt-out. |
| **GO TO A HEARING ON JUNE 24, 2025** | You may ask to speak in Court about the fairness of the proposed Settlements with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, or Baird & Warner. |
| **DO NOTHING** | If you do nothing and the Court approves the proposed Settlements, you will get no payment. You will not be able to sue Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, or Baird & Warner for these same issues again**.** |

- These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the proposed Settlements. Payments will be made if the Court approves the Settlements and after appeals are resolved. Please be patient.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

- Along with these proposed settlements with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner, other proposed settlements have been reached with the National Association of Realtors ("NAR"), Anywhere, RE/MAX, Keller Williams, HomeServices, Compass, Real Brokerage, Realty ONE, @properties, Douglas Elliman, Redfin, Engel & Völkers, HomeSmart, and United Real Estate (and certain of their affiliates). Those settlements have already received final approval from the District Court. Additional settlements may be reached with other Defendants. See www.RealEstateCommissionLitigation.com for more information about these settlements and any additional settlements. You may not receive any additional written notice about future Settlements, so it is important that you continue to check the website to stay up to date.

## **BASIC INFORMATION**

| **1.** | **Why did I get this Notice?** |
|---|---|

This Notice has been posted for the benefit of potential members of the Settlement Class. If you are uncertain about whether you are a member of the Settlement Class, you may contact the Settlement Administrator at 888-995-0207.

This Notice has been posted because members of the Settlement Class have a right to know about the proposed settlements of a class action lawsuit in which they are class members, and about all of their options, before the Court decides whether to approve the Settlements. If the Court approves the Settlements, and after objections or appeals relating to the Settlements are resolved, the benefits provided by the Settlements will be available to members of the Class.

This Notice explains the lawsuits, the Settlements, your legal rights, what benefits are available, who is eligible for them, and how to get them. A full copy of the Settlement Agreements may be viewed at the settlement website: www.RealEstateCommissionLitigation.com. This Notice contains only a summary of the Settlements.

The Court in charge of the Settlements with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner is the United States District Court for the Western District of Missouri. The case before this Court is known as *Gibson et al. v. National Association of Realtors et al.*, (W.D. Mo. Case No. 23-CV-788-SRB) ("*Gibson*"). *Umpa v. National Association of Realtors, et al.*, Case No. 23-cv-0945 (W.D. Mo.), was consolidated into *Gibson* on April 23, 2024. The people who filed this lawsuit are called the Plaintiffs. The people being sued are called the Defendants. Defendants in the *Gibson* action include large real estate brokerage firms and families of firms, including:

| | | |
|---|---|---|
| HomeServices of America, | @properties, | William Raveis, |
| Keller Williams, | The Real Brokerage, | John L. Scott Real Estate, |
| Compass, | Realty ONE, | The Keyes Company, |
| Exp Realty, | HomeSmart, | Illustrated Properties, |
| Redfin, | Engel & Völkers, | Parks Pilkerton, |
| Weichert Realtors, | NextHome, | Crye-Leike, |
| United Real Estate, | Exit Realty, | Baird & Warner, |
| Howard Hanna, | Windermere, | Real Estate One, |
| Douglas Elliman, | Lyon Real Estate, | LoKation Real Estate |

Many Defendants have already settled, and more Defendants may settle in the future. Of these Defendants, this Notice concerns only Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 30-3    Filed 06/17/25    Page 81 of 151

Estate One, and Baird & Warner. Notice of additional settlements is also available on the settlement website: www.RealEstateCommissionLitigation.com.

These Settlements may also release claims against Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner raised in other lawsuits involving alleged anticompetitive conduct in connection with commissions charged by brokers and agents in residential real estate transactions. Those other lawsuits are discussed further below in response to Question 21.

| **2.** | **What is this lawsuit about?** |
|---|---|

The lawsuits claim that Defendants, including Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner, created and implemented rules that require home sellers to pay commissions to the broker or agent representing the buyer and that caused home sellers to pay total commissions at inflated rates. They also allege that Defendants enforced these rules through anticompetitive and unlawful practices.

The lawsuits claim that these rules are anticompetitive and unfair, and that they violate antitrust laws. You can read Plaintiffs' complaints at www.RealEstateCommissionLitigation.com. Specifically, the lawsuits allege violations of the Sherman Act (a federal antitrust statute found at 15 U.S.C. § 1 *et seq.*) among other things. The Sherman Act claims apply to home sales that occurred anywhere in the United States during the Eligible Date Range.

| **3.** | **Has the Court decided who is right?** |
|---|---|

Although the Court has authorized notice to be given of the proposed Settlements, this Notice does not express the opinion of the Court on the merits of the claims or defenses asserted by either side of the lawsuit.

Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner dispute Plaintiffs' allegations and deny all liability to Plaintiffs and the Class. On October 31, 2023, a jury found in favor of Plaintiffs against different defendants in an action involving similar claims and allegations: *Burnett et al. v. National Association of Realtors, et al.*, Case No. 19-CV-00332-SRB (Western District of Missouri) ("Burnett"). On November 4, 2024, the Court granted final approval of the Settlements with Defendants Compass, Real Brokerage, Realty ONE, @properties, Douglas Elliman, Redfin, Engel & Völkers, HomeSmart and United Real Estate in the previously consolidated *Gibson* action.

| **4.** | **Why is this case a class action?** |
|---|---|

In a class action, one or more people called Class Representatives sue on behalf of other people who have similar claims. The people together are a "Class" or "Class Members." The consumers who sued Defendants—and all the Class Members like them—are called Plaintiffs. The companies they sued are called the Defendants. One court resolves the issues for everyone in the Class – except for those who choose to exclude themselves from the Class.

Here, the Court decided that this lawsuit can be a class action for settlement purposes because it preliminarily meets the requirements of Federal Rule of Civil Procedure 23, which governs class actions in federal courts. Specifically, the Court found that: (1) there are numerous people who fit the class definition; (2) there are legal questions and facts that are common to each of them; (3) the Plaintiffs' claims are typical of the claims of the rest of the Class; (4) Plaintiffs, and the lawyers representing the Class, will fairly and adequately represent the Class Members' interests; (5) the

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 82 of 151

common legal questions and facts are more important than questions that affect only individuals; and (6) this class action will be more efficient than having individual lawsuits.

| **5.** | **Why are there Settlements?** |
|---|---|

Although Plaintiffs prevailed at trial against other defendants in the related *Burnett* action, involving similar claims and allegations, the Court has not ruled in favor of the Plaintiffs or Defendants in this *Gibson* action. Counsel for the Settlement Class investigated the facts and applicable law regarding Plaintiffs' claims and Defendants' defenses, potential issues at trial and on appeal, and the Defendants' ability to pay. The parties engaged in arms-length negotiations to reach the Settlements. Plaintiffs and Counsel for the Settlement Class believe that the proposed Settlements are fair, reasonable, and adequate, and in the best interest of the Class.

Both sides agree that by settling, Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner are not admitting any liability or that they did anything wrong. Both sides want to avoid the uncertainties and expense of further litigation.

## WHO IS IN THE SETTLEMENTS?

| **6.** | **How do I know if I am a part of the Settlements?** |
|---|---|

You are a part of the Settlement Class if you: (1) sold a home during the Eligible Date Range (as defined above); (2) listed the home that was sold on a multiple listing service (as defined above) anywhere in the United States; and (3) paid a commission to a real estate brokerage in connection with the sale of the home. More information about the Eligible Date Range for each Settlement can be found in each Settlement Agreement, at www.RealEstateCommissionLitigation.com.

If you are uncertain as to whether you are a member of the Settlement Class, you may contact the Settlement Administrator at 888-995-0207 to find out.

## THE SETTLEMENT BENEFITS

| **7.** | **What do the Settlements provide?** |
|---|---|

If you are a member of the Settlement Class, you are eligible to receive a benefit under the Settlements.

The Settling Defendants named here have agreed to pay over $8 million into a settlement fund:

Keyes and Illustrated ($2.4 million total), NextHome ($600,000), John L. Scott ($1 million), LoKation ($925,000), Real Estate One ($1.5 million), Baird & Warner ($2.2 million). The current value of all settlements with these and other Defendants is over $1 billion. The settlement fund will be distributed to qualifying Settlement Class Members who submit an approved claim form, after any awarded attorneys' fees, expenses, settlement administration costs, and service awards have been deducted. Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner have also agreed to implement Practice Changes and provide Cooperation. You can learn more about the Practices Changes and Cooperation in the Settlement Agreements, which are available at www.RealEstateCommissionLitigation.com.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 83 of 151

| 8. | How can I get a benefit? |
|---|---|

*Note: If you have already submitted a claim form in this case for a prior settlement with other Defendants through the website: www.RealEstateCommissionLitigation.com, you do not need to submit another claim form. **With one claim form, you will receive your share of each settlement that you are eligible for.***

To receive a benefit, a Settlement Class Member must submit a claim form with information pertaining to and/or evidence of your home sale and commissions paid to the Notice and Claims Administrator. The Notice and Claims Administrator will be responsible for reviewing all claim forms and evidence of purchase to determine whether a claim is an approved claim. The Notice and Claims Administrator will reject any claim that is not: (a) submitted timely and in accordance with the directions on the claim form, the provisions of these Settlement Agreements, and the Preliminary Approval Order; (b) fully and truthfully completed by a Settlement Class Member or their representative with all of the information requested in the claim form; and (c) signed by the Settlement Class Member. Claims that cannot be confirmed by the Settlement Administrator may be subject to challenge, nonpayment, or a reduced share of the available funds.

You can submit a claim form by clicking this link, or by printing the claim form from the website and returning it to the Settlement Administrator via mail or email on or before **May 9, 2025**.

*Gibson et al. v. The National Association of Realtors et al.*
c/o JND Legal Administration
PO Box 91479
Seattle, WA 98111

Email: info@RealEstateCommissionLitigation.com

| 9. | When would I get my benefit? |
|---|---|

The Court will hold a final Fairness Hearing at **1:30 PM** on **June 24, 2025**, in the United States District Court for the Western District of Missouri, 400 E. 9th St., Courtroom 7B, Kansas City, Missouri 64106, to decide whether to finally approve the Settlements. If the Settlements are approved, there may be appeals. Payments to members of the Settlement Class will be made only if the Settlements are approved and after any claims period and appeals are resolved. This may take some time, so please be patient.

| 10. | What am I giving up to get a benefit? |
|---|---|

Upon the Court's approval of the proposed Settlements, all members of the Settlement Class who do not exclude themselves (as well as their representatives) will release Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner (and their affiliates, subsidiaries, franchisees, employees, and certain others as specified in the Settlement Agreements).

All members of the Settlement Class who do not exclude themselves will release claims whether known or unknown that they ever had, now have, or hereafter may have and that have accrued as of the date of preliminary approval of the Settlements arising from or related to the Released Claims. "Released Claims" means any and all manner of claims regardless of the cause of action arising from or relating to conduct that was alleged or could have been alleged in the Actions based on any or all of the same factual predicates for the claims alleged in the Actions, including but not

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB     Document 50-3     Filed 06/17/25     Page 84 of 151

limited to commissions negotiated, offered, obtained, or paid to brokerages in connection with the sale of any residential home. The release does not extend to any individual claims that a Class Member may have against his or her own broker or agent based on a breach of contract, breach of fiduciary duty, malpractice, negligence or other tort claim, other than a claim that a Class Member paid an excessive commission or home price due to the claims at issue.

This release may affect your rights, and may carry obligations, in the future. To view terms of the release, review the Settlement Agreements, which are available at www.RealEstateCommissionLitigation.com.

## <u>EXCLUDING YOURSELF FROM THE SETTLEMENTS</u>

If you do not want a payment from the Settlements, and you want to keep the right to sue or continue to sue Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner and affiliated entities on your own about the legal issues in this case, then you must take steps to get out. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

| **11.** | **How do I ask to be excluded?** |
|---|---|

To ask to be excluded, you must execute and send a Request for Exclusion to the Settlement Administrator postmarked on or before **May 9, 2025**. A Request for Exclusion must include the potential Settlement Class Member's present name and address, the address of the home(s) sold and approximate date(s) of sale of the home(s), a clear and unequivocal statement that the potential Settlement Class Member wishes to be excluded from the Settlement Class as to Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and/or Baird & Warner, and the signature of the putative Settlement Class Member or, in the case of a potential Settlement Class Member who is deceased or incapacitated only, the signature of the legally authorized representative of the putative Settlement Class Member.

*Note: if you did not exclude yourself from previous settlements, you may still exclude yourself from some or all of these six Settlements.*

If the request is not postmarked on or before **May 9, 2025**, your exclusion will be invalid, and you will be bound by the terms of the Settlements approved by the Court, including without limitation, the judgment ultimately rendered in the case, and you will be barred from bringing any claims against Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, Baird & Warner, or their affiliates as outlined in Question 10 above which arise out of or relate in any way to the claims in the case as specified in the release referenced in Question 10 above.

You must mail your Exclusion Request to:

*Gibson et al. v. The National Association of Realtors et al.*
c/o JND Legal Administration – Exclusion Dpt.
PO Box 91486
Seattle, WA 98111

| **12.** | **If I don't exclude myself, can I sue Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, or Baird & Warner for the same thing later?** |
|---|---|

No. Unless you exclude yourself, you give up any right to sue Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and/or Baird & Warner, and their Released Parties for the claims that the Settlements resolve. If you have a pending lawsuit against Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, Baird & Warner, their Released Parties, or

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB     Document 50-3     Filed 06/17/25     Page 85 of 151

certain affiliated entities such as MLSs or small brokers, speak to your lawyer in that case immediately. You may have to exclude yourself from this Class to continue your own lawsuit. Remember, the exclusion deadline is **May 9, 2025.**

| **13.** | **If I exclude myself, can I get benefits from the Settlements?** |

No. If you exclude yourself as to the Settlements with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and/or Baird & Warner, do not send in a claim form to ask for any money. If you exclude yourself only as to some of these Defendants, you may still ask for money from the Settlements with other Defendants. If you exclude yourself as to Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and/or Baird & Warner, you may sue, continue to sue, or be a part of a different lawsuit against these Defendants.

## THE LAWYERS REPRESENTING YOU

| **14.** | **Do I have a lawyer in this case?** |

The Court decided that the law firms Ketchmark and McCreight P.C.; Williams Dirks Dameron LLC; Boulware Law LLC; Hagens Berman Sobol Shapiro LLP; Cohen Milstein Sellers & Toll PLLC; and Susman Godfrey LLP, are qualified to represent you and all other Settlement Class Members. These lawyers are called "Class Counsel." You will not be charged for these lawyers. They are experienced in handling similar cases against other entities. More information about the law firms, their practices, and their lawyers' experience is available at: www.kansascitylawoffice.com, www.williamsdirks.com, www.boulware-law.com, www.hbsslaw.com, www.cohenmilstein.com, and www.susmangodfrey.com.

Class Counsel represent the interests of the Settlement Class. You may hire your own attorney to advise you, but if you hire your own attorney, you will be responsible for paying that attorney's fees.

| **15.** | **How will the lawyers be paid?** |

Class Counsel will ask the Court for attorneys' fees, in an amount not to exceed one-third (33.3%) of the settlement fund, plus out-of-pocket expenses incurred during the case. The Court may award less. Class Counsel may also seek compensation for each current and/or former class representative in the action captioned *Gibson*.

The Class Representatives will make their request for attorneys' fees, costs, and service awards on or before March 26, 2025 and that request will be published at www.RealEstateCommissionLitigation.com.

Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner will pay the fees and expenses that the Court awards from the settlement fund. You are not responsible for any fees or expenses that the Court awards.

## OBJECTING TO THE PROPOSED SETTLEMENTS

You can tell the Court that you don't agree with the any or all of the Settlements or some parts of them.

| **16.** | **How do I tell the Court that I don't like the Settlements?** |

If you are a Class Member, you can object to these Settlements if you do not like any part of them, including the forthcoming motion for attorneys' fees, costs and service awards. You can give reasons why you think the Court should not approve them. The Court will consider your view. To object, you must file or send a written objection to the Court, as instructed by the Court, by

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 86 of 151

**May 9, 2025,** or you will waive your right to object (whether in opposition to the motion for Final Approval, motion for attorneys' fees, costs and service awards, on appeal, or otherwise) to the Settlements. Be sure to include the case name and number (*Gibson et al. v. The National Association of Realtors et al., Case No. 23-cv-788-SRB*), as well as the following information: (a) your full name, address, telephone number and email address, if any; (b) the address of the home(s) sold, the date of the sale, the listing broker(s), and the buyer's broker(s); (c) a specific statement of all grounds for your objection and, if applicable, any legal support for the objection; (d) a statement whether the objection applies only to you, to a specific subset of one or more of the Settlement Classes, or to the entirety of all of the Settlement Classes; (e) a statement whether the objection applies to all of the Settlement Classes addressed in this order or only those with certain of the Settling Defendants; (f) the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection; (g) a list of all class action settlements to which you have objected in the past five (5) years, if any; (h) copies of any papers, briefs, or other documents upon which the objection is based; and (i) your signature.

**You must file any objection with the Clerk of the Court at the address below by May 9, 2025:**

United States District Court for the Western District of Missouri
400 E. 9th St., Room 7462, Kansas City, Missouri 64106
*Gibson et al. v. The National Association of Realtors et al., Case No. 23-cv-788-SRB*

**You must also send your objection by first class mail, postmarked on or before May 9, 2025,** to Class Counsel and Defendants' Counsel at the following addresses:

| Counsel for the Settlement Class: | Counsel for Keyes and Illustrated: | Counsel for NextHome: |
|---|---|---|
| WILLIAMS DIRKS DAMERON LLC c/o Eric Dirks 1100 Main Street, Ste 2600 Kansas City MO 64105 | GUNSTER c/o Timothy McGinn Brickell World Plaza 600 Brickell Ave., Ste 3500 Miami, FL 33131 | DLA PIPER LLP (US) c/o David H. Bamberger 500 Eighth Street, NW Washington, DC 20004 |
| **Counsel for John L. Scott:** | **Counsel for LoKation:** | **Counsel for Real Estate One:** |
| DAVIS WRIGHT TREMAINE LLP c/o Yoni Rosenzweig 865 South Figueroa Street Ste 2400 Los Angeles, CA 90017-2566 | COLE, SCOTT & KISSANE Cole, Scott & Kissane Building c/o Joshua D. Molina or Jonathan Vine 9150 S. Dadeland Blvd Ste 1400 Miami, Florida 33156 | Dykema Gossett PLLC c/o Howard Iwrey 39577 Woodward Avenue, Ste 300 Bloomfield Hills, MI 48304 |
| **Counsel for Baird & Warner:** | | |
| REED SMITH LLP c/o Michelle Mantine 225 5th Ave, Ste 1200 Pittsburgh, PA 15222 | | |

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB     Document 50-3     Filed 06/17/25     Page 87 of 151

Any member of the Settlement Class who does not file and serve an objection in the time and manner described above will not be permitted to raise that objection later. If you send an objection, you may need to personally appear at the Fairness Hearing on **June 24, 2025**, or your objection may be waived. Please check the settlement website and/or Court docket for the Court's instruction.

| | |
|---|---|
| **17.** | **What's the difference between objecting and excluding?** |

Objecting is simply telling the Court that you don't like something about the Settlements. You can object to a Settlement only if you stay in it. Excluding yourself is telling the Court that you do not want to be part of a Settlement. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

### THE COURT'S FAIRNESS HEARING

| | |
|---|---|
| **18.** | **When and where will the Court decide whether to approve the Settlements?** |

There will be a final Fairness Hearing to consider approval of the proposed Settlements, **at 1:30 PM on June 24, 2025** at the United States District Court for the Western District of Missouri, 400 E. 9th St., Courtroom 7B, Kansas City, Missouri 64106. The hearing may be postponed to a later date without further notice. Any such postponements will be posted on the Court docket and/or settlement website at www.RealEstateCommissionLitigation.com. The purpose of the hearing is to determine the fairness, reasonableness, and adequacy of the terms of the Settlements, whether the Settlement Class is adequately represented by the Plaintiffs and Class Counsel, and whether an order and final judgment should be entered approving the proposed Settlements. The Court will also consider Class Counsel's application for an award of attorneys' fees and expenses, and any class representative service awards.

If you do not object to the Settlements, you will be represented by Class Counsel at the Fairness Hearing unless you choose to enter an appearance in person or through your own counsel. The appearance of your own attorney is not necessary to participate in the Fairness Hearing. If you send an objection, you may need to personally appear at the Fairness Hearing on June 24, 2025, or your objection may be waived. Please check the settlement website and/or Court docket for the Court's instruction.

| | |
|---|---|
| **19.** | **Do I have to come to the hearing?** |

If you do not object, you do not need to come to the hearing. Class Counsel will represent the Settlement Class at the Fairness Hearing, but you are welcome to come at your own expense. You may also pay your own lawyer to attend if you wish. If you send an objection, you may need to personally appear at the Fairness Hearing on June 24, 2025, or your objection may be waived. Please check the settlement website and/or Court docket for the Court's instruction.

| | |
|---|---|
| **20.** | **May I speak at the hearing?** |

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *Gibson et al. v. National Association of Realtors et al., Case No. 23-CV-788-SRB.*" Be sure to include your name, address, telephone number and your signature. Your Notice of Intention to Appear must be postmarked no later than **May 9, 2025**, and be sent to the Clerk of the Court, Class Counsel and Counsel for Keyes,

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB    Document 50-3    Filed 06/17/25    Page 88 of 151

Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner at the addresses in Question 16. You cannot speak at the hearing if you excluded yourself.

## ARE THERE OTHER REAL ESTATE COMMISSIONS LAWSUITS OR OTHER DEFENDANTS?

| **21.** | **Are there other similar cases?** |
| --- | --- |

In addition to *Gibson*, there are numerous other class actions involving similar claims, including: *Keel, et al. v. Washington Fine Properties LLC, et al.,* Case No. 4:25-cv-00055-FJG (W.D. Missouri); *Burnett et al., v. National Ass'n of Realtors et al.*, Case No. 19-CV-00332-SRB (W.D. Missouri); *Moehrl et al., v. National Ass'n of Realtors et al.,* Case No. 1:19-cv-01610 (N.D. Illinois); *Batton v. NAR*, Case No. 1:21-cv-00430 (N.D. Ill.); *Batton v. Compass*, Case No. 1:23-cv-15618 (N.D. Ill.); *Burton v. NAR*, Case No. 7:23-cv-05666-JD (D.S.C.); *QJ Team, LLC and Five Points Holdings, LLC v. TAR*, Case No. 4:23-cv-01013 (E.D. Tx.); *March v. REBNY*, Case No. 1:23-cv-09995 (S.D.N.Y.); *1925 Hooper LLC v. NAR*, Case No. 1:23-cv-05392-SEG (N.D. Ga.); *Kay v. West Penn Multi-List, Inc.*, Case No. 2:23-cv-2061 (W.D. Pa.); *Grace v. NAR*, Case No. 3:23-cv-06352 (N.D. Cal.); *Masiello v. Arizona Association of Realtors*, Case No. 2:24-cv-00045 (D. Ariz.); *Tuccori v. At World Properties, LLC*, Case No. 2:24-cv-00150 (N.D. Ill.); *Whaley v. Arizona Association of Realtors*, Case No. 2:24-cv-00105 (D. Nev.); *Fierro v. National Association of Realtors*, Case No. 2:24-cv-00449 (C.D. Cal.); *Friedman v. REBNY et al.*, Case No. 1:23-cv-00405 (S.D.N.Y.); *Willsim Latham v. MetroList*, Case No. 2:24-cv-00244 (E.D. Cal.); *Jensen v. National Ass'n of Realtors et al*, Case No. 2:24-cv-00109 (D. Utah); *Peiffer v. Latter & Blum Holding, LLC, et al.,* Case No. 2:24-cv-00557 (E.D. La.); *Wang v. National Ass'n of Realtors et al.*, Case No. 1:24-cv-02371 (S.D.N.Y.); *Jutla v. Redfin Corporation*, 2:24-cv-00464 (W.D. Wash.); *Burton v. Bluefield Realty*, Case No. 7:24−cv−01800-JDA (D.S.C.); *1925 Hooper LLC v. Watson Realty Corp.*, Case No. 3:24-cv-00374 (M.D. Fla.); *Wallach v. Silvercreek Realty Group LLC*, Case No. 1:24-cv-3356 (N.D. Ill.); *Lutz v. HomeServices of America, Inc., et al.* 4:24-cv-10040-KMM (S.D. Fla.); *Davis v. Hanna Holdings, Inc.* 2:24-cv-02374 (E.D. Pa.); *Hartz v. Real Estate One, Inc.*, Case No. 1:24-cv-03160 (N.D. Ill.); *Maslanka, et. al. v. Baird & Warner, Inc.*, Case No. 1:24-cv-02399 (N.D. Ill.); among others.

The Settlements may release claims against Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, Baird & Warner, and their Released Parties, asserted on behalf of members of the putative classes in those cases. But the Settlements may not release claims against other Defendants in those cases. If you are a member of a putative class in any other cases involving similar claims, you may have additional rights to participate in or exclude yourself from ongoing litigation or settlements in those cases.

## GETTING MORE INFORMATION

| **22.** | **Are there more details available?** |
| --- | --- |

This Notice is only a summary. For a more detailed statement of the matters involved in the lawsuit or the Settlements, you may refer to the papers filed in this case during regular business hours at the office of the Clerk of Court, United States District Court for the Western District of Missouri, 400 E. 9th St, Kansas City, Missouri 64106: *Gibson et al. v. The National Association of Realtors et al.*, Case No. 23-CV-788-SRB. The full Settlement Agreements and certain pleadings filed in the cases are also available at www.RealEstateCommissionLitigation.com, or can be requested from Class Counsel, identified in the answers to Questions 14 and 16 above, or from the Settlement Administrator, with the contact information provided in Question 8 above.

*Questions? Call 888-995-0207 or visit www.RealEstateCommissionLitigation.com to learn more.*

Case 4:25-cv-00055-SRB     Document 50-3     Filed 06/17/25     Page 89 of 151

# EXHIBIT C

# REAL ESTATE BROKER COMMISSION CLAIM FORM

You may be eligible to receive compensation if you (1) sold a home during the Eligible Date Range; (2) listed the home on a multiple listing service anywhere in the United States; and (3) paid a commission to a real estate agent or broker in connection with the sale of the home. Please refer to the Settlement Notice or visit www.RealEstateCommissionLitigation.com to determine the Eligible Date Ranges.

## The Easiest Way to File is Online at www.RealEstateCommissionLitigation.com.

---

# INSTRUCTIONS FOR COMPLETING THIS CLAIM FORM

---

1. Before completing this Claim Form, please review the Settlement Notice, which is available at www.RealEstateCommissionLitigation.com.

2. Please complete all information requested below. If the information you provide is incomplete, your claim may be rejected.

3. If you sold multiple homes during the Eligible Date Ranges, you will need to submit multiple forms.

4. Please complete all portions of Section A – Claim Information.

5. Please complete all portions of Section B regarding the sale of your home.

6. Please complete all portions of Section C if you have documentation to support the sale of your home.

7. For Section C, Proof of Payment means originals, copies, or images of closing documents reflecting (i) the sale of your home during the Eligible Date Range where your home was listed on an MLS and (ii) the fees paid to all real estate agent(s) or broker(s) involved in the transaction.

8. Please complete and sign the Attestation at Section D.

9. Timing – Your Claim Form must be mailed to the Settlement Administrator, or submitted online, by **May 9, 2025.** Any claims postmarked or electronically submitted after **May 9, 2025**, will be ineligible for a payment. If you are submitting your claim by mail, please send to:

   Residential Real Estate Broker Commissions Antitrust Settlements
   c/o JND Legal Administration
   PO Box 91479
   Seattle, WA 98111

10. Privacy – The information you provide in the Claim Form will not be disclosed to anyone other than the Settlement Administrator, the Court, and the Parties in this case, and it will be used only for purposes of administering this Settlement (such as to review a claim for completeness, truth, and accuracy).

## SECTION A - CLAIMANT INFORMATION

| First Name | M.I. | Last Name |
|---|---|---|
| | | |

**Current Address** *(Street, City, State, Zip Code)*

| Email Address | Phone Number |
|---|---|
| | |

**Mark the box stating your preferred method of payment:**

☐ Payment via Debit Card - *If selecting this option, please double-check that the* <u>email address</u> *provided above is correct and current.*

☐ Payment via a Settlement Check - *If selecting this option, please double-check that the* <u>address information</u> *above is correct and current.*

☐ Payment via Zelle – *If selecting this option, please doublecheck that the* <u>email address</u> *provided above is correct and current.*

☐ Payment via Venmo – *If selecting this option, please double-check that the* <u>phone</u> *number provided above is correct and current.*

## SECTION B - SALE INFORMATION

**Please complete the following information to the best of your knowledge.
Claim forms with more complete and accurate information are more likely to be approved and paid.**

| | |
|---|---|
| **Address of home sold:** (include city, state and zip) | |
| **Date of Sale*:** | |
| **Approximate Home Sale Price:** | |
| **Listing Brokerage:** | |
| **Amount of total Commission paid:** | |
| **Amount of commission paid to buyer-side broker:** | |

*The Date of Sale may be found on your closing statement, settlement statement, HUD statement, settlement letter, or other transaction documents included during the sale and closing of your home.  If you are unsure of the precise date, you may enter your best estimate of the Date of Sale, date range, or month and year of sale.

## SECTION C – DOCUMENTARY PROOF OF PAYMENT

**Please list in the space below any document(s) you have to support your Proof of Payment.** Documents that support your Proof of Payment may include your closing statement, settlement statement, HUD statement, settlement letter, or other transaction documents included during the sale and closing of your home.

_____

_____

**If you are mailing your Claim Form, please enclose your Proof(s) of Payment.**
**Claim forms with Proof of Payment are more likely to be approved and paid.**

## SECTION D - ATTESTATION

*By submitting this Claim Form and signing below, I hereby affirm that I am at least 18 years of age and that the information provided above, and in any enclosed Proof of Payment, is true and correct.*

Signature: _____     Date: _____

Print Name: _____

Your claim will be submitted to the Settlement Administrator for review.  If you are eligible for a Cash Award, and the proposed settlement is approved, you will be provided payment in the manner you requested above. This process takes time; please be patient.

**Reminder Checklist:**

✓ Please complete all the information requested above and sign the Claim Form.

✓ Enclose your Proof of Payment, if you have it, along with the Claim Form.

✓ Keep a copy of your Claim Form and supporting documentation for your records.

✓ Your claim must be submitted electronically or postmarked by **May 9, 2025**.

✓ Your claim must be submitted electronically at www.RealEstateCommissionLitigation.com or mailed to: Residential Real Estate Broker Commissions Antitrust Settlements c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111. The easiest way to file your claim is online.

✓ If you have any questions, please visit the website at www.RealEstateCommissionLitigation.com; or call 888-995-0207

✓ Please note that the settlement administrator may contact you to request additional information to process your claim.

# EXHIBIT D

 **Outlook**

**Real Estate Commission Lawsuits – New Settlements Reached**

**From** Realtors Settlement Administrator <info@realestatecommissionlitigation.com>
**Date** Tue 3/11/2025 4:56 PM
**To**

**Security Notice:** This email originated outside of JND. Use caution when clicking links or opening attachments.

# If you sold a home and paid a commission to a real estate agent, you *may* be a part of class action Settlements



## *PROPOSED SETTLEMENTS WITH ALL DEFENDANTS TOTAL OVER*

## *$1 BILLION*

*Para una notificación en español, visite [www.RealEstateCommissionLitigation.com](http://www.RealEstateCommissionLitigation.com).*

## What is this lawsuit about?

This Notice is to inform you that proposed Settlements have been reached with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner in a lawsuit known as *Gibson, et al. v. The National Association of Realtors, et al.*, Case No. 23-CV-788-SRB (W.D. Mo.) ("*Gibson*") and with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS in a lawsuit known as *Keel, et al. v. Washington Fine Properties LLC, et al.,* (W.D. Mo. Case No. 4:25-CV-00055-SRB) ("*Keel*"). The lawsuits allege the existence of an anticompetitive agreement that resulted in home sellers paying inflated commissions to real estate brokers or agents in violation of antitrust law. Proposed Settlements have also been reached with other Defendants in related lawsuits.

All Defendants in the lawsuits are listed at [www.RealEstateCommissionLitigation.com](http://www.RealEstateCommissionLitigation.com).

## How do I know if I am a part of the Settlements?

You are a Settlement Class Member and eligible for payment if you: (1) sold a home during the Eligible Date Range; (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The term "MLS" encompasses all NAR and non-NAR MLSs. The Eligible Date Range depends on which state or MLS you listed your home for sale on. Go to [www.RealEstateCommissionLitigation.com](http://www.RealEstateCommissionLitigation.com) to see the Eligible Date Range and to learn more.

## What do the Settlements provide?

The *Gibson* Settling Defendants named here have agreed to pay, collectively, over **$8 million** into a Settlement Fund and the *Keel* Settling Defendants named here over **$11.4 million**. The current value of *all* proposed Settlements with these and other Defendants is over **$1 billion**. The Fund will be distributed to qualifying Settlement Class Members who submit an approved Claim Form, after any awarded attorneys' fees, expenses, Settlement Administration costs, and service awards have been deducted. Settling Defendants have also agreed to implement Practice Changes and provide Cooperation.

You can learn more about the Practice Changes and Cooperation in the Settlement Agreements, available at [www.RealEstateCommissionLitigation.com](http://www.RealEstateCommissionLitigation.com).

## How do I get a payment?

***Note: If you have already submitted a Claim Form in this case for a prior Settlement with other Defendants, you do not need to submit another Claim.***

You must submit a Claim Form with information pertaining to and/or evidence of your home sale and commissions paid, by **May 9, 2025**. Claim Forms can be submitted online at [www.RealEstateCommissionLitigation.com](http://www.RealEstateCommissionLitigation.com).

You can also print a Claim Form at the website and mail it to Real Estate Commission Litigation Settlements, c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111, or email it to [info@RealEstateCommissionLitigation.com](mailto:info@RealEstateCommissionLitigation.com).

## What are my other options?

You may object to or exclude yourself (opt-out) from the Settlements by **May 9, 2025**, or do nothing. If you <u>exclude yourself</u>, you will *not* receive a Settlement Payment, but this is the only option that allows you to sue the Settling Defendants named here, and their Released Parties, relating to commission prices. If you wish to <u>object</u>, the Court will consider your views in deciding whether to approve or reject the proposed Settlements. If the Court does not approve the Settlements, no Settlement Payments will be sent, and the lawsuit will continue. You cannot object if you opt-out. By <u>doing nothing</u>, you will get no payment, and you will not be able to sue the Settling Defendants relating to commission prices.

For more information, including how to object or exclude yourself and to read the full terms of the release, visit www.RealEstateCommissionLitigation.com.

## What happens next?

The Court will hold a hearing on **June 24, 2025** to consider whether to grant Final Approval of the Settlements and award fees and costs to the attorneys representing the class ("Class Counsel"). The Court has appointed the law firms of Ketchmark and McCreight; Williams Dirks Dameron; Boulware Law; Hagens Berman Sobol Shapiro; Cohen Milstein Sellers & Toll; and Susman Godfrey as Class Counsel. Class Counsel will ask the Court to award an amount not to exceed one-third (33.3%) of the Settlement Funds, plus out-of-pocket expenses incurred during the case. The Court may award less. Class Counsel will also seek compensation for each current and/or former Class Representative. You will be represented by Class Counsel at the hearing unless you choose to enter an appearance in person or through your own lawyer, at your own cost, or unless you choose to object or opt-out of the Settlements. The appearance of your own attorney is not necessary to participate in the hearing.

## Questions?

This Notice is only a summary. To learn more, visit www.RealEstateCommissionLitigation.com, call toll-free 888-995-0207, email info@RealEstateCommissionLitigation.com, or write Real Estate Commission Litigation Settlements, c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111.

To unsubscribe from this list, please click on the following link: unsubscribe

# EXHIBIT E

*A federal court has ordered this Notice.*

RESIDENTIAL REAL ESTATE BROKER
COMMISSIONS ANTITRUST SETTLEMENTS

**NOTICE OF PROPOSED SETTLEMENTS**

***PROPOSED SETTLEMENTS WITH ALL
DEFENDANTS TOTAL OVER $1 BILLION***

**If you sold a home and paid a
commission to a real estate
agent, you *may* be a part of
class action Settlements**



*Para una notificación en español, visite
www.RealEstateCommissionLitigation.com*

Questions?
Call 888-995-0207 or Visit
www.RealEstateCommissionLitigation.com

Real Estate Commission Litigation Settlements
c/o JND Legal Administration
PO Box 91479
Seattle WA 98111

Unique ID: PIN:

«Barcode»
Postal Service: Please do not mark barcode

«Full_Name»
«CF_CARE_OF_NAME»
«CF_ADDRESS_1»
«CF_ADDRESS_2»
«CF_CITY», «CF_STATE» «CF_ZIP»
«CF_COUNTRY»

## What is this lawsuit about?

This Notice is to inform you that proposed Settlements have been reached with Keyes, Illustrated, NextHome, John L. Scott, LoKation, Real Estate One, and Baird & Warner in a lawsuit known as *Gibson, et. al. v. National Association of Realtors, et al.,* Case No. 23-CV-788-SRB (W.D. Mo.) ("*Gibson*") and with Side, Seven Gables, WFP, JPAR, Signature, First Team, Sibcy Cline, Brooklyn MLS, and CNYIS in a lawsuit known as *Keel, et. al. v. Washington Fine Properties LLC, et al.*, (W.D. Mo. Case No. 4:25-CV-00055-SRB) ("*Keel*"). The lawsuits allege the existence of an anticompetitive agreement that resulted in home sellers paying inflated commissions to real estate brokers or agents in violation of antitrust law. Proposed Settlements have also been reached with other Defendants in related lawsuits. All Defendants in the lawsuit are listed at www.RealEstateCommissionLitigation.com. You may not receive additional postcard notice of future settlements, so it is important that you continue to monitor the settlement website: www.RealEstateCommissionLitigation.com. Please submit your email to the Settlement Administrator to receive all future notices.

## How do I know if I am a part of the Settlements?

You are a Settlement Class Member and eligible for payment if you: (1) sold a home during the Eligible Date Range; (2) listed the home that was sold on a multiple listing service ("MLS") anywhere in the United States; and (3) paid a commission to any real estate brokerage in connection with the sale of the home. The term "MLS" encompasses all NAR and non-NAR MLSs. The Eligible Date Range depends on which state or MLS you listed your home for sale on. Scan the QR code or go to www.RealEstateCommissionLitigation.com to see the Eligible Date Range and to learn more.

## What do the Settlements provide?

The *Gibson* Settling Defendants named here have agreed to pay, collectively, over **$8 million** into a Settlement Fund and the *Keel* Settling Defendants named here over **$11.4 million**. The current value of *all* proposed Settlements with these and other Defendants is over **$1 billion**. The Fund will be distributed to qualifying Settlement Class Members who submit an approved Claim Form, after any awarded attorneys' fees, expenses, Settlement Administration costs, and service awards have been deducted. Settling Defendants have also agreed to implement Practice Changes and provide Cooperation. You can learn more about the Practices Changes and Cooperation in the Settlement Agreements, available at www.RealEstateCommissionLitigation.com.

## How do I get a payment?

*Note: If you have already submitted a Claim Form in this case for a prior Settlement with other Defendants, you do not need to submit another Claim.*

You must submit a Claim Form with information pertaining to and/or evidence of your home sale and commissions paid, by **May 9, 2025**. Claim Forms can be submitted online at www.RealEstateCommissionLitigation.com or by scanning the QR code.

You can also print a Claim Form at the website and mail it to Real Estate Commission Litigation Settlements, c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111, or email it to info@RealEstateCommissionLitigation.com.

## What are my other options?

You may object to or exclude yourself (opt-out) from the Settlements by **May 9, 2025**, or do nothing. If you exclude yourself, you will *not* receive a Settlement Payment, but this is the only option that allows you to sue Settling Defendants named here, and their Released Parties, relating to commission prices. If you wish to object, the Court will consider your views in deciding whether to approve or reject the proposed Settlements. If the Court does not approve the Settlements, no Settlement Payments will be sent, and the lawsuit will continue. You cannot object if you opt-out. By doing nothing, you will get no payment, and you will not be able to sue the Settling Defendants relating to commission prices. For more information, including how to object or exclude yourself and to read the full terms of the release, visit www.RealEstateCommissionLitigation.com.

## What happens next?

The Court will hold a hearing on **June 24, 2025** to consider whether to grant Final Approval of the Settlements and award fees and costs to the attorneys representing the class ("Class Counsel"). The Court has appointed the law firms of Ketchmark and McCreight; Williams Dirks Dameron; Boulware Law; Hagens Berman Sobol Shapiro; Cohen Milstein Sellers & Toll; and Susman Godfrey as Class Counsel. Class Counsel will ask the Court to award an amount not to exceed one-third (33.3%) of the Settlement Funds, plus out-of-pocket expenses incurred during the case. The Court may award less. Class Counsel will also seek compensation for each current and/or former Class Representative. You will be represented by Class Counsel at the hearing unless you choose to enter an appearance in person or through your own lawyer, at your own cost, or unless you choose to object or opt-out of the Settlements. The appearance of your own attorney is not necessary to participate in the hearing.

## Questions?

This Notice is only a summary. To learn more, scan the QR code, visit www.RealEstateCommissionLitigation.com, call toll-free 888-995-0207, email info@RealEstateCommissionLitigation.com, or write Real Estate Commission Litigation Settlements, c/o JND Legal Administration, PO Box 91479, Seattle, WA 98111.



# EXHIBIT F

The inventory of U.S. homes on the market climbed last month to its highest level since June 2020, according to data from Redfin. But mortgage rates and prices remain an unaffordable combination for many would-be homebuyers.

Mortgage rates are influenced by several factors, including how the bond market reacts to the Federal Reserve's interest rate policy decisions.

The latest pullback in rates echoes a decline in the 10-year Treasury yield, which lenders use as a guide for pricing home loans.

The yield, which was at 4.79% in mid-January, has been mostly easing since then, reflecting worries among bond investors over the potential impact from tariffs and other policies proposed by the Trump administration.

The 10-year yield was at 4.28% in midday trading Thursday.

🗨 View Comments (2)

Terms and Privacy Policy    Your Privacy Choices ✅❌


Real Estate Settlements Reached Now Totaling
Over $1 Billion
If You Sold a Home and Paid Commission to a Real Estate
Agent at Any Brokerage, You May Get a Payment

FILE A
CLAIM





**Real Estate Settlements Reached Now Totaling**

# Over $1 Billion

If You Sold a Home and Paid Commission to a Real Estate Agent at Any Brokerage, You May Get a Payment

**FILE A CLAIM**

However, how much you can save depends on your loan size, interest rate and where you are in your repayment schedule. For a median-priced home of $419,200 with 20% down and a 6.8% interest rate, that adds up to more than $20,000 in annual interest costs in the early years of the loan.

There is a catch though: To qualify for the tax break, you need to itemize your deductions, which only about 10% of tax filers do, according to TurboTax.

Most taxpayers take the standard deduction instead — a set amount the IRS lets you subtract from your income. For the 2024 tax year, the standard deduction is $14,600 for single filers and $29,200 for married couples filing jointly.

To benefit from itemizing, your total eligible





cnbc.com



### Referenced Symbols

↓ **RDFN** -13.41%

New-home sales plunged in January as home buyers pulled back in the face of persistently high home prices and mortgage rates. The drop could portend a tough spring home-buying season for the real-estate industry's hottest subsector.

Sales of newly built homes in the U.S. plunged 10.5% in January, marking the first negative read for the year. The pace of new-home sales fell to the lowest level since October 2024.

The drop was larger than economists surveyed by Dow Jones Newswires and the Wall Street Journal expected. Economists also attributed the large fall in new-home sales to severe winter weather that deterred many buyers from viewing properties.

But the plunge in new-home sales also comes on the heels of a bleak read of the future of new-home sales from builders earlier this month, and the data altogether signals a rocky road ahead for the sector.

Spooked by tariffs and potential immigration reform, builders are worried about construction costs, making them more pessimistic about their ability to sell newly constructed homes in the next six months.



**Super Micro is back in compliance. Is that enough to make its stock a buy?**



**People are worried about their jobs. Here's why that matters for stocks and bonds.**



**Why Apple's stock has held ground as the 'Magnificent Seven' have faltered**



**Why 2025 could become the 'year of the bond'**



**Friday's 'economic blackout day' boycott shows shoppers are fed up with high prices. Will it hit retailers where it hurts?**



**Real Estate Settlements Reached Now Totaling**

## Over $1 Billion

If You Sold a Home and Paid Commission to a Real Estate Agent at Any Brokerage, You May Get a Payment

The drop in confidence among builders is a major reset of expectations. In the current cycle of housing unaffordability — where there are too few homes for sale to meet home-buying demand — new-home construction sales have until now been considered the brightest spot in the U.S. housing market.

Advertisement



Better Homes &Gardens

DECORATING    HOME IMPROVEMENT    GARDEN    HOUSEKEEPING    RECIPES    SHOPPING    ABOUT US    🔍    | Subscribe

Save and organize all your favorite BHG recipes with MyRecipes!    ✕

# 11 Seriously Easy Things to Do to Boost Your Home's Value Before Selling It

Tackling any of these projects adds value to your home and makes it more sellable.

By **Kristine Gill** | Published on February 6, 2025

**In This Article**

Updating Curb Appeal

Staging Your Home

Making Improvements



PHOTO: EDWARD GOHLICH



Advertisement

**Real Estate Settlements Reached Now Totaling**

## Over $1 Billion

If You Sold a Home and Paid Commission to a Real Estate Agent at Any Brokerage, You May Get a Payment

**FILE A CLAIM**

Advertisement

Selling your home is a stressful process, and sometimes the thought of making improvements or repairs before listing your property is a daunting endeavor. "When preparing a home for sale, time and cost constraints often determine what actually can be accomplished," says broker Andrea Saturno-Sanjana of Coldwell Banker Warburg.

Rather than invest tons of money and time in an effort to get top dollar

Subscribe     Sign In

emailed statement. "Although a slowing economy may not seem like a good thing, lower rates could give the housing market the shot in the arm that it so desperately needs."

**Need a break?** Play the USA TODAY Daily Crossword Puzzle.



Florida real estate agent *Andrew West/The News-Press, Andrew West/The News-Press Via Imagn Content Services, LLC*

## All real estate is local

Any cooling in the economy is happening very gradually, and likely in some markets and not others.

Real Estate Settlements Reached Now Totaling **Over $1 Billion.** If You Sold a Home and Paid Commission to a Real Estate Agent at Any Brokerage, You May Get a Payment. **FILE A CLAIM >>**   JND



Sponsored



**Shop The Deco Clutch**
frankdarling.com



**Crocs**
crocs.com



Search Facebook

**Class Action Notice**
Sponsored · 

✕    ⋮



**Real Estate Settlements Reached Now Totaling**
# Over $1 Billion

If You Sold a Home and Paid Commission to a Real Estate
Agent at Any Brokerage, You May Get a Payment

realestatecommissionlitigatio...
**File a Claim**

**Learn more**

👍 Like    💬 Comment    ↗ Share



# EXHIBIT G



# People

**Kate Reclaims Her Role**
HER BOLD MOVE ONE YEAR AFTER CANCER REVEAL

People *Exclusive*

'OCTOMOM'
16 YEARS LATER

# How I Raised 14 Kids on My Own

Single mom Natalie 'Nadya' Suleman already had 6 kids when she welcomed octuplets in 2009. Once mired in controversy, she reveals her biggest regret, her strict parenting rules and how she makes ends meet with her 'healthy, well-adjusted' bunch

March 31, 2025

4+

## LEGAL NOTICE UPDATE
## ADDITIONAL SETTLEMENTS REACHED

If You Sold A Home And Paid Commission To A Real Estate Agent At Any Brokerage, You May be Eligible For a Payment In Settlements Now Totaling

# Over $1 Billion

*Para una notificación en español, visite www.RealEstateCommissionLitigation.com*

## YOUR RIGHTS AND OPTIONS

▶ File a Claim by May 9, 2025

▶ Exclude yourself ("Opt Out") by May 9, 2025

▶ Object by May 9, 2025

▶ Attend the Hearing on June 24, 2025



## QUESTIONS?

Call 1-888-995-0207 or visit www.RealEstateCommissionLitigation.com



**People picks**



Millie Bobby Brown with Chris Pratt.

### The Electric State | NETFLIX

**FANTASY** Millie Bobby Brown plays Michelle, a young woman on a journey to find her kidnapped, smarter-than-Einstein brother, who's become the nerve center of a tyrannical cyberempire. This futuristic adventure has an impressive production design, filled with chummy robots that could have wandered in from a children's fable—a dystopian *Pee-wee's Playhouse*. The story itself is mostly a chance for Brown to look intrepid or sob, which she does well. Chris Pratt plays a roguish smuggler. *(Streaming now)*



NEW series!

Charlie Cox as the Marvel crime fighter.

### Daredevil: Born Again | DISNEY+

**FANTASY** *Born Again* is a reboot of Netflix's *Daredevil* (2015-18), which introduced an element of noirish grit and gloom to Marvel adaptations. We're back again in a violent (not to mention criminally underlit) Big Apple, where Kingpin (Vincent D'Onofrio) is mayor and Charlie Cox the blind Daredevil. Welcome back! *(New episodes post Tuesdays)*

FROM TOP: PAUL ABELL/NETFLIX; GIOVANNI RUFINO/MARVEL

# EXHIBIT H

 **Google**    National Association of Realtors settlement     ✕   🎤   🔍      ⠿ 

 National Association of REALTORS®
https://www.nar.realtor › the-facts    ⋮

### NAR Settlement: Get the Facts

The resources here provide the facts and latest updates on NAR's settlement agreement related to broker commissions.

   NAR Settlement FAQs    NAR Member Resource: Dos...    Listing Agreements

 National Association of REALTORS®
https://www.nar.realtor › the-facts › what-the-nar-settle...    ⋮

### What the NAR Settlement Means for Home Buyers and ...

The settlement includes some changes to real estate transactions, but importantly, consumers will continue to have choices regarding real estate services.

 The New York Times
https://www.nytimes.com › 2024/11/26 › realestate › na...    ⋮

### Judge Approves Settlement That Changes Rules for Real ...

Nov 26, 2024 — Following a lawsuit, the **National Association of Realtors** was ordered to rewrite its rules governing agents' commissions and pay $418 million in ...

**Sponsored**

 www.realestatecommissionlitigation.com/

### Real Estate Broker Commissions - Settlements Over $1 Billion

Home sellers who paid commission to a real estate agent at any brokerage may be affected. Home sellers may get a portion of real estate settlements now over $1 billion. File now.

File a Claim · Important Documents · FAQ



11:48

Show more ⌄


Class Action Lawsuits
https://topclassactions.com

⋮

## Over $730 million real estate broker commission class action settlements

You may be eligible to claim compensation from class action settlements totaling over $730 million for allegedly inflated commission fees.

CNET
https://www.cnet.com

⋮

## Home Sellers: You May Be Eligible to Get a Slice of the Real Estate Settlement Money

Aug 17, 2024 — You may be eligible for compensation from a total of $980.9 million in legal settlements agreed to by multiple real estate brokerage companies.

**Sponsored**

 www.realestatecommissionlitigation.com/

## Real Estate Broker Commissions - Settlements Over $1 Billion - File a Claim

Home sellers who paid commission to a real estate agent at any brokerage may be affected. Home sellers have rights and options. Learn more. File a claim.

Important Documents    FAQ    File a Claim

Q Real Estate class action payment

# EXHIBIT I

# Reference List of Articles – November 2024 and February 26 – April 8, 2025

| Article # | Published by | Date |
|-----------|--------------|------|
| 1 | DailyMail.com | 11.17.24 |
| 2 | Reuters.com | 11.25.24 |
| 3 | YahooFinance.com | 03.08.25 |
| 4 | Indexbox.com | 03.08.25 |
| 5 | dotnews.com | 03.12.25 |
| 6 | HousingWire.com | 03.13.25 |
| 7 | Copybuzz.com | 03.18.25 |
| 8 | Keralacobank.com | 03.18.25 |
| 9 | Reuters.com | 03.18.25 |
| 10 | pressreader.com | 03.23.25 |
| 11 | Danspapers.com | 03.25.25 |
| 12 | Miamiherald.com | 03.28.25 |
| 13 | NYTimes.com | 03.29.25 |
| 14 | Inman.com | 04.02.25 |
| 15 | Respanews.com | 04.03.25 |
| 16 | realestatenews.com | 04.03.25 |
| 17 | TBRNewsmedia.com | 04.05.25 |

Media Monitoring Coverage
1

**DailyMail.com – 11.17.24**

https://www.dailymail.co.uk/yourmoney/housing-market/article-14039397/key-deadlines-1-billion-realtor-settlement-claim-share.html

## $1 billion is up for grabs for homeowners overcharged by realtors in landmark settlement... here's how to claim your share

A key deadline has passed in the $1 billion realtor settlement, but it is still possible to claim a share of the payout.

The real estate industry was **hit by its biggest shakeup in a century in August**, when the agent commission system was overturned after a **series of lawsuits** against major brokerages.

Before August 17, an agent working on behalf of a seller would charge their client a fee of around 5 to 6 percent, which would then be shared with the buyer's agent.

These fees became baked into house prices, helping to inflate values, and some realtors would push buyers toward homes with larger commissions.

The lawsuits argued the practice violated antitrust laws by allowing brokers to collude in order to raise commission prices, and the **brokerages agreed to settle**.

Anyone who sold a home during a specific date range and paid commission to a real estate agent is eligible for a payout. Here are the key dates to know.

In many cases, the deadline to be excluded from the settlement has passed.

There are three main settling parties, according to the official settlement **website**, which each encompass various brokerages.

The largest settlement, which amounts to $418 million, is with the National Association of Realtors (NAR) and HomeServices.

There is also a $110 million settlement with firms including Compass, Real Brokerage and Redfin, and a third settlement with Anywhere, RE/MAX and Keller Williams.

The deadlines to be excluded from all three settlements passed earlier this year.

But the deadline to submit a claim form for any of the three settlements is not until May 9, 2025.

For the NAR settlement, there is also a hearing in Missouri on November 26, 2024, to determine the 'fairness, reasonableness and adequacy of the terms of the settlements.'

There are three criteria you have to meet in order to be eligible to claim a part of any three of the settlements.

You must have sold a home during the eligible date range and paid a commission to any real estate brokerage in connection with the sale of the home. Details of eligible date ranges for all settlements can be found **here**.

Americans must have also listed the home that was sold on a multiple listing service (MLS) anywhere in the US.

An MLS is a platform that real estate agents use to list properties for sale and find homes for buyers.

Media Monitoring Coverage                                                                              2

**11.25.24 – Reuters.com**

https://www.reuters.com/legal/government/us-justice-dept-questions-scope-realtor-groups-418-mln-settlement-2024-11-25/

### US Justice Dept questions scope of realtor group's $418 mln settlement

By Mike Scarcella

November 25, 2024

8:31 AM PST  Updated 4 months ago



An American flag waves outside the U.S. Department of Justice Building in Washington, U.S.

REUTERS/Al Drago/File Photo

Nov 25 (Reuters) - The U.S. Justice Department's antitrust division warned a federal judge on Sunday that part of a proposed $418 million settlement in a class action over home sales commissions could limit how real estate brokers compete.

The settlement with the National Association of Realtors would end the practice of forcing home sellers to pay a commission to a buyer's agent in order to list their homes for sale.

The Justice Department, which is not a party to the case, submitted, opens new tab a "statement of interest" to U.S. District Judge Stephen Bough in Kansas City, Missouri, to share the government's position on the settlement. It said a provision requiring prospective buyers and their brokers to sign a written agreement before the buyer tours a home could constrain competition among brokers.

Bough is set to weigh final approval of the accord at a hearing on Tuesday.

The National Association of Realtors defended the settlement in a statement on Monday, saying it would "continue to advocate for final approval."

The Justice Department and lawyers for the plaintiffs did not immediately respond to requests for comment.

The realtors' group agreed in March to reform its commission rules and pay $418 million to a class of hundreds of thousands of home sellers. The settlement came after a jury in October awarded a $1.8 billion verdict against the association and other defendants. Many individual brokerages have since agreed to settle related claims.

The association and other defendants have denied any wrongdoing and said their commission practices promote efficiency and transparency in home-buying.

The Justice Department has reopened its own separate investigation into real estate industry commission practices. The National Association of Realtors in October asked the U.S. Supreme Court to block the government's demand for information in the probe, arguing that it violates an earlier agreement to close the inquiry.

The case is Rhonda Burnett et al v. National Association of Realtors et al, U.S. District Court, Western District of Missouri, No. 4:19-cv-00332-SRB.

Media Monitoring Coverage                                                                                4

**3.8.25 – YahooFinance.com**

https://finance.yahoo.com/news/new-real-estate-commission-rules-havent-made-it-much-cheaper-to-buy-or-sell-a-home-130254842.html

## New real estate commission rules haven't made it much cheaper to buy or sell a home

The first spring homebuying season since the NAR settlement might not look much different for buyers and sellers.

Claire Boston · Senior Reporter

Sat, March 8, 2025 at 5:02 AM PST 5 min read

It was hailed as an "earthquake" for how homes would be bought and sold in America, and a shift that would unleash "total confusion" in the real estate industry. But as the first spring homebuying season since new Realtor commission rules went into effect approaches, business is pretty much as usual.

Last March, the National Association of Realtors (NAR) agreed to pay $418 million to settle claims that the powerful trade group's rules inflated fees for buyers and sellers. Rule changes prohibiting certain practices that helped agents control commissions took effect in mid-August, ushering in hopes that fees — and home prices — might fall.

But so far, that hasn't happened, according to agents and other housing market experts around the country. While some of the mechanics behind negotiating commissions have changed, the dollar amounts have remained close to pre-settlement averages. And the practice of buying or selling a home without an agent — which some thought might take off in the wake of the settlement — remains niche.

"It's created a higher level of transparency between buyers and their agents, which I think is terrific," said Harvey Blankfeld, a Las Vegas-based real estate agent. "However, it has not impacted costs here in Vegas."

*Read more: What the NAR settlement means for homebuyers and sellers*

**What's changed, what hasn't**

In a typical pre-settlement transaction, a seller listed their home with an agent, while a buyer toured homes with their own agent. When a sale closed, the buyer's and seller's agents would typically split a commission of 5% to 6%, paid by the seller. For the median-priced home, that translates to a fee in the $21,000 to $24,000 range.

The settlement made two key changes: Sellers are no longer allowed to make promises of compensation to buyer's agents on the databases of homes for sale known as multiple listing services. Buyers using an agent must also have a representation agreement in place detailing compensation before they tour homes.

Those changes were designed to make agents' fees more transparent and negotiable. Under the old system, sellers would typically share the commission they were willing to pay a buyer's agent in their MLS listings, sparking concerns that buyer's agents would steer their clients away from listings that offered lower rates. While 5% to 6% has long been the norm in the US, it's far above global averages, where 1% to 3% is more typical.

Now, compensation conversations happen outside the MLS, although most sellers are still offering to pay commissions to buyer's agents. The NAR maintains that commissions were always negotiable.

**3.8.25 – Indexbox.com**

https://www.indexbox.io/blog/new-real-estate-commission-rules-a-market-unchanged/

March 8, 2025 at 9:19 AM GMT-8

### New Real Estate Commission Rules: A Market Unchanged

As the American housing market approaches its first spring homebuying season since the introduction of new Realtor commission rules, the anticipated radical shift has yet to materialize. According to a recent article from Yahoo Finance, many experts expected these changes to cut costs and bring significant disruption. However, the reality suggests otherwise as the market remains largely unchanged.

Following the National Association of Realtors' $418 million settlement and the mid-August rule amendments aimed at increasing transparency and fee negotiation, commissions have largely stayed within the pre-settlement range of 5% to 6%. This steadiness is corroborated by the latest data from IndexBox, which highlights that average buyers' agent fees only saw a slight decrease from 2.45% to 2.37% by the end of last year. Despite hopes that these changes would promote the practice of buying or selling homes without agents, it remains a niche area.

This ongoing status quo has led many in the market to express frustration over the seemingly static nature of fees, questioning the effectiveness of these regulatory changes. According to Sarah McLaren, CEO of Sellona, the demand for alternatives to traditional commission structures continues to grow among those frustrated by the lack of significant change.

Looking forward, many experts anticipate that the evolution of commission fees will heavily depend on specific market conditions, such as supply and demand dynamics in local areas. Some predict that a more substantial shift may occur as market conditions evolve, potentially seeing both buyers and sellers adapting to new financial arrangements that better align with a more transparent market landscape.

Source: IndexBox Market Intelligence Platform

Source: https://www.indexbox.io/blog/new-real-estate-commission-rules-a-market-unchanged/

**3.12.25 - Dorchester Reporter (dotnews.com)**

https://www.dotnews.com/2025/realtor-commission-rules-hurt-marginalized-home-buyers

# Dorchester Reporter

## Realtor commission rules hurt the marginalized home buyers

By Marc Saint Clair
March 12, 2025

For over half a century, significant strides have been made to increase homeownership among minorities and marginalized communities in the United States. From the Fair Housing Act of 1968 to decades of HUD initiatives and nonprofit efforts, homeownership has been a critical pathway to wealth building. However, recent developments threaten to reverse this progress, particularly for marginalized communities.

The National Association of Realtors (NAR) recently settled a lawsuit challenging the traditional real estate commission structure, where sellers paid both their agent's fee and the buyer's agent's fee. While intended to address antitrust concerns, this settlement introduces unintended consequences that disproportionately harm minority, low-income, and low-income homebuyers.

Previously, buyer agents were incentivized to assist clients from all backgrounds, as sellers covered their fees. Now, shifting this burden to buyers significantly increases upfront costs, making homeownership even more inaccessible for marginalized groups who often rely on down payment assistance. This change effectively doubles the financial barriers they face, turning homeownership into an unattainable goal for many.

Without buyer agents, marginalized buyers may be forced to engage directly with seller agents, exposing them to increased risks of discrimination. Sellers and their agents, now interacting directly with buyers, may use personal information—such as race, gender, religion, medical, or credit history—to favor certain buyers over others, reinforcing discriminatory practices that decades of fair housing efforts sought to eliminate.

Decades of systemic discrimination have limited homeownership opportunities for lower income households. FHA loans, often used by minority buyers, come with narrower margins for error. Without buyer agents to negotiate or guide them, these buyers face greater difficulty securing fair deals. The added burden of paying buyer agent fees upfront undermines the affordability of FHA loans.

Homeownership is one of the most effective ways to build generational wealth. Creating new financial barriers will widen economic disparities and slow progress for lower income families.

Direct seller-buyer interactions increase the likelihood of bias, as sellers may prioritize buyers based on personal preferences rather than objective qualifications. With buyers now responsible for agent fees, experienced agents may prioritize wealthier clients, creating a dual-tier system where marginalized buyers receive inferior representation—or none at all.

The primary beneficiaries of this lawsuit are corporations, large real estate firms, and tech-driven platforms that prioritize high-volume, low-service transactions. These entities stand to gain financially, while lower income, minorities, and first-time buyers bear the brunt of the changes.

This is a community issue. Lower homeownership rates among minorities weaken local economies, increase wealth inequality, and destabilize the housing market.

Congress has the power to level the playing field through federal legislation ensuring access to professional representation for all buyers. Requiring sellers to cover both buyer and seller agent fees would eliminate a significant barrier to entry for first-time homebuyers, particularly in historically disadvantaged communities. If legislation is not feasible, an alternative would require a substantial financial commitment—Congress would need to allocate billions annually to first-time homebuyer assistance programs to offset the inequities in the current structure.

Section 1A: Reference List of Articles - October 31, 2020 - August 26, 2021                    7

States should establish platforms for reporting discrimination, provide educational resources on fair housing laws, and ensure accountability for discriminatory practices. Expanding literacy initiatives, housing workshops, pro bono services, and partnerships with real estate firms can help support underrepresented buyers.

Minorities, lower income, immigrants, and other underrepresented groups are vital contributors to our economy and communities. Ensuring their ability to achieve homeownership is essential not only for their progress but for the shared prosperity of all. Homeownership symbolizes opportunity and stability. We must safeguard this pathway to ensure the American Dream remains accessible for future generations.

*Marc Saint Clair is a real estate broker specializing in helping first-time homebuyers, and novice investors.*

**3.13.25 – HousingWire.com**

https://www.housingwire.com/articles/the-post-settlement-shift-how-listings-are-concentrating-among-specialized-high-producing-agents/

## The post-settlement shift: How listings are concentrating among specialized, high-producing agents

How the NAR settlement is reshaping real estate

March 13, 2025, 7:25 am *By Rob Keefe*

The 2024 NAR settlement has reshaped the residential real estate industry, creating a new dynamic in how listings are distributed among agents. Recent data highlights a growing trend of specialization, increased productivity, and market consolidation. Notably, the median listing is now held by agents who are more focused on the list side of transactions and are higher producers overall. This shift is further underscored by a new analysis showing that agents taking at least 15 listings per year achieve significantly higher proficiency in converting listings to closings.

**The new profile of the median listing agent**

Before the settlement, the median listing was handled by an agent with:

- $3.5M annual production
- 15 listings/year
- 64.7% list-side focus

By February 2025, the profile of the agent handling the median listing has shifted:

- 20% higher production ($4.2M annually)
- 33% fewer listings taken annually (10/year)
- 68.2% list-side focus

**Proficiency threshold: 15 listings per year**

A deeper analysis of agent performance over five years reveals that proficiency — measured as the ratio of listings taken to closings achieved — significantly improves for agents handling at least 15 listings per year. The data shows a clear upward trajectory in proficiency as listing volume increases, with diminishing returns beyond this threshold.



5 yr listing/closing ratio vs listing taken in last 12 months

Agents taking fewer than 15 listings annually exhibit lower conversion rates, likely due to limited experience or inefficiencies in managing transactions. Conversely, those surpassing this threshold demonstrate mastery in converting listings into closed deals. This finding underscores the importance of experience and volume in building the skills necessary for consistent success.

For brokerages, this insight provides a tangible benchmark for identifying high-potential recruits and supporting mid-tier agents aiming to scale their business. Recruiting software can play a critical role here by tracking listing-to-closing ratios and helping brokerages identify candidates who are nearing or exceeding this proficiency threshold.

This evolution reflects a market where specialization and quality outweigh volume. While agents are taking fewer listings, they are closing more valuable deals and focusing their efforts on seller representation. This aligns with broader trends in which sellers increasingly demand agents with proven expertise and a track record of success in navigating post-settlement complexities like commission transparency and compliance requirements.

**Market consolidation: Top 10% agents control 42.64% of listings**

The concentration of listings among top-performing agents has grown significantly post-settlement, with the top 10% now controlling 42.64% of all listings—a 16.6% relative increase from pre-settlement levels. This consolidation reflects a market increasingly dominated by experienced agents who can justify their value to sellers through superior results and compliance expertise.

This trend also aligns with the observed proficiency threshold: top producers often exceed 15 annual listings, allowing them to refine their processes and deliver results that attract more clients. Sellers, wary of navigating post-settlement complexities on their own or with less experienced agents, are gravitating toward these proven performers.

**Implications for brokerages and recruiters**

These findings highlight critical opportunities for brokerage leaders and recruiters to adapt their strategies:

1. **Target list-side specialists**: The increased list-side focus (68.2%) among median listing agents underscores the

importance of recruiting specialists who excel in seller representation. Look for candidates with certifications like SRS (Seller Representative Specialist) or strong list-to-close ratios exceeding market averages.

2. **Leverage recruiting software for proficiency metrics:** Use real estate recruiting CRMs to track agent performance metrics such as annual listing volume and listing-to-closing ratios. These tools, fed by data providers like Relitix, can help identify candidates nearing or exceeding the critical 15-listing threshold, allowing brokerages to recruit or develop high-potential talent.

3. **Support mid-tier agents scaling toward proficiency:** Mid-tier agents represent an untapped growth opportunity for brokerages. Provide targeted training programs focused on scaling their listing volume while improving transaction efficiency to help them reach the critical proficiency level.

4. **Retain top producers with strategic incentives:** With top-performing agents controlling an increasing share of the market, retaining these individuals is crucial for brokerage success. Offer incentives tied to closing efficiency and price growth rather than raw volume to align with post-settlement dynamics.

**A new era of specialization and proficiency**

The flow of listings in 2025 reflects a market that rewards specialization, experience, and measurable results over sheer volume. The median listing is now handled by an agent who is more focused on seller representation and demonstrates higher annual production than before, while top performers continue to consolidate their dominance.

For brokerages navigating this new landscape, leveraging real estate recruiting software to identify proficient agents—particularly those meeting or exceeding the 15-listing threshold—will be critical to staying competitive. By prioritizing specialization and supporting mid-tier talent aiming to scale their business, brokerages can position themselves for long-term success in this evolving market.

A deeper analysis of agent performance over five years reveals that proficiency—measured as the ratio of listings taken to closings achieved—significantly improves for agents handling at least 15 listings per year. The data shows a clear upward trajectory in proficiency as listing volume increases, with diminishing returns beyond this threshold.

**3.18.25 – Copybuzz.com**

https://copybuzz.com/real-estate-commission-settlement/

## $730M Real Estate Commission Settlement 2025: Check Eligibility & How to Claim?

March 17, 2025 by Peter Robinson

The real estate sector saw major changes in 2025, after a $1 billion settlement that deals with claims of inflated commission fees. Several class-action lawsuits against the National Association of Realtors (NAR) and some of the biggest real estate brokerage firms in the nation led to this settlement.

According to the claims, these businesses engaged in unfair business practices that increased the price at which homeowners had to sell their houses.

**$730M Real Estate Commission Settlement 2025**

Homeowners and consumer awareness organizations claimed for years that the traditional real estate commission system was unfair. Sellers had to pay the commission for both their agent and the buyer's agent, even though the buyer's agent was working for the buyer.

Critics claimed that this reduced sellers' ability to negotiate for better prices, and increased commissions. Major real estate firms were eventually charged in a number of lawsuits of collaborating to maintain high commission rates in breach of antitrust laws. To settle the case, the companies agreed to pay $1 billion without admitting they did anything wrong.

**Real Estate Commission Settlement Overview**

| Authority | Residential Real Estate Broker Commissions Antitrust Settlements |
|---|---|
| Article | Real Estate Commission Settlement 2025 |
| Country | United States |
| Settlement Amount | Over $1 billion |
| Eligibility Period | April 29, 2014 – August 17, 2024 |
| Claim Deadline | May 9, 2025 |
| Payment Date | Varies based on claims |
| Category | Latest News |
| Official Website | https://www.realestatecommissionlitigation.com/ |

**Companies Involved in the Settlement**

- The settlement agreement included the names of several significant real estate companies.

- Douglas Elliman, Redfin, Engel & Völkers, United Real Estate, Real Brokerage, HomeSmart, @Properties, and Compass Inc. were among them.

- Together, these companies have committed to compensating eligible homeowners with over $730 million.

- The settlement includes major changes to real estate practices in addition to financial compensation.

- One of the most important changes is the restriction of commission gives via Multiple Listing Service (MLS) platforms.

**Who Can Qualify for Compensation**

The settlement may allow homeowners who sold their homes between 31st October 2017 to 23rd July 2024, to submit a claim. The seller must have paid a commission to a real estate brokerage as part of the sale, and the property must have been listed on an MLS platform in order to be eligible.

Crucially, homeowners who used the settlement's participating firms are not the only ones who qualify; any qualifying sale made within the allotted time frame may qualify the seller for compensation.

**How to Claim a Real Estate Commission Settlement**

Eligible homeowners need to provide proof of sale, such as settlement statements that clearly show the date of the sale and the commission paid. Claims can be submitted online through the official settlement website (RealEstateCommissionLitigation.com) or by mailing a completed form to the authorities.

All necessary documents must be included with the claim to be considered valid, and the claim must be submitted by 9th May 2025. Claims submitted after this date will not be accepted, so homeowners are advised to respond quickly in order to get their compensation.

**Impact on the Real Estate Market**

- This settlement is expected to make positive changes to the real estate industry by promoting more transparency.

- With the removal of commission provides from MLS listings, buyers and sellers will have a greater opportunity to negotiate agent fees directly.

- Additionally, agents will now be required to have written agreements with their clients, clearly explaining the terms of service and commission structure.

**FAQs**

**Which companies are involved in the real estate settlement?**

Douglas Elliman, Redfin, Engel & Völkers, United Real Estate, Real Brokerage, HomeSmart, @Properties, and Compass Inc. are part of the settlement.

**Who qualifies for compensation under the settlement?**

Homeowners who sold their homes via MLS between October 31, 2017, and July 23, 2024, and paid a brokerage commission may qualify.

**How can eligible homeowners file a compensation claim?**

Claims can be filed online at RealEstateCommissionLitigation.com or by mailing a completed form with proof of sale by 9th May 2025.

Media Monitoring Coverage                                                                                                    13

**3.18.25 – Keralacobank.com**

https://keralacobank.com/real-estate-commission-settlement-2025/

### Real Estate Commission Settlement 2025 – What is the Process to Receive Your Share from the $730M Payout

March 18, 2025 by Samarth Choudhary

To settle claims that real estate agents and the National Association of Realtors (NAR) colluded to inflate commission fees in violation of antitrust rules, a historic $1 billion settlement was done in 2025. For homeowners who sold their homes between 2014 and 2024, this settlement presents a significant opportunity.

You may get **Real Estate Commission Settlement 2025** Eligible if you sold a house during this time and gave a commission to a real estate firm. A number of brokers and agents were charged with breaking antitrust laws by banding together to artificially raise charges, according to the class action cases, which were referred to as "real estate commission litigation." When selling their houses, consumers say they were compelled to pay exorbitant charges because of this purported anti-competitive arrangement.

**Real Estate Commission Settlement 2025**

In yet another legal milestone, homeowners nationwide may now be eligible for payment from a $730 million settlement fund. This settlement fund's uptake follows a number of class-action lawsuits against the top real estate brokerage firms, including accusations that they engaged in anticompetitive behavior to raise commission prices.

Therefore, this page provides detailed information on what is included in the settlement, who is eligible, and how to apply for your share if you sold any of your residences between late 2017 and mid-2024. **Collective agreements totaling over $730 million resulting from allegedly inflated commissions** provide this chance for economic recompense. Recent commission agreements for real estate span a range of brokerage companies and certain qualifying dates.

**What is Real Estate Commission Settlement?**

These, along with a number of class-action cases known as "the real estate commission litigation," featured claims that a number of significant real estate brokerages conspired to set commission rates that were unreasonably high in violation of federal antitrust laws. The companies implicated in these activities have agreed to well-known settlements in order to avoid further costly litigation since they have not acknowledged any wrongdoing.

The companies involved in this settlement include Douglas Elliman, Redfin, Engel & Völkers, United Real Estate, Compass Inc., Real Brokerage, Realty ONE, and @Properties. These settlements, which total more than $730 million, are a huge victory for homeowners who were allegedly overcharged by commission fees.

**Who Is Eligible to File a Claim?**

- The following requirements must be met in order for you to be eligible for a settlement share. In the period from October 31, 2017, to July 23, 2024, you sold a residential residence. At the time of the sale, you need to have paid a commission to a real estate agency, and it had to be listed on a MLS.

- It is important to note that this does not imply that you used a certain brokerage for the settlement.

**Process to File a Claim and get compensation**

- The process to get your share of the settlement is simple if you think you are eligible for this money. Gather the paperwork associated with the selling of your house first. These might be commission breakdowns or closing statements that list the date of sale and the fees paid.

- Next, **visit the settlement's official website and complete a claim form via RealEstateCommissionLitigation. com.** You must upload all of the documents that attest to your eligibility and complete the sale-related information.

- Make sure to submit your claim by May 9, 2025, the officially designated deadline. This is the last day when

claims will be considered.

**Important Dates under this settlement**

- Exclusion & objection- Deadline: October 3, 2024.

- Date of the court's final approval hearing to decide whether to approve the proposed settlement: October 31, 2024.

- Last date to file a valid claim: May 9, 2025

**Distribution of Settlement Payment**

After all legitimate claims have been filed and confirmed, the money will be disbursed pro rata. The number of legitimate claims filed will determine how much money a claimant receives; the more claims made during a property sale, the lower the compensation per claimant. Because of the huge number of claims, compensation often fluctuate. However, the goal is to provide all worthy participants with fair amounts of cash compensation. The payments are divided out as follows:

- ompass Inc.: $57.5 million

- Real Brokerage: $9.25 million

- Realty ONE: $5 million

- @Properties: $6.5 million

- Douglas Elliman: USD 7.75 million plus up to an additional USD 10 million in CP

- Redfin: $9.25 million

- Engel & Völkers: $6.9 million

- HomeSmart: $4.7 million

- United Real Estate: $3.75 million

- *Capital One Class Action Payment Approved*

- *New Child Tax Credit Payment Coming In March 2025*

**Impact of this Settlement**

An important turning point in the real estate industry's dedication to transparency and equity is this court decision. In an effort to protect customers from excessive costs, the lawsuits have significantly challenged established commission arrangements.

Many homeowners see this as more than simply a legal victory; it is compensation for the thousands of dollars they lost due to deceptive commission tactics. Therefore, the long-term repercussions may influence a shift in the way brokers and agents charge.

Anyone who registered their house on an MLS, paid a brokerage commission, and sold their home between October 2017 and July 2024 is probably eligible to get a share of the $730 million settlement. Collect your supporting documentation, adhere to deadlines, and submit your claim to ensure your payment. This is a great chance to get your money back for expenses you might not have thought were very high.

**3.18.25 – Reuters.com**

https://www.reuters.com/legal/government/us-justice-dept-says-4-million-settlement-real-estate-commission-case-falls-2025-03-18/

### US Justice Dept says $4 million settlement in real estate commission case falls short

By Mike Scarcella

March 18, 20258:44 AM PDTUpdated 5 hours ago



The exterior of the U.S. Department of Justice headquarters building in Washington, D.C., U.S., July 14, 2009. REUTERS/Jonathan Ernst/File Photo Purchase Licensing Rights, opens new tab

March 18 (Reuters) - The U.S. Justice Department has asked a federal judge in Boston to reject a $4 million consumer settlement in New England that it warned may not fairly compensate home sellers and would keep artificially inflated real estate fees in place.

In a court filing, opens new tab on Monday, the Justice Department's antitrust division — under the new leadership of Assistant Attorney General Gail Slater — said the proposed class action settlement made only "cosmetic" changes to industry practices, and that money for consumers was "lacking."

Jumpstart your morning with the latest legal news delivered straight to your inbox from The Daily Docket newsletter. Sign up here.

Home sellers in 2020 sued MLS Property Information Network, or MLS PIN, a regional database featuring thousands of homes for sale in New England. The plaintiffs said they were forced to pay excessive commission fees.

Attorneys for the plaintiffs and representatives from the Justice Department did not immediately respond to requests for comment.

The Justice Department was not a party in the lawsuit. The filing appeared to be the first time the Slater-led antitrust team has filed a statement of interest since she was confirmed last week to head the antitrust group at DOJ.

Slater is a longtime antitrust lawyer who previously was an economic adviser to Vice President JD Vance. She has said the antitrust division will prioritize consumer protection in industries including healthcare, tech and agriculture.

U.S. District Judge Patti Saris has scheduled an April 1 hearing to weigh the proposed settlement.

The case and others like it challenged the longstanding practice in the residential real estate market that made home sellers responsible for a commission that is then shared between the sellers' and buyers' agents in a home sale.

Some major U.S. brokerages in recent years have paid tens of millions of dollars to settle claims that they conspired with the industry's trade group to artificially inflate commissions.

The plaintiffs' lawyers have defended their settlement as fair and reasonable. They said in a filing in January that nothing about the deal would stop the Justice Department from pursuing any claims on its own.

MLS Property Information Network, which has denied any wrongdoing, in a filing said that the settlement provides "not only valuable monetary relief to the class members" but also an injunction that will foster "substantial rule and practice changes."

The government's opposition to the deal marked its second time raising concerns in the case. The Biden-era Justice Department questioned an earlier proposal that was subsequently modified to include more money for consumers.

The case is Jennifer Nosalek et al v. MLS Property Information Network et al, U.S. District Court for the District of Massachusetts, No. 1:20-cv-12244-PBS.

© 2025 Reuters. All rights reserved

**3.23.25 – Pressreader.com  (Partial Text only)**

https://www.pressreader.com/usa/the-olympian/20250323/281668260768805

 Cancel          Copy to clipboard           Select All

# Home sellers, buyers accuse Realtors of blocking lower fees

The Olympian  23 Mar 2025  BY DEBRA KAMIN

When Mike Chambers was ready to sell his house in Boulder, Colorado, last month, he interviewed a handful of real estate agents who promised he could fetch $2.75 million or more if he listed with them.

But the promise would come at a cost: Each agent wanted him to pay a commission of at least 5%, or $137,500.

Frustrated that not a single agent was willing to budge on the rate, Chambers, 39, decided to sell his house on his own, and he took to social media with the handle @realtorshateme to chro...

Article Name: **Home sellers, buyers accuse Realtors of blocking lower fees**

Publication: **The Olympian**

Author: **BY DEBRA KAMIN**

Start Page: **12A**

End Page: **12A**

**3.25.25 – DansPapers.com**

https://www.danspapers.com/2025/03/landmark-real-estate-settlement-spurs-uncertainty-among-home-buyers-sellers-and-listing-agents/

## Landmark Real Estate Settlement Spurs Uncertainty Among Home Buyers, Sellers and Listing Agents

By Marc Horowitz

9 minute03/25/2025



A recent lawsuit settlement is expected to impact local home prices

A much-publicized March 15 settlement of an antitrust lawsuit brought against the National Association of Realtors, a powerful industry trade group, has left East End brokers, home buyers and sellers with more questions than answers as they struggle to figure out what it all means.

Multiple media reports, often quoting well placed industry experts, have suggested that the settlement could result in lower commission costs for home sellers – and lower fees for real estate agents.

It's understandable why home sellers would believe they were poised to save significant money after being bombarded with headlines like these: "The 6% Commission On Buying or Selling a Home is Gone After Realtors Association Agrees to Seismic Settlement" (CNN); "Powerful Realtor Group Agrees to Slash Commissions to Settle Lawsuits" (The New York Times); "A Major Settlement Could Spell an End to 6% Real Estate Commissions" (NPR).

Bottom of Form

Some reports also raised the possibility that home buyers may soon be forced to pay a commission out of their own pockets – which would represent a sea change in the way the real estate industry does business. Historically, the home seller, not the buyer, has been responsible for paying the commission costs of the transaction.

Hyperbolic media headlines aside, the industry's time-tested way of doing business is about to change – and some real estate insiders believe the changes will be radical.

"They took a 100-year-old model and turned it upside down and inside out," says Judi Desiderio, CEO and president of Town & Country Real Estate, an independent firm with multiple offices and approximately 160 agents spread across the North and South Forks. "They created total chaos. We're fielding questions every day from buyers and sellers asking us how this affects them."

The model Desiderio alludes to is probably familiar to almost everyone who has purchased a piece of real estate at some point in their lives. For many decades, home sellers traditionally paid a commission – usually 5 or 6 percent of the total purchase price of the property – to their listing agent. The selling agent then shared that commission with the buyer's agent.

But the home sellers who filed multiple lawsuits against the NAR and several large brokerage firms argued that NAR rules governing sale properties listed on the group's affiliated Multiple Listing Services (MLS) platform created an industry-standard commission rate that was unfairly and artificially inflated.

The NAR and other industry spokespeople countered by noting that the commission rate has always been negotiable, which is true in theory. But in practice, the 5-6 percent rate was the de facto standard and essentially all but carved in stone.

In a statement released a few days after news of the settlement broke, the NAR clarified what it said were "inaccuracies" in media reports on the group's role in setting commission rates.

"The National Association of Realtors does not set commissions – they are negotiable," the release said. "The rule that has been the subject of litigation requires only that listing brokers communicate an offer of compensation. That offer can be any amount, including zero."

Nevertheless, as part of an agreement announced in mid-March, The NAR said that it would eliminate policies that helped agents set sales commissions. The group also agreed to pay $418 million as compensation to United States home sellers.

Additionally, the NAR said it would end a policy that required that a broker advertising a home for sale on its MLS platform had to offer an upfront compensation to a buyer's agent. That change is significant because it makes it possible for sellers to negotiate commissions directly with a buyer's agent – as long as the seller's agent discloses the terms of any compensation arrangement.

The NAR also said that it will now require that buyer's agents secure a written agreement with their clients. The purpose is to ensure that buyers know what fees they'll be liable for before the transaction closes.

Regardless of how comprehensively commission costs might be disclosed upfront, many home buyers will be surprised to learn that they may soon be expected to pay a broker's fee on top of the myriad closing costs that already jack up their final purchase price by thousands of dollars.

The traditional buyer-broker relationship may look very different in the near future than it does today, predicts Alan Schnurman, an attorney, real estate broker, real estate investor and author (with Eric Feil) of *I Can, I Will, I Must: Buying the Hamptons, Building a Successful Future, Becoming the Best You Can Be*.

"Buyers in upscale markets such as the Hamptons, Aspen, Palm Beach or Manhattan tend to be sophisticated and accomplished purchasers and will follow a path to the listing broker," Schnurman opines. "In other markets, you can just imagine the surprise when a buyer is told that they will have to pay a broker's fee. I am confident the reaction will not be one of joy."

If the buyer's broker will no longer be compensated by the selling broker, Schnurman echoes many of his industry peers in predicting that various new compensation arrangements will need to arise between broker and buyer. These arrangements might take the form of a flat fee, an hourly fee or a percentage of the selling price.

Will a significant number of buyers be willing to forgo the market expertise, property resources and negotiation savvy that good agents bring to the table in order to avoid paying a commission? That's an open question at this point. But it's a question that the brokerage industry may ultimately be forced to reckon with.

"More and more, buyers will use the Internet to locate the residences that fit their location and price," Schnurman

opines. "The buyer will then contact each listing broker to view that particular residence. This will bypass any potential fees they may have to incur for a buyer's broker."

On the selling side of the transaction, since there will no longer be a baked-in standard commission rate of 5-6 percent charged to the seller, many economists and real estate professionals believe that selling agents will be forced to lower their fees, conceivably by as much as 50 percent, in order to compete for business.

"If I was a seller I would certainly raise that issue with my listing broker," Schnurman says. "Let's assume you do not have to split my fee with the buyer's broker. Well, in that case, why am I paying 6 percent and not 3 percent?"

Since East End homes routinely change hands at astronomical price points, it's easy to see why some sellers are juiced by the prospect of paying a significantly reduced commission rate. (It's also worth noting that realtor commission rates in the United States are considered high by international standards. Rates generally vary between 1 and 3 percent in the majority of developed nations.)

Between now and July, when the agreement is subject to approval by a federal court – and likely for many more months to come – the real estate world will be operating in something of a no man's land.

"It will take 12 to 36 months until the dust settles on how this shakes out," Schnurman predicts.

Town & Country's Judi Desiderio believes that in the months ahead, the real estate industry has a right to expect more clarity from external stakeholders, whether they be the courts, the NAR or New York State.

"You lay down a law on an industry that's been functioning for 100 years and you say, 'in four months we want you to do it differently,'" Desiderio laments. "OK, give us guidance, give us disclosures, tell us exactly what you want us to say and do. I think we're all jumping off the cliff without checking the bungee cord right now."

**3.28.25 – MiamiHerald.com**

https://www.miamiherald.com/news/business/real-estate-news/article302793294.html

### How should a real estate agent's commission be calculated? Here's what may save you money

By LEW SICHELMAN Andrews McMeel Syndication March 28, 2025 5:00 AM|

Which would you rather pay a real estate agent to help you sell your $450,000 house: a 6% sales commission or $27,000?

They're exactly the same amounts, of course. But 27 grand sounds like a lot more than 6%, doesn't it? And that's why a report from Stephen Brobeck, a senior fellow at the Consumer Policy Center, contends realty professionals almost always quote percentages instead of hard-and-fast numbers.

Obviously, you'll never know what you will eventually get for your house until a contract to buy it is signed, sealed and delivered, so quoting a percentage makes sense. There's a big difference between 6% of $450,000 and 6% of $400,000 — in this case, $3,000.

Nevertheless, Brobeck maintains that treating broker commissions in terms of percentages rather than dollars leads many sellers and buyers to overlook the real cost of buying and selling a house. To many, he says, a percentage is perceived to be less costly — and that's that. Forget for a moment that percentage-based commissions tend to discourage some — but certainly not all — agents on both sides of the table to negotiate prices down. After all, the higher the price, the bigger their paydays. Just consider the notion that, as Brobeck quotes an expert in this report, "percentages add a layer of abstraction" to the transaction.

It's simply more difficult for most people to translate percentages into real estate dollars, especially when the money is a large amount. And as everyone knows, real estate commissions tend to be very large, about $19,000 on the median priced house at the typical commission.

The research bears out that supposition. In one study, investigators found that "percentages are difficult to process and understand." Another study cited in Brobeck's paper compared consumer perceptions of a $50 discount with a 15% discount. Even though the dollar savings were identical, the $50 off coupon generated much more revenue, with the researchers concluding that not only did people fail to do the math, they had no desire to.

The research bears out that supposition. In one study, investigators found that "percentages are difficult to process and understand." Another study cited in Brobeck's paper compared consumer perceptions of a $50 discount with a 15% discount. Even though the dollar savings were identical, the $50 off coupon generated much more revenue, with the researchers concluding that not only did people fail to do the math, they had no desire to.

Another research study came to a similar conclusion: "This creates an obvious conflict of interest. ... Given that the agent receives a small portion of the transaction price as (a) commission, the agent's goal of maximizing the expected commission will conflict with the buyer's goal of minimizing the selling price."

Unlike Brobeck's previous reports, this one breaks no new ground and does not contain original research. It proposes no policy changes, either. But it does discuss how parties to a real estate transaction can protect themselves from paying more than they should.

First, ask your agent what the stated percentage would mean in dollar terms. This alone, the Brobeck believes, will put your agent on notice that you are concerned with what you are paying for their services. And it "will encourage agents to negotiate" their fees, he believes.

He also suggests buyers try to bargain for a fixed dollar fee with their agent — one that does not rise if the agent is unsuccessful in negotiating a lower price.

"A flat buyer agent fee will help prevent an increase in home price simply because a listing agent tries to raise the sale price while the buyer agent 'shirks' from trying to lower it," he says.

Sellers, too, might want to consider flat-fee agents for their side of the equation. You might not get as much service as you'd like, but the cost to sell your house will likely be much lower.

"To the extent these consumers treat the fees as dollars, not percentage of sale price, they should be able to more effectively negotiate the fees," Brobeck concludes. "This ability, most experts agree, will not only lower commissions overall but align agent compensation more closely with the services that agents provide."

**3.29.25 – NYTimes.com**

https://www.nytimes.com/2025/03/29/realestate/real-estate-agents-commissions.html?auth=linked-google1tap

## Readers Commiserate on Brokers' Commissions

One year after a settlement, sellers and buyers alike say that some agents are using loopholes to resist change.



In the year since a landmark legal settlement involving real estate commissions on home sales, the rates have dipped by only a small amount.Credit...Getty Images

**By Debra Kamin**

Published March 29, 2025Updated March 30, 2025

Kirk Downing knows the ins and outs of selling a home: His is a military family, and he, his wife and their two young sons have moved five times in the past 12 years.

So when The New York Times published the story of Mike Chambers, a homeowner in Colorado who tried to sell his house in February without a Realtor, only to learn that local agents were organizing to keep buyers away, it hit close to home.

Mr. Downing was among hundreds of readers who wrote in the comments section or sent personal notes after that article was published, all sharing experiences of feeling forced to pay high real estate commissions. They shouldn't have had to — a landmark legal settlement involving the National Association of Realtors last year was meant to upend the long-held system of how real estate agents are paid, and by whom. The lawsuit rocked the industry and prompted economists to predict that the settlement would loosen the housing market, foster competition and eventually do away with the long-held standard of 5 to 6 percent as the de facto commission rate paid by sellers.

But one year on, average commissions have dipped by a small amount, with one study showing a reduction, on average, from 5.64 percent to 4.96 percent in the months following the settlement. Other studies show they haven't budged at all.

Sellers and buyers alike say that some agents are using loopholes to resist real change.

Mr. Downing's wife, Michelle, is a recruiting officer in the U.S. Coast Guard. She recently received orders to relocate to Savannah, Ga., just two years after the couple bought a new home in Columbus, Ohio, for $425,000. They know they'll probably lose money on a sale — home prices in Ohio have fallen by an average of $100,000 over those two years, according to Realtor.com, and the couple recently spent $30,000 on improvements, thinking they'd be in Ohio for several more years.

But Mr. Downing, 41, who served a tour in Iraq with the National Guard, said that what stings the most about this sale is not the lost profit. It's the 3 percent commission he'll pay to the agent representing a buyer, because, he said, his own agent told him he had no choice. If he didn't offer it, she told him, no buyers would come to his house.

"The fix is in," he said in an email.

In an interview, he added that if he doesn't offer to pay buyers' agents, they "will blacklist our house, causing it to sit on the market for longer than we can afford."

Real estate commissions in the United States have long been baked into a home's listing price and then paid by the seller to their agent. The agent would then split the commission with the agent who brought the buyer, typically with 2.5 to 3 percent for each.

The rate of the commission split was communicated on private listing databases available only to agents, called multiple listing services. In the lawsuit that led to the settlement, a group of home sellers in Missouri argued that the covert sharing of rates led to a lack of transparency about whom, and how much, home sellers were required to pay. They also argued it inflated fees.

A jury agreed, and N.A.R. and the brokerages were ordered to pay nearly $2 billion in damages. The settlement came five months later, with the N.A.R. agreement to end the practice of commission-sharing over MLS databases as part of the deal. N.A.R. also agreed to pay $418 million to settle the claims, and some brokerages separately settled for millions of dollars.

Real estate commissions in the U.S. have long been baked into a home's listing price and then paid by the seller to their agent.Credit...Cristobal Herrera-Ulashkevich/EPA, via Shutterstock

Joanna Sells, a psychologist who works for the U.S. Department of Veterans Affairs, sold her home in Miami last month without a real estate agent. The experience left a terrible taste in her mouth, she said.

Agents representing buyers refused to show her home to their clients unless she promised to pay their commission. In an interview, she said that one agent even texted her to say that he had a buyer who wanted to make an offer on the home, but she needed first to sign a separate agreement with him to pay him. She texted him back with screenshots from the N.A.R. website, explaining the settlement and the rule changes. He refused to send his buyer's offer. (She shared the texts with The New York Times.)

Nick Gianaris, who lives in Pittsburgh, wrote that he put his mother's house on the market earlier this year before moving her into an assisted-living home. He knew about the N.A.R. settlement, so he asked his real estate agent if he could avoid paying a buyer's agent commission.

If he did that, the agent said, no buyers would come.

Many longtime real estate agents wrote in, too. Some felt that in the story of Mike Chambers — a wealthy entrepreneur in Boulder, Colo., selling a $2.75 million house — they and their fellow agents weren't represented fairly. Mr. Chambers told The New York Times how he had interviewed many agents, all of whom wanted him to pay a commission of at least 5 percent, which would have amounted to $137,500.

Frustrated that agents were unwilling to budge on the rate, he decided to sell his house on his own, and took to Instagram to chronicle the process, using the handle @realtorshateme. He then learned that local agents were texting each other, encouraging their colleagues to steer buyers away from his listing.

Piper Menke, a broker in Oregon, said that Mr. Chamber's experience was not indicative of the entire industry. "You paint this picture of a single white male selling an over 2 million dollar house as a victim, when the story is so incomplete," she wrote.

"If I had a qualified buyer, I would have absolutely have represented them in this transaction," she wrote. "Just like with any other trade, contractor, lawyer, consultant, private health care workers, our fees are what we feel we need them to be in order to remain in business while balancing our time and services offered. If we can negotiate down, we likely will."

But others said they had seen problems in the industry for decades. Pamela Monheimer, who also lives in Oregon, wrote in to explain how she spent nearly 30 years as a commercial real estate agent. Her license is now lapsed so she recently interviewed several brokers to help her sell a home and found that she, too, felt strong-armed into paying both buyer and seller commission, without room to negotiate. "I was horrified by the way they were skirting the new rule," she said.

**Debra Kamin** reports on real estate, covering what it means to buy, sell and own a home in America today. More about Debra Kamin

**4.2.25 – Inman.com**

https://www.inman.com/2025/04/02/agents-grow-more-discontented-with-their-profession-and-with-nar/



**BROKERAGE**

# Agents grow more discontented with their profession, and with NAR

A new survey shows that fewer agents want to recommend their job to others and that, in the wake of NAR's commission lawsuit settlement, more are dissatisfied with the trade group

BY JIM DALRYMPLE II

Today, April 02, 2025

SHARE ✉ f 𝕏 in



A new survey shows that fewer agents want to recommend their job to others and that, in the wake of NAR's commission lawsuit settlement, more are dissatisfied with the trade group.

**Inman Connect**

Invest in your
grow your bus
real estate's t
moment is in l
sion!

**4.3.25 – RespaNews.com – SCREENSHOT ONLY**

http://www.respanews.com/rn/articlesrn/more-than-half-of-agents-expect-commissions-to-dro-94082.aspx



## Industry News, NAR Settlement





# More than half of agents expect commissions to drop post-NAR settlement

---

*in*   *X*   *f*   ✉   🖨 Printer Friendly   💬 0 comments

---

*Industry News, NAR Settlement*
*Thursday, April 3, 2025*

While just under half of the real estate agents surveyed by Redfin for its 2025 Industry Survey said their buyer's agent commission has remained the same since the National Association of Realtors settlement changes took effect, just over half expect those commissions to decline this year. And two out of five agents said the settlement changes negatively impacted their business.

**4.3.25 – RealEstateNews.com**

https://www.realestatenews.com/2025/04/03/agents-are-making-more-money-despite-the-tough-market

## Agents are making more money despite the tough market

A new Redfin survey found that many agents reported higher income in 2024 than in 2023, but concerns about the economy and industry changes persisted.

Dave Gallagher

April 3, 2025

**Key points:**

- While agent income and transactions were up in 2024, 1 in 3 survey respondents were still working second jobs.
- Recent market challenges and industry shifts left fewer agents willing to recommend a career in real estate.
- Agents also faced concerns about the U.S. economy, a rise in discrimination and higher home insurance costs.

While persistent real estate agents are finding success in a slow market, concern for the future is growing as several potential headwinds threaten to make their jobs even more difficult.

Redfin's latest industry survey found that most agents earned more money in 2024. The biggest jump was among agents making six figures: The percentage of those earning between $100,000 and $200,000 increased from 14% in 2023 to 19% in 2024.

The survey, which involved 500 non-Redfin agents who closed at least one deal in 2024, also found an uptick in completed transactions. The share of agents who closed five to nine deals increased from 19% in 2023 to 27% last year, while the share that closed 10-19 transactions jumped from 26% to 30% — and 15% of agents closed at least 20.

"Performance improvements are likely a reflection of fewer new agents entering the industry," said Jason Aleem, Redfin's chief of real estate services and the author of the survey. "Those agents who've made it through the rollercoaster ride of the past few years are the type of agents who can overcome challenges and thrive."

That's not to suggest that this isn't a difficult market overall. The survey also found that, as in 2023, more than one-third of agents had a second job to boost their income.

**Agents face more fee negotiations, express support for Clear Cooperation**

In the aftermath of NAR's $418 million settlement, 51.2% of agents surveyed suspected commissions would decline over the next 12 months, though 56.8% said the settlement changes did not have "much" impact on their business. However, more than half (54.4%) noticed an uptick in commission negotiations, while only 6.2% reported a decline in haggling.

When it came to the Clear Cooperation debate, 74.8% of agents surveyed said withholding a listing from the MLS «is rarely in the best interest of the seller.» A huge majority (88%) said they «personally recommend marketing all listings in the MLS,» while only 11.2% wanted CCP eliminated.

NAR made its long-awaited decision on the controversial policy's future last week when it announced that the CCP will remain with the addition of a «delayed marketing» option.

**A tough career to recommend**

The answers to one survey question spoke volumes about the difficulties agents are facing. When asked if they would recommend real estate as a career, nearly half (49.8%) said they were unlikely to do so, while 21.2% said they would — the lowest net score of the four agent surveys Redfin has conducted since 2019.

"The fact that agents surveyed are increasingly less likely to recommend their career to others is at once concerning and encouraging," Aleem wrote in the report. "We need to figure out how to make real estate a sustainable and

fulfilling career and be honest about whether we as brokerage leaders are creating compelling reasons to stay. And at the same time, we should get comfortable with the fact that some agents just aren't committed to the right things — and if that's the case, it's okay to leave."

The top three career drawbacks agents identified were income unpredictability (with 42.6% declaring this a major issue), the difficulty of building their business (37.8%) and dealing with rude or unprofessional agents (27.8%). On the flip side, agents identified the ability to be their own boss, help others whose lives are in transition and build customer relationships as appealing aspects of their work.

Many agents also expressed confidence about their ability to sell homes in 2025. Slightly more than half (50.4%) said they believe sales will rise in their market, up from 48.4% a year ago. Only 8.2% believed home sales would fall, down from 14.2% in 2024.

**Economic concerns loom large**

Despite their confidence about future sales, many agents had larger concerns, with respondents roughly split in their views on the state of the U.S. economy and the impact of climate change on insurance costs. Nearly half encountered more problems with home insurance in 2024 compared to the previous year — an issue that nearly 3 in 4 agents faced in California and Florida.

Agents also reported an uptick in discrimination, with more than 22% saying they experienced sexism in 2024 (up from 18% in 2023) and 38% saying they experienced racial discrimination (up from 32%).

**4.5.25 – TBRNewsMedia.com**

https://tbrnewsmedia.com/new-rules-for-realtors-what-buyers-and-sellers-in-new-york-need-to-know/

### New rules for realtors: What buyers and sellers in New York need to know

by Shannon Malone - April 5, 2025



METRO photo

**By Shannon L. Malone, Esq.**

Shannon L. Malone Esq.

If you're thinking of buying or selling a home anytime soon, it's time to take note: the real estate rulebook has been revised. As usual, any revision results in additional conferring and completion.

In a landmark settlement finalized late last year, the National Association of Realtors (NAR) agreed to pay a whopping $418 million to settle claims that it helped keep real estate commissions artificially high. The changes that came out of that lawsuit aren't just for the courtroom—they're now working their way into everyday real estate deals, including right here in New York.

Even though NAR is a national organization, the New York State Association of Realtors (NYSAR) has agreed to follow suit. That means both buyers and sellers on Long Island will notice some new rules—and possibly new costs—when they enter the housing market.

**So what's changing?**

Let's start with the basics. Traditionally, the seller paid both their own agent's commission and the buyer's agent's fee, typically 4% of the sale price in Suffolk and Nassau Counties. Those fees were typically split between the agents and baked into the transaction. Notwithstanding the rule change, this continues to be the practice—for now—although under the new rules, that structure is expected to shift.

Most notably, the buyer's agent's commission can no longer be advertised in the Multiple Listing Service (MLS)—the go-to database for real estate listings. That alone could shake up how properties are marketed and sold.

Buyers also face a brand-new requirement: before they can even tour a home with an agent, they'll need to sign a formal written agreement. This agreement must clearly set out what the agent will be paid, how the fee is calculated (flat rate, hourly, or percentage), and—critically—that the terms are negotiable.

No more handshakes and "we'll figure it out later." These are binding contracts now.

**The key takeaway? Call your attorney first**

And here's the part that cannot be overstated: **before you sign anything with a broker—even just to start looking— consult a real estate attorney.** These agreements are legal documents, and buyers are now expected to enter into them at the earliest stages of the home-buying process, often before they've even settled on a budget or location.

The language in these contracts can be complex, and the financial implications are significant. An attorney can help you understand the terms, negotiate provisions that may be unfavorable, and ensure you're not committing to obligations you don't fully grasp.

**Why all the fuss?**

The aim here is transparency—and fairness. One major concern raised in the lawsuits was the practice of "steering," where some agents allegedly guided clients toward listings that offered higher commissions, rather than those best suited to the buyer. The new rules are designed to bring those incentives into the open.

**A changing landscape—and the need for legal guidance early**

If all this sounds a little confusing, you're not alone. Many prospective buyers and sellers are just now learning about these changes. But the consequences of signing a contract prematurely or without fully understanding it can follow you throughout the transaction.

That's why having an attorney in your corner from the outset—someone who is not working on commission and who is bound by law to act in your best interest—is more important than ever.

So whether you're a first-time buyer or preparing to list a home you've lived in for decades, slow down, ask questions, and get the right professionals involved before you sign anything. Because in real estate, success isn't just about finding the right house—it's about making the right deal.

# EXHIBIT J

| # | JND ID | Name | Status | Postmarked | Side | Seven Gables | WFP | JPAR | Signature | First Team | Sibcy Cline | Brooklyn MLS | CNYIS |
|---|--------|------|--------|-----------|------|--------------|-----|------|-----------|------------|-------------|--------------|-------|
| 1 | NEUG68TQNW | Nathan Inabinett | Valid | 4/6/25 | X | X | X | X | X | X | X | X | X |
| 2 | DNUTB3GKE8 | Brian Bayly | Valid | 4/25/25 | X | X | X | X | X | X | X | X | X |
| 3 | D4UTRS3DCW | Jason E. Castro | Valid | 4/25/25 | X | X | X | X | X | X | X | X | X |
| 4 | N3NR2MY8EH | Lynne G. Castro | Valid | 4/25/25 | X | X | X | X | X | X | X | X | X |
| 5 | D4FNTZYG8U | Crystal E. Fields | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 6 | D7MLRDUFZQ | Ann L. Rath | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 7 | DHAW85ML73 | Sonja A. Bryson | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 8 | DHJAXSZY36 | Jason D. Knight | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 9 | DMSHXY98JG | Jaime Nguyen | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 10 | DVKFCAY96W | Diane C. Boccuzzi | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 11 | DXS8WKD9AC | Paul Tibbets | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 12 | NNU2S3ZTC7 | Deborah Tibbets | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 13 | DQG2M43HN9 | Anna C. Gayle | Valid | 4/30/25 | X | X | X | X | X | X | X | X | X |
| 14 | DXTFK2SRDJ | Christopher Wolf | Valid | 5/1/25 | X | X | X | X | X | X | X | X | X |
| 15 | DTERZGQ9MW | Cristina M. Mardo | Valid | 5/3/25 | X | X | X | X | X | X | X | X | X |
| 16 | D7FVS46CNH | Michael A. Duckett | Valid | 5/3/25 | X | X | X | X | X | X | X | X | X |
| 17 | DC2KSULY84 | Heather A. Nelson | Valid | 5/5/25 | X | X | X | X | X | X | X | X | X |
| 18 | DRJWSNYE4C | Sarah F. Salmon | Valid | 5/5/25 | X | X | X | X | X | X | X | X | X |
| 19 | DZGUNWYF3K | Patricia A. King Sheeter | Valid | 5/6/25 | X | X | X | X | X | X | X | X | X |
| 20 | DCMK4R9AJL | Rickie G. Warnock | Valid | 5/6/25 | X | X | X | X | X | X | X | X | X |
| 21 | D4W2YR9PDA | Frederick S. Terry | Valid | 5/7/25 | X | X | X | X | X | X | X | X | X |
| 22 | DVQ9GX7UK3 | Ashley Pacheco | Valid | 5/8/25 | X | | X | X | X | X | X | X | X |
| 23 | DZBV4BS5QD | Joseph Cruz | Valid | 5/8/25 | X | | X | X | X | X | X | X | X |
| 24 | D9M2AFWBEX | Segatha L. Douglas | Valid | 5/9/25 | X | X | X | X | X | X | X | X | X |
| 25 | DZD4E5PMK2 | Charles M. Pike | Valid | 5/9/25 | X | X | X | X | X | X | X | X | X |
| 26 | NRLHY4Q7ZG | Hao Zhe Wang | Valid | 5/9/25 | X | X | X | X | X | X | X | X | X |
| 27 | NNMDBW8KQF | Cai Cai Hua | Valid | 5/9/25 | X | X | X | X | X | X | X | X | X |
| 28 | NT3QG97Z4D | Wang Zhen Hua | Valid | 5/9/25 | X | X | X | X | X | X | X | X | X |



| # | JND ID | Name | Status | Postmarked | Keyes & Illustrated | NextHome | John L. Scott | LoKation | Real Estate One | Baird & Warner |
|---|--------|------|--------|-----------|---------------------|----------|---------------|----------|-----------------|----------------|
| 1 | NEUG6BTQNW | Nathan Inabinett | Valid | 4/6/25 | X | X | X | X | X | X |
| 2 | NVDAQEB6FR | Caroline A. Walker | Valid | 4/25/25 | X | X | X | X | X | X |
| 3 | DNUT83GKE8 | Brian Bayly | Valid | 4/25/25 | X | X | X | X | X | X |
| 4 | D4UTRS3DCW | Jason E. Castro | Valid | 4/25/25 | X | X | X | X | X | X |
| 5 | N3NR2MY8EH | Lynne G. Castro | Valid | 4/25/25 | X | X | X | X | X | X |
| 6 | D4FNTZYG8U | Crystal E. Fields | Valid | 4/30/25 | X | X | X | X | X | X |
| 7 | D7MLRDUFZQ | Ann L. Rath | Valid | 4/30/25 | X | X | X | X | X | X |
| 8 | DHAW8SML73 | Sonja A. Bryson | Valid | 4/30/25 | X | X | X | X | X | X |
| 9 | DHJAXSZY36 | Jason D. Knight | Valid | 4/30/25 | X | X | X | X | X | X |
| 10 | DVKFCAY96W | Diane C. Boccuzzi | Valid | 4/30/25 | X | X | X | X | X | X |
| 11 | DXS8WKD9AC | Paul Tibbets | Valid | 4/30/25 | X | X | X | X | X | X |
| 12 | NNU2S3ZTC7 | Deborah Tibbets | Valid | 4/30/25 | X | X | X | X | X | X |
| 13 | DQGZM43HN9 | Anna C. Gayle | Valid | 4/30/25 | X | X | X | X | X | X |
| 14 | DXTFK2SRDJ | Christopher Wolf | Valid | 5/1/25 | X | X | X | X | X | X |
| 15 | DTER2GQ9MW | Cristina M. Mardo | Valid | 5/3/25 | X | X | X | X | X | X |
| 16 | D7FVS46CNH | Michael A. Duckett | Valid | 5/3/25 | X | X | X | X | X | X |
| 17 | DC2K5ULY84 | Heather A. Nelson | Valid | 5/5/25 | X | X | X | X | X | X |
| 18 | DRJWSNYE4C | Sarah F. Salmon | Valid | 5/5/25 | X | X | X | X | X | X |
| 19 | DZGUNWYF3K | Patricia A. King Sheeter | Valid | 5/6/25 | X | X | X | X | X | X |
| 20 | DCMK4R9AJL | Rickie G. Warnock | Valid | 5/6/25 | X | X | X | X | X | X |
| 21 | D4W2YR9PDA | Frederick S. Terry | Valid | 5/7/25 | X | X | X | X | X | X |
| 22 | DVQ9GX7UK3 | Ashley Pacheco | Valid | 5/8/25 | X | X | X | X | X | X |
| 23 | DZ8V4BSSQD | Joseph Cruz | Valid | 5/8/25 | X | X | X | X | X | X |
| 24 | D9MZAFWBEX | Segatha L. Douglas | Valid | 5/9/25 | X | X | X | X | X | X |
| 25 | DZD4ESPMK2 | Charles M. Pike | Valid | 5/9/25 | X | X | X | X | X | X |
| 26 | NRLHY4Q7ZG | Hao Zhe Wang | Valid | 5/9/25 | X | X | X | X | X | X |
| 27 | NNMDBW8KQF | Cai Cai Hua | Valid | 5/9/25 | X | X | X | X | X | X |
| 28 | NT3QG97Z4D | Wang Zhen Hua | Valid | 5/9/25 | X | X | X | X | X | X |